United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| GORDON NOBORU YAMAGATA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Case No. 17-cv-03529-VC (RMI)<br><br>**ORDER**<br><br>Re: Dkt. Nos. 40, 46, 47 |

Pending before the court are two motions to compel discovery, one from Defendant (Doc. 46), and another from Plaintiffs (Doc. 47). The court conducted a hearing on the motions on June 22, 2018. (Doc. 52).

## I. *Defendant's Motion Doc. 46*

As to Defendant's motion to compel, two issues are presented. (Doc. 46). In the first issue, Defendant seeks the production of Plaintiffs' medical records related to their medical condition before, during, and after they took the Move Free Advanced products involved in this case. (Doc. 46 at 1-2). The second issue relates to Plaintiffs' responses to interrogatories.

### A. *Plaintiffs' Medical Records*

Plaintiffs have filed suit on grounds that Defendant's product (a supplement for improved joint health called "Move Free Advanced") is falsely advertised and that it does not work. (*See generally* Amended Complaint, Doc. 24). The Amended Complaint cites a number of studies that are contended to demonstrate the ineffectiveness of the key ingredients in Move Free (glucosamine and chondroitin). (*Id.* at 5-17). The relief sought by the Amended Complaint is limited to: (i) class certification; (ii) restitution and disgorgement of profits and unjust enrichment

1  that Defendant obtained from Plaintiffs and class members as a result of the allegedly unfair and

2  fraudulent business practices; (iii) injunctive relief regarding Defendant's advertising practices and

3  an order to engage in a corrective advertising campaign; and, (iv) attorneys' fees, costs, and

4  interest. (*Id*. at 27). Accordingly, the nature of the action is one alleging false and deceptive

5  advertising – that is, Plaintiffs seek only the economic damages associated with their purchase of a

6  product that they contend is falsely advertised as promoting joint health but that is allegedly

7  incapable of promoting joint health in any person under any circumstance.

8  Defendant's motion to compel the production of Plaintiffs' medical records is premised on

9  Defendant's contention that "[b]y making these allegations, Plaintiffs [have] placed their medical

10 conditions directly at issue, and as such, [Defendant] is entitled to the requested medical records to

11 explore Plaintiffs' allegations that Move Free did not work for them . . .." (Doc. 46 at 2). The court

12 finds Defendants argument to be unpersuasive because Plaintiffs have not alleged that "Move Free

13 did not work for them," instead, Plaintiffs have alleged that Move Free does not work for anyone

14 under any circumstance, and therefore the only injury alleged here is economic.

> A party enjoys privacy rights in his medical records generally. *See Bertram v. Sizelove*, 2012 WL 273083, at *2 (E.D.Cal. Jan. 30, 2012). A party may nonetheless waive these privacy rights by putting the contents at issue in a case. *Smith v. Solano Cnty.*, 2012 WL 3727332, at * 1 (E.D.Cal. Aug. 24, 2012); *Bertram*, 2012 WL 273083, at *3. Any waiver, however, is "limited to the private information that is relevant to the lawsuit." *Enwere v. Terman Associates, L.P.*, 2008 WL 5146617, at *2 (N.D.Cal. Dec. 4, 2008) (citation omitted).

*Weiland v. City of Concord*, No. 13-CV-05570-JSC, 2014 WL 3883481, at *2 (N.D. Cal. Aug. 7, 2014).

The court finds that Plaintiffs' privacy rights in their medical records have not been waived because Plaintiffs have not placed their medical conditions at issue. The court is unpersuaded by Defendant's reliance on *Rosales v. Fitflop USA, LLC*, 2012 U.S. Dist. LEXIS 180496 (S.D. Cal. 2012) and *Linares v. Costco Wholesale, Inc.*, No. 11-CV-02547-MMA-BGS, 2013 WL 5434570, at *3 (S.D. Cal. Mar. 7, 2013). In *Rosales*, the court found that the allegations in the complaint at bar included claims of health related injuries, as opposed to claiming purely economic injuries. Namely, the complaint in *Rosales* alleged: that FitFlop Footwear may cause or exacerbate the very

2

1    type of problems the defendant claimed its footwear protected against; that the plaintiff "suffered
2    injury in fact <u>and</u> lost money" (emphasis supplied) as a result of the defendant's conduct and did
3    not experience the promised "toning, posture and muscle activation benefits"; and, that "wearing
4    FitFlop products could result in harm to the wearer." *See id.* at *9-*10. Accordingly, the *Rosales*
5    court found that the plaintiff in that case was seeking more than "purely economic damages." The
6    same factors upon which the *Rosales* court most heavily relied in making its determination that the
7    plaintiffs had waived their privacy rights do not exist in the Amended Complaint in this case.

In *Linares*, the court's decision turned on the fact that the plaintiff "claims he took the product as directed and it did not help improve joint mobility, rebuild cartilage or improve joint function as represented." 2013 WL 5434570, at *3. In the present case, Plaintiffs allege that the Move Free Product is incapable of joint relief and have filed these claims to "halt the dissemination of Defendant's false and misleading representations, correct the false and misleading perception Defendant's representations have created in the minds of consumers, and to obtain redress for those who have purchased any of Defendant's Move Free Products at issue." First Amend. Compl. (Doc. 24) at 1-2. Unlike the plaintiffs in *Linares*, the Plaintiffs here do not allege an injury in fact through the use of the product. The First Amended Complaint carefully limits its allegations of harm to seeing the advertisements and making a purchase and thus suffering economic harm based on a falsely advertised product. *See id*. at 17 ("Plaintiffs and each class member were harmed by purchasing Defendant's Move Free Products because none of the Move Free Products are capable of providing their advertised benefits. As a result, Plaintiffs and each class member lost money and property by way of purchasing Defendant's ineffective and worthless capsules.").

Based on the allegations in the First Amended Complaint, the court finds that Plaintiffs have not waived their privacy rights in their medical records by putting their contents at issue in this case.

Similarly, the court finds Defendant's arguments that Plaintiffs' medical records are relevant to the issue of class certification to be unpersuasive. Under the theory of liability in this case, one needs only to have purchased Move Free Products in order to have suffered economic

<mark>United States District Court
Northern District of California</mark>

3

harm. Thus, medical records are irrelevant to establishing typicality and adequacy. So too would the records be irrelevant to standing. Defendants argue that "[t]o defeat standing, RB can investigate whether there are reasons other than the purported misrepresentations that factored into Plaintiffs' decision to purchase Move Free, including what Plaintiffs' physicians may have said about joint health supplements, whether Plaintiffs' physicians recommended a product similar to Move Free, and whether Plaintiffs received any treatment for underlying joint-related issues." (Doc. 46) at 3. However, "[t]hat class members may have learned about [Move Free] from other sources does not absolve Defendants from liability for false statements that appeared on the labels of the products purchased by the class members." *Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-CV-709-CAB-RBB, 2017 WL 1020391, at *7 (S.D. Cal. Mar. 16, 2017); citing *Mullins v. Premier Nutrition Corp.*, 2016 WL 1535057, at *3 ("How consumers first learned about Joint Juice—from a doctor, parent, Joe Montana, or the packaging—does not matter if they nonetheless decided to purchase the product only for its purported health benefits.") (internal quotation omitted).

Accordingly, the court DENIES Defendant's requests for Plaintiffs' medical records.

### B. *Plaintiffs' Interrogatory Responses*

In the second issue raised by Defendant's Motion to Compel, Defendant seeks to compel interrogatory responses that would "identify any research or investigation they did to come to the conclusion that Move Free does not work before filing the complaint . . ." and any information regarding "other products that Plaintiffs may have taken prior to taking Move Free." (Doc. 46 at 3-4). In this regard, based on the representations by Plaintiffs' counsel at the hearing on this motion, and the discussion by the parties at the hearing, Issue-2 in Defendant's Motion to Compel (Doc. 46 at 3-4) is GRANTED IN PART. The Parties are ORDERED to meet and confer further regarding this issue to come to a joint resolution.

### II. *Plaintiffs' Motion Doc. 47*

Regarding Plaintiffs' Motion to Compel (Doc. 47), two issues are presented. Through the

first issue, Plaintiffs seek science related e-discovery[1], as well as marketing related e-discovery[2]. (Doc. 47 at 1-2, 3-8, 11). Through the second issue, Plaintiffs seek all pre-2013 market research including reports of customer surveys and focus groups examining Move Free packaging and advertising representations at issue, as well as product positioning within the glucosamine and chondroitin joint health market. (*Id*. at 3-4).

Defendant responds by pointing the court to the *Lerma* cases from the Southern District of California, in which the primary case, *Lerma, et al. v. Schiff, et al.*, Case No. 3:11-cv-01056 (S.D. Cal.), resulted in final approval of a class-wide settlement on November 3, 2015, concerning all U.S. residents who purchased Move Free between January 1, 2005 and May 27, 2015 and did not opt out of the settlement. (Doc. 47) at 4. Defendant asserts that Plaintiffs cannot plead around *Lerma* in order to create a separate class, but then demand *Lerma* covered discovery.

The court finds Defendant's arguments to be unavailing. That the discovery of potentially two separate classes may overlap is of no concern. Rather, the court is concerned with the scope of the discovery request as it relates to the question of relevance to the claims asserted in this case. At the hearing on this motion, counsel for Defendant noted that there has been no marketing, no marketing research, or related activities on the Move Free Products conducted since 2015, and hence, that there are no documents to produce from that period. This includes no changes to the packaging of the product itself since 2015. Plaintiff specifically identified the packaging as the main source of marketing of the Move Free products. That being the case, then the e-discovery related to pre-2015 is certainly relevant to Plaintiffs' claims which would involve the purchase of the Move Free Products post-2015, but based on pre-2015 advertising and marketing.

---

[1] This information was sought through RFP Nos. 3-9, and encompasses information relating to: glucosamine hydrochloride; glucosamine sulfate; chondroitin sulfate; methylsulfonylmethane (MSM); FruiteX-B Calcium Fructoborate (Uniflex); hyaluronic acid; and, Vitamin D3.

[2] This information was sought through RFP Nos. 10, 11, and 16. RFP 10 sought discovery of all studies, data, and documents relating to Move Free including analyses, marketing studies, marketing research, focus group reports, customer surveys, and sales and profitability analyses relating to advertising claims. RFP 11 sought all documents which discuss, analyze, summarize, or concern the studies described in RFP 10. Lastly, RFP 16 sought all documents which evidence, memorialize, summarize, or discuss any decision about how to market or advertise Move Free and the effectiveness of the marketing and advertising.

Defendant has also objected to the production of email communications related to the Move Free products on the basis that "it is burdensome to demand that [Defendant] search for and produce communications regarding 'marketing' or 'research' broadly." (*Id*. at 5). Defendant also contends that Plaintiffs' requests for internal communications are untethered to their impending request for class certification; and, that "Plaintiffs have failed to identify any specific marketing statements for which they are attempting to probe the materiality." (*Id*.). Defendant adds that "it is very difficult to understand how internal communications on marketing strategy bear upon Plaintiff's theory of the case," and that the requests for such production would pose a "substantial burden to [Defendant], including the need to collect communications stored on a now-defunct database that is not searchable and is located outside the United States . . ." (*Id*.). Defendants had offered to discuss a search for more narrow requests, but that Plaintiffs had failed to identify specific requests or provide more narrow options for searches. (*Id*.)

Plaintiffs clarified that the Defendant's marketing efforts culminated in the product label for Move Free, on which Defendant makes a number of representations. Plaintiffs informed the court that they essentially seek information regarding the marketing program for Move Free that would reveal what the marketing message has been, whether there is a splintered marketing message (*i.e.*, that Move Free works for some people) or whether there was a unified marketing message (*i.e.*, that Move Free works for everyone). Plaintiffs suggests that the document production in *Lerma* would cover this marketing campaign, and that Defendant can satisfy these document requests simply by tendering the documents that Defendants have already produced in the previous action.

The court has already made a determination of the relevance of the requests, including the requests for internal communications, and found them to be tethered to Plaintiffs' claims. *See In re Coca-Cola Prods. Mktg. & Sales Practices Litig*., 2016 U.S. Dist. LEXIS 148534, *19-20, 2016 WL 6245899 (N.D. Cal. 2016) ("Plaintiffs appear to seek discovery about how Defendants perceived their own representations, how they intended consumers to perceive those representations, and how they understood customers to perceive those representations. Such inquiries are relevant because Plaintiffs could use such evidence as common proof that Defendants

6

chose to advertise in a certain way to impact its consumers' choice. If Defendants believed their representations would cause consumers to react in a certain way, and developed the representations to achieve that result, that evidence could be probative common proof of whether Defendants expected a reasonable person to rely upon the representations in deciding to purchase the product."); *see also, Fitzhenry-Russell v. Pepper Snapple Group*, Case No. 17-cv-00564, 2018 U.S. Dist. LEXIS 106918 (N.D. Cal.) (finding that Dr. Pepper's internal documents tended to prove materiality). However, the court does find Defendant's concerns related to the overly-broad nature of the requests to be convincing. The requests for production as they currently exist cast too wide a net. As stated above, Defendants have asserted that since 2015 no external marketing of the Move Free Products have taken place, and Plaintiffs have identified that it was the packaging of the products that served as the primary advertising.

Accordingly, the court finds that Plaintiffs' Motion to Compel is GRANTED in PART and DENIED in PART. Defendants shall respond to the requests for production of scientific and marketing materials for the time period prior to 2015. However, the parties shall meet and confer to narrow the scope of marketing materials requests to focus on the materials related to the packaging of the products.

Further, based on the above rulings, it is ORDERED that the Joint Discovery Letter Brief of May 30, 2018 (Doc. 40), is DENIED as MOOT.

**IT IS SO ORDERED.**

Dated: June 28, 2018.

ROBERT M ILLMAN
United States Magistrate Judge