1   BLOOD HURST & O'REARDON, LLP
    TIMOTHY G. BLOOD (149343)
2   THOMAS J. O'REARDON II (247952)
    501 West Broadway, Suite 1490
3   San Diego, CA 92101
    Tel: 619/338-1100
4   619/338-1101 (fax)
    tblood@bholaw.com
5   toreardon@bholaw.com

6   Class Counsel

7   [Additional Counsel Appear on Signature Page]

8              **UNITED STATES DISTRICT COURT**

9     **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

10  GORDON NOBORU YAMAGATA and          Case No. 3:17-cv-03529-VC
    STAMATIS F. PELARDIS, individually and
11  on behalf of all others similarly situated,    **STIPULATION OF SETTLEMENT**

12              Plaintiffs,

13      v.                                          **CLASS ACTION**

14  RECKITT BENCKISER LLC,               District Judge Vince Chhabria
                                         Courtroom 4, 17th Floor
15              Defendant.
                                         Complaint Filed:    June 19, 2017
16                                       Trial Date:         March 22, 2021

17

18

19

20

21

22

23

24

25

26

27

28

*BLOOD HURST & O' REARDON, LLP*

**TABLE OF EXHIBITS**

**Document**                                                    **Exhibit Number**

Preliminary Approval Order ................................................................................ 1

Final Approval Order ........................................................................................ 2

Final Judgment ................................................................................................. 3

Class Notice Program ....................................................................................... 4

Long-form Class Notice .................................................................................... 5

Email Notice ..................................................................................................... 6

Amazon Email Notice ....................................................................................... 7

Postcard Notice ................................................................................................ 8

Internet Banner Advertisements ....................................................................... 9

Claim Form ..................................................................................................... 10

Request for Exclusion Form ........................................................................... 11

Product List .................................................................................................... 12

BLOOD HURST & O' REARDON, LLP

00175004

1

STIPULATION OF SETTLEMENT

**I.      RECITALS**

A.      This Settlement Agreement is entered into by Plaintiffs on behalf of themselves and the Class Members, and Defendant Reckitt Benckiser, LLC. Capitalized terms used herein are defined in Section II of this Settlement Agreement or indicated in parentheses.

B.      Subject to Court approval, the Parties stipulate and agree that, in consideration for the promises and covenants set forth in the Settlement Agreement and upon entry by the Court of a Final Judgment and Order Approving Settlement and the occurrence of the Effective Date, the Action shall be settled and compromised upon the terms and conditions contained herein.

C.      WHEREAS, on June 19, 2017, plaintiffs Yamagata and Pelardis filed a class action complaint against Reckitt Benckiser in the United States District Court for the Northern District of California captioned *Yamagata v. Reckitt Benckiser, LLC,* Case No. 3:17-cv-03529-VC, on behalf of themselves and all other consumers who purchased Reckitt Benckiser Move Free Advanced products in California and New York; and

D.      WHEREAS, on June 5, 2019, the Court granted plaintiffs' motion for class certification of consumers who purchased Move Free Advanced in California and New York between May 28, 2015 and the date dissemination of notice to the class begins; and

E.      WHEREAS, on March 30, 2020, the Court denied Defendant's motion for summary judgment; and

F.      WHEREAS, on October 22, 2018, a related class action was filed by plaintiff Maureen Carrigan against Reckitt Benckiser in the United States District Court for the Northern District of Illinois captioned *Carrigan v. Reckitt Benckiser, LLC,* Case No. 1:18-cv-07073, on behalf of herself and all other consumers who purchased Reckitt Benckiser's Move Free Advanced products in Illinois, and on October 27, 2020, the Northern District of Illinois granted certification of a class of consumers who purchased Move Free Advanced in Illinois between May 28, 2015 and the date notice is disseminated, and appointed Timothy G. Blood and Thomas J. O'Reardon II as class counsel;

G.      WHEREAS, on September 22, 2020, a related class action complaint was served by undersigned Class Counsel as counsel for plaintiffs Lori Coletti, Ann-Marie Maher, Carol Marshall,

BLOOD HURST & O' REARDON, LLP

00175004

Deborah A. Rawls, Oneita Steele, and Maxine Tishman captioned *Coletti v. Reckitt Benckiser, LLC* for filing in the District of Vermont, on behalf of plaintiffs and all other consumers who purchased Reckitt Benckiser Move Free Advanced products in the United States, or in the alternative, Florida, New Jersey, North Carolina, Texas, Washington and Vermont between May 28, 2015 and the date notice is disseminated, which claims were tolled pursuant to agreement of the Parties; and

H.      WHEREAS, on March 2, 2021, Plaintiffs filed a Second Amended Class Action Complaint in the Northern District of California alleging a nationwide class and including Yamagata, Pelardis, Carrigan, Coletti, Maher, Marshall, Rawls, Steele, and Tishman as named plaintiffs; and

I.      WHEREAS, the Parties have engaged in substantial litigation and discovery, including expert discovery and were about to file pretrial motions in advance of a March 22, 2021 trial in this Court. In the course of litigation and in preparation for trial: (i) Plaintiffs' Counsel reviewed over 303,000 pages of hard-copy and electronic documents produced by Reckitt Benckiser; (ii) over 7,500 pages of documents obtained as the result of subpoenas Plaintiffs' Counsel served on third party retailers of Move Free Advanced, Defendant's ingredient supplier, and scientists and researchers who conducted studies on Move Free Advanced; (iii) Plaintiffs' Counsel submitted 9 expert declarations in connection with class certification, summary judgment and motions to exclude testimony, and 11 expert reports pursuant to Federal Rule of Civil Procedure 26 from seven experts on issues relating to advertising and marketing, scientific evidence on the inefficacy of Move Free Advanced, and damages; (iv) Defendant's Counsel submitted 10 expert reports and declarations pursuant to Federal Rule of Civil Procedure 26 from eight experts on the above issues; (v) the Parties collectively deposed 30 witnesses (25 by Plaintiffs and 5 by Defendant); and (vi) the Parties have engaged in extensive motion practice, including class certification and summary judgment; and

J.      WHEREAS, the Parties participated in seven formal and numerous informal mediation and settlement negotiation sessions, including before the Honorable Wayne R. Anderson (Ret.) on May 2, 2018, with the Hon. Jacqueline Corley on May 22, 2019, and with Robert A. Meyer, Esq. on August 25, 2020, September 1, 2020, September 4, 2020, September 16, 2020, and January

3

Case No. 3:17-cv-03529-VC

5, 2021.  Throughout the course of mediation efforts, the Parties were simultaneously engaging in the discovery and litigation efforts described above; and

      K.      WHEREAS, Class Counsel have determined that a settlement of the Action on the terms reflected in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class; and

      L.      WHEREAS, Reckitt Benckiser, to avoid costs, disruption and distraction of further litigation, and without admitting the truth of any allegations made in or related to the Action, or any liability with respect thereto, has concluded that it is desirable that the claims against it be settled and dismissed on the terms in this Settlement Agreement;

      M.      NOW, THEREFORE, this Settlement Agreement is entered into by and among the Parties, by and through their respective counsel and representatives, and the Parties agree that: (1) upon the Effective Date, the Action and all Released Claims shall be fully, finally, and forever settled and compromised as between Plaintiffs and the Settlement Class on the one hand, and Reckitt Benckiser on the other hand; and (2) upon final approval of the Settlement Agreement, the Final Judgment and Order Approving Settlement, shall be entered dismissing the Action with prejudice and releasing all Released Claims against the Released Parties.

## II.      DEFINITIONS

      A.      As used in this Settlement Agreement and the attached exhibits the following terms shall have the meanings set forth below, unless this Settlement Agreement specifically provides otherwise:

      1.      "Action" means *Yamagata v. Reckitt Benckiser, LLC,* Case No. 3:17-cv-03529-VC (N.D. Cal.).

      2.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to compensate and reimburse Class Counsel and all other Plaintiffs' Counsel for work performed in this matter, as set forth in Section IX of this Settlement Agreement.

      3.      "Cash Payment" means the cash settlement awards paid to eligible Claimants as set forth in Section IV of this Settlement Agreement.

      4.      "Claim" means a request for the Cash Payment or the Product Benefit on a

BLOOD HURST & O' REARDON, LLP

Claim Form submitted to the Settlement Administrator in accordance with the terms of this Settlement Agreement.

5.    "Claimant" means a Class Member who submits a Claim.

6.    "Claim Form" means the document to be submitted by a Claimant requesting the Cash Payment or the Product Benefit and that is substantially in the form of Exhibit 10 (modified as necessary only to provide full clarity to Claimants of their Cash Payment or Product Benefit options and conform to the requirements of on-line submission.)

7.    "Claim Deadline (Original)" or "Original Claim Deadline" means the date by which all Claim Forms must be postmarked or submitted online to the Settlement Administrator to be considered timely. The Original Claim Deadline shall be 10 days after the date first set by the Court for the Final Approval Hearing, unless the Parties agree to a longer period.

8.    "Claim Deadline (Supplemental)" or "Supplemental Claim Deadline" means an additional 60 days after the Original Claim Deadline for Class Members to submit Claims in the event the Net Fund would exceed the value of the aggregate Claims after pro rata upward adjustment as described in Section IV.4 below.

9.    "Class Counsel" means Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP.

10.   "Class Member" means a member of the Settlement Class.

11.   "Class Member Household" means all persons who share a single physical address. For all persons who are a legal entity, such as a corporation, partnership, business organization or association, or any other type of legal entity, there can be only one physical address for purposes of this settlement even if the entity has multiple offices or locations.

12.   "Class Notice" means, collectively, the Long-form Class Notice, Email Notice, Amazon Email Notice, Postcard Notice, and Internet Banner Advertisements substantially in the forms of Exhibits 5, 6, 7, 8, and 9, and as discussed in Section VI of this Settlement Agreement.

13.   "Class Notice Program" means the dissemination of Class Notice as described in Section IV.C below and as described in Exhibit 4.

Case No. 3:17-cv-03529-VC
STIPULATION OF SETTLEMENT

14.    "Class Period" means May 28, 2015, to the date the Preliminary Approval Order is entered.

15.    "Class Representatives" or "Plaintiffs" means Gordon Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman.

16.    "Common Fund" means the sum of fifty million dollars ($50,000,000) in Cash Payment and Product Benefit distributed in the following order: to compensate Plaintiffs' Counsel their fees and expenses, as awarded by the Court; to pay Class Representative service awards, as awarded by the Court; to pay the Settlement Administrator for notice and settlement administration costs; to provide the Cash Payment and Product Benefit to Class Members; and to the Cy Pres Recipient.

17.    "Court" means the United States District Court for the Northern District of California, the Honorable Vince Chhabria presiding.

18.    "Cy Pres Recipient" means the Orthopaedic Research Society.

19.    "Defendant" or "Reckitt Benckiser" means Reckitt Benckiser LLC.

20.    "Defendant's Counsel" or "Reckitt Benckiser's Counsel" means Perkins Coie LLP and Manatt, Phelps & Philips LLP.

21.    "Direct Notice" means distribution of Class Notice by e-mail (if an e-mail address is available) or if not, by first class mail through the United States Postal Service to Class Members who can be identified in the records of third-party retailers, Reckitt Benckiser, or otherwise.

22.    "Effective Date" means the later in time of: (a) the date on which the time to appeal has expired if no appeal has been taken from the Final Judgment and Order Approving Settlement; (b) in the event that an appeal or other effort to obtain review has been initiated, the date after such appeal or other review has been finally concluded and is no longer subject to review; or (c) if Class Counsel and Defendant agree in writing, any other agreed date that is earlier than the Effective Date as calculated according to subparagraphs (a) and (b) above.

23.    "Final Approval Hearing" means the hearing to be conducted by the Court

on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Settlement Agreement.

24.     "Final Judgment and Order Approving Settlement" means, collectively, the Final Judgment and Final Order Approving Settlement to be entered by the Court approving the settlement as fair, adequate, and reasonable, confirming the certification of the Settlement Class, and issuing such other findings and determinations as the Court and/or the Parties deem necessary and appropriate to implement the Settlement Agreement. The Final Judgment and Order Approving Settlement shall be substantially in the form of Exhibits 2 and 3.

25.     "Internet Banner Advertisements" means the form of online legal notice, as approved by the Court, containing a hyperlink to the Claim Form section of the Settlement Website, to be distributed by the Settlement Administrator according to the Class Notice Program. The Internet Banner Advertisements shall be substantially in the form of Exhibit 9.

26.     "Long-form Class Notice" means the legal notice of the terms of the proposed Settlement, as approved by the Court, to be distributed according to the Class Notice Program. The Long-form Class Notice shall be substantially in the form of Exhibit 5.

27.     "Move Free Advanced" means the products marketed and distributed by Reckitt Benckiser called Move Free Advanced, Move Free Advanced Plus MSM, and Move Free Advanced Plus MSM & Vitamin D.

28.     "Net Fund" means the amount remaining in the Common Fund after payment of Attorneys' Fees and Expenses, Class Representative Service Awards, and Notice and Claim Administration Expenses.

29.     "Net Cash Benefit" means the amount remaining in the Net Fund after deducting the total value of the Product Benefit awarded to Claimants.

30.     "Notice and Claim Administration Expenses" means costs and expenses incurred by the Settlement Administrator, including all notice expenses, the costs of administering the Class Notice Program, and the costs of processing and distributing all the Cash Payment to Claimants. Notice and Claim Administration Expenses do not include any of the handling, distribution or shipping costs of the Product Benefit, which costs will be paid separate and apart by

BLOOD HURST & O' REARDON, LLP

1    Defendant. Defendant shall fund the Common Fund as Notice and Claim Administration Expenses

2    come due.

3        31.   "Notice Date" means the date by which the Settlement Administrator shall

4    commence dissemination of the Class Notice, which shall be within forty-five (45) days from the

5    Preliminary Approval Order, unless the Parties agree to a different date, subject to Court approval.

6        32.   "Objection Date" means the date by which Class Members must file and

7    serve objections to the Settlement Agreement and shall be no later than fourteen (14) days before

8    the date first set for the Final Approval Hearing.

9        33.   "Opt-Out Date" means the postmark date by which a Request for Exclusion

10   must be submitted to the Settlement Administrator, and shall be no later than fourteen (14) days

11   before the date first set for the Final Approval Hearing.

12       34.   "Parties" means the Plaintiffs and Defendant in this Action.

13       35.   "Plaintiffs' Counsel" means Blood, Hurst & O'Reardon, LLP, Altair Law,

14   Barnow and Associates, P.C., and Carlson Lynch Sweet Kilpela & Carpenter, LLP.

15       36.   "Preliminary Approval Order" means the order to be entered by the Court

16   conditionally certifying the Settlement Class, preliminarily approving the Settlement Agreement,

17   setting the date of the Final Approval Hearing, appointing Class Counsel for the Settlement Class,

18   approving the Class Notice Program and forms of Class Notice, and setting the Opt-Out Date,

19   Objection Date, and Notice Date, the proposed form of which is attached as Exhibit 1.

20       37.   "Product Benefit" means the Class Member's option to select and receive

21   Products, each of which is valued at the latest list (wholesale) price, inclusive of applicable state

22   and local sales tax, for that Product, instead of cash as a settlement benefit as set forth in Section

23   IV.

24       38.   "Proof of Purchase" means a receipt or retailer record showing the Claimant

25   purchased Move Free Advanced during the Class Period and the number of bottle or amount

26   purchased.

27       39.   "Publication Notice" means distribution of the Class Notice as described in

28   Section VI.C.2, including through the Internet Banner Advertisements.

BLOOD HURST & O' REARDON, LLP

8

40.     "Released Claims" means, with the exception of claims for personal injury, all claims that were or could have been asserted in the Action and that are based on the identical factual predicate of those claims in the Action, specifically that Move Free Advanced was misleadingly marketed, promoted  or sold, specifically including all elements of the labelling packaging, advertisements, promotions and marketing of Move Free Advanced, including the language, presence, or absence of any disclaimers. Class Members are releasing claims based only on the identical factual predicate set forth in the Second Amended Complaint.

41.     "Released Party" or "Released Parties" means Defendant and its parents, subsidiaries, divisions, departments, agents, and affiliates, and any and all of its past and present officers, directors, employees, stockholders, agents, successors, attorneys, insurers, representatives, licensees, licensors, subrogees, and assigns, including, but not limited to Reckitt Benckiser LLC and RB Health (US) LLC as well as any third-party retailers, re-sellers, or suppliers of Move Free Advanced.

42.     "Releasing Party" means Plaintiffs and each Class Member.

43.     "Request for Exclusion" means the written communication that must be submitted to the Settlement Administrator and postmarked on or before the Opt-Out Date by a Class Member who wishes to be excluded from the Settlement Class. A Request for Exclusion form that is substantially in the form of Exhibit 11 shall be made available on the Settlement Website where it can also be submitted.

44.     "Settlement Administrator" means Epiq Class Action and Claims Solutions, the entity retained by the Parties and approved by the Court to design, consult on, and implement the Class Notice Program for disseminating Class Notice, administer and send the Cash Payment and Product Benefit portion of this Settlement Agreement, and perform overall administrative functions.

45.     "Settlement Agreement" means this Stipulation of Settlement(including all Exhibits attached to this Stipulation of Settlement).

46.     "Settlement Class" means all persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced

BLOOD HURST & O' REARDON, LLP

00175004

Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to the date of the Preliminary Approval Order. Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class.

47.    "Settlement Costs" means: (i) all Notice and Claim Administration Expenses; (ii) any award of Attorneys' Fees and Expenses to Class Counsel approved by the Court; and (iii) any service award to the Class Representatives approved by the Court.

48.    "Settlement Website" means the Internet website to be created and maintained for this settlement by the Settlement Administrator to provide information to the public and the Settlement Class about this Settlement Agreement.

B.    Capitalized terms used in this Settlement Agreement, but not defined in Section II, shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

## III.    CLASS CERTIFICATION AND AMENDED COMPLAINT

### A.    Certification of the Settlement Class

As part of the motion for preliminary approval of the Settlement Agreement, Plaintiffs will seek preliminary certification of the Settlement Class. Defendant consents, solely for purposes of settlement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Plaintiffs as suitable representatives of the Settlement Class; provided, however, that if the Court fails to approve this Settlement Agreement or the Settlement Agreement otherwise fails to be consummated, then Defendant shall retain all rights it had, including the right to object to the maintenance of the Action as a class action.

### B.    Filing of Amended Complaint

Plaintiffs shall file a Second Amended Class Action Complaint with Defendant's written consent pursuant to Federal Rule of Civil Procedure 15(a)(2) that will contain a class definition to

BLOOD HURST & O' REARDON, LLP

conform to this Settlement Agreement.

**IV.    SETTLEMENT RELIEF**

1.      The Notice and Claims Procedure shall comply with the Court's Standing Order for Civil Cases.

2.      Class Members who submit a timely valid Claim Form have the option of receiving either one of the Cash Payment or the Product Benefit. The Class Member selects to receive the Cash Payment or the Product Benefit on the Claim Form.

3.      The Cash Payment

a.      Class Members who elect the Cash Payment can receive twenty-two dollars ($22) for each bottle of a Move Free Advanced product purchased during the Class Period.

b.      Class Members who do not provide Proof of Purchase can receive the Cash Payment for up to three (3) bottles of Move Free Advanced per Class Member Household.

c.      Class Members who provide Proof of Purchase can receive the Cash Payment of twenty-two dollars ($22) for each documented purchase of a bottle of Move Free Advanced per Class Member Household beyond three (3) bottles.

d.      The Cash Payment is subject to a pro rata increase or decrease depending upon the amount remaining in the Net Fund after all eligible Claims are determined, as described in Section IV.5.

4.      The Product Benefit

a.      Class Members who elect the Product Benefit can select their choice of products from a range of products (the "Products") sold or produced by Defendant from a product list substantially in the form of Exhibit 12, and those Products will be directly mailed without charge to Class Members. The Defendant, in consultation and with the reasonable consent of the Settlement Administrator and Class Counsel, are permitted to make non-substantive revisions or substitutions to the designated Product list to account for Product availability, package size availability, and other supply chain considerations, but in no event will the number of Product brands available be less than the number of Product brands listed on Exhibit 12.

b.      Class Members who do not provide Proof of Purchase can receive the Product

BLOOD HURST & O' REARDON, LLP

Benefit for up to three (3) bottles of Move Free Advanced purchased per Class Member Household. Class Members who provide Proof of Purchase can receive the Product Benefit for each documented bottle of Move Free Advanced purchased per Class Member Household.

c.      For Class Members who do not provide Proof of Purchase, the value of the Product Benefit will be equal to $75 for each eligible bottle of Move Free Advanced purchased. For example, one eligible bottle purchased will entitle the Class Member to a Product Benefit of $75 dollars, two eligible bottles purchased will entitle the Claimant to a Product Benefit value of $150 dollars, and three eligible bottles purchased will entitle the Claimant to a Product Benefit value of $225 dollars.

d.      For purposes of the Product Benefit, the value of Products will be based on Reckitt Benckiser's latest list (wholesale) price for that Product. The Product Benefit is not a discount on a product; Claimants do not purchase anything from Reckitt Benckiser to receive the Product Benefit, but will be entitled to the Product Benefit as a member of the Settlement Class who timely selected the Product Benefit. Claimants also will not incur any of the costs relating to the shipment of the Product Benefit to them, and such shipping and handling costs will not reduce the value of the Claimant's Product Benefit selection(s) or the Common Fund.

e.      The Products that may be selected for the Product Benefit will be listed on the Claim Form and on the Settlement Website at the time the Settlement Class Member chooses the Product as a result of the Product Benefit choice, along with each product's latest list (wholesale) price. A Claimant may select Products up to the value of his or her Product Benefit except if the value of one of the Products selected results in a Product Benefit value greater than 100% of the available Product Benefit, the Class Member will receive the total amount of the Product Benefit plus any marginal overage created by the selection of one Product.

f.      If the wholesale value of the Products (Product Benefit value) selected by the Claimant do not total 100% or more of the value of the Claimant's Product Benefit, additional like-products will automatically be provided to the Claimant until the total value of the products provided to the Claimant is equal to or greater than 100% of the Claimant's Product Benefit value. For example, if the Claimant is entitled to a Product Benefit value of $150 but selects products with a

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1  total wholesale value of $130, the Claimant will automatically be provided additional like-products

2  until the total Product Benefit values is $150 or more (*i.e.*, is greater than 100% of the Claimant's

3  Product Benefit value). If the Product Benefit value of the Products selected by the Claimant do not

4  total 100% or more of the value of the Claimant's Product Benefit but any additional like-product

5  would have a value greater than the benefit amount remaining to the Claimant, additional like-

6  product will nonetheless be automatically provided to the Claimant until the total value of the

7  Products provided to the Claimant are equal to or greater than 100% of the Claimant's Product

8  Benefit value. Additional like-products will not be provided to Class Members once their total

9  Product Benefit value equals to or exceeds 100% of the amount of Product Benefit value to which

10  they are entitled.

11      g.    The Product Benefit is subject to a pro rata increase depending upon the

12  amount remaining in the Net Fund after all eligible Claims are determined, as described in Section

13  IV.5.

14      h.    The total amount of Product Benefit value selected pursuant to the payment

15  of valid Claims shall be deducted from the Net Fund.

16      5.    Pro Rata Adjustments, the Supplemental Claim Deadline, and Cy Pres Contribution.

17      a.    If the amount of the Net Fund is less than the aggregate amount of valid

18  Claims submitted in accordance with the Original Claim Deadline, each Claim for a Cash Payment

19  shall be reduced on a pro rata basis.

20      b.    If the amount of the Net Fund exceeds the aggregate amount of valid Claims

21  submitted in accordance with the Original Claim Deadline, the Settlement Administrator will

22  determine if increasing each valid Cash Payment and Product Benefit Claim by up to three (3) times

23  the claimed amount will exhaust the Net Fund. If so, amounts paid on Claims will be increased pro

24  rata up to three (3) times the claimed amounts.

25      c.    If, however, the amount of the Net Fund after a pro-rata increase of three (3)

26  times the original claimed amounts would still exceed the aggregate amount of those upward

27  adjusted valid Claims submitted in accordance with the Original Claim Deadline, then then the

28  Original Claim Deadline shall be extended for all Class Members by sixty (60) days (and this fact

shall be prominently updated on the homepage of the Settlement Website) and Direct Notice will be provided to those Class Members who did not submit a Claim in accordance with the Original Claim Deadline and for whom Direct Notice may be provided. This Direct Notice will inform these Class Members that they have an additional sixty (60) days (the Supplemental Claim Deadline) to submit a Claim Form and receive the Cash Payment or Product Benefit at their option.

        d.     If the amount of the Net Fund still exceeds the aggregate amount of valid Claims after the processes described in Section IV.5(a), (b), and (c), the amounts paid on all valid Claims will be further increased pro rata up until the Net Fund is exhausted.

        e.     At the time of disbursement, each Claimant will receive an email and/or mobile phone text providing the Claimant with several digital options to immediately receive the Cash Payment, such as a digital MasterCard, Venmo, Amazon, or eCheck. At that time, the Claimant may also request a physical check.

        f.     Cash Payment checks will be valid for ninety (90) days. Any amount remaining in the Net Fund as a result of Cash Payment checks that remain uncashed more than ninety (90) days after the date on the check, or as a result of Cash Payment checks returned with no forwarding address and for which a current address cannot be reasonably obtained, and any remaining funds that the Settlement Administrator was unable to distribute, will be paid to the Cy Pres Recipient. Any Class Member who fails to negotiate the check within the ninety (90) day period forever waives and releases his or her claim for payment of the amount represented by the Cash Payment check. In addition to Cash Payment checks, Cash Payments may be provided to Class Members electronically through established electronic payment services such as PayPal and Venmo as requested by Class Members.

        6.     Release of the Common Fund

        a.     Within seven (7) days following entry of an order granting Plaintiffs' Motion for Attorneys' Fees and Expenses, Defendant shall deposit the amount of the Attorneys' Fees and Expenses rewarded by the Court in a qualified settlement account. Plaintiffs' Motion for Attorneys' Fees and Expenses shall be filed at least 30 days before the deadline for objecting to the Settlement.

        b.     Within fourteen days (14) days following entry of a Final Approval Order,

BLOOD HURST & O' REARDON, LLP

the Defendant shall pay Settlement Administrator and the Settlement Administrator shall pay to Class Counsel Attorneys' Fees and Expenses (net of any amount to be withheld by the Court until after Post-Distribution Accounting pursuant to the Court's Standing Order for Civil Cases) as awarded by the Court, provided that Class Counsel shall be obligated to return to the Common Fund any fees or expenses if the amount awarded by the Court is reduced prior to the Effective Date.

c.     Within seven (7) days after the claim review process set forth in Section V is completed, the Settlement Administrator shall calculate the Net Cash Benefit by deducting the total value of the Product Benefits claimed by Class Members from the Net Fund.

d.     At least fourteen (14) days prior to the Effective Date, calculated assuming there are no appeals, Defendant shall deposit the amount of the Net Cash Benefit in a qualified settlement account.

e.     On the Effective Date, the Net Cash Benefit will be made available to pay the Court-approved Class Representative Service Awards and to pay Class Members' Claims for the Cash Payment benefit.

f.     On the Effective Date, Class Members' Product Benefit selections will be made available to the Settlement Administrator for distribution to Class Members.

g.     Within twenty-one (21) days after distribution of the Cash Benefit and Product Benefit, Class Counsel will file a Post-Distribution Accounting as described in the Northern District's Procedural Guidance for Class Action Settlements and in the Court's Standing Order for Civil Cases.

**V.     CLAIM FORM SUBMISSION, REVIEW AND PAYMENT**

1.     To be eligible to receive the Cash Payment or Product Benefit, Class Members must submit a valid and timely Claim Form. Claim Forms may be submitted either by mail or electronically through the Settlement Website and if submitted by mail must be postmarked or submitted electronically on or before the Original Claim Deadline (or the Supplemental Claim Deadline, if applicable).

2.     Claim Forms will be available for online submission on the Settlement Website, available for download from the Settlement Website, and upon request, will be mailed or emailed

BLOOD HURST & O' REARDON, LLP

to Class Members by the Settlement Administrator. Hard copy Claim Forms may be submitted to the Settlement Administrator by U.S. mail or other regularly maintained mail delivery service.

3.      Claimants selecting the Product Benefit on the Settlement Website will choose the items he or she desires directly on the Settlement Website at the time the Claimant submits the Claim for the Product Benefit. The Settlement Website will keep track of the items selected by the Claimant and provide a running total of amount of Product Benefit remaining to the Claimant to easily allow the Claimant to select the full amount of items to which he or she is entitled pursuant to the Product Benefit.

4.      The Settlement Administrator shall review Claims to determine if the Claimant has substantially complied with the instructions on the Claim Form and process the Claim accordingly. The Settlement Administrator shall make final decisions on whether a Claim is valid subject to the agreement of Class Counsel and Defendant's Counsel.

5.      Failure to provide all information requested in the Claim Form will not automatically result in nonpayment of the Claim. Instead, the Settlement Administrator will take all adequate and customary steps to determine the Class Member's eligibility for payment or products based on the information contained in the Claim Form, and such other reasonably available information from which eligibility for settlement benefits can be determined.

6.      The Settlement Administrator's review of Claims will be in accordance with standard fraud detection practices regularly employed by the Settlement Administrator to prevent the approval and payment of Claims that are fraudulent or invalid.

7.      Claimants entitled to receive the Cash Payment will be given the option of receiving payment electronically or mailed a check by first class mail to the address on Claim Form. Payments will be mailed upon the occurrence of the Effective Date and within seven (7) days after the process described in Section IV.5 is completed.

8.      Claimants entitled to receive the Product Benefit will be mailed their selected products by the Settlement Administrator. The Products will be mailed upon the occurrence of the Effective Date and within seven (7) days after the process described in Section IV.5 is completed.

9.      Defendant will separately pay all shipping and handling costs associated with

distributing the Product Benefit to Claimants and such costs are not included in the Settlement Costs and are not paid out of the Common Fund.

10.     Class Counsel will submit a Post-Distribution Accounting that addresses all relevant items in the Court's Standing Order, including a full description of the Settlement distribution (covering the elements in the Standing Order) and a Proposed Order releasing the remainder of the Attorneys Fees and Costs.

## VI.     ADMINISTRATION AND CLASS NOTICE

### A.     Settlement Administrator

1.     Subject to Court approval, the Parties shall retain Epiq Class Action and Claims Solutions to help implement the terms of the Settlement Agreement.

2.     The Settlement Administrator will be tasked with conducting matters relating to the administration of this Settlement Agreement, as set forth herein. Those responsibilities include, but are not limited to (1) arranging for dissemination of the Publication Notice and Direct Notice, (2) mailing or arranging for the mailing, emailing or other distribution of the Class Notice and the Cash Payment and Product Benefit to Claimants, (3) handling returned mail and email not delivered to Class Members,  (4) making any additional mailings required under the terms of this Settlement Agreement, (5) answering written inquiries from Class Members and/or forwarding such inquiries to Class Counsel or their designee, (6) receiving and maintaining on behalf of the Court and the Parties any Class Member correspondence and Requests for Exclusion from the Settlement, (7) establishing the Settlement Website that posts the operative complaint, Settlement Agreement, the Class Notice, and other related documents, (8) sending notification of any deficiency in any Claim Form to permit a Claimant to cure any such deficiency, (9) establishing and maintaining a toll-free telephone number that will provide settlement-related information to Class Members, and (10) otherwise assisting with administration of the Settlement Agreement.

3.     The contract with the Settlement Administrator shall obligate the Settlement Administrator to abide by the following performance standards:

a.     The Settlement Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and objectively describe, the

BLOOD HURST & O' REARDON, LLP

provisions of this Settlement Agreement in communications with Class Members; and

b.     The Settlement Administrator shall provide prompt, accurate and objective responses to inquiries from Class Counsel or their designee, Reckitt Benckiser and/or Reckitt Benckiser's Counsel.

B.     **Class Notice**

1.     Class Notice: The Class Notice forms will include a Long-form Class Notice, Email Notice, Amazon Email Notice, Postcard Notice, and Internet Banner Advertisements disseminated in connection with the Publication Notice.

2.     The Long-form Class Notice available on the Settlement Website and to be sent to Class Members at their request shall be in substantially the form of Exhibit 5. The Long-form Class Notice shall be available in English and Spanish. At a minimum, the Long-form Class Notice shall:

a.     include a short, plain statement of the background of the Action and the proposed Settlement Agreement;

b.     describe the proposed settlement relief as set forth in this Settlement Agreement;

c.     inform Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief;

d.     describe the procedures for participating in the Settlement, including all applicable deadlines, and advise Class Members of their rights to submit a Claim to be eligible to receive a Cash Payment or Product Benefit under the Settlement Agreement;

e.     explain the scope of the Release;

f.     state that any Cash Payment or Product Benefit to Class Members is contingent on the Court's final approval of the Settlement Agreement;

g.     state the identity of Class Counsel and the amount sought in attorneys' fees and expenses and Class Representative service awards;

h.     explain the procedures for opting out of the Settlement Class including the applicable deadline for opting out;

STIPULATION OF SETTLEMENT

BLOOD HURST & O' REARDON, LLP

00175004

1          i.          explain the procedures for objecting to the Settlement Agreement

2   including the applicable deadline; and

3          j.          explain that any judgment or orders entered in the Action, whether

4   favorable or unfavorable to the Settlement Class shall include and be binding on all Class Members

5   who have not been excluded, even if they have objected to the proposed Settlement Agreement and

6   even if they have another claim, lawsuit, or proceeding pending against Defendant.

7          3.          Email Notice, Amazon Email Notice and Postcard Notice: The Email Notice,

8   Amazon Email Notice and Postcard Notice shall be in substantially the form of Exhibits 6, 7 and 8,

9   and shall include the web address of the Settlement Website and a telephone number for the

10  Settlement Administrator, a description of the Settlement Class, a description of relief available to

11  the Settlement Class and the Original Claim Deadline (or any Supplemental Claim Deadline), and

12  an explanation of the right to object and/or opt-out of the Settlement Class and the deadlines to

13  exercise these rights.

14         4.          Internet Banner Advertisements: The Settlement Administrator will design

15  and implement a geographic and contextual targeting digital and social media campaign that utilizes

16  Internet Banner Advertisements (substantially in the form of Exhibit 9) that contain an embedded

17  hyperlink directing Class Members directly to the Claim Form link on the Settlement Website.

18         5.          Website Notice: The Settlement Website shall be created and maintained by

19  the Settlement Administrator. The Settlement Website shall be available in English and Spanish.

20  The Settlement Website shall be activated no later than the Notice Date and shall remain active until

21  sixty (60) days after the settlement benefits are distributed to Claimants. The URL of the Settlement

22  Website will be "www.MoveFreeAdvancedSettlement.com." The Settlement Administrator shall

23  post the Long-form Class Notice, a copy of this Settlement Agreement and its Exhibits, the

24  Preliminary Approval Motion, the Preliminary Approval Order, the operative complaint, the Motion

25  for Final Approval and Motion for Attorneys' Fees and Expenses, the Final Approval Order,

26  answers to frequently asked questions, the number for the toll-free hotline maintained by the

27  Settlement Administrator for this Settlement, Settlement-related deadlines, and any other materials

28  or information the Parties agree to include on the Settlement Website. These documents shall be

BLOOD HURST & O'REARDON, LLP

00175004

available on the Settlement Website for as long as the Settlement Website is active.

6.     Class Action Fairness Act Notice: Reckitt Benckiser shall work with the Settlement Administrator to comply with all notice requirements imposed by 28 U.S.C. § 1715(b) ("CAFA Notice").

C.     **Dissemination of Class Notice**

1.     Direct Notice: The Email Notice, Amazon Email Notice or Postcard Notice (as applicable), shall be sent via email, or for those Class Members for whom an email address is not available but a physical address is available, then via the United States Postal Service, to every Class Member who can be identified in the records of (1) third-party retailers, (2) Reckitt Benckiser, or (3) otherwise, including but not limited to Class Members who directly purchased Move Free Advanced from the schiffvitamins.com website or registered a purchase of Move Free Advanced with Reckitt Benckiser through the Schiff Move Free Rewards program or otherwise. Reckitt Benckiser shall provide the Settlement Administrator any of the aforementioned Class Member contact information it possesses. Direct Notice will be sent on the Notice Date, and if applicable, again to those Class Members who did not submit a Claim in accordance with the Original Claim Deadline. Prior to the Notice Date, the Settlement Administrator shall employ its regular data processing and data cleaning procedures on the records (names/addresses) for the Direct Notice. The Settlement Administrator shall design the Direct Notice (for both delivery by U.S. mail and by email) in such a manner as to enhance the likelihood that it will be opened or viewed by the Class Member. After posting of the Postcard Notice by the Settlement Administrator with the United States Postal Service, for any such mailed notices returned as undeliverable, the Settlement Administrator shall utilize the National Change of Address registry in an attempt to obtain better addresses for such returned mail notices, and should that registry show a more current address, the Settlement Administrator shall send the returned Postcard Notice to the more current address. The Settlement Administrator will promptly resend any Postcard Notice that is returned as undeliverable with a forwarding U.S. mail or email address to such forwarding address.

2.     Publication Notice: The Email Notice, or a variation of the Email Notice suitable for the manner of the specific publication, shall be published no later than the Notice Date.

BLOOD HURST & O' REARDON, LLP

00175004

As detailed in the Class Notice Program (Exhibit 4), publication will include a combination of national print and online publications and outlets, including effective online advertising (including using the Internet Banner Advertisements and through sponsored search text ads on search engines such as Google, Yahoo, and Bing), and with the Settlement Administrator using accepted reach methodology to reach the Settlement Class.

3.      Website Notice: No later than the Notice Date, the Settlement Administrator will post the Long-form Class Notice on the Settlement Website, and shall post the additional documents and information discussed in Section VI.B.5 above as they become available. Such documents and information may also be posted on Class Counsel's website and Plaintiffs' Counsel's websites at their option.

4.      Toll-Free Telephone Number: No later than the Notice Date, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members via interactive voice recording with a live operator option.

5.      Upon Request: The Long-form Class Notice and Claim Form shall also be sent via electronic mail or regular mail to Class Members who so request.

## VII.   OBJECTIONS AND REQUESTS FOR EXCLUSION

### A.   Objections

1.      Any Class Member who intends to object to the fairness of the Settlement Agreement must do so in writing no later than the Objection Date. The written objection must be filed with the Court and served on Class Counsel and Defendant's Counsel no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, the name, address, and telephone number of his/her counsel; (c) a statement under oath that the objector is a Class Member; (d) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (e) a statement of the objection and the specific grounds supporting the objection; (f) a statement whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (g) copies of any papers, briefs, or other documents upon which the objection is based; and (h) the objector's handwritten, dated signature (the signature of objector's

00175004

counsel, an electronic signature, and the annotation "/s" or similar annotation will not suffice).

2.      Any Class Member who files and serves a written objection, as described above, may appear at the Final Approval Hearing, either in person or through counsel hired at the Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Settlement Agreement. Class Members or their attorneys who intend to make an appearance at the Final Approval Hearing must serve a notice of intention to appear on Class Counsel and Defendant's Counsel, and file the notice of appearance with the Court, no later than seven (7) days before the Final Approval Hearing, or as the Court may otherwise direct. The written notice and objection requirements may be excused by the Court upon a showing of good cause.

3.      Absent a showing of good cause, any Class Member who fails to substantially comply with the provisions of Sections VII.A.1-2 above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object and shall be bound by all of the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

B.      **Requests for Exclusion**

1.      Any member of the Settlement Class may request to be excluded from the Settlement Class. A Class Member who wishes to opt out of the Class must do so no later than the Opt-Out Date. To opt out, a Class Member must send to the Settlement Administrator a written Request for Exclusion that is postmarked no later than the Opt-Out Date. A Request for Exclusion may also be submitted at the Settlement Website by the Opt-Out Date. The Request for Exclusion must be personally signed by the Class Member and contain a statement that indicates a desire to be excluded from the Settlement Class. No person may opt out of the Settlement Class for any other person or be opted-out by any other person, and no Class Member shall be deemed opted-out of the Settlement Class through any purported "mass" or "class" opt-outs.

2.      Any Class Member who does not submit a timely, written Request for Exclusion shall be bound by all subsequent proceedings, orders and the Final Judgment and Order Approving Settlement in this Action, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendant relating to the Released Claims.

3.      Any Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Action relating to the Settlement Agreement; (b) be entitled to submit a Claim selecting the Cash Payment or Product Benefit, or be affected by, the Settlement Agreement; (c) gain any rights by virtue of the Settlement Agreement; or (d) be entitled to object to any aspect of the Settlement Agreement.

4.      The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a final list of all timely Requests for Exclusion within three (3) days after the Opt-Out Date. Reckitt Benckiser's Counsel shall file the final list of all timely Requests for Exclusion prior to or at the Final Approval Hearing.

## VIII.  RELEASES

A.      Upon the Effective Date, each and every Releasing Party shall by order of this Court be deemed to have released, waived, forfeited and shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any Released Claim against any Released Party based on the identical factual predicate in any court or any forum.

B.      In addition, with respect to the Released Claims, Plaintiffs specifically acknowledge and affirmatively waive any rights or benefits available to them under California Civil Code section 1542.  California Civil Code section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs hereby waive any and all federal and state statutes similar in substance, meaning or application to California Civil Code section 1542.

C.      In consideration for the Agreement, Defendant and its parents, subsidiaries, divisions, departments, and affiliates, and any and all of its past and present officers, directors, employees, stockholders, agents, successors, attorneys, insurers, representatives, licensees, licensors, subrogees, and assigns shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, released Class Counsel and Plaintiffs from any and all causes of

1  action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting

2  the litigation or in settling the Action.

3      D.      The Court shall retain exclusive and continuing venue and jurisdiction over the

4  Parties and the Class Members to interpret and enforce the terms, conditions, and obligations under

5  the Settlement Agreement and any disputes over such issues shall be brought in this Court.

6  **IX.    ATTORNEYS' FEES AND EXPENSES AND PLAINTIFF SERVICE AWARDS**

7      A.      Class Counsel shall make, and Defendant agrees not to oppose, an application for an

8  award of attorneys' fees in an amount not to exceed 25% of the Common Fund or twelve million

9  five hundred thousand dollars ($12,500,000).

10     B.      Class Counsel shall make, and Defendant agrees not to oppose, an application for

11  reimbursement of Plaintiffs' Counsel's reasonable out-of-pocket expenses in an amount not to

12  exceed $750,000.00.

13     C.      The award of Attorneys' Fees and Expenses will be paid from the Common Fund.

14  The application for an award of Attorneys' Fees and Expenses will be made by Class Counsel on

15  behalf of themselves and the other Plaintiffs' Counsel. Class Counsel shall distribute and allocate

16  the Attorneys' Fees and Expense awarded to Plaintiffs' Counsel in its sole discretion. The attorneys'

17  fees were negotiated subsequent to and separate from the other terms of this Settlement Agreement.

18  Reckitt Benckiser shall not be responsible for any other fees or expenses incurred by Class Counsel,

19  Plaintiffs' Counsel or Plaintiffs.

20     D.      Plaintiffs will apply for Class Representative service awards. Any Court-approved

21  service award is in addition to the benefits that the Class Representatives are entitled to receive as

22  members of the Settlement Class. Defendant agrees not to oppose service awards in the amount of

23  seven thousand five hundred dollars ($7,500) to Gordon Noboro Yamagata, Stamatis F. Pelardis

24  and Maureen Carrigan, and in the amount of five hundred dollars ($500) to Lori Coletti, Ann-Marie

25  Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman. The Court-

26  approved service awards will be paid from the Common Fund. The service awards shall be paid to

27  the Class Representatives within seven (7) days of the Effective Date.

28     E.      The Court's determination of Attorneys' Fees and Expenses and Class

BLOOD HURST & O' REARDON, LLP

1   Representative service awards will not affect the remainder of the Settlement.

2   **X.      FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT**

3          This Settlement Agreement is subject to and conditioned upon the issuance by the Court of

4   the Final Judgment and Order Approving Settlement that finally certifies the Class for the purposes

5   of this settlement, grants final approval of the Settlement Agreement, and provides the relief

6   specified herein. Such Final Judgment and Order Approving Settlement shall be in substantially the

7   form attached hereto as Exhibits 2 and 3.

8   **XI.     NO ADMISSION OF LIABILITY/FOR SETTLEMENT ONLY**

9          A.      This Agreement reflects the compromise and settlement of disputed claims among

10  the Parties and is for settlement purposes only.  Neither the fact of, or any provision contained in

11  this Agreement or its Exhibits, nor any action taken hereunder, shall constitute, be construed as, or

12  be admissible in evidence as an admission of:  (a) the validity of any claim or allegation by Plaintiffs,

13  or of any defense asserted by Reckitt Benckiser, in the Action or any other action or proceeding; or

14  (b) any wrongdoing, fault, violation of law, or liability of any kind on part of any Party, Defendant,

15  Released Party, or their respective counsel.

16         B.      The terms of this Settlement Agreement are not, and should not be construed as, an

17  admission of liability or wrongdoing on the part of Reckitt Benckiser.

18  **XII.    TERMINATION OF THIS SETTLEMENT AGREEMENT**

19         A.      Any Party may terminate this Settlement Agreement by providing written notice to

20  the other Parties within ten (10) days of any of the following events:

21             1.      The Court does not enter a Preliminary Approval Order that conforms in

22  material respects to Exhibit 1; or

23             2.      The Court does not enter a Final Judgment and Order Approving Settlement

24  conforming in material respects to Exhibits 2 and 3, or if entered, such Final Judgment and Order

25  Approving Settlement is reversed, vacated, or modified in any material respect by another court.

26         B.      In the event that this Settlement Agreement terminates for any reason, all Parties

27  shall be restored to their respective positions as of the date of execution of the Settlement

28  Agreement. In no event will Defendant be entitled to recover any funds spent for Notice and Claim

Administration Expenses prior to termination of this Settlement Agreement.

## XIII.   ADDITIONAL PROVISIONS

A.      Entire Settlement Agreement: The Settlement Agreement, including all Exhibits, shall constitute the entire Settlement Agreement among the Parties with regard to the Action and shall supersede any previous settlement agreements, terms sheets, representations, communications and understandings among the Parties with respect to the subject matter of the Settlement Agreement.

B.      Execution in Counterparts: The Settlement Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent by email shall be treated as original signatures and shall be binding.

C.      Notices: Whenever this Settlement Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and email to:

1.      If to Plaintiffs or Class Counsel:

> Timothy G. Blood
> BLOOD HURST & O'REARDON, LLP
> 501 W. Broadway, Suite 1490
> San Diego, California 92101
> Tel: 619-338-1100
> tblood@bholaw.com

2.      If to Defendant or Defendant's Counsel:

> David T. Biderman
> PERKINS COIE LLP
> 1888 Century Park East, Suite 1700
> Los Angeles, California 90067
> Tel: 310-788-9900
> dbiderman@perkinscoie.com

D.      Good Faith: The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Settlement Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

BLOOD HURST & O' REARDON, LLP

00175004

E.      Publicity: To the extent Defendant or Plaintiffs make any public statements regarding the settlement of this Action, any such statements shall be consistent with the Court-approved documents that comprise this Settlement Agreement or otherwise agreed on by the Parties in writing in advance.

F.      Binding on Successors: The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and/or assigns of the Released Parties.

G.      Arms-Length Negotiations: The determination of the terms and conditions contained herein and the drafting of the provisions of this Settlement Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel. This Settlement Agreement shall not be construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Settlement Agreement and the Parties agree that the drafting of this Settlement Agreement has been a mutual undertaking.

H.      Waiver: The waiver by one Party of any provision or breach of the Settlement Agreement shall not be deemed a waiver of any other provision or breach of the Settlement Agreement.

I.      Variance: In the event of any variance between the terms of this Settlement Agreement and any of the Exhibits hereto, the terms of this Settlement Agreement shall control and supersede the Exhibit(s).

J.      Taxes: No opinion concerning the tax consequences of the Settlement Agreement to any Class Member is given or will be given by Defendant, Defendant's Counsel, Class Counsel, or Plaintiffs' Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Settlement Agreement as to any Class Member. Each Class Member is responsible for his/her tax reporting and other obligations respecting the Settlement Agreement, if any.

K.      Modification in Writing: The Settlement Agreement may not be changed, modified, or amended except in a writing signed by one of Class Counsel and one of Reckitt Benckiser's

BLOOD HURST & O' REARDON, LLP

1   Counsel and, if required, approved by the Court. The Parties contemplate that the Exhibits to the

2   Settlement Agreement may be modified by subsequent agreement of Defendant and Class Counsel

3   so long as the modifications do not alter the substantive terms of the Agreement or reduce the rights

4   and benefits of Class Members.

5       L.      Retain Jurisdiction: The Court shall retain jurisdiction with respect to the

6   implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto

7   submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement

8   Agreement embodied in this Settlement Agreement.

9       M.      Choice of Law: This Settlement Agreement is governed by, and shall be construed

10  and enforced in accordance with, California law.

11      N.      Computation of Time:  All deadlines and time periods prescribed in this Settlement

12  Agreement shall be calculated pursuant to Fed. R. Civ. P. 6.

13      IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be

14  executed as of the last date set forth below.

15  Dated: March 2, 2021                    BLOOD HURST & O'REARDON, LLP
                                            TIMOTHY G. BLOOD (149343)
16                                          THOMAS J. O'REARDON II (247952)

17
                                            By:
18                                                  TIMOTHY G. BLOOD

19                                          501 West Broadway, Suite 1490
                                            San Diego, CA  92101
20                                          Tel: 619/338-1100
                                            619/338-1101 (fax)
21                                          tblood@bholaw.com
                                            toreardon@bholaw.com
22
                                            *Class Counsel*
23
                                            ALTAIR LAW
24                                          CRAIG M. PETERS (184018)
                                            465 California Street, 5th Floor
25                                          San Francisco, CA  94104-3313
                                            Tel: 415/988-9828
26                                          415/988-9815 (fax)
                                            c.peters@altair.us
27
                                            *Attorneys for Plaintiffs*
28

28                              Case No. 3:17-cv-03529-VC

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: March 2, 2021

PERKINS COIE LLP
DAVID T. BIDERMAN
JASMINE WETHERELL

By:

DAVID T. BIDERMAN

1888 Century Park East, Suite 1700
Los Angeles CA 90067
505 Howard Street, Suite 1000
San Francisco, CA 94105
Tel: 310/312-4000
Fax: 310/312-4224
dbiderman@perkinscoie.com
jwetherell@perkinscoie.com

*Attorneys for Defendant Reckitt Benckiser LLC*

STIPULATION OF SETTLEMENT

00175004

**ECF CERTIFICATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: March 2, 2021                    BLOOD HURST & O'REARDON, LLP

By:        *s/ Timothy G. Blood*
                TIMOTHY G. BLOOD

00175004

BLOOD HURST & O' REARDON, LLP

# Exhibit 1

1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9       **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

10    GORDON NOBORU YAMAGATA and            Case No. 3:17-cv-03529-VC
      STAMATIS F. PELARDIS, individually and
11    on behalf of all others similarly situated,   **[PROPOSED] ORDER GRANTING
                                                     PRELIMINARY APPROVAL OF CLASS
12              Plaintiffs,                          ACTION SETTLEMENT**

13          v.                                       **CLASS ACTION**

14    RECKITT BENCKISER LLC,

15              Defendant.                           District Judge Vince Chhabria
                                                     Courtroom 4, 17th Floor
16
                                                     **JURY TRIAL DEMANDED**
17

18

19

20

21

22

23

24

25

26

27

28

1    WHEREAS, this matter has come before the Court pursuant to Plaintiffs' Motion for

2  Preliminary Approval of Class Action Settlement (the "Motion");

3    WHEREAS, the Court finds that it has jurisdiction over the action and each of the parties

4  for purposes of settlement and asserts jurisdiction over the Class Members for purposes of

5  effectuating this Settlement and releasing their claims[1]; and

6    WHEREAS, this Court has considered all submissions related to the Motion and is otherwise

7  fully advised in the premises,

8    IT IS HEREBY ORDERED AS FOLLOWS:

9  **I.    PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

10    1.    The terms of the Settlement Agreement dated March 2, 2021, including all exhibits

11  thereto (the "Settlement Agreement"), are preliminarily approved as fair, reasonable and adequate,

12  are sufficient to warrant sending notice to the Settlement Class, and are subject to further

13  consideration at the Final Approval Hearing referenced below. This Order incorporates the

14  Settlement Agreement, and its exhibits and related documents. Unless otherwise provided herein,

15  the terms defined in the Settlement Agreement shall have the same meanings in this Order.

16    2.    The Settlement Agreement was entered into after extensive arm's length negotiations

17  by experienced counsel and with the assistance and oversight of several experienced mediators. The

18  Court preliminarily finds that this Settlement complies with the Northern District of California's

19  Procedural Guidance for Class Action Settlements and this Court's standard for preliminary

20  approval of class action settlements. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035-37 (N.D.

21  Cal. 2016). Further, the Court finds that the Settlement embodied in the Settlement Agreement is

22  sufficiently within the range of reasonableness so that notice of the Settlement should be given as

23  provided in the Settlement Agreement and this Order. In making this determination, the Court has

24  considered the current posture of this litigation and the risks and benefits to the Parties involved in

25  both settlement of these claims and continuation of the litigation.

---

[1]    *See In re Hyundai & Kia Fuel Economy Litigation*, 926 F.3d 539 (9th Cir. 2019) (en banc).

00174501

## II.    THE CLASS, CLASS REPRESENTATIVES AND CLASS COUNSEL

3.    The Court certifies the following Settlement Class for settlement purposes only (the "Settlement Class"):

> All persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to the date of the Preliminary Approval Order.

> Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class.

4.    The Court finds, for settlement purposes only and conditioned upon the entry of this Order and the Final Judgment and Order Approving Settlement, the terms of the Settlement Agreement, and the occurrence of the Effective Date, that the Settlement Class meets all the applicable requirements of Fed. R. Civ. P. 23(a) and (b)(3), and hereby provisionally certifies the Settlement Class for settlement purposes only. The Court finds, in the specific context of this Settlement Agreement, that: (a) the number of Class Members is so numerous that their joinder in one lawsuit would be impractical; (b) there are some questions of law or fact common to the Settlement Class; (c) the claims of the Class Representatives are typical of the claims of the Class Members they seek to represent; (d) the Class Representatives have fairly and adequately represented the interests of the Settlement Class and the Class Representatives have retained experienced counsel to represent her and the Settlement Class, whom the Court finds have satisfied the requirements of Fed. R. Civ. P. 23(a)(4) and 23(g); (e) the questions of law and fact common to the Settlement Class predominate over any questions affecting any individual Class Member; and (f) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy through settlement.

5.    The Court designates Plaintiffs Gordon Noboru Yamagata, Stamatis F. Pelardis,

1   Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita

2   Steele, and Maxine Tishman as Class Representatives.

3          6.      The Court further finds that the following counsel fairly and adequately represented,

4   and continue to so represent, the interests of the Settlement Class in all regards, including for

5   settlement purposes and hereby appoints them as counsel for the Settlement Class pursuant to Fed.

6   R. Civ. P. 23(g):

7                          Timothy G. Blood
                           Thomas J. O'Reardon II
8                          Blood Hurst and O'Reardon, LLP
                           501 West Broadway, Suite 1490
9                          San Diego, CA 92101

10         7.      If the Settlement Agreement is not finally approved by the Court, or for any reason

11  the Final Judgment and Order Approving Settlement is not entered as contemplated in the Settlement

12  Agreement, or the Settlement Agreement is terminated pursuant to its terms for any reason or the

13  Effective Date does not occur for any reason, then:

14                 (a)     All orders and findings entered in connection with the Settlement Agreement

15  shall become null and void and have no force or effect whatsoever, shall not be used or referred to

16  for any purposes whatsoever, and shall not be admissible or discoverable in this or any other

17  proceeding;

18                 (b)     The provisional certification of the Settlement Class pursuant to this Order

19  shall be vacated automatically and the Action shall proceed as though the Settlement Class had never

20  been certified;

21                 (c)     Nothing contained in this Order is to be construed as a presumption,

22  concession or admission by or against Defendant or Class Representatives of any default, liability

23  or wrongdoing as to any facts or claims alleged or asserted in the Action;

24                 (d)     Nothing in this Order pertaining to the Settlement Agreement shall be used

25  as evidence in any further proceeding in the Action; and

26                 (e)     All of the Court's prior Orders having nothing whatsoever to do with class

27  certification or the Settlement Agreement shall, subject to this Order, remain in force and effect.

28

### III.    NOTICE TO CLASS MEMBERS

8.    The Court has considered the proposed Class Notice in the Settlement Agreement and finds that the forms of Class Notice and methodology for its publication and dissemination as described in the Settlement Agreement and in the Declaration of the Settlement Administrator: (a) meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice; and (c) satisfies the Constitutional requirements regarding notice. In addition, the forms of Class Notice: (a) apprise Class Members of the terms of the proposed Settlement and their rights and deadlines under the Settlement; (b) are written in simple terminology; (c) are readily understandable by Class Members; and (d) comply with the Federal Judicial Center's illustrative class action notices. The Court approves, as to form and content, each of the forms of Class Notice (Exhibits 5-9, the Long-form Class Notice, Email Notice, Amazon Email Notice, Postcard Notice and Internet Banner Advertisements) and the methodology for its publication and dissemination as described in the Settlement Agreement and in the Declaration of the Settlement Administrator in all respects, and it hereby orders that notice be commenced within forty-five (45) days of this Order.

9.    The Court further approves the establishment of an internet website for the Settlement. This Settlement Website (www.MoveFreeAdvancedSettlement.com) shall include documents relating to the Settlement Agreement, orders of the Court relating to the Settlement Agreement and such other information as Class Counsel and Defendant's Counsel mutually agree would be beneficial to potential Class Members. The Notice and Claim Administration Expenses are to be paid in accordance with the Settlement Agreement. The Parties are hereby authorized to establish the means necessary to implement the Class Notice and other terms of the Settlement Agreement.

10.    Defendant shall provide any Class Member contact information in its possession, custody, or control to the Settlement Administrator within five (5) days.

11.    The Court is aware that Class Counsel has served subpoenas on Costco Wholesale Corporation, Walmart Inc., Walgreen Co., Rite Aid Corporation, CVS Pharmacy, Inc., BJ's Wholesale Club, Inc. and Amazon.com, Inc. (the "Subpoenaed Retailers"), for the names, email

addresses, mailing addresses, and telephone numbers of their Class Member customers who purchased Move Free Advanced at any time during the class period. As described in the Settlement Agreement, this list will be used by the Settlement Administrator for the sole purpose of providing Class Notice directly to such Class Member customers. To make sure the process moves expeditiously and Class Notice is provided sufficiently in advance of the Final Approval Hearing and the deadlines set forth in this Order, the Court orders the Subpoenaed Retailers to provide any of the requested names, addresses, and telephone numbers responsive to the subpoenas within fourteen (14) days of this Order. This is consistent with subpoena compliance times that are routinely approved by federal courts. *See Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 1:17-cv-01056-DAD-BAM, 2017 U.S. Dist. LEXIS 178006, at * (E.D. Cal. Oct. 26, 2017) (14 days to respond was reasonable); *Bonzai v. Shinseki*, No. 2:11-CV-00007-EFB, 2014 U.S. Dist. LEXIS 77619, at *11-13 (E.D. Cal. June 4, 2014) (same). Further, the Court orders that (a) the Subpoenaed Retailers shall provide Class Counsel or the Settlement Administrator the requested names, addresses, and telephone numbers, notwithstanding that the subpoenas seek documents and information to which non-party customers (e.g. the potential Class Members) may have a legitimate expectation and/or right of privacy pursuant to federal and state constitutions, statutes, or case law; (b) the names, addresses, and telephone numbers produced to Class Counsel by the subpoenaed retailers shall be used only for the purposes of notifying Class Members of this Settlement, and shall not be disclosed to any other person or entity other than Class Counsel, Defendant's Counsel, the Settlement Administrator, and the Court; and (c) such customer contact information shall be destroyed within seven (7) days after the Effective Date as defined in the Settlement Agreement.

12.     The Court notes that any Subpoenaed Retailers should have an opportunity to raise specific objections to any subpoenas. Accordingly, to the extent that any Subpoenaed Retailer has any objections to the subpoenas or the coverage of the previously entered protective order, (Docs. No. 30 and 34), or the additional protections set forth in Paragraph 11 above, such objections shall be made by motion to this Court within nine (9) days of the entry of this Order. Class Counsel is instructed to provide a copy of this Order to counsel for the Subpoenaed Retailers within two (2) days of the entry of this Order. The Court is mindful that this is a modification of Fed. R. Civ. P.

1    45(d)(2)(B), which otherwise only requires that written objections (as opposed to a formal motion)

2    be made within the earlier of fourteen (14) days or the time for compliance with the subpoena.

3          13.    Notwithstanding Paragraphs 11-12 above, the Court also permits Amazon, Inc., a

4    third-party retailer who received a subpoena from Class Counsel, to send the approved class notice

5    substantially in the form of Exhibit 7 to the Settlement Agreement to the email addresses associated

6    with Amazon customers that Amazon's records indicate purchased Move Free Advanced during the

7    class period. Amazon shall send the email notice within thirty (30) days of this Order. Within seven

8    (7) days after sending the email notice, Amazon shall provide a declaration to Class Counsel and

9    Defendant's Counsel indicating compliance with this Order and setting forth the total number of

10   Class Members to whom it sent email notice, and the total number of those emails that were

11   delivered successfully as reported by Amazon's email server.

12         14.    The Court hereby appoints Epiq Class Action and Claims Solutions to be the

13   Settlement Administrator. Responsibilities of the Settlement Administrator are found in the

14   Settlement Agreement.

15   **IV.    REQUEST FOR EXCLUSION FROM THE SETTLEMENT CLASS**

16         15.    Class Members who wish to be excluded from the Settlement Class must mail a

17   written request for exclusion, using either Exhibit 11 to the Settlement Agreement, which shall be

18   available on the Settlement Website, or with a letter mailed to the Settlement Administrator

19   postmarked no later than fourteen (14) days before the date first set for the Final Approval Hearing.

20   A request for exclusion may also be submitted online at the Settlement Website. Any request for

21   exclusion must be signed by the potential Class Member and contain the following information: the

22   name, address, and telephone number of the Class Member; basis upon which the person claims to

23   be a Class Member; the Class Member's signature and date of signature; and a statement that the

24   Class Member wants to be excluded.

25         16.    Potential Class Members who timely and validly exclude themselves from the

26   Settlement Class shall not be bound by the Settlement Agreement, the settlement, or the Final

27   Judgment and Order Approving Settlement. If a potential Class Member files a request for

28   exclusion, he/she/it may not assert an objection to the Settlement Agreement. Not later than five (5)

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL

1   days after the Opt-Out Deadline, the Settlement Administrator shall provide Class Counsel and

2   Defendant's Counsel with a final list of timely Requests for Exclusion. Defendant's Counsel shall

3   file this list with the Court prior to the Final Approval Hearing.

4       17.    Any potential Class Member that does not properly and timely exclude

5   himself/herself/itself from the Settlement Class shall remain a Class Member and shall be bound by

6   all the terms and provisions of the Settlement Agreement and the settlement and the Final Judgment

7   and Order Approving Settlement, whether or not such Class Member objected to the Settlement

8   Agreement or submits a claim form or otherwise avails himself/herself/itself of the benefits available

9   in the Settlement Agreement.

10  **V.    OBJECTIONS**

11      18.    Any Class Member who has not requested exclusion and who wishes to object to the

12  fairness, reasonableness, or adequacy of the Settlement Agreement, or to the requested award of

13  attorneys' fees, costs, and expenses, or the requested service awards to the Class Representatives,

14  must submit a written statement of objections to the Court either by mailing or by filing it at any

15  location of the United States District Court for the Northern District of California. The written

16  objection must be filed or mailed and postmarked no later than fourteen (14) days before the date

17  first set for the Final Approval Hearing. For mailing objections, the Court's address is as follows:

18      Class Action Clerk
        United States District Court,
19      Northern District of California
        450 Golden Gate Avenue
20      San Francisco, CA 94201-3489

21      19.    To be considered by the Court, any objection must be in writing and include the

22  following information: (a) a heading which refers to the case name and number (*Yamagata v. Reckitt*

23  *Benckiser, LLC*, Case Number 3:17-cv-03529-VC); (b) the objector's full name, telephone number,

24  and address (the objector's actual residential address must be included); (c) if represented by

25  counsel, the full name, telephone number, and address of all counsel, and whether counsel will

26  appear at the Final Approval Hearing; (d) all of the reasons for the objection; (e) an explanation of

27  the basis upon which the person claims to be a Class Member; and (f) the objector's dated,

28  handwritten signature (an electronic signature or attorney's signature are not sufficient). Any

1  documents supporting the objection must also be attached to the objection. If any testimony is to be
2  given in support of the objection, the names of all persons who will testify must be set forth in the
3  objection.

4        20.     The Court will require substantial compliance with the requirements above. If the
5  objector does not submit a written objection in accordance with the deadline and procedure set forth
6  above, the objector will waive any right to be heard at the Final Approval Hearing. However, the
7  Court may excuse the objector's failure to file a written objection upon a showing of good cause,
8  which, if granted, would permit the objector to still appear at the Final Approval Hearing and object
9  to the Settlement.

10  **VI.    FINAL APPROVAL HEARING**

11        21.     The Final Approval Hearing will be held on [120 days after entry of the Preliminary
12  Approval Order, or as soon thereafter as the Court's schedule permits] at _____ Pacific Time
13  before this Court, at the United States District Court for the Northern District of California, 450
14  Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 4 – 17th Floor, to consider, *inter*
15  *alia*, the following: (a) whether the Settlement Class should be certified for settlement purposes;
16  (b) whether the settlement and Settlement Agreement should be finally approved as fair, reasonable
17  and adequate; and (c) Class Counsel's application for attorneys' fees, costs and expenses ("Fee
18  Request") and the Class Representative's service awards.

19        22.     No later than thirty-five (35) days prior the Final Approval Hearing, Class Counsel
20  shall file and Defendant may file with the Court any memoranda or other materials in support of
21  final approval of the Settlement Agreement and also no later than forty-four (44) days prior the Final
22  Approval Hearing, Class Counsel shall file any request for attorneys' fees and expenses with the
23  Court. Any reply briefs relating to final approval of the Settlement Agreement or Class Counsel's
24  request for attorneys' fees and expenses or responses to objections to the Settlement Agreement
25  shall be filed no later than seven (7) days prior the Final Approval Hearing.

26        23.     Any Class Member who has not excluded himself/herself/itself from the Settlement
27  Class may appear at the Final Approval Hearing in person or by counsel (at his/her/its own expense)
28  and may be heard, to the extent allowed by the Court, either in support of or in opposition to the

Settlement Agreement and/or the fee request. Any Class Member wanting to be heard at the Final Approval Hearing shall send a letter saying that it is his/her/its "Notice of Intention to Appear in *Yamagata v. Reckitt Benckiser, LLC*." Such letter shall be mailed to the the Clerk of Court and postmarked on or before seven (7) days prior to the date first set for the Final Approval Hearing. In the notice, the Class Member must include his/her/its name, address, and telephone number, and the name, address, and telephone number of counsel, if any, that will appear. For mailing notices of intent to appear, the Court's address is as follows:

> Class Action Clerk
> United States District Court,
> Northern District of California
> 450 Golden Gate Avenue
> San Francisco, CA 94201-3489

24. If you want to speak at the Final Approval Hearing without having followed these procedures, you may do so if you demonstrate good cause to the Court.

25. The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the Class Members other than that which may be posted at the Court, on the Court's website, and/or the Settlement Website at www.MoveFreeAdvancedSettlement.com.

## VII.   OTHER PROVISIONS

26. The Parties are authorized to take all necessary and appropriate steps to establish the means necessary to implement the Settlement Agreement.

27. The deadlines set forth in this Order, including, but not limited to, adjourning the Final Approval Hearing, may be extended by Order of the Court, for good cause shown, without further notice to the Class Members – except that notice of any such extensions shall be included on the Settlement Website www.MoveFreeAdvancedSettlement.com. Class Members should check the Settlement Website regularly for updates and further details regarding extensions of these deadlines.

28. Class Counsel and Defendant's Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement Agreement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement, to the form or content of

1    the Class Notice or to any other exhibits that the parties jointly agree are reasonable or necessary.

2         29.     This Court shall maintain continuing jurisdiction over these settlement proceedings

3    to assure the effectuation thereof for the benefit of the Settlement Class.

4         **IT IS SO ORDERED.**

5

6

7                               HONORABLE VINCE CHHABRIA
                                   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00174501

[PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL

# Exhibit 2

1

2

3

4

5

6

7

8                            **UNITED STATES DISTRICT COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

10   GORDON NOBORU YAMAGATA and            Case No. 3:17-cv-03529-VC
     STAMATIS F. PELARDIS, individually and
11   on behalf of all others similarly situated,   **[PROPOSED] ORDER GRANTING FINAL**
                                                    **APPROVAL OF CLASS ACTION**
12              Plaintiffs,                         **SETTLEMENT**

13          v.
                                                    **CLASS ACTION**
14   RECKITT BENCKISER LLC,

15              Defendant.                          District Judge Vince Chhabria
                                                    Courtroom 4, 17th Floor
16
                                                    **JURY TRIAL DEMANDED**
17

18

19

20

21

22

23

24

25

26

27

28

                                                    Case No. 3:17-cv-03529-VC

                      [PROPOSED] ORDER GRANTING FINAL APPROVAL

This matter came on for hearing on _____, __, 2021, at ___. The Court has considered the Settlement Agreement filed on March 2, 2021 (the "Settlement Agreement").  An opportunity to be heard having been given to all other persons desiring to be heard as provided in the Notice and having considered all of the submissions and arguments, and good cause appearing therefore;

IT IS HEREBY ORDERED AS FOLLOWS:

1.      This Final Order incorporates herein and makes a part hereof the Settlement Agreement, including the Exhibits thereto, and incorporates by reference the definitions in the Settlement Agreement, and all terms used herein shall have the same meanings as set forth in the Settlement Agreement unless set forth differently herein.

2.      The Court has jurisdiction over the subject matter of this action, and all Parties to the action for purpose of settlement, including all Settlement Class Members.

3.      Pursuant to Federal Rule of Civil Procedure 23, the Court certifies the following Settlement Class for settlement purposes, only:

> All persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to [the date of the Preliminary Approval Order].

> Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class.

4.      Pursuant to Federal Rule of Civil Procedure 23(a), the Court finds Plaintiffs Gordon Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman are members of the Settlement Class, their claims are typical of the Settlement Class, and they fairly and adequately protected the interests of the Settlement Class throughout their involvement in this action. Accordingly, the Court hereby appoints Gordon Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti,

00174622

1    Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman as Class

2    Representatives for the Settlement Class.

3        5.    The Court finds that the Settlement Class meets all requirements of Federal Rules of

4    Civil Procedure 23(a) and (b)(3) for certification of the claims alleged in the First Amended Class

5    Action Complaint, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the

6    class representative and Class Counsel; (e) predominance of common questions of fact and law

7    among the Settlement Class; and (f) superiority.

8        6.    Having considered the factors set forth in Federal Rule of Civil Procedure 23(g)(1),

9    the Court makes final its appointment of Timothy G. Blood and Thomas J. O'Reardon II of Blood

10   Hurst & O'Reardon, LLP as Class Counsel to represent the Class Members.

11       7.    The Court finds that the persons excluded from the Settlement Class because they

12   filed valid requests for exclusion ("Opt-Outs") are identified in Exhibit A to this Order. These Class

13   Members who filed timely, completed Opt-Outs are not bound by this Order and the accompanying

14   Final Judgment or the terms of the Settlement Agreement and may pursue their own individual

15   remedies against Defendant. However, such persons are not entitled to any rights or benefits

16   provided to Class Members by the terms of the Settlement Agreement.

17       8.    The Court directed that Class Notice be given to the Class Members pursuant to the

18   notice program proposed by the Parties and approved by the Court. In accordance with the Court's

19   Preliminary Approval Order and the Court-approved notice program, the Settlement Administrator

20   caused the forms of Class Notice to be disseminated as ordered. The Long-form Class Notice

21   advised Class Members of the terms of the Settlement Agreement; the Final Approval Hearing, and

22   their right to appear at such hearing; their rights to remain in, or opt out of, the Settlement Class and

23   to object to the Settlement Agreement; procedures for exercising such rights; and the binding effect

24   of this Order and accompanying Final Judgment, whether favorable or unfavorable, to the

25   Settlement Class.

26       9.    The distribution of the Class Notice pursuant to the Class Notice Program constituted

27   the best notice practicable under the circumstances, and fully satisfies the requirements of Federal

28   Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. § 1715, and any other

2                                               Case No. 3:17-cv-03529-VC

[PROPOSED] ORDER GRANTING FINAL APPROVAL

1   applicable law.

2         10.      Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing

3   and based upon all submissions of the Parties and interested persons, the Settlement Agreement

4   proposed by the Parties is fair, reasonable, and adequate. In reaching this conclusion, the Court

5   considered the record in its entirety and heard the arguments of counsel for the Parties and all other

6   persons seeking to comment on the proposed Settlement Agreement. In addition, the Court has

7   considered a number of factors, including: (1) the complexity, expense, and likely duration of the

8   litigation; (2) the reaction of the Class Members to the Settlement Agreement; (3) the stage of the

9   proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the

10  risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the

11  ability of Defendant to withstand a greater judgment; and (8) the reasonableness of the relief

12  provided by the Settlement Agreement in light of the best possible recovery.

13        11.      The terms and provisions of the Settlement Agreement are the product of lengthy,

14  arms-length negotiations conducted in good faith and with the assistance of experienced mediators:

15  the Honorable Wayne R. Anderson (Ret.), the Hon. Jacqueline Corley, and Robert A. Meyer, Esq.

16  Approval of the Settlement Agreement will result in substantial savings of time, money and effort

17  to the Court and the Parties, and will further the interests of justice.

18        12.      All Class Members who have not timely and validly opted out are Class Members

19  who are bound by this Order and accompanying Final Judgment and by the terms of the Settlement

20  Agreement.

21        13.      Nothing in the Settlement Agreement, this Order, the accompanying Final Judgment,

22  or the fact of the settlement constitutes any admission by any of the Parties of any liability,

23  wrongdoing or violation of law, damages or lack thereof, or of the validity or invalidity of any claim

24  or defense asserted in the action.

25        14.      The Court has considered the submissions by the Parties and all other relevant

26  factors, including the result achieved and the efforts of Class Counsel and the other Plaintiffs'

27  Counsel in prosecuting the claims on behalf of the Settlement Class. The efforts of Class Counsel

28  and the other Plaintiffs' Counsel have produced the Settlement Agreement entered into in good faith,

and which provides a fair, reasonable, adequate, and certain result for the Settlement Class. Class Counsel have made application for an award of attorneys' fees and reimbursement of expenses in connection with the prosecution of the action on behalf of themselves and the other Plaintiffs' counsel. The fee award requested is 25% of the Common Fund. This amount is fair, reasonable, and adequate under the common fund doctrine, the range of awards ordered in this District and Circuit, the excellent results obtained, the substantial risk borne by Class Counsel and the other Plaintiffs' Counsel in litigating this matter, the degree of skill and quality of work performed, the financial burden imposed by the contingency basis of Class Counsel's and the other Plaintiffs' Counsel's representation of Plaintiffs and the Class, and the additional work required of Class Counsel and the other Plaintiffs' Counsel to bring this Settlement to conclusion. The Court finds the fee award is further supported by a lodestar crosscheck, whereby it finds that the hourly rates of Plaintiffs' Counsel are reasonable, and that the estimated hours expended are reasonable. Accordingly, the Court hereby awards $12,500,000.00 as attorneys' fees to be paid by the Defendant in accordance with the terms of the Settlement Agreement. Class Counsel shall be responsible for distributing and allocating the attorneys' fees and expenses award to Plaintiffs' Counsel in their sole discretion.

15.     Five (5) percent of the attorneys' fees awarded will be held back pending the filing of a Post-Distribution Accounting by Class Counsel. The Post-Distribution Accounting shall be filed within twenty-one (21) days after the distribution of the settlement funds and should explain in detail when cash payments and products were sent to Class Members, the number of members who were sent payments and products, the total amount of payments and products paid out to Class Members, the average and median recovery per Class Members, the largest and smallest amounts of cash payments and product awards paid to Class Members, the number and value of cashed and uncashed checks, the amount distributed to any *cy pres* recipient, any significant or recurring concerns communicated by Class Members to the Settlement Administrator and counsel since final approval, and any other issues in settlement administration since final approval, and how any concerns or issues were resolved. Class Counsel are expected to diligently supervise the administration of the Settlement and remain in close contact with the Settlement Administrator. With the Post-Distribution Accounting, Class Counsel should submit a proposed order releasing the remainder of

1    the fees.

2         16.    Class Counsel have also made application for an award of litigation expenses in

3    connection with the prosecution of the action on behalf of themselves and the other Plaintiffs'

4    counsel. Finding that such expenses were reasonably and necessarily incurred in prosecuting the

5    action on behalf of the Settlement Class, the Court finally approves Class Counsel's request for

6    litigation expenses in the amount of $_____, which is to be paid by the Defendant in accordance

7    with the terms of the Settlement Agreement.

8         17.    Further, the Court approves service awards of $7,500 each for Plaintiffs Gordon

9    Noburo Yamagata, Stamatis F. Pelardis and Maureen Carrigan, and $500 each for Plaintiffs Lori

10   Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman.

11   The Class Representatives participated in the action, acted to protect the Settlement Class, and

12   assisted their counsel. These service awards, which are fair, reasonable, and justified, are to be paid

13   in accordance with the terms of the Settlement Agreement.

14        18.    The Court has considered all relevant factors and hereby approves the Orthopaedic

15   Research Society as the designated *cy pres* recipient of any monies (if any) remaining after the

16   negotiation period of the Cash Payments in accordance with the Agreement.

17        19.    The Court hereby dismisses with prejudice this action, and all Released Claims

18   against each and all Released Parties, and without costs to any of the Parties as against the others.

19        20.    Without affecting the finality of this Order and the Final Judgment, the Court

20   reserves jurisdiction over the implementation, administration, and enforcement of this Order, the

21   Final Judgment and the Settlement Agreement, and all matters ancillary thereto.

22        21.    The Court finding that no reason exists for delay in entering this Order and the Final

23   Judgment pursuant to Federal Rules of Civil Procedure, Rule 54(b), the Clerk is hereby directed to

24   enter the Final Judgment forthwith.

25        22.    The Parties and the Settlement Administrator are hereby directed and authorized to

26   implement and consummate the Settlement according to the terms and provisions of the Settlement

27   Agreement. In addition, the Parties, without further approval of the Court, are authorized to agree

28   to and adopt such amendments and modifications to the Settlement Agreement so long as they are:

1    (i) consistent in all material respects with this Final Order and the Final Judgment; and (ii) do not

2    limit the rights of the Settlement Class.

3        **IT IS SO ORDERED.**

4

5

6                                        HONORABLE VINCE CHHABRIA
                                         UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00174622

# Exhibit 3

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated, | Case No. 3:17-cv-03529-VC |
| | **[PROPOSED] FINAL JUDGMENT** |
| Plaintiffs, | |
| | **CLASS ACTION** |
| v. | |
| RECKITT BENCKISER LLC, | District Judge Vince Chhabria Courtroom 4, 17th Floor |
| Defendant. | **JURY TRIAL DEMANDED** |

1      IT IS HEREBY ADJUDGED AND DECREED PURSUANT TO FEDERAL RULE OF

2  CIVIL PROCEDURE 58 AS FOLLOWS:

3      (1)    On this date, the Court entered an Order Granting Final Approval of Class Action

4  Settlement in the above-captioned action; and

5      (2)    Final judgment is entered in accordance with the Order Granting Final Approval of

6  Class Action Settlement, for the reasons stated therein, and the above-captioned action ise dismissed

7  with prejudice.

8      SO ORDERED this _____ day of _____, 2021.

9

10

11  _____

12                   HONORABLE VINCE CHHABRIA
                 UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Case No. 3:17-cv-03529-VC<br><br>**DECLARATION OF CAMERON R. AZARI, ESQ.  RE CLASS NOTICE PROGRAM**<br><br>**CLASS ACTION**<br><br>District Judge Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Complaint Filed:      June 19, 2017<br>Trial Date:             March 22, 2021 |

<u>**DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM**</u>

I, Cameron R. Azari, declare as follows:

1.      My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice, and I have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.      I am a Senior Vice President with Epiq Class Action & Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"); a firm that specializes in designing, developing, analyzing and implementing large-scale legal notification plans.  Hilsoft is a business unit of Epiq.

4.      Hilsoft has been involved with some of the most complex and significant notice programs in recent history, examples of which are discussed below.  With experience in more than 450 cases, including more than 40 multi-district litigations, Hilsoft has prepared notices which have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world.  Courts have recognized and approved numerous notice plans developed by Hilsoft, and those decisions have invariably withstood appellate and collateral review.

**EXPERIENCE RELEVANT TO THIS CASE**

5.      I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many large and significant cases, including:

a)      *In re Takata Airbag Products Liability Litigation*, 1:15-md-02599-FAM (S.D. Fla), involved $1.49 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford regarding Takata airbags.  The notice plans in those settlements included individual mailed notice to more than 59.6 million potential class members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and behaviorally targeted digital media.  Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

b)      *Hale v. State Farm Mutual Automobile Insurance Company, et al.*, 12-cv-00660 (S.D. Ill.), involved a $250 million settlement with approximately 4.7 million class members.  The extensive notice program provided individual notice via postcard or email to approximately 1.43 million class members and implemented a robust publication program which, combined with individual notice, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each.

c)      *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.), involved a comprehensive notice program that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email.  A targeted internet campaign further enhanced the notice effort.

d)      *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.), involved a $6.05 billion settlement reached by Visa and MasterCard in 2012 with an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website.  For the subsequent superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication units and banner notices, which generated more than 689 million adult impressions.

e)     *In Re: Premera Blue Cross Customer Data Security Breach Litigation*, 3:15-md-2633 (D. Ore.), involved an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices. The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised. The individual notice efforts reached 93.3% of the settlement class. A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts.

f)     *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), involved a dual landmark settlement notice programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill. Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print insertions and reached over 95% of Gulf Coast residents.

g)     *In re: Checking Account Overdraft Litigation*, MDL No. 2036 (S.D. Fla.), for multiple bank settlements from 2010-2020, the notice programs involved direct mail and email to millions of class members, as well as publication in relevant local newspapers. Representative banks included Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M & I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank, and Synovus are among the more than 20 banks.

6.     Courts have recognized our testimony as to which method of notification is appropriate for a given case, and I have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. For example:

1

2

a)      *In re: Lithium Ion Batteries Antitrust Litigation*, 4:13-md-02420, MDL No. 2420 (N.D. Cal.), Judge Yvonne Gonzalez Rogers stated on December 10, 2020:

> *The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order prior to remand, and a second notice campaign thereafter. (See Dkt. No. 2571.) The class received direct and indirect notice through several methods – email notice, mailed notice upon request, an informative settlement website, a telephone support line, and a vigorous online campaign. Digital banner advertisements were targeted specifically to settlement class members, including on Google and Yahoo's ad networks, as well as Facebook and Instagram, with over 396 million impressions delivered. Sponsored search listings were employed on Google, Yahoo and Bing, resulting in 216,477 results, with 1,845 clicks through to the settlement website. An informational released was distributed to 495 media contacts in the consumer electronics industry. The case website has continued to be maintained as a channel for communications with class members. Between February 11, 2020 and April 23, 2020, there were 207,205 unique visitors to the website. In the same period, the toll-free telephone number available to class members received 515 calls.*

b)      *Lusnak v. Bank of America, N.A.*, CV 14-1855 (C.D. Cal.), Judge George H. Wu stated on August 10, 2020:

> *The Court finds that the Notice program for disseminating notice to the Settlement Class, provided for in the Settlement Agreement and previously approved and directed by the Court, has been implemented by the Settlement Administrator and the Parties. The Court finds that such Notice program, including the approved forms of notice: (a) constituted the best notice that is practicable under the circumstances; (b) included direct individual notice to all Settlement Class Members who could be identified through reasonable effort; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the nature of the Lawsuit, the definition of the Settlement Class certified, the class claims and issues, the opportunity to enter an appearance through an attorney if the member so desires; the opportunity, the time, and manner for requesting exclusion from the Settlement Class, and the binding effect of a class judgment; (d) constituted due, adequate and sufficient notice to all persons entitled to notice; and (e) met all applicable requirements of Federal Rule of Civil Procedure 23, due process under the U.S. Constitution, and any other applicable law.*

c)      *Cook, et al. v. South Carolina Public Service Authority, et al.*, 2019-CP-23-6675 (Ct. of Com. Pleas. 13th Jud. Cir. S.C.), Judge Jean Hoefer Toal stated on July 31, 2020:

> *Notice was sent to more than 1.65 million Class members, published in newspapers whose collective circulation covers the entirety of the State, and supplemented with internet banner ads totaling approximately 12.3 million impressions. The notices directed Class members to the settlement website and toll-free line for additional inquiries and further information. After this*

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

*extensive notice campaign, only 78 individuals (0.0047%) have opted-out, and only nine (0.00054%) have objected. The Court finds this response to be overwhelmingly favorable.*

d)      *Waldrup v Countrywide Financial Corporation, et al.*, 2:13-cv-08833 (C.D. Cal.), Judge Christina A. Snyder stated on July 16, 2020:

*The Court finds that mailed and publication notice previously given to Class Members in the Action was the best notice practicable under the circumstances, and satisfies the requirements of due process and FED. R. CIV. P. 23. The Court further finds that, because (a) adequate notice has been provided to all Class Members and (b) all Class Members have been given the opportunity to object to, and/or request exclusion from, the Settlement, it has jurisdiction over all Class Members. The Court further finds that all requirements of statute (including but not limited to 28 U.S.C. § 1715), rule, and state and federal constitutions necessary to effectuate this Settlement have been met and satisfied.*

e)      *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.) Judge Margo K. Brodie stated on December 13, 2019:

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

f)      *In re: Takata Airbag Products Liability Litigation (Ford)*, MDL No. 2599 (S.D. Fla.), Judge Federico A. Moreno stated on December 20, 2018:

*The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. Civ. P. 23 and any other applicable law as well as complying with the Federal Judicial*

5

1      *Center's illustrative class action notices.*

2          g)      *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 3:12-cv-

3    00660-DRH-SCW (S.D. Ill.), Judge Herndon stated on December 16, 2018:

4          *The Class here is estimated to include approximately 4.7 million members.*
5          *Approximately 1.43 million of them received individual postcard or email*
           *notice of the terms of the proposed Settlement, and the rest were notified via a*
           *robust publication program "estimated to reach 78.8% of all U.S. Adults Aged*
6          *35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously*
           *approved the notice plan (Doc. 947), and now, having carefully reviewed the*
7          *declaration of the Notice Administrator (Doc. 966-2), concludes that it was*
           *fully and properly executed, and reflected "the best notice that is practicable*
8          *under the circumstances, including individual notice to all members who can*
           *be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The*
9          *Court further concludes that CAFA notice was properly effectuated to the*
           *attorneys general and insurance commissioners of all 50 states and District of*
10         *Columbia.*

11         h)      *Vergara, et al., v. Uber Technologies, Inc.,* 1:15-CV-06972 (N.D. Ill.), Judge

12   Thomas M. Durkin stated on March 1, 2018:

13         *The Court finds that the Notice Plan set forth in Section IX of the Settlement*
           *Agreement and effectuated pursuant to the Preliminary Approval Order*
14         *constitutes the best notice practicable under the circumstances and shall*
           *constitute due and sufficient notice to the Settlement Classes of the pendency*
15         *of this case, certification of the Settlement Classes for settlement purposes*
           *only, the terms of the Settlement Agreement, and the Final Approval Hearing,*
16         *and satisfies the requirements of the Federal Rules of Civil Procedure, the*
           *United States Constitution, and any other applicable law. Further, the Court*
17         *finds that Defendant has timely satisfied the notice requirements of 28 U.S.C.*
           *Section 1715.*
18

19         i)      *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products*

20   *Liability Litigation* (Bosch Settlement), MDL No. 2672 (N.D. Cal.), Judge Charles R. Breyer

21   stated on May 17, 2017:

22         *The Court is satisfied that the Notice Program was reasonably calculated to*
           *notify Class Members of the proposed Settlement. The Notice "apprise[d]*
23         *interested parties of the pendency of the action and afford[ed] them an*
           *opportunity to present their objections." Mullane v. Cent. Hanover Bank &*
24         *Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports*
           *that the notice delivery rate of 97.04% "exceed[ed] the expected range and*
25         *is indicative of the extensive address updating and re-mailing protocols*
           *used." (Dkt. No. 3188-2 ¶ 24.).*
26

27         j)      *In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,*

28   *on April 20, 2010,* MDL No. 2179 (E.D. La.), Judge Carl J. Barbier stated on January 11, 2013:

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

*The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

7.     Numerous other court opinions and comments regarding my testimony, and the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**. In forming expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time.  Before assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have over 20 years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs.

8.     The facts in this declaration are based on my personal knowledge, as well as information provided to me in by my colleagues in the ordinary course of my business at Hilsoft and Epiq.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

**OVERVIEW**

9.      This declaration will describe the Settlement's Class Notice Program ("Class Notice Program") and notice (the "Notice" or "Notices") proposed here for *Yamagata v. Reckitt Benckiser LLC*, 3:14-cv-03529-VC in the United States District Court for the Northern District of California. We developed the Class Notice Program based on our prior experience and research into the notice issues in this case.  We have analyzed and propose the most effective method practicable of notice for this Settlement Class.

10.     It is my understanding from counsel for the parties that data will be available to provide individual notice to millions of identified Class Members.  The data (in the form of physical addresses and email addresses) will be available for every Class Member who can be identified in the records of (1) eight third-party retailers obtained via subpoena that represent the largest sellers of MFA, and (2) Reckitt Benckiser, including but not limited to Class Members who directly purchased Move Free Advanced from the SchiffVitamins.com website or registered a purchase of Move Free Advanced with Reckitt Benckiser through the Schiff Move Free Rewards program or otherwise.

11.     It is my understanding that Class Counsel has served subpoenas on Costco Wholesale Corporation, Walmart Inc. and Sam's Club, Walgreen Co., Rite Aid Corporation, CVS Pharmacy, Inc., BJ's Wholesale Club, Inc. and Amazon.com, Inc. (the "Subpoenaed Retailers"), for the names, email addresses, mailing addresses, and telephone numbers of their Class Member customers who purchased Move Free Advanced at any time during the Class Period.

12.     Upon receipt of Class Member data from any of the third-party retailers or Reckitt Benckiser, all lists that Epiq receives will be combined and de-duplicated in order to find the most likely current address and email address for each identified Class Member.  The Class Member data will be used to provide individual notice with an Email Notice or a summary Postcard Notice to the Settlement Class.  The individual notice effort will be supplemented by a targeted, media campaign.

13.     In my opinion, the proposed Class Notice Program is designed to reach the greatest practicable number of Class Members through the use of individual notice and targeted media notice.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

1

## CLASS NOTICE PROGRAM METHODOLOGY

2      14.      Federal Rule of Civil Procedure 23 directs that notice must be the best notice

3   practicable under the circumstances must include "individual notice to all members who can be

4   identified through reasonable effort."[1]   The proposed Class Notice Program will satisfy this

5   requirement.

6      15.      Data sources and tools that are commonly employed by experts in this field were

7   used to analyze and develop the media portion of this Class Notice Program.  These include GfK

8   Mediamark Research & Intelligence, LLC ("MRI") data,[2] which provides statistically significant

9   readership and product usage data, Comscore,[3] and Alliance for Audited Media ("AAM")[4]

10   statements, which certify how many readers buy or obtain copies of publications.  These tools,

11   along with demographic breakdowns indicating how many people use each media vehicle, as well

12   as computer software that take the underlying data and factor out the duplication among audiences

13   _____

14   [1] Fed. R. Civ. P. 23(c)(2)(B).
[2] GfK Mediamark Research & Intelligence, LLC ("MRI") is a leading source of publication

15   readership and product usage data for the communications industry. MRI offers comprehensive
demographic, lifestyle, product usage and exposure to all forms of advertising media collected from

16   a single sample. As the leading U.S. supplier of multimedia audience research, MRI provides
information to magazines, televisions, radio, Internet, and other media, leading national advertisers,

17   and over 450 advertising agencies—including 90 of the top 100 in the United States.  MRI's national
syndicated data is widely used by companies as the basis for the majority of the media and marketing

18   plans that are written for advertised brands in the U.S.
[3] Comscore is a global Internet information provider on which leading companies and advertising

19   agencies rely for consumer behavior insight and Internet usage data.  Comscore maintains a
proprietary database of more than two million consumers who have given comScore permission to

20   monitor their browsing and transaction behavior, including online and offline purchasing.
Comscore panelists also participate in survey research that captures and integrates their attitudes

21   and intentions.
[4] Established in 1914 as the Audit Bureau of Circulations ("ABC"), and rebranded as Alliance for

22   Audited Media ("AAM") in 2012, AAM is a non-profit cooperative formed by media, advertisers,
and advertising agencies to audit the paid circulation statements of magazines and newspapers.

23   AAM is the leading third party auditing organization in the U.S. It is the industry's leading, neutral
source for documentation on the actual distribution of newspapers, magazines, and other

24   publications. Widely accepted throughout the industry, it certifies thousands of printed publications
as well as emerging digital editions read via tablet subscriptions. Its publication audits are

25   conducted in accordance with rules established by its Board of Directors. These rules govern not
only how audits are conducted, but also how publishers report their circulation figures. AAM's

26   Board of Directors is comprised of representatives from the publishing and advertising
communities.

27

28

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

of various media vehicles, allow us to determine the net (unduplicated) reach of a particular mailing and media schedule.   We combine the results of this analysis to help determine notice plan sufficiency and effectiveness.

16.   ***Tools and data trusted by the communications industry and courts.***   Virtually all of the nation's largest advertising agency media departments utilize, scrutinize, and rely upon such independent, time-tested data and tools, including net reach and de-duplication analysis methodologies, to guide the billions of dollars of advertising placements that we see today, providing assurance that these figures are not overstated.  These analyses and similar planning tools have become standard analytical tools for evaluations of notice programs and have been regularly accepted by courts.

17.   In fact, advertising and media planning firms around the world have long relied on audience data and techniques: AAM data has been relied on since 1914; 90 to 100% of media directors use reach and frequency planning;[5] all of the leading advertising and communications textbooks cite the need to use reach and frequency planning.[6]  Ninety of the top one hundred media firms use MRI data, Comscore is used by the major holding company agencies worldwide which includes Dentsu Aegis Networking, GroupM, IPG and Publicis, in addition to independent agencies for TV and digital media buying and planning, and at least 25,000 media professionals in 100 different countries use media planning software.

## CLASS NOTICE PROGRAM DETAIL

18.   I have reviewed the proposed Stipulation of Settlement and understand that the

---

[5] See generally Peter B. Turk, Effective Frequency Report: Its Use And Evaluation By Major Agency Media Department Executives, 28 J. ADVERTISING RES. 56 (1988); Peggy J. Kreshel et al., How Leading Advertising Agencies Perceive Effective Reach and Frequency, 14 J.ADVERTISING 32 (1985).

[6] Textbook sources that have identified the need for reach and frequency for years include: JACK S. SISSORS & JIM SURMANEK, ADVERTISING MEDIA PLANNING, 57-72 (2d ed. 1982); KENT M. LANCASTER & HELEN E. KATZ, STRATEGIC MEDIA PLANNING 120-156 (1989); DONALD W. JUGENHEIMER & PETER B. TURK, ADVERTISING MEDIA 123-126 (1980); JACK Z. SISSORS & LINCOLN BUMBA, ADVERTISING MEDIA PLANNING 93 122 (4th ed. 1993); JIM SURMANEK, INTRODUCTION TO ADVERTISING MEDIA: RESEARCH, PLANNING, AND BUYING 106-187 (1993).

Case No. 3:17-cv-03529-VC

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

Settlement Class is defined as:

> [A]ll persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to the date of the Preliminary Approval Order.

> Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class.

19.    Given our experience with similar notice efforts, we expect that the proposed Class Notice Program (individual notice and supplemental media - nationally distributed digital and social media) will reach at least 80% of the Settlement Class.  In my experience, the projected reach of the Class Notice Program is consistent with or exceeds other court-approved notice programs, is the best notice practicable under the circumstances of this case and has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[7]

20.    The Media Plan includes various forms of notice, utilizing, a newspaper publication, internet banner advertising, social media, sponsored search listings, and an informational release.  The combined measureable reach of the overall Class Notice Program (accounting for individual notice and supplemental media - nationally distributed digital and social media) will be at least 80% of adults, aged 45+ in the United States who are vitamin/supplement

---

[7] *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ."); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("To satisfy Rule 23(e)(1), settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably.'  'Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citations omitted); N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval (3) (articulating best practices and procedures for class notice).

11

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

1    users.  "Reach" refers to the estimated percentage of the unduplicated audience exposed to the

2    notice.  The reach will be further enhanced by newspaper notice, internet sponsored search listings,

3    an informational release, and a Settlement Website, which are not included in the estimated reach

4    calculation.

5                                    **CLASS NOTICE PROGRAM**

6                                    ***Email Notice – Direct Mail***

7            21.    Epiq will send an Email Notice to all identified Class Members for whom a

8    facially valid email address is available - excluding Class Members who are Amazon customers

9    that Amazon's records indicate purchased Move Free Advanced during the Class Period.  Under

10   the terms of the Settlement, Amazon will send an email notice (the "Amazon Email Notice")

11   directly to these Class Members.  Industry standard best practices will be followed for the Email

12   Notice efforts.  The Email Notice has been drafted in such a way that the subject line, the sender,

13   and the body of the message are designed to overcome SPAM filters and ensure readership to the

14   fullest extent reasonably practicable. For instance, the Email Notice will use an embedded html

15   text format.   This format will provide easy to read text without graphics, tables, images,

16   attachments, and other elements that would increase the likelihood that the message could be

17   blocked by Internet Service Providers (ISPs) and/or SPAM filters.  The Email Notices will be sent

18   from an IP address known to major email providers as one not used to send bulk "SPAM" or

19   "junk" email blasts.  Each Email Notice will be transmitted with a digital signature to the header

20   and content of the Email Notice, which will allow ISPs to programmatically authenticate that the

21   Email Notices are from our authorized mail servers.  Each Email Notice will also be transmitted

22   with a unique message identifier.  If the receiving email server cannot deliver the message, a

23   "bounce code" will be returned along with the unique message identifier.  For any Email Notice

24   for which a bounce code is received indicating that the message was undeliverable for reasons

25   such as an inactive or disabled account, the recipient's mailbox was full, technical auto-replies,

26   etc., at least two additional attempts will be made to deliver the Notice by email.

27

28

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

22.   The Email Notice will include an embedded link to the Settlement Website.  By clicking the link, recipients will be able to easily file an online claim, access the Long Form Notice, Settlement Agreement and other information about the Settlement.

### *Individual Notice – Direct Mail*

23.   A summary Postcard Notice will be sent to all identified Class Members for whom a facially valid email address is not available, but a physical address is available.  A Postcard Notice will also be sent to all identified Class Members with an undeliverable Email Notice after several attempts.  The Postcard Notice will direct the recipients to the Settlement Website where they can access additional information and easily file a claim.  The Postcard Notice will be sent via the United States Postal Service ("USPS") first class mail.

24.   Prior to mailing, all mailing addresses provided will be checked against the National Change of Address ("NCOA") database maintained by the USPS.[8]  In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses.  This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

25.   Postcard Notices returned as undeliverable will be re-mailed to any new address available through USPS information, for example, to the address provided by the USPS on returned pieces for which the automatic forwarding order has expired, but which is still during the period in which the USPS returns the piece with the address indicated, or to better addresses that may be found using a third-party lookup service.  Upon successfully locating better addresses, Postcard Notices will be promptly re-mailed.

### *Claim Stimulation Notice*

26.   As the Claim filing deadline approaches, a Reminder Email Notice will be sent to

---

[8] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years.  The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

stimulate additional claims as needed.  A Reminder Email Notice will be sent to Class Members with a valid email address who have not already filed a Claim at the time of the claim stimulation notice efforts. It is planned that two rounds of Reminder Email Notices will be sent, with a reasonable period of time in between the two notices to effectively remind Class Members to file a Claim.  The Reminder Email will use concise text (stressing the impending Claim filing deadline) and include links directly to the Claim filing page on the Settlement Website.

### *Media Plan*

### *CLRA Publication Notice*

27.    The Notice Plan includes publishing the Publication Notice in a regional *USA Today* weekday edition as a ¼ page ad unit.  As this matter includes claims under the California Consumers Legal Remedies Act ("CLRA"), the notice provision of Government Code section 6064 applies.  It provides that "[p]ublication of notice pursuant to this section shall be once a week for four successive weeks.  Four publications in a newspaper regularly published once a week or oftener, with at least five days intervening between the respective publication dates not counting such publication dates, are sufficient." Cal. Gov't Code § 6064.  In order to satisfy this notice provision, the Notice Plan includes four (4) insertions spread over four (4) weeks in the San Francisco regional edition of *USA Today*, with a total circulation of 5,584.

### *Targeted Internet Banner Advertising*

28.    Internet advertising has become a standard component in legal notice programs. The internet has proven to be an efficient and cost-effective method to target class members as part of providing notice of class certification and/or a settlement for a class action case.  According to GfK MRI syndicated research, over 84% of adults, aged 45+ in the United States who are vitamin/supplement users are online.

29.    The Class Notice Program includes targeted banner advertising on selected advertising networks, which will be targeted to Class Members based on the customer demographic and advertising strategy Defendant itself used for marketing Move Free Advanced, including contextual targeting relevant to adults aged 45+ who are vitamin and supplement users whose internet behavior demonstrates interests in glucosamine supplements, joint pain, and arthritis

awareness.  The Internet Banner Advertisements will link directly to the Settlement Website, thereby allowing visitors easy access to relevant information and documents. The Internet Banner Advertisements will use language from the Email Notice headline, which will allow users to identify themselves as potential Class Members. As an additional way to draw the interest of Class Members, and to be consistent with FJC recommendations that a picture or graphic may help class members self-identify, the Internet Banner Advertisements will prominently feature high-resolution pictures of the Move Free Advanced packaging.

30.     The Class Notice Program includes Internet Banner Advertisements in various sizes, which will be placed on the advertising networks, *Google Display Network* and *Verizon (Yahoo) Audience Network*.  Combined, these ad networks cover 90% of the United States' population that is online.  To further target individuals who show an interest in vitamins and supplements, including glucosamine in general and Move Free Advanced in particular, Internet Banner Advertisements in various sizes will also be placed directly on the websites for *DoctorOz, Reader's Digest, and WebMD* – media sources used by the Defendant to market Move Free Advanced.  All Internet Banner Advertisements will run on desktop, mobile and tablet devices and will be distributed to the selected targeted audiences nationwide as described below.

31.     Internet Banner Advertisements will also be targeted (remarketed) to people who visit the Settlement Website as well as those individuals whose online behaviors and interests mimicked those who clicked through to the Settlement Website. Targeting the Internet Banner Advertisements to these "lookalike" audiences across the *Google Display Network* is a sophisticated advertising technique that provides an effective and efficient way to distribute class notice and drive settlement awareness.

32.     The Class Notice Program also includes advertising on social media, which will consist of Internet Banner Advertisements on *Facebook* and on *Instagram* in various sizes. *Facebook* is the leading social networking site in the U.S. and combined with *Instagram* covers over 300 million users in the United States.  The *Facebook* and *Instagram* Internet Banner Advertisements will be distributed to a variety of target audiences relevant to Move Free Advanced based on an individual's demonstrated interests and/or likes.

33.     More details regarding the target audiences, distribution, and specific ad sizes of the Internet Banner Advertisements, are included in the following table.

| Network/Property | Target | Distribution | Ad Sizes |
|---|---|---|---|
| DoctorOz / Reader's Digest / WebMD | A18+ | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | A45+ | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | A45+ & Custom Intent: Vitamins, Supplements | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | A45+ & Custom Affinity: Vitamins, Supplements | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | Custom Intent: Joint Pain & Discomfort / Arthritis | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | Custom Affinity: Joint Pain & Discomfort / Arthritis | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | Custom Affinity: Glucosamine | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network | Custom Intent: Glucosamine | National | 728x90, 300x250, 300x600, 970x250 |
| Google Display Network - GeoFencing[9] | Costco Visitors | National | 728x90, 300x250, 300x600, 970x250 |
| Facebook | A45+ | National | Newsfeed & Right Hand Column |
| Facebook | A45+ & Interests: Vitamin Shoppe, Vitamin Center, Vitamin Club, Vitamin World | National | Newsfeed & Right Hand Column |
| Facebook | A45+ & Interests: Affordable Supplements, Supplemental Nutrition | National | Newsfeed & Right Hand Column |
| Facebook | Interest: Arthritis Awareness | National | Newsfeed & Right Hand Column |
| Facebook | Interest: Rheumatoid Arthritis Awareness | National | Newsfeed & Right Hand Column |
| Facebook | Interest: Arthritis Foundation | National | Newsfeed & Right Hand Column |
| Facebook | Interest: The Arthritis Society | National | Newsfeed & Right Hand Column |
| Facebook | Interest: Rheumatoid Arthritis Support | National | Newsfeed & Right Hand Column |
| Instagram | A45+ | National | Newsfeed |
| Instagram | A45+ & Interests: Vitamin Shoppe, Vitamin Center, Vitamin Club, Vitamin World | National | Newsfeed |

[9] A location database of all Costco locations in the U.S. will be utilized to precisely target customers within those locations.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

| | | | |
|---|---|---|---|
| *Instagram* | A45+ & Interests: Affordable Supplements, Supplemental Nutrition | National | Newsfeed |
| *Instagram* | Interest: Arthritis Awareness | National | Newsfeed |
| *Instagram* | Interest: Rheumatoid Arthritis Awareness | National | Newsfeed |
| *Instagram* | Interest: Arthritis Foundation | National | Newsfeed |
| *Instagram* | Interest: The Arthritis Society | National | Newsfeed |
| *Instagram* | Interest: Rheumatoid Arthritis Support | National | Newsfeed |
| *Verizon Media* | A45+ | National | 728x90, 300x250, 300x600, 970x250 |
| *Verizon Media* | A45+ Health Channel | National | 728x90, 300x250, 300x600, 970x250 |

34.     Combined, hundreds of millions of targeted impressions will be generated by the Internet Banner Advertisements, which will run for approximately 40 days nationwide.[10]  Clicking on the Internet Banner Advertisements will link the reader to the Settlement Website, where they can easily obtain detailed information about the case and file a Claim Form.

35.     Throughout the implementation of the Class Notice Program, Hilsoft will continuously monitor the effectiveness of the Class Notice Program to ensure impression goals are met to satisfy a combined reach of at least 80%.

### *Sponsored Search Listings*

36.     The Class Notice Program includes purchasing sponsored search listings to facilitate locating the Settlement Website.  Sponsored search listings will be acquired on the three most highly-visited internet search engines: *Google*, *Yahoo!* and *Bing*.  When search engine visitors search on selected common keyword combinations related to the case, the sponsored search listing will be generally displayed at the top of the page prior to the search results or in the upper right-hand column.  Representative search terms will include word and phrase variations of arthritis pain,

---

[10] The third-party ad management platform, ClickCease will be used to audit the digital Banner Notice ad placements.  This type of platform tracks all Banner Notice ad clicks to provide real-time ad monitoring, fraud traffic analysis, blocks clicks from fraudulent sources, and quarantines dangerous IP addresses.  This helps reduce wasted, fraudulent or otherwise invalid traffic (*e.g.*, ads being seen by 'bots' or non-humans, ads not being viewable, etc.).

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

1    joint pain, Move Free Advanced, glucosamine, and chondroitin. The sponsored search listings will

2    be displayed nationwide.

3                                    *Informational Release*

4          37.    To build additional reach and extend exposures, a party-neutral Informational

5    Release will be issued broadly over PR Newswire to approximately 5,000 general media (print and

6    broadcast) outlets, including local and national newspapers, magazines, national wire services,

7    television and radio broadcast media across the United States as well as approximately 4,500

8    websites, online databases, internet networks and social networking media.  These media sources

9    include numerous websites and blogs covering health, wellness and aging topics such as WebMD,

10   Harvard Public Health Review, Healthy Aging, American Pharmaceutical Review, and VeryWell

11   Health. In addition, the Informational Release in Spanish will be issued to the Hispanic newsline.

12   The Hispanic newsline reaches approximately 7,000 U.S. Hispanic media contacts including online

13   placement of over 100 Hispanic websites nationally.

14         38.    The Informational Release will include the address of the Settlement Website and

15   the toll-free telephone number.  Although there is no guarantee that any news stories will result,

16   the Informational Release will serve a valuable role by providing additional notice exposures

17   beyond that which was provided by the paid media.

18              *Settlement Website, Toll-free Telephone Number, and Postal Mailing Address*

19         39.    On or before the Notice Date, a Settlement Website will be established with the

20   domain name www.MoveFreeAdvancedSettlement.com.  The Settlement Website will feature an

21   easy-to-view link whereby the website's text can be translated into Spanish. The Settlement

22   Website will allow Class Members to obtain detailed information about the case and review key

23   documents, including the Second Amended Complaint, Long Form Notice, Claim Form, Exclusion

24   Request Form, Settlement Agreement, Preliminary Approval Order, Preliminary and Final

25   Approval Memoranda, Motion for Attorneys' Fees and Expenses, answers to frequently asked

26   questions ("FAQs"), and Final Approval Order.  Class Members will also be able to easily file a

27   Claim Form and Request for Exclusion on the Settlement Website.  The website address will be

28   displayed prominently on all Class Notice documents.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

40.     The Settlement Website will be configured to encourage Class Members to easily file a Claim Form online.  Class Members will be presented with the option to click a button to either file a claim for "Free Products" or to file a claim for a "Cash Payment."   Graphics, provided by the Defendant, will visually display the options Class Member have to select Product, should they choose that option.[11]  Those that select a Cash Payment will have the option to select to receive their payment digitally. The option of receiving a digital payment has become more commonplace in class action settlement administration. Beyond meeting the expectations of many Class Members that digital payments should be an option, they have the added benefit of being less expensive to administer (because of no postage or potential for check reissue requests), leaving more of the Common Fund available to distribute to the for Class. Also, digital payments can be made more quickly – and directly to whatever option Class Members may select.

41.     A toll-free telephone number will also be established to allow Class Members to call for additional information, listen to answers to FAQs, and request that a Notice and Claim Form be mailed to them.  The toll-free telephone number will be prominently displayed in the Notice documents as well.  The automated phone system will be available 24 hours per day, 7 days per week.  At appropriate phases of the case, and during normal business hours, callers will also have the option to speak to a service agent.

42.     A post office box for correspondence about the case will also be established and maintained, allowing Class Members to contact the Settlement Administrator by mail with any specific requests or questions.

**PLAIN LANGUAGE NOTICE DESIGN**

43.     The proposed Class Notices are designed to be "noticed" and reviewed by Class Members and are written in plain language so the Class Notices will be understood by Class Members.  The design of the Class Notices follows the principles embodied in the Federal Judicial

---

[11] It is currently contemplated that Epiq will administer the shipping fulfillment of Class Member Product requests.  Based on expected volume estimates, the cost to execute the Product fulfillment is expected to be between $3.9 and $4.2 million – the bulk of which will be postage.  Under the Settlement, this cost will be borne by the Defendant and will not reduce the Common Fund available to the Class.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

Center's illustrative "model" notices posted at www.fjc.gov.  Many courts, and as previously cited, the FJC itself, have approved notices that we have written and designed in a similar fashion.  The proposed Class Notices contain substantial, albeit easy-to-read, summaries of all of the key information about Class Members' rights and options.  Consistent with our normal practice, all notice documents will undergo a final edit prior to actual mailing and publication for grammatical errors and accuracy.

44.     The proposed Class Notices are designed to increase noticeability and comprehension. Once people "notice" the Class Notices, it is critical that they can understand them. As such, the proposed Class Notices, as written, are clearly worded with an emphasis on simple, plain language to encourage readership and comprehension.

45.     The proposed Email Notice and Postcard Notice feature a prominent headline in bold text. These design elements will alert recipients and readers that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

46.     The proposed Long Form Notice, which will be available in English and Spanish, provides substantial information to Class Members.  It begins with a summary page, which provided a concise overview of the important information and a table, which highlights key options available to Class Members.  A table of contents, categorized into logical sections, helps to organize the information, while a question and answer format makes it easy to find answers to common questions by breaking the information into simple headings.

**<u>CONCLUSION</u>**

47.     In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, and by case law pertaining to the recognized notice standards under Rule 23.  This framework directs that the notice plan be optimized to reach the class and, in a settlement notice situation such as this, that the notice or notice plan itself not limit knowledge of legal rights—nor the ability to exercise other options—to class members in any way.  Based on the information that has been provided to me at this point, all of these requirements will be met in this case.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

48.     The Class Notice Program includes individual notice to millions of identified Class Members and supplemental media.  With the address updating protocols that will be employed, we reasonably expect the Class Notice Program (individual notice and supplemental media - nationally distributed digital and social media) will reach at least 80% of the Settlement Class.   The reach will be further enhanced by newspaper notice, internet sponsored search listings, an informational release, and a Settlement Website.  In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.  This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class.  It is reasonable to reach between 70–95%."   Here, we have developed a Class Notice Program that will readily achieve a reach within that standard.

49.     Our notice effort follows the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

A.     "But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

B.     "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) citing *Mullane* at 314.

50.     The Class Notice Program described above provides for the best notice practicable under the circumstances of this case, conforms to all aspects of the Rule 23, and comports with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth.

51.     The Class Notice Program schedule affords sufficient time to provide full and proper notice to Class Members before the exclusion request and objection deadlines.

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

1    I declare under penalty of perjury of the laws of the United States and the State of California

2  that the foregoing is true and correct.  Executed on March 2, 2021, at Beaverton, Oregon.

3

4

5                                                                   _____

6                                                                   Cameron R. Azari

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF CAMERON R. AZARI, ESQ. RE CLASS NOTICE PROGRAM

Attachment 1



Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters.  We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny.  Hilsoft Notifications ("Hilsoft") has been retained by defendants and/or plaintiffs for more than 450 cases, including more than 40 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world.  For more than 25 years, Hilsoft's notice plans have been approved and upheld by courts.  Case examples include:

➢ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, Nissan, and Ford vehicles as part of $1.49 billion in settlements regarding Takata airbags.  The Notice Plans included individual mailed notice to more than 59.6 million potential class members and notice via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and behaviorally targeted digital media.  Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each.  *In re: Takata Airbag Products Liability Litigation (OEMS – BMW, Mazda, Subaru, Toyota, Honda, Nissan and Ford),* MDL No. 2599 (S.D. Fla.).

➢ For a landmark $6.05 billion settlement reached by Visa and MasterCard in 2012, Hilsoft implemented an intensive notice program, which included over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, and language & ethnic targeted publications.  Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a settlement website in eight languages, and acquisition of sponsored search listings to facilitate locating the website.  For the subsequent superseding $5.54 billion settlement reached by Visa and MasterCard in 2019, Hilsoft implemented an extensive notice program, which included over 16.3 million direct mail notices to class members together with over 354 print publication units and banner notices, which generated more than 689 million adult impressions.  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 05-MD-1720, MDL No. 1720 (E.D.N.Y.).

➢ For a $250 million settlement with approximately 4.7 million class members, Hilsoft designed and implemented a notice program with individual notice via postcard or email to approximately 1.43 million class members and a robust publication program, which combined, reached approximately 78.8% of all U.S. adults aged 35+ approximately 2.4 times each.  *Hale v. State Farm Mutual Automobile Insurance Company, et al.,* 12-cv-00660 (S.D. Ill.).

➢ Hilsoft designed and implemented an extensive individual notice program, which included 8.6 million double-postcard notices and 1.4 million email notices.  The notices informed class members of a $32 million settlement for a "security incident" regarding class members' personal information stored in Premera's computer network, which was compromised.  The individual notice efforts reached 93.3% of the settlement class.  A settlement website, an informational release, and a geo-targeted publication notice further enhanced the notice efforts.  *In Re: Premera Blue Cross Customer Data Security Breach Litigation,* 3:15-md-2633 (D. Ore.).

➢ Hilsoft designed a notice program that included extensive data acquisition and mailed notice to inform owners and lessees of specific models of Mercedes-Benz vehicles.  The notice program designed and implemented by Hilsoft reached approximately 96.5% of all class members.  *Callaway v. Mercedes-Benz USA, LLC,* 8:14-cv-02011 (C.D. Cal.).

➢ For a $20 million TCPA settlement that involved Uber, Hilsoft created a notice program, which resulted in notice via mail or email to more than 6.9 million identifiable class members.  The combined measurable effort reached approximately 90.6% of the settlement class with direct mail and email, newspaper and internet banner ads.  *Vergara, et al., v. Uber Technologies, Inc.,* 1:15-CV-06972 (N.D. Ill.).

➢ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 vehicle owners via email. A targeted internet campaign further enhanced the notice effort. ***In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)***, MDL No. 2672 (N.D. Cal.).

➢ An extensive notice effort regarding asbestos personal injury claims and rights as to Debtors' Joint Plan of Reorganization and Disclosure Statement that was designed and implemented by Hilsoft. The notice program included nationwide consumer print publications, trade and union labor publications, internet banner advertising, an informational release, and a website. ***In re: Kaiser Gypsum Company, Inc., el al.***, 16-31602 (Bankr. W.D. N.C.).

➢ Hilsoft designed and implemented an extensive settlement notice plan for a class period spanning more than 40 years for smokers of light cigarettes. The notice plan delivered a measured reach of approximately 87.8% of Arkansas adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio public service announcements ("PSAs"), sponsored search listings, and a case website further enhanced reach. ***Miner v. Philip Morris USA, Inc.***, 60CV03-4661 (Ark. Cir.).

➢ One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill. Hilsoft designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and internet effort, which reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each. ***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010***, MDL No. 2179 (E.D. La.).

➢ A large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. ***In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Date Notice)***, 14-10979 (Bankr. D. Del.).

➢ BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action case in U.S. history. Hilsoft drafted and opined on all forms of notice. The 2012 dual notice program to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes designed by Hilsoft reached at least 95% Gulf Coast region adults via more than 7,900 television spots, 5,200 radio spots, 5,400 print insertions in newspapers, consumer publications, and trade journals, digital media, and individual notice. ***In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010***, MDL No. 2179 (E.D. La.).

➢ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements from 2010-2020, Hilsoft has developed programs that integrate individual notice and in some cases paid media efforts. Fifth Third Bank, National City Bank, Bank of Oklahoma, Webster Bank, Harris Bank, M&I Bank, PNC Bank, Compass Bank, Commerce Bank, Citizens Bank, Great Western Bank, TD Bank, BancorpSouth, Comerica Bank, Susquehanna Bank, Associated Bank, Capital One, M&T Bank, Iberiabank and Synovus are among the more than 20 banks that have retained Hilsoft. ***In re Checking Account Overdraft Litigation***, MDL No. 2036 (S.D. Fla.).

➢ Hilsoft provided notice for one of the largest data breaches in U.S. history with approximately 130 million credit and debit card numbers stolen. ***In re Heartland Data Security Breach Litigation***, MDL No. 2046 (S.D. Tex.).

➢ For one of the largest and most complex class action case in Canadian history, Hilsoft designed and implemented groundbreaking notice to disparate, remote indigenous people in the multi-billion dollar settlement. ***In re Residential Schools Class Action Litigation***, 00-CV-192059 CPA (Ont. Super. Ct.).

➢ Extensive point of sale notice program of a settlement, which provided payments of up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. ***Vereen v. Lowe's Home Centers***, SU10-CV-2267B (Ga. Super. Ct.).



## LEGAL NOTICING EXPERTS

### *Cameron Azari, Esq., Director of Legal Notice*

Cameron Azari, Esq. has more than 20 years of experience in the design and implementation of legal notice and claims administration programs.  He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes.  Cameron has been responsible for hundreds of legal notice and advertising programs.  During his career, he has been involved in an array of high profile class action matters, including *In re: Takata Airbag Products Liability Litigation, In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, In re: Checking Account Overdraft Litigation,* and *In re Residential Schools Class Action Litigation.*  He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness.  Cameron is an active member of the Oregon State Bar.  He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College.  Cameron can be reached at caza@legalnotice.com.

### *Lauran Schultz, Epiq Managing Director*

Lauran Schultz consults with Hilsoft clients on complex noticing issues.  Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration since 2005.  High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation.  Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio.  Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies.  Lauran can be reached at lschultz@hilsoft.com.

### *Kyle Bingham, Manager of Strategic Communications*

Kyle Bingham has 14 years of experience in the advertising industry. At Hilsoft and Epiq, Kyle is responsible for overseeing the research, planning, and execution of advertising campaigns for legal notice programs including class action, bankruptcy and other legal cases.  Kyle has been involved in the design and implementation of numerous legal notice campaigns, including *In re: Takata Airbag Products Liability Litigation, In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch), In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice), In re: Residential Schools Class Action Litigation, Hale v. State Farm Mutual Automobile Insurance Company,* and *In Re: Checking Account Overdraft Litigation.*  Prior to joining Epiq and Hilsoft, Kyle worked at Wieden+Kennedy for seven years, an industry-leading advertising agency where he planned and purchased print, digital and broadcast media, and presented strategy and media campaigns to clients for multi-million dollar branding campaigns and regional direct response initiatives.  He received his B.A. from Willamette University.  Kyle can be reached at kbingham@epiqglobal.com.

## ARTICLES AND PRESENTATIONS

➤ **Cameron Azari** Speaker, "Consumers and Class Action Notices: An FTC Workshop."  Federal Trade Commission, Washington, DC, October 29, 2019.

➤ **Cameron Azari** Speaker, "The New Outlook for Automotive Class Action Litigation: Coattails, Recalls, and Loss of Value/Diminution Cases."  ACI's Automotive Product Liability Litigation Conference."  American Conference Institute, Chicago, IL, July 18, 2019.

➤ **Cameron Azari** Moderator, "Prepare for the Future of Automotive Class Actions." Bloomberg Next, Webinar-CLE, November 6, 2018.

➤ **Cameron Azari** Speaker, "The Battleground for Class Certification: Plaintiff and Defense Burdens, Commonality Requirements and Ascertainability."  30th National Forum on Consumer Finance Class Actions and Government Enforcement, Chicago, IL, July 17, 2018.



➢ **Cameron Azari** Speaker, "Recent Developments in Class Action Notice and Claims Administration." PLI's Class Action Litigation 2018 Conference, New York, NY, June 21, 2018.

➢ **Cameron Azari** Speaker, "One Class Action or 50? Choice of Law Considerations as Potential Impediment to Nationwide Class Action Settlements." 5th Annual Western Regional CLE Program on Class Actions and Mass Torts. Clyde & Co LLP, San Francisco, CA, June 22, 2018.

➢ **Cameron Azari** Co-Author, *A Practical Guide to Chapter 11 Bankruptcy Publication Notice.* E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "Recent Developments in Consumer Class Action Notice and Claims Administration." Berman DeValerio Litigation Group, San Francisco, CA, June 8, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.

➢ **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

➢ **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

➢ **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

➢ **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

➢ **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.



➢ **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

➢ **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

➢ **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

➢ **Cameron Azari** Speaker, "Planning for a Smooth Settlement."  ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

➢ **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

➢ **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

➢ **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan Litigation Group, Los Angeles, CA, 2005.

➢ **Cameron Azari** Author, "Twice the Notice or No Settlement."  Current Developments – Issue II, August 2003.

➢ **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.

## JUDICIAL COMMENTS

**Judge Nancy J. Rosenstengel,** *First Impressions Salon, Inc. et al. v. National Milk Producers Federation, et al.* (Apr. 27, 2020) 3:13-cv-00454 (S.D. Ill.):

> *The Court finds that the Notice given to the Class Members was completed as approved by this Court and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process. The settlement Notice Plan was modeled on and supplements the previous court-approved plan and, having been completed, constitutes the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice provided Class members due and adequate notice of the Settlement, the Settlement Agreement, the Plan of Distribution, these proceedings, and the rights of Class members to opt-out of the Class and/or object to Final Approval of the Settlement, as well as Plaintiffs' Motion requesting attorney fees, costs, and Class Representative service awards.*

**Judge Harvey Schlesinger,** *In Re: Disposable Contact Lens Antitrust Litigation* (Mar. 4, 2020) 3:15-md-02626 (M.D. Fla.):

> *The Court finds that the dissemination of the Notice: (a) was implemented in accordance with the Preliminary Approval Orders; (b) constitutes the best notice practicable under the circumstances; (c) constitutes notice that was reasonably calculated, under the circumstances, to apprise the Settlement Classes of (i) the pendency of the Action; (ii) the effect of the Settlement Agreements (including the Releases to the provided thereunder); (iii) Class Counsel's possible motion for an award of attorneys' fees and reimbursement of expenses; (iv) the right to object to any aspect of the Settlement Agreements, the Plan of Distribution, and/or*



*Class Counsel's motion for attorneys' fees and reimbursement of expenses; (v) the right to opt out of the Settlement Classes; (vi) the right to appear at the Fairness Hearing; and (vii) the fact that Plaintiffs may receive incentive awards; (d) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the Settlement Agreement and (e) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and the United States Constitution (including the Due Process Clause).*

**Judge Amos L. Mazzant,** *Stone et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* (Mar. 3, 2020) 4:17-cv-00001 (E.D. Tex.):

*The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.*

*In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified Equitable Relief Settlement Class; (iii) the claims and issues of the Equitable Relief Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).*

**Judge Michael H. Simon,** *In Re: Premera Blue Cross Customer Data Security Breach Litigation* (Mar. 2, 2020) 3:15-md-2633 (D. Ore.):

*The Court confirms that the form and content of the Summary Notice, Long Form Notice, Publication Notice, and Claim Form, and the procedure set forth in the Settlement for providing notice of the Settlement to the Class, were in full compliance with the notice requirements of Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e), fully, fairly, accurately, and adequately advised members of the Class of their rights under the Settlement, provided the best notice practicable under the circumstances, fully satisfied the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and afforded Class Members with adequate time and opportunity to file objections to the Settlement and attorney's fee motion, submit Requests for Exclusion, and submit Claim Forms to the Settlement Administrator.*

**Judge Maxine M. Chesney,** *McKinney-Drobnis, et al. v. Massage Envy Franchising* (Mar. 2, 2020) 3:16-CV-6450 (N.D. Cal.):

*The COURT hereby finds that the individual direct CLASS NOTICE given to the CLASS via email or First Class U.S. Mail (i) fairly and accurately described the ACTION and the proposed SETTLEMENT; (ii) provided sufficient information so that the CLASS MEMBERS were able to decide whether to accept the benefits offered by the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT; (iii) adequately described the manner in which CLASS MEMBERS could submit a VOUCHER REQUEST under the SETTLEMENT, exclude themselves from the SETTLEMENT, or object to the SETTLEMENT and/or appear at the FINAL APPROVAL HEARING; and (iv) provided the date, time, and place of the FINAL APPROVAL HEARING. The COURT hereby finds that the CLASS NOTICE was the best notice practicable under the circumstances and complied fully with Federal Rule of Civil Procedure Rule 23, due process, and all other applicable laws.*

**Judge Harry D. Leinenweber,** *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* (Feb. 6, 2020) 1:18-cv-1061 (N.D. Ill.):

*The Court finds that the distribution of the Class Notice, as provided for in the Settlement Agreement, (i) constituted the best practicable notice under the circumstances to Settlement Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of, among other things, the pendency of the Action, the nature and terms of the proposed Settlement, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

*The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and this Final Approval Order (i) constitute the most effective and practicable notice of the Final Approval Order, the relief available to Settlement Class Members pursuant to the Final Approval Order,*



*and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable laws.*

**Judge Robert Scola, Jr.,** *Wilson et al. v. Volkswagen Group of America, Inc., et al.* (Jan. 28, 2020) 17-cv-23033 (S.D. Fla.):

*The Court finds that the Class Notice, in the form approved by the Court, was properly disseminated to the Settlement Class pursuant to the Notice Plan and constituted the best practicable notice under the circumstances. The forms and methods of the Notice Plan approved by the Court met all applicable requirements of the Federal Rules of Civil Procedure, the United States Code, the United States Constitution (including the Due Process Clause), and any other applicable law.*

**Judge Michael Davis,** *Garcia v. Target Corporation* (Jan. 27, 2020) 16-cv-02574 (D. Minn.):

*The Court finds that the Notice Plan set forth in Section 4 of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

**Judge Bruce Howe Hendricks,** *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* (Jan. 9, 2020) MDL No. 2613, 6:15-MN-02613 (D. S.C.):

*The Classes have been notified of the settlement pursuant to the plan approved by the Court. After having reviewed the Declaration of Cameron R. Azari (ECF No. 220-1) and the Supplemental Declaration of Cameron R. Azari (ECF No. 225-1), the Court hereby finds that notice was accomplished in accordance with the Court's directives. The Court further finds that the notice program constituted the best practicable notice to the Settlement Classes under the circumstances and fully satisfies the requirements of due process and Federal Rule 23.*

**Judge Margo K. Brodie,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (Dec. 13, 2019) MDL No. 1720, 05-MD-1720 (E.D. NY.):

*The notice and exclusion procedures provided to the Rule 23(b)(3) Settlement Class, including but not limited to the methods of identifying and notifying members of the Rule 23(b)(3) Settlement Class, were fair, adequate, and sufficient, constituted the best practicable notice under the circumstances, and were reasonably calculated to apprise members of the Rule 23(b)(3) Settlement Class of the Action, the terms of the Superseding Settlement Agreement, and their objection rights, and to apprise members of the Rule 23(b)(3) Settlement Class of their exclusion rights, and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, any other applicable laws or rules of the Court, and due process.*

**Judge Steven Logan,** *Knapper v. Cox Communications, Inc.* (Dec. 13, 2019) 2:17-cv-00913 (D. Ariz.):

*The Court finds that the form and method for notifying the class members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order (Doc. 120). The Court further finds that the notice satisfied due process principles and the requirements of Federal Rule of Civil Procedure 23(c), and the Plaintiff chose the best practicable notice under the circumstances. The Court further finds that the notice was clearly designed to advise the class members of their rights.*

**Judge Manish Shah,** *Prather v. Wells Fargo Bank, N.A.* (Dec. 10, 2019) 1:17-cv-00481 (N.D. Ill.):

*The Court finds that the Notice Plan set forth in Section VIII of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this case, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*



**Judge Liam O'Grady,** *Liggio v. Apple Federal Credit Union* (Dec. 6, 2019) 1:18-cv-01059 (E.D. Vir.):

*The Court finds that the manner and form of notice (the "Notice Plan") as provided for in the this Court's July 2, 2019 Order granting preliminary approval of class settlement, and as set forth in the Parties' Settlement Agreement was provided to Settlement Class Members by the Settlement Administrator. . . The Notice Plan was reasonably calculated to give actual notice to Settlement Class Members of the right to receive benefits from the Settlement, and to be excluded from or object to the Settlement. The Notice Plan met the requirements of Rule 23(c)(2)(B) and due process and constituted the best notice practicable under the circumstances.*

**Judge Brian McDonald,** *Armon et al. v. Washington State University* (Nov. 8, 2019) 17-2-23244-1 (consolidated with 17-2-25052-0) (Sup. Ct. Wash.):

*The Court finds that the Notice Program, as set forth in the Settlement and effectuated pursuant to the Preliminary Approval Order, satisfied CR 23(c)(2), was the best Notice practicable under the circumstances, was reasonably calculated to provide-and did provide-due and sufficient Notice to the Settlement Class of the pendency of the Litigation; certification of the Settlement Class for settlement purposes only; the existence and terms of the Settlement; the identity of Class Counsel and appropriate information about Class Counsel's then-forthcoming application for attorneys' fees and incentive awards to the Class Representatives; appropriate information about how to participate in the Settlement; Settlement Class Members' right to exclude themselves; their right to object to the Settlement and to appear at the Final Approval Hearing, through counsel if they desired; and appropriate instructions as to how to obtain additional information regarding this Litigation and the Settlement. In addition, pursuant to CR 23(c)(2)(B), the Notice properly informed Settlement Class Members that any Settlement Class Member who failed to opt-out would be prohibited from bringing a lawsuit against Defendant based on or related to any of the claims asserted by Plaintiffs, and it satisfied the other requirements of the Civil Rules.*

**Judge Andrew J. Guilford,** *In Re Wells Fargo Collateral Protection Insurance Litigation* (Nov. 4, 2019) 8:17-ml-02797 (C.D. Cal.):

*Epiq Class Action & Claims Solutions, Inc. ("Epiq"), the parties' settlement administrator, was able to deliver the court-approved notice materials to all class members, including 2,254,411 notice packets and 1,019,408 summary notices.*

**Judge Paul L. Maloney,** *Burch v. Whirlpool Corporation* (Oct. 16, 2019) 1:17-cv-00018 (W.D. Mich.):

*[T]he Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and applicable state laws and due process.*

**Judge Jon Tigar,** *McKnight v. Uber Technologies, Inc.* (Aug. 13, 2019) 3:14-cv-05615 (N.D. Cal.):

*The settlement administrator, Epiq Systems, Inc., carried out the notice procedures as outlined in the preliminary approval. ECF No. 162 at 17-18. Notices were mailed to over 22 million class members with a success rate of over 90%. Id. at 17. Epiq also created a website, banner ads, and a toll free number. Id. at 17-18. Epiq estimates that it reached through mail and other formats 94.3% of class members. ECF No. 164 ¶ 28. In light of these actions, and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to class members.*

**Judge Gene E.K. Pratter,** *Tashica Fulton-Green et al. v. Accolade, Inc.* (Sept. 24, 2019) 18-274 (E.D. Penn.):

*The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).*

**Judge Edwin Torres,** *Burrow, et al. v. Forjas Taurus S.A., et al.* (Sept. 6, 2019) 1:16-cv-21606 (S.D. Fla.):

*Because the Parties complied with the agreed-to notice provisions as preliminarily approved by this Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finds that the notice provided in this case satisfied the requirements of due process and of Rule 23(c)(2)(B).*



**Judge Amos L. Mazzant,** *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* (Aug. 30, 2019) 4:19-cv-00248 (E.D. Tex.):

> The Court has reviewed the Notice Plan and its implementation and efficacy, and finds that it constituted the best notice practicable under the circumstances and was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action and their right to object to the proposed settlement or opt out of the Settlement Class in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution and Rules 23(c) and (e) of the Federal Rules of Civil Procedure.

> In addition, Class Notice clearly and concisely stated in plain, easily understood language: (i) the nature of the action; (ii) the definition of the certified 2011 Settlement Class; (iii) the claims and issues of the 2011 Settlement Class; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusions; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Fed. R. Civ. P. 23(c)(3).

**Judge Karon Owen Bowdre,** *In Re: Community Health Systems, Inc. Customer Data Security Breach Litigation* (Aug. 22, 2019) MDL No. 2595 (N.D. Ala.):

> The court finds that the Notice Program: (1) satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process; (2) was the best practicable notice under the circumstances; (3) reasonably apprised Settlement Class members of the pendency of the Action and their right to object to the settlement or opt-out of the Settlement Class; and (4) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice. Approximately 90% of the 6,081,189 individuals identified as Settlement Class members received the Initial Postcard Notice of this Settlement Action.

> The court further finds, pursuant to Fed. R. Civ. P. 23(c)(2)(B), that the Class Notice adequately informed Settlement Class members of their rights with respect to this action.

**Judge Christina A. Snyder,** *Zaklit, et al. v. Nationstar Mortgage LLC, et al.* (Aug. 21, 2019) 5:15-cv-02190 (C.D. Cal.):

> The Class Notice provided to the Settlement Class conforms with the requirements of Fed. Rule Civ. Proc. 23, the California and United States Constitutions, and any other applicable law, and constitutes the best notice practicable under the circumstances, by providing individual notice to all Settlement Class Members who could be identified through reasonable effort, and by providing due and adequate notice of the proceedings and of the matters set forth therein to the other Settlement Class Members. The notice fully satisfied the requirements of Due Process. No Settlement Class Members have objected to the terms of the Settlement.

**Judge Brian M. Cogan,** *Luib v. Henkel Consumer Goods Inc.* (Aug. 19, 2019) 1:17-cv-03021 (E.D.N.Y.):

> The Court finds that the Notice Plan, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide, due and sufficient notice to the Settlement Class regarding the existence and nature of the Action, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and the rights of Settlement Class members to exclude themselves from the Settlement Agreement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

**Judge Yvonne Gonzalez Rogers,** *In Re:  Lithium Ion Batteries Antitrust Litigation* (Aug. 16, 2019) 4:13-MD-02420 (N.D. Cal.):

> The proposed notice plan was undertaken and carried out pursuant to this Court's preliminary approval order. [T]he notice program reached approximately 87 percent of adults who purchased portable computers, power tools, camcorders, or replacement batteries, and these class members were notified an average of 3.5 times each. As a result of Plaintiffs' notice efforts, in total, 1,025,449 class members have submitted claims. That includes 51,961 new claims, and 973,488 claims filed under the prior settlements.



**Judge Gary W.B. Chang,** *Robinson v. First Hawaiian Bank* (Aug. 8, 2019) 17-1-0167-01 (Cir. Ct. of First Cir. Haw.):

> This Court determines that the Notice Program satisfies all of the due process requirements for a class action settlement.

**Judge Karin Crump,** *Hyder, et al. v. Consumers County Mutual Insurance Company* (July 30, 2019) D-1-GN-16-000596 (D. Ct. of Travis County Tex.):

> Due and adequate Notice of the pendency of this Action and of this Settlement has been provided to members of the Settlement Class, and this Court hereby finds that the Notice Plan described in the Preliminary Approval Order and completed by Defendant complied fully with the requirements of due process, the Texas Rules of Civil Procedure, and the requirements of due process under the Texas and United States Constitutions, and any other applicable laws.

**Judge Wendy Bettlestone,** *Underwood v. Kohl's Department Stores, Inc., et al.* (July 24, 2019) 2:15-cv-00730 (E.D. Penn.):

> The Notice, the contents of which were previously approved by the Court, was disseminated in accordance with the procedures required by the Court's Preliminary Approval Order in accordance with applicable law.

**Judge Andrew G. Ceresia, J.S.C.,** *Denier, et al. v. Taconic Biosciences, Inc.* (July 15, 2019) 00255851 (Sup Ct. N.Y.):

> The Court finds that such Notice as therein ordered, constitutes the best possible notice practicable under the circumstances and constitutes valid, due, and sufficient notice to all Settlement Class Members in compliance with the requirements of the CPLR.

**Judge Vince G. Chhabria,** *Parsons v. Kimpton Hotel & Restaurant Group* (July 11, 2019) 3:16-cv-05387 (N.D. Cal.):

> Pursuant to the Preliminary Approval Order, the notice documents were sent to Settlement Class Members by email or by first-class mail, and further notice was achieved via publication in People magazine, internet banner notices, and internet sponsored search listings. The Court finds that the manner and form of notice (the "Notice Program") set forth in the Settlement Agreement was provided to Settlement Class Members. The Court finds that the Notice Program, as implemented, was the best practicable under the circumstances. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, and their rights to opt-out of the Settlement Class and object to the Settlement, Class Counsel's fee request, and the request for Service Award for Plaintiff. The Notice and Notice Program constituted sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

**Judge Daniel J. Buckley,** *Adlouni v. UCLA Health Systems Auxiliary, et al.* (June 28, 2019) BC589243 (Sup. Ct. Cal.):

> The Court finds that the notice to the Settlement Class pursuant to the Preliminary Approval Order was appropriate, adequate, and sufficient, and constituted the best notice practicable under the circumstances to all Persons within the definition of the Settlement Class to apprise interested parties of the pendency of the Action, the nature of the claims, the definition of the Settlement Class, and the opportunity to exclude themselves from the Settlement Class or present objections to the settlement. The notice fully complied with the requirements of due process and all applicable statutes and laws and with the California Rules of Court.

**Judge John C. Hayes III,** *Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.* (June 11, 2019) 2017-CP-25-335 (Ct. of Com. Pleas., S.C.):

> These multiple efforts at notification far exceed the due process requirement that the class representative provide the best practical notice. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140 (1974); Hospitality Mgmt. Assoc., Inc. v. Shell Oil, Inc., 356 S.C. 644, 591 S.E.2d 611 (2004). Following this extensive notice campaign reaching over 1.6 million potential class member accounts, Class counsel have received just two objections to the settlement and only 24 opt outs.



**Judge Stephen K. Bushong,** ***Scharfstein v. BP West Coast Products, LLC*** (June 4, 2019) 1112-17046 (Ore. Cir., County of Multnomah):

> The Court finds that the Notice Plan was effected in accordance with the Preliminary Approval and Notice Order, dated March 26, 2019, was made pursuant to ORCP 32 D, and fully met the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.

**Judge Cynthia Bashant,** ***Lloyd, et al. v. Navy Federal Credit Union*** (May 28, 2019) 17-cv-1280 (S.D. Cal.):

> This Court previously reviewed, and conditionally approved Plaintiffs' class notices subject to certain amendments. The Court affirms once more that notice was adequate.

**Judge Robert W. Gettleman,** ***Cowen v. Lenny & Larry's Inc.*** (May 2, 2019) 1:17-cv-01530 (N.D. Ill.):

> Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the elements specified by the Court in the preliminary approval order.  Adequate notice of the amended settlement and the final approval hearing has also been given.  Such notice informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a means to obtain additional information; was adequate notice under the circumstances; was valid, due, and sufficient notice to all Settlement Class [M]embers; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.

**Judge Edward J. Davila,** ***In re HP Printer Firmware Update Litigation*** (Apr. 25, 2019) 5:16-cv-05820 (N.D. Cal.):

> Due and adequate notice has been given of the Settlement as required by the Preliminary Approval Order. The Court finds that notice of this Settlement was given to Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

**Judge Claudia Wilken,** ***Naiman v. Total Merchant Services, Inc., et al.*** (Apr. 16, 2019) 4:17-cv-03806 (N.D. Cal.):

> The Court also finds that the notice program satisfied the requirements of Federal Rule of Civil Procedure 23 and due process. The notice approved by the Court and disseminated by Epiq constituted the best practicable method for informing the class about the Final Settlement Agreement and relevant aspects of the litigation.

**Judge Paul Gardephe,** ***37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)*** (Mar. 31, 2019) 15-cv-9924 (S.D.N.Y.):

> The Notice given to Class Members complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process and provided due and adequate notice to the Class.

**Judge Alison J. Nathan,** ***Pantelyat v. Bank of America, N.A., et al.*** (Jan. 31, 2019) 16-cv-8964 (S.D.N.Y.):

> The Class Notice provided to the Settlement Class in accordance with the Preliminary Approval Order was the best notice practicable under the circumstances, and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice.  The notice fully satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law and rules.

**Judge Kenneth M. Hoyt,** ***Al's Pals Pet Card, LLC, et al v. Woodforest National Bank, N.A., et al.*** (Jan. 30, 2019) 4:17-cv-3852 (S.D. Tex.):

> [T]he Court finds that the class has been notified of the Settlement pursuant to the plan approved by the Court. The Court further finds that the notice program constituted the best practicable notice to the class under the circumstances and fully satisfies the requirements of due process, including Fed. R. Civ. P. 23(e)(1) and 28 U.S.C. § 1715.



**Judge Robert M. Dow, Jr.,** *In re: Dealer Management Systems Antitrust Litigation* (Jan. 23, 2019) MDL No. 2817 (N.D. Ill.):

> The Court finds that the Settlement Administrator fully complied with the Preliminary Approval Order and that the form and manner of providing notice to the Dealership Class of the proposed Settlement with Reynolds was the best notice practicable under the circumstances, including individual notice to all members of the Dealership Class who could be identified through the exercise of reasonable effort. The Court further finds that the notice program provided due and adequate notice of these proceedings and of the matters set forth therein, including the terms of the Agreement, to all parties entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1715(b), and constitutional due process.

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation (Ford)* (Dec. 20, 2018) MDL No. 2599 (S.D. Fla.):

> The record shows and the Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: .(i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED. R. CIV. P. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.

**Judge Herndon,** *Hale v. State Farm Mutual Automobile Insurance Company, et al.* (Dec. 16, 2018) 3:12-cv-00660 (S.D. Ill.):

> The Class here is estimated to include approximately 4.7 million members. Approximately 1.43 million of them received individual postcard or email notice of the terms of the proposed Settlement, and the rest were notified via a robust publication program "estimated to reach 78.8% of all U.S. Adults Aged 35+ approximately 2.4 times." Doc. 966-2 ¶¶ 26, 41. The Court previously approved the notice plan (Doc. 947), and now, having carefully reviewed the declaration of the Notice Administrator (Doc. 966-2), concludes that it was fully and properly executed, and reflected "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." See Fed. R. Civ. P. 23(c)(2)(B). The Court further concludes that CAFA notice was properly effectuated to the attorneys general and insurance commissioners of all 50 states and District of Columbia.

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (Nov. 13, 2018) 14-cv-7126 (S.D.N.Y.):

> The mailing and distribution of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice efforts described in the Motion for Final Approval, as provided for in the Court's June 26, 2018 Preliminary Approval Order, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.

**Judge William L. Campbell, Jr.,** *Ajose v. Interline Brands, Inc.* (Oct. 23, 2018) 3:14-cv-01707 (M.D. Tenn.):

> The Court finds that the Notice Plan, as approved by the Preliminary Approval Order: (i) satisfied the requirements of Rule 23(c)(3) and due process; (ii) was reasonable and the best practicable notice under the circumstances; (iii) reasonably apprised the Settlement Class of the pendency of the action, the terms of the Agreement, their right to object to the proposed settlement or opt out of the Settlement Class, the right to appear at the Final Fairness Hearing, and the Claims Process; and (iv) was reasonable and constituted due, adequate, and sufficient notice to all those entitled to receive notice.



**Judge Joseph C. Spero,** ***Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN*** (Oct. 15, 2018) 3:16-cv-05486 (N.D. Cal.):

> [T]the Court finds that notice to the class of the settlement complied with Rule 23(c)(3) and (e) and due process. Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B)…The notice program included notice sent by first class mail to 1,750,564 class members and reached approximately 95.2% of the class.

**Judge Marcia G. Cooke,** ***Dipuglia v. US Coachways, Inc.*** (*Sept. 28, 2018)* 1:17-cv-23006 (S.D. Fla):

> The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the Case 1:17-cv-23006-MGC Document 66 Entered on FLSD Docket 09/28/2018 Page 3 of 7 4 proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.

**Judge Beth Labson Freeman,** ***Gergetz v. Telenav, Inc.*** (Sept. 27, 2018) 5:16-cv-04261 (N.D. Cal.):

> The Court finds that the Notice and Notice Plan implemented pursuant to the Settlement Agreement, which consists of individual notice sent via first-class U.S. Mail postcard, notice provided via email, and the posting of relevant Settlement documents on the Settlement Website, has been successfully implemented and was the best notice practicable under the circumstances and: (1) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object to or to exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing; (2) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (3) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Rules of this Court.

**Judge M. James Lorenz,** ***Farrell v. Bank of America, N.A.*** (Aug. 31, 2018) 3:16-cv-00492 (S.D. Cal.):

> The Court therefore finds that the Class Notices given to Settlement Class members adequately informed Settlement Class members of all material elements of the proposed Settlement and constituted valid, due, and sufficient notice to Settlement Class members. The Court further finds that the Notice Program satisfies due process and has been fully implemented.

**Judge Dean D. Pregerson,** ***Falco et al. v. Nissan North America, Inc. et al.*** (July 16, 2018) 2:13-cv-00686 (C.D. Cal.):

> Notice to the Settlement Class as required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order, and such Notice by first-class mail was given in an adequate and sufficient manner, and constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.

**Judge Lynn Adelman,** ***In re: Windsor Wood Clad Window Product Liability Litigation*** (July 16, 2018) MDL No. 16-MD-02688 (E.D. Wis.):

> The Court finds that the Notice Program was appropriately administered, and was the best practicable notice to the Class under the circumstances, satisfying the requirements of Rule 23 and due process. The Notice Program, constitutes due, adequate, and sufficient notice to all persons, entities, and/or organizations entitled to receive notice; fully satisfied the requirements of the Constitution of the United States (including the Due Process Clause), Rule 23 of the Federal Rules of Civil Procedure, and any other applicable law; and is based on the Federal Judicial Center's illustrative class action notices.

**Judge Stephen K. Bushong,** ***Surrett et al. v. Western Culinary Institute, et al.*** (June 18, 2018) 0803-03530 (Ore. Cir. County of Multnomah):

> This Court finds that the distribution of the Notice of Settlement was effected in accordance with the Preliminary Approval/Notice Order, dated February 9, 2018, was made pursuant to ORCP 32 D, and fully met



the requirements of the Oregon Rules of Civil Procedure, due process, the United States Constitution, the Oregon Constitution, and any other applicable law.

**Judge Jesse M. Furman,** *Alaska Electrical Pension Fund, et al. v. Bank of America, N.A., et al.* (June 1, 2018) 14-cv-7126 (S.D.N.Y.):

The mailing of the Notice to all members of the Settlement Class who could be identified through reasonable effort, the publication of the Summary Notice, and the other Notice distribution efforts described in the Motion for Final Approval, as provided for in the Court's October 24, 2017 Order Providing for Notice to the Settlement Class and Preliminarily Approving the Plan of Distribution, satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all Persons entitled to notice.

**Judge Brad Seligman,** *Larson v. John Hancock Life Insurance Company (U.S.A.)* (May 8, 2018) RG16813803 (Cal. Sup. Ct., County of Alameda):

The Court finds that the Class Notice and dissemination of the Class Notice as carried out by the Settlement Administrator complied with the Court's order granting preliminary approval and all applicable requirements of law, including, but not limited to California Rules of Court, rule 3.769(f) and the Constitutional requirements of due process, and constituted the best notice practicable under the circumstances and sufficient notice to all persons entitled to notice of the Settlement.

[T]he dissemination of the Class Notice constituted the best notice practicable because it included mailing individual notice to all Settlement Class Members who are reasonably identifiable using the same method used to inform class members of certification of the class, following a National Change of Address search and run through the LexisNexis Deceased Database.

**Judge Federico A. Moreno,** *Masson v. Tallahassee Dodge Chrysler Jeep, LLC* (May 8, 2018) 17-cv-22967 (S.D. Fla.):

The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Agreement, to all persons entitled to such notice and said notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.

**Chancellor Russell T. Perkins,** *Morton v. GreenBank* (Apr. 18, 2018) 11-135-IV (20th Jud. Dist. Tenn.):

The Notice Program as provided or in the Agreement and the Preliminary Amended Approval Order constituted the best notice practicable under the circumstances, including individual notice to all Settlement Class members who could be identified through reasonable effort. The Notice Plan fully satisfied the requirements of Tennessee Rule of Civil Procedure 23.03, due process and any other applicable law.

**Judge James V. Selna,** *Callaway v. Mercedes-Benz USA, LLC* (Mar. 8, 2018) 8:14-cv-02011 (C.D. Cal.):

The Court finds that the notice given to the Class was the best notice practicable under the circumstances of this case, and that the notice complied with the requirements of Federal Rule of Civil Procedure 23 and due process.

The notice given by the Class Administrator constituted due and sufficient notice to the Settlement Class, and adequately informed members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement and how to object to the Settlement.

The Court has considered and rejected the objection . . . [regarding] the adequacy of the notice plan. The notice given provided ample information regarding the case. Class members also had the ability to seek additional information from the settlement website, from Class Counsel or from the Class Administrator

**Judge Thomas M. Durkin,** *Vergara, et al., v. Uber Technologies, Inc.* (Mar. 1, 2018) 1:15-CV-06972 (N.D. Ill.):

The Court finds that the Notice Plan set forth in Section IX of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Classes of the pendency of this case,



*certification of the Settlement Classes for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law. Further, the Court finds that Defendant has timely satisfied the notice requirements of 28 U.S.C. Section 1715.*

**Judge Federico A. Moreno,** ***In re: Takata Airbag Products Liability Litigation (Honda & Nissan)*** (Feb. 28, 2018) MDL No. 2599 (S.D. Fla.):

*The Court finds that the Class Notice has been given to the Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense) and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), FED R. CIV. R. 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Susan O. Hickey,** ***Larey v. Allstate Property and Casualty Insurance Company*** (Feb. 9, 2018) 4:14-cv-04008 (W.D. Kan.):

*Based on the Court's review of the evidence submitted and argument of counsel, the Court finds and concludes that the Class Notice and Claim Form was mailed to potential Class Members in accordance with the provisions of the Preliminary Approval Order, and together with the Publication Notice, the automated toll-free telephone number, and the settlement website: (i) constituted, under the circumstances, the most effective and practicable notice of the pendency of the Lawsuit, this Stipulation, and the Final Approval Hearing to all Class Members who could be identified through reasonable effort; and (ii) met all requirements of the Federal Rules of Civil Procedure, the requirements of due process under the United States Constitution, and the requirements of any other applicable rules or law.*

**Judge Muriel D. Hughes,** ***Glaske v. Independent Bank Corporation*** (Jan. 11, 2018) 13-009983 (Cir. Ct. Mich.):

*The Court-approved Notice Plan satisfied due process requirements . . . The notice, among other things, was calculated to reach Settlement Class Members because it was sent to their last known email or mail address in the Bank's files.*

**Judge Naomi Reice Buchwald,** ***Orlander v. Staples, Inc.*** (Dec. 13, 2017) 13-CV-0703 (S.D.N.Y.):

*The Notice of Class Action Settlement ("Notice") was given to all Class Members who could be identified with reasonable effort in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. The form and method of notifying the Class of the pendency of the Action as a class action and the terms and conditions of the proposed Settlement met the requirements of Federal Rule of Civil Procedure 23 and the Constitution of the United States (including the Due Process Clause); and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

**Judge Lisa Godbey Wood,** ***T.A.N. v. PNI Digital Media, Inc.*** (Dec. 1, 2017) 2:16-cv-132 (S.D. GA.):

*Notice to the Settlement Class Members required by Rule 23 has been provided as directed by this Court in the Preliminary Approval Order, and such notice constituted the best notice practicable, including, but not limited to, the forms of notice and methods of identifying and providing notice to the Settlement Class Members, and satisfied the requirements of Rule 23 and due process, and all other applicable laws.*

**Judge Robin L. Rosenberg,** ***Gottlieb v. Citgo Petroleum Corporation*** (Nov. 29, 2017) 9:16-cv-81911 (S.D. Fla):

*The Settlement Class Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice and said*



*notice fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

**Judge Donald M. Middlebrooks,** *Mahoney v TT of Pine Ridge, Inc.* (Nov. 20, 2017) 9:17-cv-80029 (S.D. Fla.):

*Based on the Settlement Agreement, Order Granting Preliminary Approval of Class Action Settlement Agreement, and upon the Declaration of Cameron Azari, Esq. (DE 61-1), the Court finds that Class Notice provided to the Settlement Class was the best notice practicable under the circumstances, and that it satisfied the requirements of due process and Federal Rule of Civil Procedure 23(e)(1).*

**Judge Gerald Austin McHugh,** *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* (Nov. 8, 2017) 2:14-cv-04464 (E.D. Penn.):

*Notice has been provided to the Settlement Class of the pendency of this Action, the conditional certification of the Settlement Class for purposes of this Settlement, and the preliminary approval of the Settlement Agreement and the Settlement contemplated thereby. The Court finds that the notice provided was the best notice practicable under the circumstances to all persons entitled to such notice and fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Federico A. Moreno,** *In re: Takata Airbag Products Liability Litigation (BMW, Mazda, Toyota, & Subaru)* (Nov. 1, 2017) MDL No. 2599 (S.D. Fla.):

*[T]he Court finds that the Class Notice has been given to the Class in the manner approved in the Preliminary Approval Order. The Class Notice: (i) is reasonable and constitutes the best practicable notice to Class Members under the circumstances; (ii) constitutes notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action and the terms of the Settlement Agreement, their right to exclude themselves from the Class or to object to all or any part of the Settlement Agreement, their right to appear at the Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the orders and Final Order and Final Judgment in the Action, whether favorable or unfavorable, on all persons and entities who or which do not exclude themselves from the Class; (iii) constitutes due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), Federal Rule of Civil Procedure 23 and any other applicable law as well as complying with the Federal Judicial Center's illustrative class action notices.*

**Judge Charles R. Breyer,** *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (May 17, 2017) MDL No. 2672 (N.D. Cal.):

*The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)*

**Judge Rebecca Brett Nightingale,** *Ratzlaff et al. v. BOKF, NA d/b/a Bank of Oklahoma et al.* (May 15, 2017) No. CJ-2015-00859 (Dist. Ct. Okla.):

*The Court-approved Notice Plan satisfies Oklahoma law because it is "reasonable" (12 O.S. § 2023(E)(I)) and it satisfies due process requirements because it was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15).*

**Judge Joseph F. Bataillon,** *Klug v. Watts Regulator Company* (Apr. 13, 2017) No. 8:15-cv-00061 (D. Neb.):

*The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.*



**Judge Yvonne Gonzalez Rogers,** *Bias v. Wells Fargo & Company, et al.* (Apr. 13, 2017) 4:12-cv-00664 (N.D. Cal.):

*The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.*

*Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.*

*Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).*

**Judge Carlos Murguia,** *Whitton v. Deffenbaugh Industries, Inc., et al* (Dec. 14, 2016) 2:12-cv-02247 (D. Kan.) and *Gary, LLC v. Deffenbaugh Industries, Inc., et al* (Dec. 14, 2016) 2:13-cv-2634 (D. Kan.):

*The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.*

**Judge Yvette Kane,** *In re: Shop-Vac Marketing and Sales Practices Litigation* (Dec. 9, 2016) MDL No. 2380 (M.D. Pa.):

*The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.*

**Judge Timothy D. Fox,** *Miner v. Philip Morris USA, Inc.* (Nov. 21, 2016) 60CV03-4661 (Ark. Cir.):

*The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.*

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* (Oct. 13, 2016) 650562/2011 (Sup. Ct. N.Y.):

*This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.*

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (Sept. 20, 2016) MDL No. 2540 (D. N.J.):

*The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.*

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (Apr. 11, 2016) 14-23120 (S.D. Fla.):

*Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure*



23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Yvonne Gonzalez Rogers,** *In Re: Lithium Ion Batteries Antitrust Litigation* (Mar. 22, 2016) 4:13-MD-02420 (N.D. Cal.):

> From what I could tell, I liked your approach and the way you did it. I get a lot of these notices that I think are all legalese and no one can really understand them. Yours was not that way.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.,* (July 30, 2015) 14-10979 (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, 2:12-mn-00001 (D. S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.
>
> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.

**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) 12-cv-2871 (N.D. Ill.):

> Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) 2:10-cv-01505 (E.D. La.) and 1:10-cv-22058 (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.):

> The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Shutts, 472 U.S. at 812 (quoting Mullane, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.



**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (Dec. 29, 2014) 1:10-cv-10392 (D. Mass.):

*This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law.  The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances.  The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices.  Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (Aug. 29, 2014) 5:11-CV-02390; 5:12-CV-0400 (N.D. Cal.):

*The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) CGC-12-519221 (Cal. Super. Ct.):

*Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order.  Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* (Dec. 13, 2013) 05-md-01720, MDL No. 1720 (E.D. NY.):

*The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications.  The notice here meets the requirements of due process and notice standards…  The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) 2:11-cv-02067 (E.D. La.):

*The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (Apr. 5, 2013) 08-cv-05701 (N.D. Cal.):

*Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*



**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (Feb. 27, 2013) 0:08-cv-01958 (D. Minn.):

> The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.

> The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (Jan. 28, 2013) 3:10-cv-960 (D. Ore.):

> Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* *(Medical Benefits Settlement),* (Jan. 11, 2013) MDL No. 2179 (E.D. La.):

> Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable.  (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each.  (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative.  (Id. ¶ 5.)

> The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* *(Economic and Property Damages Settlement),* (Dec. 21, 2012) MDL No. 2179 (E.D. La.):

> The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.  The notice program surpassed the requirements of Due Process, Rule 23, and CAFA.  Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.

> The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval.  The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers.  Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights.  See Azari Decl. ¶¶ 8, 15, 68.  The



*Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

*The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings.  The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris,** ***Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,*** (Aug. 17, 2012) 12-C-1599 (27th Jud. D. Ct. La.):

*Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class.  Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King,** ***In re Checking Account Overdraft Litigation (IBERIABANK)***, (Apr. 26, 2012) MDL No. 2036 (S.D. Fla):

*The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977).  The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement.  Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*

**Judge Bobby Peters,** ***Vereen v. Lowe's Home Centers,*** (Apr. 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*



**Judge Lee Rosenthal,** *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* (Mar. 2, 2012) MDL No. 2046 (S.D. Tex.):

> The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement… Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.

**Judge John D. Bates,** *Trombley v. National City Bank,* (Dec. 1, 2011) 1:10-CV-00232 (D.D.C.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.):

> The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank,* (July 29, 2011) 1:09-cv-6655 (N.D. Ill.):

> The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) 11-C-3187-B (27th Jud. D. Ct. La.):

> Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.

**Judge Stefan R. Underhill,** *Mathena v. Webster Bank, N.A.,* (Mar. 24, 2011) 3:10-cv-1448 (D. Conn.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.):

> The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

**Judge Ted Stewart,** *Miller v. Basic Research, LLC,* (Sept. 2, 2010) 2:07-cv-871 (D. Utah):

> Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a



neutral, Court-approved Internet website; and 5) a toll-free telephone number.  Similar mixed media plans have been approved by other district courts post class certification.  The Court finds this plan is sufficient to meet the notice requirement.

**Judge Sara Loi,** *Pavlov v. Continental Casualty Co.,* (Oct. 7, 2009) 5:07-cv-2580 (N.D. Ohio):

As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims.  With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).

**Judge James Robertson,** *In re Department of Veterans Affairs (VA) Data Theft Litigation,* (Sept. 23, 2009) MDL No. 1796 (D.D.C.):

The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances.  The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement.  Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.

**Judge Lisa F. Chrystal,** *Little v. Kia Motors America, Inc.,* (Aug. 27, 2009) UNN-L-0800-01 (N.J. Super. Ct.):

The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.

**Judge Barbara Crowder,** *Dolen v. ABN AMRO Bank N.V.,* (Mar. 23, 2009) 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights.  The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803.  That Notice Plan is approved and accepted.  This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted.  This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.

**Judge Robert W. Gettleman,** *In re Trans Union Corp.,* (Sept. 17, 2008) MDL No. 1350 (N.D. Ill.):

The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law… Accordingly, all objections are hereby OVERRULED.

**Judge Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.,* (Sept. 3, 2008) 8:07-cv-1434 (M.D. Fla.):

The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances.  The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.

**Judge William G. Young,** *In re TJX Companies,* (Sept. 2, 2008) MDL No. 1838 (D. Mass.):

The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances.  The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

 HILSOFT NOTIFICATIONS

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.,* (June 11, 2008) SACV-06-2235 (C.D. Cal.):

> *[Notice] was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge Robert L. Wyatt,** *Gunderson v. AIG Claim Services, Inc.,* (May 29, 2008) 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason,** *Palace v. DaimlerChrysler Corp.,* (May 29, 2008) 01-CH-13168 (Ill. Cir. Ct.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge David De Alba,** *Ford Explorer Cases,* (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Kirk D. Johnson,** *Webb v. Liberty Mutual Ins. Co.,* (Mar. 3, 2008) CV-2007-418-3 (Ark. Cir. Ct.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Carol Crafton Anthony,** *Johnson v. Progressive Casualty Ins. Co.,* (Dec. 6, 2007) CV-2003-513 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable…The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.*

**Judge Kirk D. Johnson,** *Sweeten v. American Empire Insurance Co.,* (Aug. 20, 2007) CV-2007-154-3 (Ark. Cir. Ct.):

> *The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.*

**Judge Robert Wyatt,** *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) 2004-2417-D (14th Jud. D. Ct. La.):

> *This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time.*



**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation***,** (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> *The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.*

**Judge Joe Griffin,** *Beasley v. The Reliable Life Insurance Co.,* (Mar. 29, 2007) CV-2005-58-1 (Ark. Cir. Ct.):

> *[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litigation,* (Mar. 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> *The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown,** *Reynolds v. The Hartford Financial Services Group, Inc.,* (Feb. 27, 2007) CV-01-1529-BR (D. Ore.):

> *[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Kirk D. Johnson**, *Zarebski v. Hartford Insurance Company of the Midwest,* (Feb. 13, 2007) CV-2006-409-3 (Ark. Cir. Ct.):

> *Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class. Accordingly, the Class Notice and Claim Form as disseminated are finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** *In re Vivendi Universal, S.A. Securities Litigation,* 2007 WL 1490466 (S.D.N.Y.):

> *In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*



**Judge Samuel Conti,** *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,* (Nov. 17, 2006) C-05-04289-SC (N.D. Cal.):

> After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.

**Judge Ivan L.R. Lemelle**, *In re High Sulfur Content Gasoline Prods. Liability Litigation,* (Nov. 8, 2006) MDL No. 1632 (E.D. La.):

> This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (Nov. 2, 2006) MDL No. 1539 (D. Md.):

> The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district.  The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages.  The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.

**Judge Elaine E. Bucklo,** *Carnegie v. Household International,* (Aug. 28, 2006) 98 C 2178 (N.D. Ill.):

> [T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions.  The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest,* (June 13, 2006) CV-2005-58-1 (Ark. Cir. Ct.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) 2:05-CV-04951 (E.D. Pa.):

> The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law.  The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (Apr. 19, 2006) 00C15234 (Ore. Cir. Ct.):

> The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (Jan. 6, 2006) MDL No. 1539 (D. Md.):

> I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms



*of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litigation,* (2006) 437 F.Supp.2d 467, 472 (D. Md.):

*The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances. The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (Dec. 19, 2005) CV-2002-952-2-3 (Ark. Cir. Ct.):

*Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** *Defrates v. Hollywood Entm't Corp.,* (June 24, 2005) 02 L 707 (Ill. Cir. Ct.):

*[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) 2003-481 F (14th J.D. Ct. La.):

*Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday,** *Morrow v. Conoco Inc.,* (May 25, 2005) 2002-3860 G (14th J.D. Ct. La.):

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** *Nichols v. SmithKline Beecham Corp.,* (Apr. 22, 2005) 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas Combs,** *Morris v. Liberty Mutual Fire Ins. Co.,* (Feb. 22, 2005) CJ-03-714 (D. Okla.):

*I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a*



*court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** *In re Serzone Products Liability Litigation*, (2005) 231 F.R.D. 221, 231 (S.D. W. Va.):

*The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (Nov. 24, 2004) MDL No. 1430 (D. Mass.):

*After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (Nov. 23, 2004) MDL No. 1430 (D. Mass.):

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** *Mantzouris v. Scarritt Motor Group Inc.,* (Aug. 10, 2004) 8:03 CV- 0015-T-30 (M.D. Fla.):

*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) 3:02CV431 (E.D. Va.):

*The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (Apr. 14, 2004) 809869-2 (Cal. Super. Ct.):

*The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

***Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,*** (2004) 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C.):

*Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*



**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation*, (2004) U.S. Dist. LEXIS 28297 (S.D. W. Va.):

> The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (Nov. 26, 2003) 02-08115 (Fla. Cir. Ct.):

> Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (Nov. 26, 2003) 00-22876 (Bankr.W.D. Pa.):

> The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (Nov. 18, 2003) 005532 (Cal. Super. Ct.):

> As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

> Notice of the settlement has been given in an adequate and sufficient manner.  The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (2003) 216 F.R.D. 55, 68 (S.D.N.Y.):

> In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (Nov. 27, 2002) 99-6209; *Walker v. Rite Aid Corp.,* 99-6210; and *Myers v. Rite Aid Corp.*, 01-2771 (Pa. Ct. C.P.):

> The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (Nov. 22, 2002) 13007 (Tenn. Ch.):

> The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.



**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (Nov. 14, 2002) 01-L-6 (Ill. Cir. Ct.):

> *Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated.  The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Sept. 13, 2002) L-008830.00 (N.J. Super. Ct.):

> *Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements.  The Notice Plan used a variety of methods to reach potential class members.  For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (Sept. 3, 2002) 00 Civ. 5071-HB (S.D.N.Y.):

> *The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members.  In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (Jan. 22, 2002) D 162-535 (Tex. Jud. Dist. Ct.) ultimately withstood challenge to Court of Appeals of Texas.  *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

> *In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained.  This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Oct. 30, 2001) MID-L-8839-00-MT (N.J. Super. Ct.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights.  The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (Oct. 29, 2001) L-8830-00-MT (N.J. Super. Ct.):

> *I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (Apr. 1, 2001) J.C.C.P. CJC-00-004106 (Cal. Super. Ct.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied.  I think it's amazing if you're really getting 80 percent coverage.  That's very reassuring.  And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases,* (Mar. 30, 2001) J.C.C.P. 4106 (Cal. Super. Ct.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition.  The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation.  The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*



**LEGAL NOTICE CASES**

Hilsoft has served as a notice expert for planning, implementation and/or analysis in the following partial list of cases:

| | |
|---|---|
| *Andrews v. MCI (900 Number Litigation)* | S.D. Ga., No. CV 191-175 |
| *Harper v. MCI (900 Number Litigation)* | S.D. Ga., No. CV 192-134 |
| *In re Bausch & Lomb Contact Lens Litigation* | N.D. Ala., No. 94-C-1144-WW |
| *In re Ford Motor Co. Vehicle Paint Litigation* | E.D. La., MDL No. 1063 |
| *Castano v. Am. Tobacco* | E.D. La., No. CV 94-1044 |
| *Cox v. Shell Oil (Polybutylene Pipe Litigation)* | Tenn. Ch., No. 18,844 |
| *In re Amino Acid Lysine Antitrust Litigation* | N.D. Ill., MDL No. 1083 |
| *In re Dow Corning Corp. (Breast Implant Bankruptcy)* | E.D. Mich., No. 95-20512-11-AJS |
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., No. ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., No. 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., No. 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., No. C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Ore. Cir. Ct., No. 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., No. 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., No. 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., No. CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., No. CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., No. 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., No. 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., No. CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., No. 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., No. 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts)* | Ill. Cir. Ct., No. 97-L-114 |



| | |
|---|---|
| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., No. 97-CV-218 |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., No. 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., No. 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., No. PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., No. 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., No. 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., No. 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., No. 97-2-06368 |
| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., No. 98-5504 |
| *In re Holocaust Victims Assets Litigation (Swiss Banks)* | E.D.N.Y., No. CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., No. CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., No. CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., No. 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., No. 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., No. CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., No. 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., No. 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., No. 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., No. CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., No. 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., No. 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., No. 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., No. 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., No. J.C.C.P. 4042,711400 |



| | |
|---|---|
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., No. 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. No. 87 B 20142, No. 87 B 20143, No. 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., No. 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., No. 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., No. 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., No. 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., No. J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., No. 302774 |
| *Sanders v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., No. 303549 |
| *Sims v. Allstate Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., No. 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co. (Diminished Auto Value Litigation)* | Ill. Cir. Ct., No. 99-L-394A |
| *Microsoft I-V Cases (Antitrust Litigation Mirroring Justice Dept.)* | Cal. Super. Ct., No. J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc. (Remains Handling Litigation)* | Cal. Super. Ct., No. C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., No. 97-L-20 |
| *Garrett v. Hurley State Bank (Credit Card Litigation)* | Miss. Cir. Ct., No. 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd. (Firesafe Cigarette Litigation)* | Ont. Super. Ct., No. 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp. (PPA Litigation)* | W.D. Wash., No. C01-0306L |
| *Dimitrios v. CVS, Inc. (PA Act 6 Litigation)* | Pa. C.P., No. 99-6209 |
| *Jones v. Hewlett-Packard Co. (Inkjet Cartridge Litigation)* | Cal. Super. Ct., No. 302887 |
| *In re Tobacco Cases II (California Tobacco Litigation)* | Cal. Super. Ct., No. J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees Litigation)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., No. 986677 |
| *Ting v. AT&T (Mandatory Arbitration Litigation)* | N.D. Cal., No. C-01-2969-BZ |
| *In re W.R. Grace & Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion Litigation)* | N.J. Super. Ct.,, No. MID-L-8839-00 MT |



| | |
|---|---|
| *Kent v. Daimler Chrysler Corp. (Jeep Grand Cherokee Park-to-Reverse Litigation)* | N.D. Cal., No. C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan (Homeowner's Loan Account Litigation)* | 3rd Jud. Dist. Ct. Utah, No. C79-8404 |
| *Bryant v. Wyndham Int'l., Inc. (Energy Surcharge Litigation)* | Cal. Super. Ct., No. GIC 765441, No. GIC 777547 |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices Litigation)* | S.D.N.Y., No. 00-CIV-5071 |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch., No. CV-13007 |
| *Peters v. First Union Direct Bank (Credit Card Litigation)* | M.D. Fla., No. 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., No. C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., No. 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., No. 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Ore. Circ. Ct., No. 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., No. 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., No. D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., No. 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., No. 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., No. J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., No. 01-2-36007-8 |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., No. 02L707 |



| | |
|---|---|
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., No. CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, No. CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., No. SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., No. 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., No. 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., No. 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., No. 00-22876-JKF |
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., No. 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., No. 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., No. CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., No. Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., No. 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., No. 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No. 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., No. 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., No. 01-C-1530, 1531, 1533, No. 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., No. 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., No. 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., No. CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., No. SACV03-1803 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., No. 00-2-17633-3SEA |



| | |
|---|---|
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., No. 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., No. 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., No. 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., No. 04-8018 |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., No. MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., No. 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., No. 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., No. 01-2-24553-8 |
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., No. J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., No. 03-17949 |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., No. CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, No. C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., No. CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., No. 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., No. 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., No. 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Ore. Cir. Ct., No. 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., No. 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., No. 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., No. L-180-04 |



| | |
|---|---|
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC No. 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., No. 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., No. 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., No. A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., No. 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., No. CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., No. 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., No. 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., No. 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *Daniel v. AON Corp.* | Ill. Cir. Ct., No. 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., No. SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC No. 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. No. 2:05-CV-04951 |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., No. 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., No. 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., No. 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., No. 02-CIV-5571 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., No. 00-CV-192059 CP |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., No. CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., No. 03 LK 127 |



| | |
|---|---|
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206 |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., No. 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., No. CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., No. 1:06-CV-00332 |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., No. 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., No. 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, No. 1:06-CV-075 |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., No. 03-2-33553-3-SEA |
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., No. 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., No. C-05-04289 |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., No. 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., No. 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., No. CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., No. CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., No. CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 |
| *Beasley v. The Reliable Life Insurance Co.* | Ark. Cir. Ct., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., No. 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Sereno Int., S.A.* | D. Mass., No. 06-CA-10613 |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., No. 06-00574-E |



| | |
|---|---|
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., No. 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., No. CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., No. GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437 |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., No. 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., No. 03-CV-6595 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., No. 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, No. 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., No. CV06-01249 |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., No. 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., No. 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc. (Neurontin)* | C.P. Pa., No. 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., No. V06-2235 |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., No. 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., No. 8:07-cv-1434 |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |



| | |
|---|---|
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 1350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., No. 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., No. 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., No. 2:06-CV-06234 |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., No. 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., No. 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., No. 01-L-454 and No. 01-L-493 |
| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, No. 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Ore., No. 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., No. 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., No. UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., No. 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No. 1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, No. 2:07-cv-00871 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., No. 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., No. 3:07-CV-03018 |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., No. 08-CV-2797 |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., No. 06-CV-2893 |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., No. 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., No. 1:10-CV-00232 as part of MDL 2036 (S.D. Fla.) |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., No. SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, No. 3:10-cv-01448 as part MDL 2036 (S.D. Fla.) |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., No. 2:06-cv-00927 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., No. 2004-002417 |



| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., No. 11-C-3187-B |
|---|---|
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., No. 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., No. 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL 2036 |
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., No. 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., No. 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., No. RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., No. 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., No. 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., No. 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Ore., No. 3:10-cv-960 |
| *RBS v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa) – 2013 & 2019 Notice Programs* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., No. 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |



| | |
|---|---|
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La. No. 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., No. 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., No. 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., No. 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., No. 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., No. CV-11-4322294-00CP |
| *Yarger v. ING Bank* | D. Del., No. 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, No. 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., No. 4:13-cv-00250 |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., No. 3:12-cv-01405 |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., No. 11-cv-02390 |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., No. 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., No. 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, No. 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, No. 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., No. 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong  et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., No. CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221, MDL No. 2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., No. 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., No. 11-cv-06700 |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., No. 2005-05453 |



| | |
|---|---|
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., No. 1:12-cv-02871 |
| *Scharfstein v. BP West Coast Products, LLC* | Ore. Cir., County of Multnomah, No. 1112-17046 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | E.D. La., No. 2:10-cv-01505 as part of S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., No. 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement  (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |
| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., No. 42-cv-2012- 900001.00 |
| *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., No. 14-10979 |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., No. 14-civ-5731 |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., No. 13-C-3212 |
| *Russell Minoru Ono v. Head Racquet Sports USA* | C.D.Cal., No. 2:13-cv-04222 |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., No. 13-C-5380 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D. N.J., MDL No. 2540 |
| *In Re: Citrus Canker Litigation* | 11th Jud. Cir., Fla., No. 03-8255 CA 13 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.*<br>*Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., No. 2:12-cv-02247<br>D. Kan., No. 2:13-cv-2634 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | N.D. Fla., No. 1:10-cv-00090 as part of MDL 2036 (S.D. Fla.) |
| *Forgione v. Webster Bank N.A. (Overdraft Fees)* | Sup. Ct. Conn., No. X10-UWY-CV-12-6015956-S |
| *Small v. BOKF, N.A.* | D. Col., No. 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., No. 14-cv-23120 |
| *In Re:  Lithium Ion Batteries Antitrust Litigation* | N.D. Cal., MDL No. 2420, 4:13-MD-02420 |



| | |
|---|---|
| *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Company* | 11th Jud. Cir. Fla, No. 15-27940-CA-21 |
| *Glaske v. Independent Bank Corporation (Overdraft Fees)* | Cir. Ct. Mich., No. 13-009983-CZ |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch)* | N.D. Cal., MDL No. 2672 |
| *Hawkins v. First Tennessee Bank, N.A., et al. (Overdraft Fees)* | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al. (Data Breach)* | N.D. Ill., No. 1:15-cv-02228 |
| *Bias v. Wells Fargo & Company, et al. (Broker's Price Opinions)* | N.D. Cal., No 4:12-cv-00664 |
| *Klug v. Watts Regulator Company (Product Liability)* | D. Neb., No. 8:15-cv-00061 |
| *Ratzlaff et al. v. BOKF, NA d/b/a Bank of Oklahoma, et al. (Overdraft Fees)* | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Morton v. Greenbank (Overdraft Fees)* | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al. (FirstMerit Overdraft Fees)* | Ohio C.P., No. 11CV000090 |
| *Farnham v. Caribou Coffee Company, Inc. (TCPA)* | W.D. Wis., No. 16-cv-00295 |
| *Gottlieb v. Citgo Petroleum Corporation (TCPA)* | S.D. Fla., No. 9:16-cv-81911 |
| *McKnight et al. v. Uber Technologies, Inc. et al.* | N.D. Cal., No 3:14-cv-05615 |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. GA., No. 2:16-cv-132 |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780 |
| *Reilly v. Chipotle Mexican Grill, Inc.* | S.D. Fla., No. 1:15-cv-23425 |
| *Ma et al. v. Harmless Harvest Inc. (Coconut Water)* | E.D.N.Y., No. 2:16-cv-07102 |
| *Mahoney v TT of Pine Ridge, Inc.* | S.D. Fla., No. 9:17-cv-80029 |
| *Sobiech v. U.S. Gas & Electric, Inc., i/t/d/b/a Pennsylvania Gas & Electric, et al.* | E.D. Penn., No. 2:14-cv-04464 |
| *Alexander M. Rattner v. Tribe App., Inc.,* and *Kenneth Horsley v. Tribe App., Inc.,* | S.D. Fla., No. 1:17-cv-21344 and No. 1:17-cv-23111 |



| | |
|---|---|
| *Gordon, et al. v. Amadeus IT Group, S.A., et al.* | S.D.N.Y. No. 1:15-cv-05457 |
| *Masson v. Tallahassee Dodge Chrysler Jeep, LLC (TCPA)* | S.D. Fla., No. 1:17-cv-22967 |
| *Orlander v. Staples, Inc.* | S.D. NY, No. 13-CV-0703 |
| *Larey v. Allstate Property and Casualty Insurance Company* | W.D. Kan., No. 4:14-cv-04008 |
| *Larson v. John Hancock Life Insurance Company (U.S.A.)* | Cal. Sup. Court, County of Alameda, No. RG16 813803 |
| *Alaska Electrical Pension Fund, et al. v. Bank of America N.A et al. (ISDAfix Instruments)* | S.D.N.Y., No. 14-cv-7126 |
| *Falco et al. v. Nissan North America, Inc. et al. (Engine – CA & WA)* | C.D. Cal., No. 2:13-cv-00686 |
| *Pantelyat, et al v. Bank of America, N.A. et al. (Overdraft/Uber)* | S.D.N.Y., No. 16-cv-08964 |
| *In re: Parking Heaters Antitrust Litigation* | E.D.N.Y., No. 15-MC-0940 |
| *Wallace, et al, v. Monier Lifetile LLC, et al.* | Sup. Ct. Cal., No. SCV-16410 |
| *In re: Windsor Wood Clad Window Products Liability Litigation* | E.D. Wis., MDL No. 16-MD-02688 |
| *Farrell v. Bank of America, N.A.  (Overdraft)* | S.D. Cal., No. 3:16-cv-00492 |
| *Hale v. State Farm Mutual Automobile Insurance Company, et al.* | S.D. Ill., No. 12-cv-0660 |
| *Callaway v. Mercedes-Benz USA, LLC (Seat Heaters)* | C.D. Cal., No. 8:14-cv-02011 |
| *Poseidon Concepts Corp. et al. (Canadian Securities Litigation)* | Ct. of QB of Alberta, No. 1301-04364 |
| *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru, Toyota, Honda, and Nissan)* | S.D. Fla, MDL No. 2599 |
| *Watson v. Bank of America Corporation et al.;*<br>*Bancroft-Snell et al. v. Visa Canada Corporation et al.;*<br>*Bakopanos v. Visa Canada Corporation et al.;*<br>*Macaronies Hair Club and Laser Center Inc. operating as Fuze Salon v. BofA Canada Bank et al.;*<br>*Hello Baby Equipment Inc. v. BofA Canada Bank and others (Visa and Mastercard Canadian Interchange Fees)* | Sup. Ct. of B.C., No. VLC-S-S-112003; Ontario Sup. Ct., No. CV-11-426591; Sup. Ct. of Quebec, No. 500-06-00549-101; Ct. of QB of Alberta, No. 1203-18531; Ct. of QB of Saskatchewan, No. 133 of 2013 |
| *Vergara, et al., v. Uber Technologies, Inc. (TCPA)* | N.D. Ill., No. 1:15-CV-06972 |
| *Surrett et al. v. Western Culinary Institute, et al.* | Ore. Cir., County of Multnomah, No. 0803-03530 |
| *Underwood v. Kohl's Department Stores, Inc., et al.* | E.D. Penn., No. 2:15-cv-00730 |
| *Ajose et al. v. Interline Brands Inc. (Plumbing Fixtures)* | M.D. Tenn., No. 3:14-cv-01707 |
| *Gergetz v. Telenav (TCPA)* | N.D. Cal., No. 5:16-cv-4261 |
| *Raffin v. Medicredit, Inc., et al.* | C.D. Cal., No 15-cv-4912 |



| | |
|---|---|
| **First Impressions Salon, Inc. et al. v. National Milk Producers Federation, et al.** | S.D. Ill., No. 3:13-cv-00454 |
| **Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN) (TCPA)** | N.D. Cal., No. 3:16-cv-05486 |
| **Dipuglia v. US Coachways, Inc. (TCPA)** | S.D. Fla., No. 1:17-cv-23006 |
| **Knapper v. Cox Communications** | D. Ariz., No. 2:17-cv-00913 |
| **Martin v. Trott (MI - Foreclosure)** | E.D. Mich., No. 2:15-cv-12838 |
| **Cowen v. Lenny & Larry's Inc.** | N.D. Ill., No. 1:17-cv-01530 |
| **Al's Pals Pet Card, LLC, et al v. Woodforest National Bank, N.A., et al.** | S.D. Tex., No. 4:17-cv-3852 |
| **In Re: Community Health Systems, Inc. Customer Data Security Breach Litigation** | N.D. Ala., MDL No. 2595, 2:15-CV-222 |
| **Tashica Fulton-Green et al. v. Accolade, Inc.** | E.D. Penn., No. 2:18-cv-00274 |
| **37 Besen Parkway, LLC v. John Hancock Life Insurance Company (U.S.A.)** | S.D.N.Y., No. 15-cv-9924 |
| **Stahl v. Bank of the West** | Sup. Ct. Cal., No. BC673397 |
| **Parsons v. Kimpton Hotel & Restaurant Group, LLC (Data Breach)** | N.D. Cal., No. 3:16-cv-05387 |
| **Waldrup v. Countrywide** | C.D. Cal., No. 2:13-cv-08833 |
| **In re: Valley Anesthesiology Consultants, Inc. Data Breach Litigation** | Sup. Ct. Cal., No. CV2016-013446 |
| **Naiman v. Total Merchant Services, Inc., et al. (TCPA)** | N.D. Cal., No. 4:17-cv-03806 |
| **In re Dealer Management Systems Antitrust Litigation** | N.D. Ill., MDL No. 2817, No. 18-cv-00864 |
| **In re HP Printer Firmware Update Litigation** | N.D. Cal., No. 5:16-cv-05820 |
| **Zaklit, et al. v. Nationstar Mortgage LLC, et al. (TCPA)** | C.D. Cal., No. 5:15-CV-02190 |
| **Luib v. Henkel Consumer Goods Inc.** | E.D.N.Y., No. 1:17-cv-03021 |
| **Lloyd, et al. v. Navy Federal Credit Union** | S.D. Cal., No. 17-cv-1280 |
| **Waldrup v. Countrywide Financial Corporation, et al.** | C.D. Cal., No. 2:13-cv-08833 |
| **Adlouni v. UCLA Health Systems Auxiliary, et al.** | Sup. Ct. Cal., No. BC589243 |
| **Di Filippo v. The Bank of Nova Scotia, et al. (Gold Market Instrument)** | Ontario Sup. Ct., No. CV-15-543005-00CP & No. CV-16-551067-00CP |
| **McIntosh v. Takata Corporation, et al.; Vitoratos, et al. v. Takata Corporation, et al.; and Hall v. Takata Corporation, et al.** | Ontario Sup Ct., No. CV-16-543833-00CP; Quebec Sup. Ct of Justice, No. 500-06-000723-144; & Court of Queen's Bench for Saskatchewan, No. QBG. 1284 or 2015 |
| **Rabin v. HP Canada Co., et al.** | Quebec Ct., Dist. of Montreal, No. 500-06-000813-168 |
| **Lightsey, et al. v. South Carolina Electric & Gas Company, a Wholly Owned Subsidiary of SCANA, et al.** | Ct. of Com. Pleas., S.C., No. 2017-CP-25-335 |



| | |
|---|---|
| *In re: Comcast Corp. Set-Top Cable Television Box Antitrust Litigation* | E.D. Penn., No. 2:09-md-02034 |
| *Henrikson v. Samsung Electronics Canada Inc.* | Ontario Sup. Ct., No. 2762-16cp |
| *Burrow, et al. v. Forjas Taurus S.A., et al.* | S.D. Fla., No. 1:16-cv-21606 |
| *Waldrup v. Countrywide Financial Corporation, et al.* | C.D. Cal., No. 2:13-cv-08833 |
| *Jackson v. Viking Group* | D. Md., No. 8:18-cv-02356 |
| *Walters v. Target Corp (Overdraft)* | S.D. Cal., No. 3:16-cv-1678 |
| *Skochin et al. v. Genworth Life Insurance Company, et al.* | E.D. Vir., No. 3:19-cv-00049 |
| *Rose et al. v. The Travelers Home and Marine Insurance Company* | E.D. Penn., No. 19-cv-977 |
| *Nelson v. Roadrunner Transportation Systems, Inc. (Data Breach)* | N.D. Ill., No. 1:18-cv-07400 |
| *In re: Renovate America Finance Cases* | Sup. Ct, Cal., County of Riverside, No. RICJCCP4940 |
| *Behfarin v. Pruco Life Insurance Company, et al.* | C.D. Cal., No. 2:17-05290 |
| *Dasher v. RBC Bank (USA) (Overdraft)* | S.D. Fla., No. 1:10-CV-22190, as part MDL 2036 (S.D. Fla.) |
| *In re: FCA US LLC Monostable Electronic Gearshift Litigation* | E.D. Mich., No. MDL No. 2744, 16-md-02744 |
| *Lehman v. Transbay Joint Powers Authority, et al.* **(Millennium Tower)** | Sup. Ct. of Cal., Cnty of San Fran., No. GCG-16-553758 |
| *Pirozzi, et al. v. Massage Envy Franchising, LLC* | E.D. Mo., No. 4:19-CV- 807 |
| *Cox, et al. v. Ametek, Inc. et al.*<br>*Danielle Trujillo, et al. v. Ametek, Inc. et al* **(Toxic Leak)** | S.D. Cal., No. 3:17-cv-00597<br>S.D. Cal., No.3:15-cv-01394 |
| *Lashambae v. Capital One (Overdraft)* | E.D.N.Y, No. 1:2017-cv-06406 |
| *Harris et al. v. Farmers Insurance Exchange and Mid Century Insurance Company* | Sup.Ct Cal., No. BC 579498 |
| *Grayson v. General Electric Company* | D. Conn., No. 3:13-cv-01799 |
| *Elder v. Hilton Worldwide Holdings, Inc.* | N.D. Cal., No. 16-cv-00278 |
| *In Re: Premera Blue Cross Customer Data Security Breach Litigation* | D. Ore., No. 3:15-md-2633 |
| *Lusnak v. Bank of America, N.A.* | C.D. Cal., No. 14-cv-1855 |
| *Kuss v. American HomePatient, Inc. et al.* | M.D. Fla., No. 8:18-cv-2348 |
| *In re: Kaiser Gypsum Company, Inc., el al.* | Bankr. W.D. N.C., No. 16-31602 |
| *Stone et al. v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:17-cv-00001 |
| *In Re Optical Disk Drive Products Antitrust Litigation* | N.D. Cal., No. 3:10-md-2143 |
| *In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* | N.D. Cal., MDL No. 2672 |



| | |
|---|---|
| *McKinney-Drobnis, et al. v. Massage Envy Franchising* | N.D. Cal., No. 3:16-cv-6450 |
| *Albrecht v. Oasis Power, LLC d/b/a Oasis Energy* | N.D. Ill., No. 1:18-cv-1061 |
| *Garcia v. Target Corporation (TCPA)* | D. Minn., No. 16-cv-02574 |
| *Liggio v. Apple Federal Credit Union* | E.D. Vir., No. 1:18-cv-01059 |
| *In Re: TD Bank, N.A. Debit Card Overdraft Fee Litigation* | D. S.C, MDL No. 2613, No. 6:15-MN-02613 |
| *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V f/k/a Sanitarios Lamosa S.A. DE C.V. a/k/a Vortens* | E.D. Tex., No. 4:19-cv-00248 |
| *Hyder, et al. v. Consumers County Mutual Insurance Company* | D. Ct. of Travis County Tex., No. D-1-GN-16-000596 |
| *Audet et al. v. Garza et al.* | D. Conn., No. 3:16-cv-00940 |
| *In Re: Disposable Contact Lens Antitrust Litigation* | M.D. Fla., No. 3:15-md-2626 |
| *Coffeng v. Volkswagen Group of America, Inc.,* | N.D. Cal., No. 3:17-cv-01825 |
| *Ciuffitelli, et al. v. Deloitte & Touche LLP, et al.* | D. Ore., No. 3:16-cv-00580 |
| *In Re Wells Fargo Collateral Protection Insurance Litigation* | C.D. Cal., No. 8:17-ML-2797 |
| *Prather v. Wells Fargo Bank, N.A. (TCPA)* | N.D. Ill., No. 1:17-cv-00481 |
| *Wilson et al. v. Volkswagen Group of America, Inc. et al.* | S.D. Fla., No. 17-cv-23033 |
| *Armon et al. v. Washington State University* | Sup. Ct. Wash., No. 17-2-23244-1 SEA (consolidated with No. 17-2-25052-0 SEA) |
| *Burch v. Whirlpool Corporation* | W.D. Mich., No. 1:17-cv-18 |
| *Robinson v. First Hawaiian Bank (Overdraft)* | Cir. Ct. of First Cir. Haw., No. 17-1-0167-01 |
| *Denier, et al. v. Taconic Biosciences, Inc.* | Sup Ct. N.Y., No. 00255851 |

Hilsoft-cv-144



# Exhibit 5

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If you purchased Schiff Move Free® Advanced glucosamine supplements, you may be entitled to free products or cash payment from a class action settlement.

SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB
*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

- A $50 million Settlement has been reached in a class action lawsuit to resolve a lawsuit against Reckitt Benckiser LLC, relating to Schiff Move Free® Advanced glucosamine supplements, that alleges Move Free Advanced is misleadingly labelled and marketed. Defendant denies these allegations and asserts that its labelling and marketing is truthful and supported by science but has settled this case to avoid further litigation and distraction of resources from its business.

- The Settlement offers a choice of up to $225 in your choice of free products from brands like **Airborne, Mucinex, Clearasil,** and **Delsym**, or up to a $66 payment, depending on the number of bottles of Move Free Advance products that you purchased. You may be entitled to these Settlement benefits if you purchased Move Free Advanced glucosamine supplements between May 28, 2015 to [DATE], 2021 (purchased for purposes other than resale).

- Your legal rights are affected whether or not you act. ***Please read this notice carefully***.

| YOUR RIGHTS AND CHOICES | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get free products or a Cash Payment is to submit a Claim Form. | **Submit a Claim Form by: Month DD, 2021** |
| **EXCLUDE YOURSELF** | Get no free Products or Cash Payment, but keep any right to file your own lawsuit against Defendant about the legal claims in this case. | **Submit an Exclusion: Month, DD, 2021** |
| **OBJECT** | Tell the Court why you don't like the Settlement. You will still be bound by the Settlement if the Court approves it and you may still file a Claim Form for a Cash Payment or free Products. | **Deadline to file an Objection: Month DD, 2021** |
| **ATTEND A HEARING** | Ask to speak to the Court about the fairness of the Settlement. | **Deadline to file a Notice of Appearance: Month DD, 2021** |
| **DO NOTHING** | Get no Cash Payment or free Products. Give up legal rights. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Awards will be sent if the Court approves the Settlement and after appeals are resolved. Please be patient.

QUESTIONS? CALL 1-800-000-0000, OR VISIT WWW.MOVEFREEADVANCEDSETTLEMENT.COM

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**................................................................................**PAGE 3**
    1.  Why should I read this Notice?
    2.  What is this lawsuit about?
    3.  Why is the lawsuit a class action?
    4.  Why is there a Settlement?

**WHO IS IN THE SETTLEMENT**....................................................................**PAGE 3**
    5.  Am I part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET**............................................**PAGE 4**
    6.  What does the Settlement provide?
    7.  What can I get from the Settlement?

**HOW TO GET BENEFITS FROM THE SETTLEMENT**........................................**PAGE 5**
    8.  How can I get my Free Products or Cash Payment?
    9.  When will I receive my Free Products or Cash Payment?
    10. What am I giving up to receive these Settlement benefits?

**THE LAWYERS REPRESENTING YOU**..........................................................**PAGE 5**
    11. Do I have lawyers in this case?
    12. How will the lawyers be paid?

**YOUR RIGHTS - EXCLUDING YOURSELF FROM THE SETTLEMENT**............................**PAGE 6**
    13. How do I get out of the Settlement?
    14. If I exclude myself, can I get anything from this Settlement?

**YOUR RIGHTS - OBJECTING TO THE SETTLEMENT**.......................................**PAGE 7**
    15. How do I tell the Court that I don't like the Settlement?
    16. What's the difference between objecting and asking to be excluded?

**YOUR RIGHTS - APPEARING AT THE FINAL APPROVAL HEARING**.............................**PAGE 8**
    17. When and where will the Court decide whether to approve the Settlement?
    18. Do I have to attend the Final Approval Hearing?
    19. May I speak at the Final Approval Hearing?

**YOUR RIGHTS - DO NOTHING**...................................................................**PAGE 9**
    20. What happens if I do nothing at all?

**GETTING MORE INFORMATION**.................................................................**PAGE 9**
    21. Are there more details about the Settlement?
    22. How do I get more information?

## Basic Information

### 1. Why should I read this Notice?

If you purchased Move Free Advanced in the United States between May 28, 2015 and [Preliminary Approval Order Date], 2021, other than solely for purposes of resale, you are a member of a Settlement Class.

This Notice explains the class action lawsuit, the proposed Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get the benefits.

The Court in charge of this case is the United States District Court for the Northern District of California. The lawsuit is known as *Yamagata v. Reckitt Benckiser LLC*, Case No. 3:17-cv-03529-VC. You may obtain additional updates on the status of the case by contacting Class Counsel (listed in Question 11 below), going to www.MoveFreeAdvancedSettlement.com or www.BHOLaw.com or viewing case information through the Court's system at www.Pacer.gov.

### 2. What is this lawsuit about?

This lawsuit is about whether Defendant engaged in deceptive or unfair conduct in violation of consumer protection laws by advertising Move Free Advanced as providing joint health benefits that it does not actually provide. Defendant denies that it did anything wrong and says that its claims about Move Free Advanced are true and supported by scientific evidence. The Court has not decided who is right.

### 3. Why is the lawsuit a class action?

In a class action lawsuit, one or more people called "Class Representatives" sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The people who sue – and all the Class Members like them – are called the "Plaintiffs." The company the Plaintiffs sued (in this case Reckitt Benckiser LLC) is called the "Defendant." One court resolves the issues for everyone in the Class – except for those people who choose to exclude themselves from the Class. U.S. District Judge Vince Chhabria is in charge of this class action.

### 4. Why is there a Settlement?

The Court did not decide in favor of Plaintiffs or Defendant. Instead, both sides agreed to a settlement. By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid claims will get compensation. The Class Representatives and their attorneys believe the Settlement is best for the Settlement Class and its members.

## Who Is in the Settlement?

To see if you are eligible for benefits, you first have to determine if you are a Class Member.

### 5. Am I part of the Settlement?

You are a Class Member if you purchased between May 28, 2015 and MONTH, DAY, 2021, within the United States and its territories, Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D (collectively "Move Free Advanced"), other than solely for purposes of resale.

Excluded from the Settlement are: (i) jurists and mediators who are or have presided over the lawsuit, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors,

assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opts-out of the Settlement Class.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 6. What does the Settlement provide?

The $50 million Settlement Fund will provide your choice of free Products or Cash Payments to Class Members who submit valid claims. Class notice and claim administration expenses, Plaintiffs' Counsel's attorneys' fees and expenses and any service awards to the Class Representatives (discussed below) will also be paid out of the Settlement Fund, if approved by the Court. Defendant will separately pay all shipping and handling costs associated with distributing the Product Benefit to Class Members who choose free Products. The settlement distribution process will be administered by an independent Settlement Administrator approved by the Court.

### 7. What can I get from the Settlement?

There are two Settlement benefit options available to Class Members: (1) your choice of free Products, or (2) Cash Payments. When filing your claim, you must choose to receive either free Products (and select the products you want to receive) or a Cash Payments.

If you request an award for **3 bottles of Move Free Advanced or less**, no proof of purchase is necessary.

If you request an award for **more than 3 bottles of Move Free Advanced**, you must provide proof of purchase for each of those units purchased between May 28, 2015 and Month, Day, 2021.

**Option 1 (Product Benefit)**: If you choose to receive the Product Benefit, you may choose to receive your award in the form of a variety of free products. For each bottle purchased of Move Free Advanced you may choose **$75** worth of a variety of products (at a discounted value) for up to three units purchased, for a total amount of products up to **$225**. You may choose whichever products you want from the designated product list in Appendix A to this Notice. The selection of free products is also listed at www.MoveFreeAdvancedSettlement.com. The products will be mailed to you free of charge. For example, one eligible bottle purchased entitles you to a Product Benefit of $75 dollars, two eligible bottles purchased entitles you to a Product Benefit value of $150 dollars, and three eligible bottles purchased entitle you to a Product Benefit value of $225 dollars. For purposes of the Settlement and calculating how much Product Benefit you can receive, the free products are offered at a discounted value and not the retail price you ordinarily pay. Valid claims for Product Benefits may be increased depending on the total value of the claims made by Class Members and other factors specified in the Settlement Agreement and in this Notice.

**Option 2 (Cash Payment)**: If you choose to receive a Cash Payment instead of the Product Benefit, your award is **$22** per bottle purchased, for a total of up to **$66** for three bottles purchased. This award is based on the $22 average retail price of Move Free Advanced. Claims may be increased or decreased depending on the total collective value of the claims made by Class Members and other factors specified in the Settlement Agreement and in this Notice.

Any money remaining in the Settlement Fund after payment of settlement notice and administration, attorneys' fees and costs (Question 12 below), and Class Representative service awards (Question 12 below) ordered by the Court, and valid Class Member claims, will be paid pursuant to the *cy pres* doctrine to the Orthopaedic Research Society.

## How to Get Benefits from the Settlement

**8. How can I get my Free Products or Cash Payment?**

If you are a Class Member, you must fill out and submit a Claim Form to qualify for free products or a cash payment. You can easily file your Claim at www.MoveFreeAdvancedSettlement.com.  You can also download a paper Claim Form from the website or get one by calling the Settlement Administrator at 1-800-000-0000. The completed Claim Form must be submitted online by **Month DD, 2021**, or by mail at the address below, **postmarked** by **Month, Day, 2021**.

Move Free Advanced Settlement Administrator

P.O. Box xxxx

Portland, OR 97208-xxxx

Upon receiving a completed claim form, the Settlement Administrator will review the documentation and confirm or deny your eligibility for an award.

**9. When will I receive my Free Products or Cash Payment?**

The Court will hold a hearing on [date] at [time] (which is subject to change), to decide whether to approve the Settlement. Even if the Court approves the Settlement, there may be appeals. The appeal process can take time, perhaps more than a year. You will not receive your free Products or Cash Payment until any appeals are resolved. Please be patient.

**10. What am I giving up to receive these Settlement benefits?**

Unless you exclude yourself ("opt out") from the Settlement Class by timely submitting an Exclusion Request (see Questions 13-14 below), you will remain in the Settlement Class. By remaining in the Settlement Class you "release" and can't sue, continue to sue, or be part of any other lawsuit against Reckitt Benckiser about the "Released Claims" in this case. These Released Claims are only those claims that you could have brought based on the identical factual predicate of those claims brought in this case about the alleged misleading marketing and labeling of Move Free Advanced sold between May 28, 2015 and MONTH, DAY, 2021.

The Settlement Agreement at Section VIII (titled "Releases") describes these "Released Claims" and the "Released Parties" in necessary legal terminology, so read these sections carefully. For ease of reference, the full release section of the Settlement Agreement is attached to this Notice as Appendix B. The Settlement Agreement is available at www.MoveFreeAdvancedSettlement.com or in the public court records on file in this lawsuit. For questions regarding the Releases or what they mean, you can also talk to one of the lawyers listed in Question 11 below for free, or you can, talk to your own lawyer at your own expense.

## The Lawyers Representing You

**11. Do I have lawyers in this case?**

The Court has appointed attorneys from the law firm Blood Hurst & O'Reardon, LLP, of San Diego, CA, to represent you and the other Class Members. The lawyers are called Class Counsel. They are experienced in handling similar class action cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

You may contact Class Counsel if you have any questions about this Notice or the Settlement. ***Please do not contact the Court***.

**Questions? Call 1-800-000-0000, or Visit www.MoveFreeAdvancedSettlement.com**

**Class Counsel:**
Timothy G. Blood
Thomas J. O'Reardon II
Blood Hurst & O'Reardon, LLP
501 W. Broadway, Suite 1490
San Diego, CA 92101
Tel: 619-338-1100
Email:info@bholaw.com
Website: www.bholaw.com

## 12. How will the lawyers be paid?

To exclude yourself

Class Counsel will ask the Court for an award of attorneys' fees up to 25% of the Settlement Fund ($12,500,000) and for reimbursement of expenses of up to $750,000. Any award of attorneys' fees and costs will be paid from the Settlement Fund. Class Counsel will also ask the Court for service awards to each of the Class Representatives: up to $7,500 for Gordon Noburo Yamagata, Stamatis F. Pelardis and Maureen Carrigan, and up to $500 to Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman. The purpose of the service awards is to compensate the Plaintiffs for their time, efforts and risks taken on behalf of the Settlement Class. Any award of payment to the Class Representatives will be paid from the Settlement Fund.

## YOUR RIGHTS – EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want free Products or a Cash Payment, but want to keep the right to sue or continue to sue Reckitt Benckiser, on your own, about the legal issues in this case, then you must take steps to exclude yourself from the Settlement (get out of the Settlement). This is called "excluding yourself"—or is sometimes referred to as "opting out" of the settlement class.

## 13. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a "Request for Exclusion" in the form of a letter or Request for Exclusion form stating that you want to be excluded from *Yamagata v. Reckitt Benckiser, LLC*, Case No. 3:17-cv-03529-VC. Be sure to include your name, address, telephone number, and basis upon which you are a Class Member. You must mail your Request for Exclusion **postmarked** by **[Month Day], 2021** to: Move Free Advanced Settlement Administrator, P.O. Box xxxx, Portland, OR 97208-xxxx. Request for Exclusion forms can be obtained and submitted online at www.MoveFreeAdvancedSettlement.com.

If you do not follow these procedures and deadlines, you will remain a Class Member and lose any opportunity to exclude yourself from the Settlement. This means that your rights will be determined in this lawsuit by the Settlement Agreement if it receives final approval from the Court.

## 14. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you cannot ask for free Products or receive Cash Payments. But, you may sue, continue to sue, or be part of a different lawsuit against Reckitt Benckiser about the legal issues in this case.

## YOUR RIGHTS – OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

### 15. How do I tell the Court that I don't like the Settlement?

If you're a Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. Note: You can't ask the Court to order a different Settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement awards will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

To object, you must send a letter. Be sure to include the following information:

a. The case name and number (*Yamagata v. Reckitt Benckiser, LLC*, Case Number 3:17-cv-03529-VC);

b. Your name, address, telephone number and, if represented by counsel, the name, address, and telephone number of your counsel;

c. A statement under oath that you are a Class Member;

d. A statement whether you intend to appear at the Final Approval Hearing, either in person or through counsel;

e. A statement of all your objections and the specific grounds supporting your objections;

f. A statement whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class;

g. Copies of any papers, briefs, or other documents upon which your objection is based; and

h. Your handwritten, dated signature (the signature of your counsel, an electronic signature, and the annotation "/s" or similar annotation will not suffice).

Your objection must be submitted to the Court either by mailing (or by filing it at any location of the United States District Court for the Northern District of California) and served on Class Counsel and Defendant's Counsel received no later than **Month DD, 2021**, to the following addresses:

| **Court:** | **Class Counsel:** | **Defense Counsel:** |
|---|---|---|
| Class Action Clerk<br>United States District Court,<br>Northern District of California<br>450 Golden Gate Avenue<br>San Francisco, CA 94201-3489 | Timothy G. Blood<br>Thomas J. O'Reardon II<br>Blood Hurst & O'Reardon, LLP<br>501 W. Broadway, Suite 1490<br>San Diego, CA 92101 | David T. Biderman<br>Jasmine W. Wetherell<br>Perkins Coie LLP<br>1888 Century Park East, Suite 1700<br>Los Angeles CA 90067 |

If you timely file an objection it will be considered by the Court at the Final Approval Hearing. You do not need to attend the Final Approval Hearing for the Court to consider your objection.

The Court will require substantial compliance with these requirements above. If you do not submit a written objection in accordance with the deadline and procedure set forth above, you will waive your right to be heard at the Final Approval Hearing. However, the Court may excuse your failure to file a written objection upon a showing of good cause, which, if granted, would permit you to still appear at the Final Approval Hearing and object to the Settlement.

## 16. What's the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because you are no longer part of the case.

## YOUR RIGHTS – APPEARING AT THE FINAL APPROVAL HEARING

The Court will hold a "Final Approval Hearing" to decide whether to approve the Settlement. You may attend and you may ask to speak, but you don't have to.

## 17. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at [0:00 AM/PM] on [Month Day], 2021, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, in Courtroom 4 – 17th Floor.

At the hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed Settlement, including the amount requested by Class Counsel for attorneys' fees and expenses. If there are objections, the Court will consider them. You do not need to attend this hearing. You also do not need to attend to have a comment or objection considered by the Court. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

<u>Note</u>: The date and time of the Final Approval Hearing are subject to change by Court Order. Any change will be posted at www.MoveFreeAdvancedSettlement.com. You should check this website or the Court's PACER website to confirm that the date and/or time have not changed.

## 18. Do I have to attend the Final Approval Hearing?

No. Class Counsel will answer all questions Judge Chhabria may have. But, you are welcome to attend the hearing at your own expense. If you submit an objection, you do not have to attend the heading to talk about your objection. As long as you filed your written objection by the deadline, the Judge will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## 19. May I speak at the Final Approval Hearing?

As long as you do not exclude yourself, you can (but do not have to) participate and speak for yourself in this lawsuit and Settlement. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you in this lawsuit, you must send a letter saying that it is your "Notice of Intention to Appear in *Yamagata v. Reckitt Benckiser, LLC.*" Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked by **Month 00, 2021**, and be sent to the Clerk of Court at the address listed in Question 15.

If you want to speak at the Final Approval Hearing without having followed these procedures, you may do so if you demonstrate good cause to the Court.

## YOUR RIGHTS – DO NOTHING

| 20. What happens if I do nothing at all? |
| --- |

If you do nothing, you'll be part of the Settlement Class, but get no free Products or Cash Payment from the Settlement. Unless you exclude yourself, you will <u>not</u> be permitted to continue to assert Released Claims in any other lawsuit against Reckitt Benckiser about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| 21. Are there more details about the Settlement? |
| --- |

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.MoveFreeAdvancedSettlement.com, or by contacting Class Counsel by email or telephone at the address or number listed in response to Question 11 above.

| 22. How do I get more information? |
| --- |

You can call toll-free 1-xxx-xxx-xxxx, write to Move Free Advanced Settlement, P.O. Box xxxx, Portland, OR 97208-xxxx; or go to www.MoveFreeAdvancedSettlement.com, where you will find answers to common questions about the Settlement, a Claim Form, motions for approval of the Settlement and Class Counsel's request for attorneys' fees and expenses, and other important documents in the case.

You can also access information about this case through the Court's Public Access to Court Electronic Records (PACER) system. To learn about PACER and register for a PACER account, go to https://www.Pacer.gov/. Once you have a PACER account, you can access and retrieve documents from the Court's docket for the Action at https://ecf.cand.uscourts.gov/cgi-bin/login.pl. You can also access and retrieve documents from the Court's docket by visiting the Clerk's Office located at United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS**

Appendix A – Product Benefit List

Appendix B – Release

# Exhibit 6

Subject: Notice Regarding Schiff Move Free® Advanced Class Action Settlement

**Legal Notice**

# If you purchased Schiff Move Free® Advanced glucosamine supplements, you may be entitled to free products or cash payments from a class action settlement.

You are receiving this email because [insert specific retailer's] records indicate you purchased **Schiff Move Free® Advanced, Move Free® Advanced Plus MSM, or Move Free® Advanced Plus MSM & Vitamin D** from **May 28, 2015** to **[MONTH, DAY, 2021]**. If so, you may be a "Class Member" and entitled to receive your choice of free products from brands like **Airborne**, **Mucinex**, **Clearasil**, and **Delsym**, or a cash payment from a class action settlement.  In *Yamagata v. Reckitt Benckiser, LLC*, Case No. 3:17-cv-03529-VC (N.D. Cal.), the court preliminarily approved the Settlement of a class action lawsuit involving claims that these Schiff Move Free® Advanced supplements were falsely advertised. The defendant in the lawsuit denies these claims.

This email is being sent to you as required by the Court. To determine if you are a Class Member, view the Detailed Notice and the Settlement Agreement at **www.MoveFreeAdvancedSettlement.com** or call toll-free 1-XXX-XXX-XXXX.

**What can I get?** There is a $50 million Settlement Fund. For each bottle purchased (for purposes other than resale), Class Members may choose to receive: (1) **$75** worth of free products at a discounted value, or (2) a cash payment of **$22**. No proof of purchase is required for claims of up to three units (for a total of **$225** in free products or **$66** in cash). These award amounts may increase or decrease depending on the number of claims made and other factors explained in the Settlement Agreement.

**How do I get free products or a cash payment?** You must submit a Claim Form to receive free products or a cash payment. Claim Forms can be submitted online at **www.MoveFreeAdvancedSettlement.com** or by mail. The deadline to submit a Claim Form is **MONTH, DAY, 2021**.

**What are my other options?** If you don't want any benefits or to be legally bound by the Settlement, you must submit an Exclusion Request postmarked or submitted online at www.MoveFreeAdvancedSettlement.com by **MONTH DAY, 2021**. You may also write to the Court if you wish to object to the Settlement by **MONTH, DAY, 2021**. If you exclude yourself, then you cannot receive any benefits, but you do not release any potential rights to sue Reckitt Benckiser LLC relating to the legal claims in the lawsuit.

The Court will hold a hearing on **MONTH, DAY, 2021** at **TIME**. At that hearing, the Court will consider whether to approve this Settlement and whether to approve requested attorneys' fees of 25% of the Settlement Fund plus reimbursement of costs and requested Class Representative awards of $500 and $7,500. You may appear at the hearing, but you don't have to. The Court has appointed attorneys from the law firm Blood Hurst & O'Reardon, LLP to represent the Class ("Class Counsel"). You will not be charged for these lawyers. If you want your own lawyer, you may hire one at your expense.

If you have any questions, please visit www.MoveFreeAdvancedSettlement.com or call 1-xxx-xxx-xxxx. Please do not respond to this email directly.

# Exhibit 7

**AMAZON EMAIL NOTICE – OPTION "A"**

Subject: Notice Regarding Class Action Settlement

Amazon is emailing you because our records indicate that you may have purchased **Schiff Move Free® Advanced, Move Free® Advanced Plus MSM, or Move Free® Advanced Plus MSM & Vitamin D** from **May 28, 2015** to **[MONTH, DAY, 2021]**.  If so, you may be entitled to receive free product or a cash payment from a class action settlement.  In *Yamagata v. Reckitt Benckiser, LLC,* Case No. 3:17-cv-03529-VC (N.D. Cal.), a federal court in California preliminarily approved the settlement of a class action lawsuit involving claims that these Schiff Move Free® Advanced supplements were falsely advertised.  The defendant in the lawsuit denies these claims.

Amazon is sending this email on behalf of the parties to the lawsuit, and as required by the Court.  But because we are not involved in the lawsuit, we cannot assist you directly.  To determine whether you are a member of the class, obtain a copy of the Settlement Agreement, view the full notice approved by the Court, and file a claim, please go to **www.MoveFreeAdvancedSettlement.com** or call the Settlement Administrator at **[PHONE]**.  You must submit a valid claim to receive free products or a cash payment.  The full notice also provides details on how to opt out or object to the settlement.  Claims and opt outs must be submitted by **[DATE]**. Objections must be received by the Court by **[DATE]**.

If you have any questions about the settlement, please contact Plaintiffs' attorneys Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP. Telephone: 619-338-1100; Email: info@bholaw.com.  Please do not respond to this email directly.

<u>**AMAZON EMAIL NOTICE – OPTION "B"**</u>

Subject: Notice Regarding Schiff Move Free® Advanced Class Action Settlement

<u>**Legal Notice**</u>

# If you purchased Schiff Move Free® Advanced glucosamine supplements, you may be entitled to free products or cash payments from a class action settlement.

Amazon is emailing you because our records indicate you purchased **Schiff Move Free® Advanced, Move Free® Advanced Plus MSM, or Move Free® Advanced Plus MSM & Vitamin D** from **May 28, 2015** to **[MONTH, DAY, 2021]**. If so, you may be a "Class Member" and entitled to receive your choice of free products from brands like **Airborne**, **Mucinex**, **Clearasil**, and **Delsym**, or a cash payment from a class action settlement.  In *Yamagata v. Reckitt Benckiser, LLC,* Case No. 3:17-cv-03529-VC (N.D. Cal.), the court preliminarily approved the Settlement of a class action lawsuit involving claims that these Schiff Move Free® Advanced supplements were falsely advertised. The defendant in the lawsuit denies these claims.

Amazon is sending this email as required by the Court. Because Amazon is not involved in the lawsuit, we cannot assist you directly. To determine if you are a Class Member, view the Detailed Notice and the Settlement Agreement at **www.MoveFreeAdvancedSettlement.com** or call toll-free 1-XXX-XXX-XXXX.

**What can I get?** There is a $50 million Settlement Fund. For each bottle purchased (for purposes other than resale), Class Members may choose to receive: (1) **$75** worth of free products at a discounted value, or (2) a cash payment of **$22**. No proof of purchase is required for claims of up to three units (for a total of **$225** in free products or **$66** in cash). These award amounts may increase or decrease depending on the number of claims made and other factors explained in the Settlement Agreement.

**How do I get free products or a cash payment?** You must submit a Claim Form to receive free products or a cash payment. Claim Forms can be submitted online at **www.MoveFreeAdvancedSettlement.com** or by mail. The deadline to submit a Claim Form is **MONTH, DAY, 2021**.

**What are my other options?** If you don't want any benefits or to be legally bound by the Settlement, you must submit an Exclusion Request postmarked or submitted online at **www.MoveFreeAdvancedSettlement.com** by **MONTH DAY, 2021**. You may also write to the Court if you wish to object to the Settlement by **MONTH, DAY, 2021**. If you exclude yourself, then you cannot receive any benefits, but you do not release any potential rights to sue Reckitt Benckiser LLC relating to the legal claims in the lawsuit.

The Court will hold a hearing on **MONTH, DAY, 2021** at **TIME**. At that hearing, the Court will consider whether to approve this Settlement and whether to approve requested attorneys' fees of 25% of the Settlement Fund plus reimbursement of costs and requested Class Representative awards of $500 and $7,500. You may appear at the hearing, but you don't have to. The Court has appointed attorneys from the law firm Blood Hurst & O'Reardon, LLP to represent the Class ("Class Counsel"). You will not be charged for these lawyers. If you want your own lawyer, you may hire one at your expense.

If you have any questions, please visit www.MoveFreeAdvancedSettlement.com or call 1-xxx-xxx-xxxx. Please do not respond to this email directly.

# Exhibit 8

Schiff Move Free® Advanced Settlement Administrator
P.O. Box 0000
City, State, 00000-0000

<u>**Court-Ordered Legal Notice**</u>

**If you purchased Schiff Move Free® Advanced glucosamine supplements you may be entitled to free products or cash payments from a class action settlement.**

Sɪ ᴅᴇꜱᴇᴀ ʀᴇᴄɪʙɪʀ ᴇꜱᴛᴀ ɴᴏᴛɪꜰɪᴄᴀᴄɪóɴ ᴇɴ ᴇꜱᴘᴀñᴏʟ, ʟʟáᴍᴇɴᴏꜱ ᴏ VISITE NUESTRA PÁGINA WEB

*A federal court has authorized this Notice. This is not a solicitation from a lawyer.*

**To receive free products or cash payment you must return a claim form by Month, Day, 2021.**

**www.MoveFreeAdvancedSettlement.com**

**1-xxx-xxx-xxxx**

Forwarding Service Requested

Postal Service: Please do not mark barcode
Claim No.:

[CLASS MEMBER INFO]

You are receiving this because [retailer's] records indicate you purchased **Schiff Move Free® Advanced, Move Free® Advanced Plus MSM, or Move Free® Advanced Plus MSM & Vitamin D** from May 28, 2015 to **[MONTH, DAY, 2021]**. If so, you may be a "Class Member" and entitled to receive your choice of free products from brands like **Airborne**, **Mucinex**, **Clearasil**, and **Delsym**, or a cash payment from a class action settlement.  In *Yamagata v. Reckitt Benckiser, LLC*, Case No. 3:17-cv-03529-VC (N.D. Cal.), the court preliminarily approved the Settlement of a class action lawsuit involving claims that these Schiff Move Free® Advanced supplements were falsely advertised. The defendant in the lawsuit denies these claims.

This is being sent to you as required by the Court. To determine if you are a Class Member, view the Detailed Notice and the Settlement Agreement at **www.MoveFreeAdvancedSettlement.com** or call toll-free 1-XXX-XXX-XXXX.

**What can I get?** There is a $50 million Settlement Fund. For each bottle purchased (for purposes other than resale), Class Members may choose to receive: (1) **$75** worth of free products at a discounted value, or (2) a cash payment of **$22**. No proof of purchase is required for claims of up to three units (for a total of **$225** in free products or **$66** in cash). These award amounts may increase or decrease depending on the number of claims made and other factors explained in the Settlement Agreement.

**How do I get free products or a cash payment?** You must submit a Claim Form to receive free products or a cash payment. Claim Forms can be submitted online at **www.MoveFreeAdvancedSettlement.com** or by mail. The deadline to submit a Claim Form is **MONTH, DAY, 2021**.

**What are my other options?** If you don't want any benefits or to be legally bound by the Settlement, you must submit an Exclusion Request postmarked or submitted online at **www.MoveFreeAdvancedSettlement.com** by **MONTH DAY, 2021**. You may also write to the Court if you wish to object to the Settlement by **MONTH, DAY, 2021**. If you exclude yourself, then you cannot receive any benefits, but you do not release any potential rights to sue Reckitt Benckiser LLC relating to the legal claims in the lawsuit.

The Court will hold a hearing on **MONTH, DAY, 2021** at **TIME**. At that hearing, the Court will consider whether to approve this Settlement and whether to approve requested attorneys' fees of 25% of the Settlement Fund plus reimbursement of costs and requested Class Representative awards of $500 and $7,500. You may appear at the hearing, but you don't have to. The Court has appointed attorneys from the law firm Blood Hurst & O'Reardon, LLP to represent the Class ("Class Counsel"). You will not be charged for these lawyers. If you want your own lawyer, you may hire one at your expense.

If you have any questions, please visit www.MoveFreeAdvancedSettlement.com or call 1-xxx-xxx-xxxx.

# Exhibit 9

*Move Free*
# Digital Media Ads

### Newsfeed and Right-Hand Column Banners shown on *Facebook* –

Newsfeed (Static Ad)



Right Hand Column (Static Ad)



### Newsfeed Banner shown on *Instagram* –

Newsfeed (Static Ad)



**300x250 Online Display Banners shown on the *Google Display Network* –**

Frame 1: Visible for 8 seconds.                    Frame 2: Visible for 4 seconds.

                    

# Exhibit 10



| |
| https://www.movefreeadvancedsettlement.com |

# Schiff Move Free Advanced Class Action Settlement

Home   FAQs   Documents   **Submit a Claim**   Products   Contact Us

## Submit a Claim - Claim Instructions

For each bottle of Schiff Move Free(R) Advanced purchased during the period from May 28, 2015 and <preliminary approval date>, Class Members may choose to receive either: (1) $75 worth of free products, or (2) a cash payment of $22.

To view the available free products click here.

To participate in the Settlement a completed claim must be submitted no later than _

The awards may be increased (per bottles purchased of up to $225 in products or $66 cash) or down depending on the number of claims made and other factors explained in the Settlement Agreement.

If you request an award of up to three (3) bottles purchased, no proof of purchase is necessary.

For an award of more than three (3) bottles purchased, you must provide proof of purchase.

## How to File Online:

A complete Claim Form may be submitted electronically. After clicking the button below, you will be asked to provide your contact information and information about the purchases you wish to include with your claim.

You may only select one type of claim filing for either free products or cash compensation:



> **File a Claim for Free Products**

*(estimated $75 worth of products per bottles purchased)*

> **File Claim for Cash Payment**

*(estimated $22 per bottles purchased)*

No matter which method you choose to file your Claim Form, please read the Claim Form carefully and provide all the information required. Claim Forms that are substantially illegible, not properly signed, or otherwise incomplete will be rejected.

Remember: All Claim Forms must be submitted online or postmarked no later than ____

Contact   Privacy Policy   Terms of Use

Questions? Contact the Settlement Administrator at 1-800-555-5555 (Toll-Free)

@2021 Epiq All rights reserved l Version 1.0.0.0 l Updated xx/xx/21

🔍 https://www.movefreeadvancedsettlement.com

# Schiff Move Free Advanced Class Action Settlement

| Home | FAQs | Documents | Submit a Claim | Products | Contact Us |

## Class Member Information:

**CONTACT INFORMATION**

First Name *     MI     Last Name *

Country *
United States ▾

Address 1 *

Address 2

City *     State *     Zip *

Cell Phone Number *

Email Address *

## Purchase Information:

**PURCHASE DETAILS**

Between May 28, 2015 and <preliminary approval date> how many Schiff Move Free® Advanced, Schiff Move Free® Advanced Plus MSM, or Move Free Advanced® Plus MSM & Vitamin D bottles did you purchase? *

*Available award text displayed will change based on the claim type selected by the user*

Based on your number of bottles purchased you are eligible for <$xx.xx> in free products.

Based on your number of bottles purchased you are eligible for a <$xx.xx> cash payment.

Below is an example of the Schiff Move Free® Advanced packaging:



[ Previous ]   [ Next ]

Contact   Privacy Policy   Terms of Use

Questions? Contact the Settlement Administrator at 1-800-555-5555 (Toll-Free)

@2021 Epiq All rights reserved l Version 1.0.0.0 l Updated xx/xx/21



# Schiff Move Free Advanced Class Action Settlement

Home | FAQs | Documents | Submit a Claim | Products | Contact Us

*\* Page will not be visible if user selected 'Cash Payment'*

**Product Selection:**

Based on the purchase(s) you entered you are entitled to select up to <$xx.xx> worth of free products at the settlement benefit price.

Please select from the following products to fill up your shopping cart to up to the amount listed above. You must select at least one (1) product. If you do not fill up your shopping cart, the shopping cart will be automatically filled after submission with like-kind product for you.

You must complete your shopping experience when submitting your claim. You cannot make subsequent adjustments to the shopping cart.



Enter Amount | Enter Amount | Enter Amount

Enter Amount | Enter Amount | Enter Amount

**Total Remaining: (dollar amount auto-generated)**

*Products selections are subject to availability*

[ Previous ]   [ Next ]

Contact   Privacy Policy   Terms of Use

Questions? Contact the Settlement Administrator at 1-800-555-5555 (Toll-Free)

@2021 Epiq All rights reserved | Version 1.0.0.0 | Updated xx/xx/21

https://www.movefreeadvancedsettlement.com

# Schiff Move Free Advanced Class Action Settlement

Home    FAQs    Documents    Submit a Claim    Products    Contact Us

*\* Documentation and upload functionality will not be visible if user enters 3 or less bottles purchased*

### Supporting Documentation:

All claims for more than three (3) bottles purchased must include proof of purchase documentation. Proof of purchase means receipts or other evidence establishing that you purchased Schiff Move Free® Advanced in the United States during the Class Period. Please upload your supporting documentation below.

Each file must be less than 20 MB and in one of the following formats: .jpg, .jpeg, .png, .gif, .tif, .tiff, .doc, .docx, .xls, .xlsx, .pdf, .txt, .rtf, .zip

[ Browse Files ]

Uploaded Files

| | Uploaded File Name | Inserted |
|---|---|---|
| 🗑 | JoeSmith- receipts.doc | xx/xx/21 |
| | | |

*\* Cash Payment information will not be visible if user selects 'Free Products' as an award*

### Cash Payment:

Cash payments will be digitally sent to you via email. Please ensure you provided a current, valid email address and mobile phone number with your claim submission. If the email address or mobile phone number becomes invalid for any reason, it is your responsibility to provide accurate contact information to the Settlement Administrator to receive a payment. When you receive the email or mobile phone text notifying you of your cash payment, you will be provided with a number of digital payment options such as a digital MasterCard, Venmo, Amazon, or eCheck, to immediately receive your settlement payment. You will also at that time have the option to request a paper check.

\*\* Please note: Paper checks will expire ninety (90) days from the date on the check. You will not be reissued a check once the 90-day period expires.

Please indicate your preference below: \*

○ I would like to receive a check via mail

○ I would like to receive a digital payment

### Certification:

☐ By checking this box, I affirm that the information provided in this Claim Form is true.

☐ I'm not a robot      reCAPTCHA
                       Privacy - Terms

[ Previous ]    [ Submit ]

Contact    Privacy Policy    Terms of Use

Questions? Contact the Settlement Administrator at 1-800-555-5555 (Toll-Free)

©2021 Epiq All rights reserved I Version 1.0.0.0 I Updated xx/xx/21

# Exhibit 11

**REQUEST FOR EXCLUSION FORM**
*Yamagata v. Reckitt Benckiser, LLC*,
District Court for the Northern District of California
Case No. 3:17-cv-03529-VC

1.   Full Name: _____

2.   Home Address:_____

3.   Telephone Number: _____

4.   E-mail Address (optional): _____

I purchased Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D, other than solely for purposes of resale, between May 28, 2015 and MONTH, DAY, 2021, inclusive.

I want to be excluded from the Class in *Yamagata v. Reckitt Benckiser, LLC*, Case No. 3:17-cv-03529-VC (N.D. Cal.). I understand that by excluding myself from this case I waive any and all rights that I may have to receive any settlement benefits, including, but not limited to, money and products from this class action.

Date (mm/dd/yyyy): _____, 2021

_____
(Please Print Your Name)

_____
(Please Sign Your Name)


***To be excluded from the Settlement Class, complete and mail this form postmarked no later than [Response Deadline] to: Move Free Advanced Settlement Administrator, P.O. Box 0000, City, State 00000-000. You may also submit this completed form at www.movefreeadvancedsettlement.com.***

If you do not want to complete this form, you may send a handwritten or typed and signed letter to the Settlement Administrator requesting exclusion (opting out), containing the information identified above and mailing it to the address as set forth in the prior paragraph.

00174630

# Exhibit 12

# AIRBORNE EFFERVESCENT TABLETS, ZESTY ORANGE FLAVOR

Airborne Zesty Orange Effervescent Tablets are a specially crafted blend that helps support your immune system. Drop one tablet into water for a delicious fizzy drink that provides 1000mg of Vitamin C plus Vitamins A, E, and other nutrients like Selenium, Manganese and Zinc.



3015564 72/10ct
3017349 72/30ct

# AIRBORNE EFFERVESCENT TABLETS, VERY BERRY FLAVOR

Airborne Very Berry Effervescent Tablets are a specially crafted blend that helps support your immune system. Drop one tablet into water for a delicious fizzy drink that provides 1000mg of Vitamin C plus Vitamins A, E, and other nutrients like Selenium, Manganese and Zinc.



3012266 72/10ct

## AIRBORNE EFFERVESCENT TABLETS, LEMON LIME FLAVOR

Airborne Lemon Lime Effervescent Tablets are a specially crafted blend that helps support your immune system. Drop one tablet into water for a delicious fizzy drink that provides 1000mg of Vitamin C plus Vitamins A, E, and other nutrients like Selenium, Manganese and Zinc.



8152389 72/10ct

# AIRBORNE CHEWABLE TABLETS, CITRUS FLAVOR

Airborne Citrus Chewable Tablets are a specially crafted blend that helps support your immune system. One serving (4 chewable tablets per day) provides 1000mg of Vitamin C plus Vitamins A, E, and other nutrients like Selenium, Manganese and Zinc.



3046309 36/32ct
3042784 12/64

## AIRBORNE CHEWABLE TABLETS, VERY BERRY FLAVOR

Airborne Very Berry Chewable Tablets are a specially crafted blend that helps support your immune system. One serving (4 chewable tablets per day) provides 1000mg of Vitamin C plus Vitamins A, E, and other nutrients like Selenium, Manganese and Zinc.



3046308 36/32ct

# AIRBORNE GUMMIES, ASSORTED FRUIT FLAVOR

Airborne Assorted Fruit Flavored Gummies are a specially crafted blend that helps support your immune system. One serving (3 gummies per day) provides 750mg of Vitamin C plus other vitamins, minerals and herbs for delicious immune support.



3099691 12/42 ct

# CEPACOL SORE THROAT LOZENGES, HONEY LEMON FLAVOR

Get fast-acting sore throat relief with honey lemon flavored Cepacol® Extra Strength Lozenges. Our soothing lozenges provide maximum numbing relief to alleviate your sore throat pain and help you feel better.



3063390

## CEPACOL SORE THROAT LOZENGES, CHERRY FLAVOR

Get fast-acting sore throat relief with cherry flavored Cepacol® Extra Strength Lozenges. Our soothing lozenges provide maximum numbing relief to alleviate your sore throat pain and help you feel better.



3047202

## CEPACOL SORE THROAT LOZENGES, CHERRY FLAVOR

Get fast-acting sore throat relief with mixed berry flavored Cepacol® Extra Strength Lozenges. Our soothing lozenges provide maximum numbing relief to alleviate your sore throat pain and help you feel better.



3064579

# CEPACOL INSTAMAX SORE THROAT LOZENGES, ARCTIC CHERRY FLAVOR

Get fast-acting sore throat relief with arctic cherry flavored Cepacol® Maximum Strength Lozenges. Our soothing lozenges provide maximum numbing relief to alleviate your sore throat pain and help you feel better.



3025506

CEPACOL SORE THROAT LOZENGES, TANGERINE FLAVOR

Get fast-acting sore throat relief with tangerine flavored Cepacol® Extra Strength Lozenges. Our soothing lozenges provide maximum numbing relief to alleviate your sore throat pain and help you feel better.



3081292

# DELSYM COUGH + CHEST CONGESTION DM LIQUID

Delsym® Cough+ Chest Congestion DM liquid relieves cough, plus thins and loosens mucus that causes your chest congestion. Now that's a plus.

Maximum strength formula

Sugar free

Available in Cherry flavor

Dosing cup included



8079213 6/6oz

# DELSYM COUGH + SORE THROAT LIQUID – HONEY FLAVOR

Delsym Cough+ Sore Throat helps relieve your cough and sore throat symptoms day or night. Available in a soothing honey flavored liquid.

Maximum strength formula

Relieves cough and sore throat pain

Available in honey flavor

Dosing cup included



3086659 6/6oz

# DELSYM COUGH + COLD NIGHT TIME LIQUID

Delsym® Cough+ Cold Night Time liquid quiets your cough at night, relieves fever, sore throat, body aches and nasal congestion, to help you get to sleep...and that's a plus!

Maximum strength formula

Sugar free

Available in Mixed Berry flavor

Dosing cup included

Relieves Body Aches



3127334 6/6oz

## DELSYM 12 HOUR COUGH SUPPRESSANT LIQUID – GRAPE FLAVOR

Delsym® has a patented time-release cough medicine that goes to work fast to silence their coughs for a full 12 hours.

12 Hour cough relief

Sulfite free

Alcohol free

Extended-Release Suspension Cough Suppressant



3003832 12/3oz

# DELSYM 12 HOUR COUGH SUPPRESSANT LIQUID – ORANGE FLAVOR

Delsym® has a patented time-release cough medicine that goes to work fast to silence their coughs for a full 12 hours.

12 Hour cough relief

Sulfite free

Alcohol free

Extended-Release Suspension Cough Suppressant



3003838 12/5oz

# CHILDREN'S DELSYM COUGH DAY OR NIGHT TIME LIQUID

Delsym® has a patented time-release cough medicine for kids that goes to work fast to silence their coughs for a full 12 hours.

12 Hour cough relief

Sulfite free

Alcohol free

Extended-Release Suspension Cough Suppressant



3003840

# MUCINEX DM EXPECTORANT & COUGH SUPPRESSANT

Mucinex DM 12-Hour Expectorant and Cough Suppressant Tablets are patented bi-layer tablets designed with two layers. The first layer is absorbed quickly by your body for immediate relief. The second layer dissolves slowly to continue relieving your cough for up to 12 hours. Mucinex DM contains 600mg of Guaifenesin to help thin and loosen mucus, & 30 mg of Dextromethorphan HBr to calm the cough control center and relieve coughing.

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



3002738 24/20ct
3002739 24/40ct

# MUCINEX FAST-MAX DM MAX LIQUID

A cold never takes it easy on you. So why deal with your next cold with kid gloves? Let Maximum Strength Mucinex Fast-Max DM Max go to battle with that nasty cough and chest congestion. Maximum Strength Mucinex Fast-Max DM Max combines maximum strength mucus busting power with a maximum strength cough suppressant to calm that annoying cough and break up chest congestion.

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



8048973 180ml

# MUCINEX 600MG EXPECTORANT

When you're sick, mucus can be a master of mayhem. But quick, long-lasting chest congestion relief is just a dose away — with Mucinex extended-release bi-layer tablets release immediately and last for 12 hours. Mucinex In…Mucus Out®

Thins and loosens mucus to make coughs more productive and help relieve chest congestion.

Immediate and extended relief that lasts up to 12 hours.

Active Ingredients: Guaifenesin 600 mg (In each extended-release bi-layer tablet)

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



3002729 24/20ct
3002730 24/40ct

# MUCINEX MAXIMUM STRENGTH 1200MG EXPECTORANT

Mucinex Maximum Strength 12-Hour Chest Congestion Medicine Expectorant Tablets! Only Mucinex has an extended release bi-layer tablet to deliver maximum-strength congestion relief. The first layer is absorbed quickly by your body for fast-acting relief. The other layer dissolves slowly to continue relieving your chest congestion for 12 hours. Mucinex Maximum Strength contains 1200 mg of Guaifenesin bi-layer tablets and helps relieve chest congestion alone with thinning and loosening mucus.

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



3002735 24/14ct
3002734 24/28ct

# MUCINEX SINUS-MAX DAY AND NIGHT SINUS CAPLETS

Mucinex Sinus-Max Day/Night has two different types of caplets--one to fight your symptoms during the day and the other to fight your symptoms at night. Mucinex Sinus-Max Day has a triple-action formula that contains three maximum strength medicines. One medicine reduces swelling in the nose that causes sinus pressure. Another medicine thins and loosens mucus. And the third medicine relieves pain and headaches.

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



3051537 24/20ct

# MUCINEX SINUS-MAX SEVERE CONGESTION RELIEF CAPLETS

Mucinex Sinus-Max Severe congestion & pain relief caplets triple action formula combines 3 maximum strength medicines in one dose. You'll clear sinus pressure, relieve that annoying headache and give mucus the boot.

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



3047201 24/20ct

# MUCINEX FAST-MAX COLD, FLU & SORE THROAT LIQUID

Sometimes, when you're sick, you're really sick. Sore throat, stuffy nose, fever - you name it, you've got it. But multi-symptom relief is here with Maximum Strength Mucinex Fast-Max Cold, Flu & Sore Throat. It's cold, flu and sore throat relief in a single dose.

Mucinex is the #1 doctor recommended OTC expectorant among Internists, General Practitioners & Family Practitioners



3050257 180ml

# CLEARASIL RAPID RESCUE DEEP TREATMENT WASH

Dermatologist tested, Clearasil® Rapid Rescue Deep Treatment Daily Face Wash deposits maximum strength acne medication into pores to fight pimples and breakouts. For visibly clearer skin in as fast as 12 hours!

Deposits maximum strength acne medication into pores to fight pimples

Formula delivers pimple fighting active to help prevent breakouts

Visibly Clearer Skin in as little as 12 hours

Contains Salicylic acid (2%)

Dermatologist tested



3058285 12/6.78oz

# CLEARASIL RAPID RESCUE DEEP TREATMENT SCRUB

Dermatologist tested, Clearasil® Rapid Rescue Deep Treatment scrub deposits maximum strength acne medication into pores to fight pimples and breakouts. For visibly clearer skin in as fast as 12 hours!

Deposits maximum strength acne medication into pores to fight pimples

Formula delivers pimple fighting active to help prevent breakouts

Visibly Clearer Skin in as little as 12 hours

Contains Salicylic acid (2%)

Dermatologist tested



3054435 6/5oz

## CLEARASIL RAPID RESCUE DEEP TREATMENT MAXIMUM STRENGTH PADS

Ready-to-use medicated acne treatment pads are the perfect way to treat your skin when you're in a hurry or on the go. Our pre-soaked cotton pads gently lift away dead skin, dirt and make-up from your skin. Use daily in place of or after regular washing to open blocked pores, treat blemishes and prevent future breakouts.



3058289 6/90ct

# CLEARASIL RAPID RESCUE SPOT TREATMENT CREAM

Dermatologist-tested Clearasil® Ultra Rapid Action Vanishing Treatment Cream treats problem areas fast, visibly reducing redness and spot size in as little as four hours. Scientifically formulated with maximum-strength medication, Rapid Action Vanishing Treatment Cream penetrates your pores to fight breakouts.

Contains Benzoyl Peroxide 10% Acne Medication

Visibly reduces pimple size and redness in as little as four hours

Acceladerm technology accelerates delivery of acne medication

Dermatologist tested



3054434 24/1oz

# CLEARASIL STUBBORN ACNE CONTROL 5 IN 1 EXFOLIATING WASH

With a complex of ingredients, Clearasil® Stubborn Acne Control 5in1 Exfoliating Wash is one simple step to fight 5 pimple problems. Visibly clearer skin in just one simple step.

Unblocks pores

Reduces pimple size

Reduces excess oil & shine

Helps prevent the appearance of new pimple marks

Helps reduce the appearance of blackheads



3058286 12/6.78oz

## CLEARASIL STUBBORN ACNE CONTROL 5 IN 1 DAILY PADS

Ready-to-use medicated acne treatment pads are the perfect way to treat your skin when you're in a hurry or on the go. Our pre-soaked cotton pads gently lift away dead skin, dirt and make-up from your skin. Use daily in place of or after regular washing to open blocked pores, treat blemishes and prevent future breakouts.



3058287 6/90ct

# CLEARASIL STUBBORN ACNE CONTROL 5 IN 1 SPOT TREATMENT CREAM

Dermatologist tested Clearasil® Stubborn Acne Control 5in1 Concealing Treatment Cream medication clears pimples and helps prevent new ones from forming. The tinted cream acne medication provides instant cover and its 24 hour control keeps working throughout the day. The cream contains maximum-strength acne medication, for clearer skin every day.

FIGHTS 5 STUBBORN ACNE PROBLEMS: Blocked Pores, Pimple Size, Excess Oil, Acne Marks, and Blackheads.

Clearasil's formula tackles pimples ABOVE & BELOW the skin surface!

Use as needed to treat pimples that are forming.

Contains benzoyl peroxide.

Dermatologist tested.



3058284 24/1oz

# DUREX EXTRA SENSITIVE LATEX CONDOMS

DUREX EXTRA SENSITIVE: Ultra thin latex condoms with extra lubrication gives you the intimate feeling of skin on skin contact

ULTRA THIN: Durex Extra Sensitive condoms are thinner than our standard condoms while providing the protection you need

EXTRA LUBRICATED: These male condoms are ultra fine lubricated latex condoms to help heighten the excitement and pleasure

COMFORTABLE: Durex easy on shape makes condoms easier to put on and more comfortable to wear

WORLD'S #1 CONDOM BRAND: With over 80 years of experience, Durex offers affordable protection against pregnancy and STDs and is trusted by millions of lovers around the world every day

DUREX QUALITY: Each Durex condom for men is 100 percent electronically tested for strength, flexibility and reliability and features a pleasant scent.



8055607

# DUREX PROLONG LATEX CONDOMS

Durex Prolong condoms contain heat activated climax control lubricant on the inside and silky smooth lubricant on the outside. Prolong condoms contain a delay lubricant, a male genital desensitizer to allow more control for him and more time for her. The condoms have a ribbed and dotted texture for added sensation.

For Him: Condoms contain heat activated climax control lubricant on the inside and silky smooth lubricant on the outside

For Her: Condoms have a ribbed and dotted texture for added sensation Ultra fine ribbed and dottend latex condoms with delay lubricant (male genital desensitizer)

Easy on shape makes condoms easier to put on and more comfortable to wear

Each condom is 100% electronically tested for strength, flexibility and reliability



3039649 18/12ct

# DUREX INVISIBLE ULTRA THIN LATEX CONDOMS

DUREX INVISIBLE: So thin, they're almost invisible – if you want to enjoy maximum sensitivity safely, these thin condoms are a perfect option

ULTRA THIN & ULTRA SENSITIVE: Invisible condoms are the thinnest developed by Durex and are designed to maximize sensitivity while providing a high level of protection

TRANSPARENT: Extra thin, lubricated and nearly see through; these condoms are made from natural rubber latex

WORLD'S #1 CONDOM BRAND: Based on Global Nielsen Unit Share Data through October 2019; with over 80 years of experience, Durex offers affordable protection against pregnancy and STDs and is trusted by millions around the world every day

DUREX QUALITY: Each Durex condom for men is 100 percent electronically tested for strength, flexibility and reliability and features a pleasant scent

DISCREET DELIVERY: No exterior identification of the package contents



8169371 18/16ct

# DUREX MASSAGE & PLAY 2 IN 1 LUBRICANT, SOOTHING TOUCH WITH ALOE VERA

Durex Massage & Play Intensify is a two-in-one massage gel and personal lubricant designed as a gentle full-body massage gel that absorbs into skin and easily washes off, and as a personal lubricant in more intimate areas to enhance the sensual experience for you and your partner.

2-in-1 sensual body massage gel and personal lubricant

Non-staining formula Comes in easy-to-use, no mess bottle



8025413

# DUREX MASSAGE & PLAY 2 IN 1 LUBRICANT, SENSUAL WITH YLANG YLANG

Durex Massage & Play Intensify is a two-in-one massage gel and personal lubricant designed as a gentle full-body massage gel that absorbs into skin and easily washes off, and as a personal lubricant in more intimate areas to enhance the sensual experience for you and your partner.

2-in-1 sensual body massage gel and personal lubricant

Non-staining formula Comes in easy-to-use, no mess bottle



8025416

# K-Y TRUE FEEL SILICONE BASED LUBRICANT

K-Y True Feel Silicone Lube is a long-lasting personal lubricant that helps you feel close and natural to your partner. From K-Y, the #1 Doctor Recommended Brand. This long-lasting silicone lubricant provides a naturally smooth experience so you can focus on your sensual connection to each other. K-Y True Feel also protects against discomfort during intimacy and is non-irritating. K-Y True Feeling has a longer lasting formula that provides the best lubricating experience during anal intercourse and it is compatible with natural rubber latex, polyisoprene and polyurethane condoms.



8025413

# K-Y ULTRAGEL WATER BASED PERSONAL LUBRICANT

From the #1 Doctor recommended personal lubricant brand, K-Y Brand Ultragel personal lubricant has a unique water-based liquid gel formula that quickly prepares you for sexual intimacy and eases the discomfort of vaginal dryness for women during sex. The unique gel formula is not sticky or greasy and easily washes off. A smooth gel that is not too thick or too thin. Enhance the experience of intimacy and feel a natural closeness.




3075203 4.5oz
8174323 1.5 oz

# K-Y LIQUID WATER BASED PERSONAL LUBRICANT

From the #1 Doctor recommended personal lubricant brand, K-Y Brand Liquid personal water-based lubricant helps bring comfort and pleasure to your most intimate moments. Designed to feel gentle and natural K-Y Liquid Personal Lubricant has a water-based, non-greasy formula that quickly prepares you for sexual intimacy and eases the discomfort of personal dryness for women during sex. Do not use if quality seal on the opening of the tube is broken or missing.




3051041 5oz

# K-Y JELLY WATER BASED PERSONAL LUBRICANT

From the #1 Doctor recommended personal lubricant brand, K-Y Brand Jelly personal lubricant has a water-based, fragrance-free, non-greasy formula that quickly prepares you for sexual intimacy and eases the discomfort of vaginal dryness during sex. Recommended by gynecologists.

Made in 1904, K-Y Jelly is our classic lube. Use for everyday comfort and more pleasurable sex.

For the days you just can't, now you can. It's completely normal for lubrication to vary everyday. So it's normal to do something about it.




3076909 5oz

# K-Y NATURAL FEELING PERSONAL LUBE WITH ALOE VERA

You are a Natural & the feeling should be too.

Longer lasting formula contains natural ingredients including aloe vera

Water based formula that is NOT made with parabens, glycerin, hormones, alcohol or fragrances

Compatible with natural rubber latex condoms

Your natural lubrication varies every day, so it's natural to do something about it.

Containing aloe vera, this lube provides a natural feel for your pleasure. Enjoy.




3076909 5oz

# VEET SUGAR WAX HAIR REMOVER

[Perfect for 1st time Waxers]: Veet Sugar wax is perfect for 1st time Waxers and effectively removes hair, which is at least 5mm

[Water rinsable formula]: The sugar wax for Women containing essential oils and floral vanilla fragrance, can be rinsed off easily with water

[Naturally Sourced ingredients]: enriched with 99% naturally derived ingredients to give you long - lasting results and leave your skin feeling moisturized and touchably smooth

[Temperature indicator]: Veet Sugar wax can be microwaved or heated in boiling water prior to using. Includes spatula with temperature indicator to apply the wax and remove hair

[Dermatologist tested]: tested hair removal wax, designed to use for legs, arms, underarms, bikini hair removal, upper lip, cheeks and chin



3102404 6/1ct

BLOOD HURST & O' REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2021.

*s/  Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com