1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  THOMAS J. O'REARDON II (247952)
   501 West Broadway, Suite 1490
3  San Diego, CA  92101
   Tel: 619/338-1100
4  619/338-1101 (fax)
   tblood@bholaw.com
5  toreardon@bholaw.com

6  Class Counsel

7  [Additional Counsel Appear on Signature Page]

8              **UNITED STATES DISTRICT COURT**

9      **NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

10 GORDON NOBORU YAMAGATA and          Case No. 3:17-cv-03529-VC
   STAMATIS F. PELARDIS, individually and
11 on behalf of all others similarly situated,   **PLAINTIFFS' NOTICE OF UNOPPOSED
                                                 JOINT MOTION AND MOTION FOR
12              Plaintiffs,                       PRELIMINARY APPROVAL**

13        v.                                      **CLASS ACTION**

14 RECKITT BENCKISER LLC,                        Hrg Date:   March 25, 2021
                                                 Time:       2:00 p.m.
15              Defendant.

16                                               District Judge Vince Chhabria
                                                 Courtroom 4, 17th Floor
17
                                                 Complaint Filed:    June 19, 2017
18
                                                 **JURY TRIAL DEMANDED**
19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

1

**NOTICE OF MOTION AND MOTION**

2     PLEASE TAKE NOTICE that on March 25, 2021, at 2 p.m., in Courtroom 4, 17th Floor,

3     450 Golden Gate Avenue, San Francisco, California, before the Honorable Vince Chhabria, and

4     pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs, individually and on behalf of the

5     proposed Settlement Class, and Defendant Reckitt Benckiser LLC will and hereby do jointly move

6     for preliminary approval of class action Settlement Agreement, conditional certification of

7     Settlement Class, and approval of Class Notice.

8     Plaintiffs respectfully move this Honorable Court for entry of an Order: (1) granting

9     preliminary approval of the Settlement; (2) approving and directing notice as set forth in the Class

10    Notice Program attached as Exhibit 4 to the Settlement Agreement; (3) conditionally certifying the

11    Settlement Class for Settlement purposes; (4) approving the form and content of the forms of Class

12    Notice attached as Exhibits 5-9 to the Settlement Agreement; (5) appointing Plaintiffs Gordon

13    Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol

14    Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman as Class Representatives;

15    (6) appointing Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP

16    as Class Counsel; (7) appointing Epiq Class Action and Claims Solutions as Settlement

17    Administrator; and (8) scheduling a Final Approval Hearing to consider entry of a final order

18    approving the Settlement, final certification of the Settlement Class for settlement purposes only,

19    and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

20    This joint motion is based upon this notice of motion, Plaintiffs' memorandum in support of

21    the motion for preliminary approval and certification of the Settlement Class, the declarations of

22    Timothy G. Blood, Brenda A. Frederick, and Cameron R. Azari, and all supporting exhibits, the

23    complete file and record in this action, and such oral argument as the Court may consider in deciding

24    this motion.

25    Dated: March 2, 2021                    BLOOD HURST & O'REARDON, LLP
                                               TIMOTHY G. BLOOD (149343)
26
                                                  By:        *s/ Timothy G. Blood*
27                                                       TIMOTHY G. BLOOD

28

BLOOD HURST & O' REARDON, LLP

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................................1

II.    HISTORY OF THE LITIGATION ........................................................................2

    A.    The Complaints ..........................................................................................2

    B.    Discovery ...................................................................................................3

    C.    Expert Reports and Depositions .................................................................5

    D.    Class Certification ......................................................................................6

    E.    Defendant's Motion for Summary Judgment .............................................7

    F.    Settlement Negotiations .............................................................................7

III.   THE SETTLEMENT ..............................................................................................8

    A.    The Settlement Class ..................................................................................8

    B.    Settlement Relief ........................................................................................9

        1.    Class Member Refunds ..................................................................9

        2.    Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Awards ........................................11

    C.    The Class Notice Program ........................................................................11

IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ...........................14

    A.    The Strengths of Plaintiff's Case and Inherent Risks of Continued Litigation Weigh in Favor of Preliminary Approval ...............................15

    B.    The Risk, Complexity, Expense, and Duration of the Litigation ............16

    C.    The Settlement Provides Significant Relief .............................................16

    D.    The Extent of Discovery and Stage of Proceedings ................................18

    E.    The Experience and Views of Counsel ....................................................18

    F.    The Service Awards and Attorneys' Fees and Expenses Are Prima Facie Fair, Reasonable, and Accurate to Permit Notice to be Sent .............................19

V.    THE CLASS NOTICE PROGRAM SHOULD BE APPROVED ........................22

VI.   THE PROPOSED CLASS SHOULD BE CERTIFIED .......................................24

BLOOD HURST & O' REARDON, LLP

00174227

| | | | |
|---|---|---|---|
| A. | | The Rule 23(a) Requirements Are Satisfied ............................................................24 |
| | 1. | The Settlement Class Is Sufficiently Numerous ...........................................24 |
| | 2. | There Are Common Questions of Law and Fact............................................24 |
| | 3. | The Class Representatives' Claims Are Typical ...........................................25 |
| | 4. | The Class Representative and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class............................26 |
| B. | | The 23(b)(3) Requirements Are Satisfied ..............................................................26 |
| | 1. | Common Questions Predominate....................................................................27 |
| | 2. | Class Treatment Is Superior to Other Forms of Adjudication ....................27 |

VII. PROPOSED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS .........................................................28

VIII. THE PROPOSED SCHEDULE OF EVENTS .....................................................................29

IX. CONCLUSION ..................................................................................................................29

BLOOD HURST & O' REARDON, LLP

00174227

Case No. 3:17-cv-03529-VC

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla,*
   787 F.3d 1218 (9th Cir. 2015) ................................................................14

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................26, 27, 28

*In re Anthem, Inc. Data Breach Litig.,*
   No. 15-MD-02617, 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018) ................20, 22

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ................................................................21

*Browne v. Am. Honda Motor Co.,*
   No. CV 09-06750, 2010 U.S. Dist. LEXIS 145475 (C.D. Cal. July 29, 2010) ........................16

*Buccellato v. AT&T Operations, Inc.,*
   No. C10-00463, 2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) ................................21

*Campbell v. Facebook, Inc.,*
   951 F.3d 1106 (9th Cir. 2020) ................................................................18

*In re Capacitors Antitrust Litig.,*
   No. 3:14-cv-03264, 2017 U.S. Dist. LEXIS 99616 (N.D. Cal. June 27, 2017) ........................21

*Carr v. Tadin, Inc.,*
   No. 12-CV-3040, 2014 U.S. Dist. LEXIS 179835 (S.D. Cal. Apr. 18, 2014) ........................23

*Carrigan v. Reckitt Benckiser, LLC,*
   No. 1:18-cv-07073, 2020 U.S. Dist. LEXIS 201083 (N.D. Ill. Oct. 27, 2020) .............. *passim*

*Chun-Hoon v. McKee Foods Corp.,*
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................18

*Class Plaintiffs v. Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ................................................................14

*Deposit Guar. Nat'l Bank v. Roper,*
   445 U.S. 326 (1980) ................................................................28

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ................................................................22

*In re First Alliance Mortg. Co.,*
   471 F.3d 977 (9th Cir. 2006) ................................................................25

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

00174227

*Fowler v. Wells Fargo Bank, N.A.*,
No. 17-cv-02092, 2019 U.S. Dist. LEXIS 12533 (N.D. Cal. Jan. 25, 2019) ............................22

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ............................................................................................................27

*Glendora Cmty. Redevelopment Agency v. Demeter*,
155 Cal. App. 3d 465 (1984) ............................................................................................21

*In re Google Referrer Header Privacy Litig.*,
869 F.3d 737 (9th Cir. 2017) ............................................................................................21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................................... *passim*

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ............................................................................................25

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) ............................................................................................17

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09md2087, 2014 U.S. Dist. LEXIS 162106 (S.D. Cal. Nov. 18, 2014) ............................22

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ...........................................................................21, 24, 27

*Jack v. Hartford Fire Ins. Co.*,
No. 3:09-cv-1683, 2011 U.S. Dist. LEXIS 118764 (S.D. Cal. Oct. 13, 2011) ........................14

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
No. 16-cv-03698, 2018 U.S. Dist. LEXIS 80219 (N.D. Cal. May 11, 2018) .........................22

*Jordan v. Cnty. of L.A.*,
669 F.2d 1311 (9th Cir. 1982) ............................................................................................24

*Keilholtz v. Lennox Health Prods., Inc.*,
268 F.R.D. 330 (N.D. Cal. 2010) ......................................................................................25

*Kim v. Space Pencil, Inc.*,
No. C 11-03796, 2012 U.S. Dist. LEXIS 169922 (N.D. Cal. Nov. 28, 2012) ........................16

*Lafitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016)........................................................................................................21

*Lerma v. Schiff Nutrition Int'l, Inc.*,
No. 11cv1056-MDD (S.D. Cal. Nov. 3, 2015) ...............................................................17, 18

*In re LinkedIn User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......................................................................................18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ................................................................................26

*In re M.L. Stern Overtime Litig.*,
    No. 07-CV-0118, 2009 U.S. Dist. LEXIS 31650 (S.D. Cal. Apr. 13, 2009) ...........18

*In re M.L. Stern Overtime Litig.*,
    No. 07-CV-0118, 2009 U.S. Dist. LEXIS 94671 (S.D. Cal. Oct. 9, 2009) ..............20

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ...................................................................................20

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ..................................................................................................22

*Nachsin v. AOL, LLC*,
    663 F.3d 1034 (9th Cir. 2011) .................................................................................10

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................14, 18

*In re NCAA Athletic Grant-In-Aid Antitrust Litig.*,
    No. 4:14-md-2541, 2017 U.S. Dist. LEXIS 201108 (N.D. Cal. Dec. 6, 2017) ........22

*O'Connor v. Uber Techs.*,
    No. 13-cv-03826, 2019 U.S. Dist. LEXIS 54608 (N.D. Cal. Mar. 29, 2019) ..........20

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................................................14, 15

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................................................22

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .............................................................................20, 21

*Patel v. Trans Union LLC*,
    308 F.R.D. 292 (N.D. Cal. 2015) .............................................................................28

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...............................................................18, 19, 20, 23

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ..........................................................................10, 21

*In re Skechers Toning Shoe Prods. Liab. Litig.*,
    No. 3:11-MD-2308, 2012 U.S. Dist. LEXIS 113641 (W.D. Ky. Aug. 13, 2012) .....23

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ...................................................................................15

BLOOD HURST & O' REARDON, LLP

vi                                                    Case No. 3:17-cv-03529-VC

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

*Spann v. J.C. Penney Corp.*,
 211 F. Supp. 3d 1244 (C.D. Cal. 2016) ...................................................................21

*Staton v. Boeing*,
 327 F.3d 938 (9th Cir. 2003) ...............................................................................26

*Steiner v. Am. Broad. Co., Inc.*,
 248 Fed. Appx. 780 (9th Cir. 2007) ......................................................................21

*Sternwest Corp. v. Ash*,
 183 Cal. App. 3d 74 (1986) ..................................................................................21

*In re Syncor ERISA Litig.*,
 516 F.3d 1095 (9th Cir. 2008) ..............................................................................14

*U.S. v. McInnes*,
 556 F.2d 436 (9th Cir. 1977) ................................................................................15

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) ................................................................................28

*Van Bronkhorst v. Safeco Corp.*,
 529 F.2d 943 (9th Cir. 1976) ..........................................................................14, 15

*Vasquez v. Super. Ct.*,
 4 Cal. 3d 800 (1971) .............................................................................................28

*Vincent v. Hughes Air West, Inc.*,
 557 F.2d 759 (9th Cir. 1977) ................................................................................22

*Vizcaino v. Microsoft Corp.*,
 290 F.3d 1043 (9th Cir. 2002) ..............................................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
 No. 2672, 2016 U.S. Dist. LEXIS 145701 (N.D. Cal. Oct. 18, 2016) ......................18

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .............................................................................................25

*Wershba v. Apple Computer, Inc.*,
 91 Cal. App. 4th 224 (2001) .................................................................................21

*Wiener v. Dannon Co.*,
 255 F.R.D. 658 (C.D. Cal. 2009) ...............................................................25, 26, 28

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
 No. 16-MD-02752, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) ..........20

*Yamagata v. Reckitt Benckiser LLC*,
 No. 17-cv-03529, 2019 U.S. Dist. LEXIS 117599 (N.D. Cal. June 5, 2019) .......... *passim*

BLOOD HURST & O' REARDON, LLP

Case No. 3:17-cv-03529-VC

00174227

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001)................................................................27, 28

**Statutes**

28 U.S.C. § 1332 ....................................................................................................14

Cal. Bus. & Prof. Code § 17200, *et seq.* .........................................................2, 6, 25

Cal. Civ. Code § 1750 (CLRA)........................................................................2, 6, 25

**Rules**

Fed. R. Civ. P.
    rule 23 ............................................................................................................23, 24
    rule 23(a) ...................................................................................................24, 25, 26
    rule 23(b)(3) ..............................................................................................26, 27, 28
    rule 23(e)(2)..................................................................................................1, 14
    rule 23(g)(1) ....................................................................................................28
    rule 26 ....................................................................................................2, 5, 6, 8

**Secondary Sources**

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1778 (3d ed. 2005) ........................................................................................27

BLOOD HURST & O' REARDON, LLP

00174227

<div style="text-align:left; font-variant: small-caps;">BLOOD HURST & O' REARDON, LLP</div>

### MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs submit this memorandum in support of the Joint Motion for Preliminarily Approval of Class Action Settlement. The Stipulation of Settlement ("Settlement" or "SA") is concurrently filed. ECF No. 202.

## I.     INTRODUCTION

Plaintiffs seek preliminary approval of the largest dietary supplement class action settlement ever reached. This landmark nationwide settlement of more than $53 million was achieved after nearly four years of hard-fought litigation and just weeks from the final pretrial conference.

The proposed Settlement readily meets the "fair, reasonable, and adequate" standard under Federal Rule of Civil Procedure 23(e)(2) for preliminary approval. Under the Settlement, without the need for proof of purchase, Class Members will receive cash refunds for up to three purchases of the Move Free Advanced joint health dietary supplement for a total of $66 ($22 per purchase) or up to $225 worth of a variety of consumer products which they choose ($75 per purchase), valued at wholesale, and packaged and shipped at Defendant's expense. These amounts, other than shipping and handling, will be drawn against a $50 million non-reversionary Common Fund. Class Members with proof of purchase will receive refunds for all their purchases. If all of the fund is not claimed, refund amounts will be increased by up to three times the amount claimed ($198 in cash or $675 in products valued at wholesale). Recoveries will be reduced pro rata if the Common Fund is over-subscribed. The class notice and administration costs, attorneys' fees (not to exceed 25% of the Common Fund), litigation expenses, and Class Representative service awards will be paid from the Common Fund.

In this action, Plaintiffs allege Defendant Reckitt Benckiser LLC falsely advertised its glucosamine joint health dietary supplement "Move Free Advanced" ("MFA")[1] by claiming it provides joint health benefits that it does not provide. The litigation has lasted nearly four years, involved discovery motions, class certification, summary judgment, 30 depositions, over 20

---

[1]     "Move Free Advanced" or "MFA" refers to the glucosamine supplement products marketed and distributed by Reckitt Benckiser called Move Free Advanced, Move Free Advanced Plus MSM, and Move Free Advanced Plus MSM & Vitamin D.

subpoenas, more than 303,000 pages of documents (exceeding 116 GB), reports and declarations from 14 designated experts, and many days of mediations with three different neutrals.

The Settlement will also resolve the parallel class action pending in the Northern District of Illinois ("*Carrigan*"), where a class of an Illinois MFA purchasers was certified, and the claims of six other named plaintiffs who were about to file a class action in the District of Vermont on behalf of a MFA purchasers from states other than California, New York, and Illinois.

Because the proposed Settlement and notice plan meet all applicable standards, Plaintiffs respectfully request the Court: (1) grant preliminary approval of the Settlement; (2) approve the form and content of the class notices, approve the Class Notice Program and order that the Settlement Class be noticed as set forth in the Class Notice Program; (3) conditionally certify the Settlement Class; (4) appoint the Plaintiffs as Class Representatives; (5) appoint Timothy G. Blood and Thomas J. O'Reardon of Blood Hurst & O'Reardon, LLC as Class Counsel; (6) appoint Epiq Class Action and Claims Solutions as the Settlement Administrator; and (7) enter the proposed schedule, including setting a date for the Final Approval Hearing.

## II.     HISTORY OF THE LITIGATION

The Settlement was reached after extensive litigation conducted in both the Northern District of California and the Northern District of Illinois. It included a full range of motion practice, class certification in two courts, summary judgment, multiple motions to strike expert evidence, substantial party and third-party discovery, Rule 26 reports and motion related declarations from 15 designated experts, and seven formal mediation sessions with three different mediators and numerous additional mediated and non-mediated negotiations. The litigation is detailed in the concurrently filed Declaration of Timothy G. Blood ("Blood Decl."). The following is a brief recitation of this history.

### A.     The Complaints

This first lawsuit was filed on June 22, 2017, by plaintiffs Yamagata and Pelardis alleging Defendant violated California's CLRA, UCL, and FAL, and New York General Business Law section 349 and 350 ("GBL") by advertising MFA as providing joint health benefits that it does not provide. ECF No. 1. On August 11, 2017, a First Amended Complaint was filed. ECF No. 24.

Defendant answered the complaint on August 25, 2017. ECF No. 25. On March 2, 2021, the operative Second Amended Complaint was filed on behalf of a nationwide class. ECF No. 201.

On October 22, 2018, plaintiff Maureen Carrigan filed a second lawsuit in the Northern District of Illinois on behalf of herself and a multistate class, or in the alternative an Illinois class of MFA purchasers.

A complaint on behalf of a class of Move Free Advance purchasers from states other than California, New York and Illinois was prepared for filing in the District of Vermont. It was sent to Defendant and as a result, on September 22, 2020, the parties entered into a tolling agreement to temporarily avoid additional litigation while *Yamagata* was heading towards trial and the parties were discussing settlement.

**B.    Discovery**

Discovery was comprehensive. It began shortly before the initial CMC on October 3, 2017, up through the day the Settlement term sheet was executed on January 27, 2021.

In total, Plaintiffs served 29 interrogatories, 422 requests for admissions, and 124 document requests. Following negotiations over protocols for the search and production of electronically stored information, Defendant produced over 303,000 pages of documents representing over 116 gigabytes of ESI. Blood Decl., ¶¶ 8-10. Class Counsel created dedicated document databases for the productions and reviewed, analyzed, and categorized the discovery. *Id*. The documents were used extensively throughout the litigation—with deponents, expert witnesses, and motion practice. *Id.*

Defendant also took substantial discovery from Plaintiffs Yamagata, Pelardis, and Carrigan. Defendant served 44 interrogatories, 170 requests for admissions, and 70 document requests. *Id.*, ¶¶ 20-21. As a result, Plaintiffs searched for and produced documents and other information concerning the actions of the plaintiffs and their contentions. *Id*. Separate and apart from responding to formal discovery requests, Plaintiffs Yamagata, Pelardis, and Carrigan also were deposed, devoted time and effort providing information to assist in the litigation, participated in periodic telephone conferences, and reviewed and approved pleadings, including complaints and the Settlement. *Id*. Plaintiffs Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman also devoted time and effort to assist in the litigation. Each reached out

3

Case No. 3:17-cv-03529-VC

to and were interviewed by counsel, volunteered to serve as named plaintiffs and proposed class representatives, and reviewed and approved pleadings, including the complaints in which they are named. They were prepared to file a class action complaint on behalf of purchasers of states other than those covered by *Yamagata* and *Carrigan*, but the parties reached an agreement to toll their claims and those of the proposed multistate class. *Id.*

Throughout the litigation, the Parties met and conferred about discovery and written responses and, as a result, exchanged multiple rounds of amended responses. Generally, the parties were able to work through disagreements over discovery. Once, discovery motions were filed after the parties reached an impasse. On June 28, 2018, following oral argument, Magistrate Judge Illman issued orders granting in part and denying in part Plaintiffs' motion to compel and Defendant's motion to compel. ECF Nos. 55-57.

Many depositions were taken. Plaintiffs took 25 depositions and defended five. These depositions, which involved over 405 exhibits, included three corporate designee depositions and 15 depositions of Defendant's current and former employees. Blood Decl., ¶ 19. The topics explored covered every factual issue in the cases. They included testimony from Defendant's employees responsible for marketing, advertising, sales, science, and regulatory compliance. *Id.*

Plaintiffs obtained substantial discovery from third parties, including subpoenas to the eight largest retailers of MFA. They account for 90% of MFA sales. Blood Decl., ¶¶ 14-15. Following meet and confer meetings with each of the retailers, they produced detailed retail sales information about the MFA products. *Id.* Several retailers provided updated data as the litigation progressed and the class period lengthened. *Id.* This type of information was critical because Defendant, as the wholesaler, lacked sufficient retail sales information. Plaintiffs have continued meeting and conferring with the retailers to obtain Class Member contact information to use for Class Notice. *Id.*; *see also* § III.C below.

Plaintiffs also subpoenaed the manufacturer of FruiteX-B, one of the main ingredients in MFA, to obtain information about the scientific research it funded and conducted on the ingredient and its sales to Defendant. As a result of these efforts, Plaintiffs received about 4,275 pages of highly

BLOOD HURST & O' REARDON, LLP

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

1   probative information they used at class certification, summary judgment, and in connection with

2   Rule 26 expert reports and to drive settlement. Blood Decl., ¶ 16.

3       Plaintiffs also subpoenaed four researchers involved with the FruiteX-B studies, obtaining

4   valuable documents and then deposing three of them. *Id.*, ¶¶ 16-18. After analyzing the data

5   obtained, Plaintiffs then contacted two of the international scientific journals that published three

6   FruiteX-B studies to alert them to irregularities in the studies they published, which led to retractions

7   of those studies and declarations from purported members of the journal advisory boards who

8   attested to possible fraudulent conduct.

9       Throughout the litigation, Class Counsel communicated with many dozens of Class

10   Members who called and wrote in about the litigation. Class Counsel collected and analyzed

11   information from these potential Class Members, some of whom stepped forward as proposed class

12   representatives or were willing to be called as witnesses at trial.

13       **C.      Expert Reports and Depositions**

14       Fourteen designated experts prepared Rule 26 reports and seven were deposed before the

15   cases settled. Blood Decl., ¶¶ 22-25. In connection with Plaintiffs' motions for class certification

16   and Defendant's motion for summary judgment, Plaintiffs retained three experts who provided

17   written reports on topics relating to complex issues of science and statistics. Plaintiffs' experts were

18   each highly qualified in their fields. One expert is a leading expert on potential therapeutic

19   interventions to support joint health, is an invited co-author of expert panel professional guidelines

20   for arthritis treatments and was one of the first researchers to publish results from a non-industry

21   clinical trial involving glucosamine. Another runs one of the only laboratories in the world capable

22   of conducting the gold standard pre-clinical studies on the joint structural and biomechanical (i.e.,

23   functional) effects of proposed osteoarthritis treatment agents such as glucosamine. This expert

24   designed and conducted these tests for MFA as part of his work on this litigation. A third expert, a

25   former Professor of Statistics and Dean of Faculty at Columbia University, provided testimony

26   about his analysis of raw study data from clinical research relating to FruiteX-B, an ingredient in

27   MFA.

28

BLOOD HURST & O' REARDON, LLP

1   In total, Class Counsel spent significant time working with seven well-respected experts who

2   each prepared and provided Rule 26 reports. In addition to scientific research, professional medical

3   guidelines, and statistical analysis of scientific studies, Plaintiffs' experts also prepared reports

4   related to damages, advertising and marketing strategy, consumer perception, consumer surveys and

5   professional ethics. In total, Plaintiffs' experts submitted eleven Rule 26 reports. *Id.*

6   Defendant also retained eight experts. These experts provided ten written reports and five of

7   them were deposed. Their testimony related to biostatistics, damages, consumer surveys, advertising

8   strategy, scientific evidence relating to the ingredients at issue, and professional ethics. *Id.*, ¶ 25.

9   **D.    Class Certification**

10   Class certification was heavily contested, involving 136 exhibits, declarations from retained

11   experts and Defendant's fact witnesses, a motion to strike evidence, and supplemental submissions.

12   ECF Nos. 84-87, 89-90, 93-94, 96, 109. Following briefing and oral argument, each party submitted

13   two supplemental briefs. Plaintiffs sought certification of a California class for claims under

14   California Business & Professions Code § 17200, *et seq.* (the "UCL") and Cal. Civ. Code § 1750,

15   *et seq.* (the "CLRA"), a California "senior class" for claims under the CLRA, and a New York class

16   for claims under sections 349 and 350 of the GBL. On June 5, 2019, the Court granted in part and

17   denied in part the motion for class certification. The Court granted certification of the claims

18   asserted by the California and New York classes, but denied certification of the California senior

19   class claim. ECF No. 110.

20   Class certification was also obtained in the related *Carrigan* action. The motion was fully

21   briefed and included competing sur-replies. Defendant also moved to exclude the opinions and

22   expert report of one of plaintiff's experts. On October 27, 2020, the Hon. Charles R. Norgle granted

23   plaintiff's motion for class certification, appointed Class Counsel here as class counsel in *Carrigan*,

24   and certified a class of all persons who purchased MFA in Illinois for claims under section 2 of the

25   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, et seq.

26   (the "ICFA"). *See Carrigan v. Reckitt Benckiser, LLC*, No. 1:18-cv-07073, 2020 U.S. Dist. LEXIS

27   201083 (N.D. Ill. Oct. 27, 2020).

28

BLOOD HURST & O' REARDON, LLP

### E.   Defendant's Motion for Summary Judgment

On September 26, 2019, Defendant moved for summary judgment. Defendant argued Plaintiffs' claims were all preempted by the federal Food, Drug and Cosmetics Act ("FDCA"), that Plaintiffs could not prove MFA advertising was false, and that Plaintiffs' full refund theory fails because MFA is not completely worthless as a matter of law. ECF No. 116.

In support of its motion, Defendant submitted voluminous exhibits and declarations from two outside science experts. Plaintiffs opposed the motion by submitting declarations from three retained experts who evaluated the scientific evidence concerning MFA and its ingredients. ECF No. 119. Plaintiffs also moved to exclude the opinions and testimony from both of Defendant's experts. ECF Nos. 120-121. In turn, Defendant moved to exclude the opinions and testimony from one of Plaintiffs' experts. ECF No. 132. Each of these motions were accompanied by additional expert declarations. ECF Nos. 132-1, 139-6, 140-1, 140-2. Evidentiary objections and responses were filed and Plaintiffs opposed motions to seal certain evidence. ECF Nos. 131, 137, 143. On December 12, 2019, the Court held oral argument, and on January 7, 2020, supplemental briefing was ordered. ECF No. 144. The Parties responded to the supplemental briefing order, submitted supplemental authority, and opposed each other's submissions. ECF Nos. 147-149. On March 3, 2020, the Court denied Defendant's motion for summary judgment in its entirety. ECF No. 164.

Defendant petitioned the Court for an order certifying an immediate interlocutory appeal on a preemption issue. ECF No. 172. Plaintiffs opposed the motion. ECF Nos. 173. On May 18, 2020, the Court denied Defendant's motion. ECF No. 176.

### F.   Settlement Negotiations

The Parties participated in seven formal mediation sessions. The first was held on May 2, 2018, in Chicago before the Honorable Wayne R. Anderson (Ret.). The next was on May 22, 2019, in San Francisco with the Hon. Jacqueline Corley. The third set included five virtually held mediations with Robert A. Meyer, Esq. on August 25, 2020, September 1, 2020, September 4, 2020, September 16, 2020, and January 5, 2021. Blood Decl., ¶¶ 32-35. These settlement negotiations occurred at various stages of the litigation: before the motion for class certification was filed; following complete briefing on class certification; after class certification and summary judgment

00174227

BLOOD HURST & O' REARDON, LLP

was decided, but before the exchange of Rule 26 expert reports; and following the exchange of Rule 26 rebuttal reports. In connection with these efforts, the Parties submitted and exchanged detailed mediation statements setting forth their respective views about the strengths and weaknesses of their cases. These settlement negotiations occurred while the Parties were preparing for trial and continuing to litigate discovery and other issues. The last formal mediation session was followed by numerous telephonic conferences and email exchanges with the assistance of Mr. Meyer, and three days of in-person meetings until a memorandum of understanding was signed the evening of January 27, 2021. Over the past month, the Parties continued to negotiate the written terms and details of the Settlement, interviewed and obtained competitive bids from class notice and settlement administrators, and exchanged numerous drafts of settlement documents. *Id.*, ¶ 35.

Every aspect of this Settlement was heavily negotiated, including the overall dollar amount of the Settlement and each aspect of the Settlement Agreement and exhibits, including the benefit amounts available to individual Class Members and details surrounding the Class Notice. *Id.* Class Counsel believe the Settlement represents a good and fair outcome that readily meets the fair, reasonable and adequate standard, and is in the best interests of the Settlement Class. *Id.*, ¶ 82.

## III.   THE SETTLEMENT

### A.   The Settlement Class

The proposed Settlement Class is defined as:

> All persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to the date of the Preliminary Approval Order.

SA, § II.46. Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class. *Id.*

BLOOD HURST & O' REARDON, LLP

**B.      Settlement Relief**

**1.      Class Member Refunds**

Under the Settlement, Defendant will create a $50 million non-reversionary Common Fund to compensate Class Members, pay for Class Notice, and any award of attorneys' fees, expenses, and Class Representative service awards. The Defendant will also separately pay the shipping and handling costs of the Product Benefit, which is estimated to cost $3.44 million.

Class Members will receive $22 cash for each unit of MFA they purchased. SA, § IV.3. This amount is the average retail price paid by Class Members. Class Members may claim reimbursement for up to 3 purchases without proof of purchase, for a total of $66. Three purchases are slightly more than the average number of purchases made by Class Members, which is 2.6. Blood Decl., ¶ 42. Those with proof of purchase may claim as many refunds as they have proof of purchase.

As an alternative to the Cash Payment, Class Members may choose $75 worth of a variety of products valued at wholesale for each purchase of MFA. As with the cash payment, Class Members may claim up to three purchases without proof of purchase for a total of $225 worth of product, or the number of purchases beyond three with proof of purchase. This is referred to as the "Product Benefit" in the Settlement Agreement. Claimants will choose cash or products during the opt-out period. Class Members will be able to choose the available products from the Settlement Website in an easy to use "shopping cart" format where a running total of the amount of Product Benefit remaining will be tallied as a claimant chooses products to ensure the claimant uses the full amount of the Product Benefit to which he or she is entitled. Defendant will separately pay the product shipping and handling, which will not be deducted from the Common Fund. SA, §§ II.30, IV.4.d, V.9. The Settlement Administrator estimates shipping and handling will cost between $3.9 and $4.2 million. See Declaration of Cameron R. Azari, Esq. re Class Notice Program ("Azari Decl."), ¶ 40 n.11.

To be eligible for reimbursement, Class Members need only complete and timely submit online or by mail a simple Claim Form. SA, § V, Ex. 10 (Claim Form). The Claim Form has just two questions: (1) how many units of MFA were purchased, and (2) does the claimant want cash or product. *Id.*

BLOOD HURST & O' REARDON, LLP

The Common Fund will be reduced by the amount of cash and Product Benefit (valued at wholesale) claimed. No portion of the Common Fund will revert to Defendant. Any funds remaining after calculating valid claims will be distributed to Claimants by increasing the amount of their valid cash or product claims up to three times the original claim amount. SA, § IV.5.b. In the event such increased amount would exceed three times the original claim amount, a second round of class notice and an additional claim-in opportunity will occur. *Id.*, § IV.5.c. If money remains after this Supplemental Claim Deadline, the valid claims will again be calculated and increased pro rata until the Net Fund is exhausted. *Id.* If not enough money to cover all claims exists, cash claims will be reduced *pro rata. Id.*, § IV.5.a.

The Settlement Administrator will decide whether the submitted claim forms are complete and timely. *Id.*, § V.4. Class Members will be given an opportunity to correct any incomplete claim forms, although incomplete forms are unlikely with online submission. Class Members can also appeal the Settlement Administrator's rejection of any claim. *Id.*, § V.5. The Settlement Administrator will fulfill all valid claims by sending money or the selected products to the Class Member. *Id.*, §§ V.7-8. Claimants electing cash can choose to receive a digital payment rather than a check. Digital payments are delivered faster and are less expensive to administer, leaving more of the Common Fund for Class Members. SA, Ex. 10 (Claim Form); Azari Decl., ¶ 40.

Given the large size of the cash and product awards, the combined Direct Notice and Publication Notice process, the second Direct Notice and Supplemental Claim process, and three-time upward adjustment provision, the Parties anticipate there will be only a de minimis amount of funds remaining because of occurrences like uncashed checks. The Parties propose that any remaining money be distributed to the Orthopaedic Research Society in accordance with the *cy pres* doctrine. *Nachsin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) (*cy pres* recipient should be related to the nature of the lawsuit and the class members, including their location); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).

The Orthopaedic Research Society is the most prestigious musculoskeletal research society with top researchers and clinicians from around the U.S. and abroad. It is a 501(c)(3) non-profit whose mission is to advance orthopaedic research and education and increase awareness and

BLOOD HURST & O' REARDON, LLP

understanding of the burden of osteoarthritis and other musculoskeletal conditions. *See* Declaration of Brenda Frederick Re: Orthopaedic Research Society, ¶¶ 2-3. The Orthopaedic Research Society has a long history of funding scientific research, education, and advocacy efforts, including awarding research grants. *Id.*, ¶ 5. As part of its mission, the Orthopaedic Research Society created the Osteoarthritis Research Interest Group, composed of some of the world's leading OA researchers. The Group's goal is to stimulate and propose new strategic scientific approaches to translate research into clinically relevant patient-focused outcomes for the treatment and eventual Osteoarthritis and its symptoms. *Id.*, ¶ 3. The Orthopaedic Research Society will ear-mark any *cy pres* award to its OA education and research-related efforts. *Id.*, ¶ 6.

### 2. Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Awards

The cost of class notice and settlement administration (other than shipping and handling costs for the Product Benefit), attorneys' fees and expenses, and the Class Representative service awards will be paid from the Common Fund. SA, § II.16. Defendant agrees to not oppose Plaintiff's Counsel's application for attorneys' fees of up to 25% of the Common Fund ($12,500,000) plus reimbursement of litigation expenses. SA, §§ IX.A-B. Defendant also agrees not to oppose a request for Court-awarded service awards of $7,500 to Plaintiffs Yamagata, Pelardis, and Carrigan, and $500 to Plaintiffs Coletti, Maher, Marshall, Rawls, Steele, and Tishman. SA, § IX.D.

### C. The Class Notice Program

The Parties have developed a Notice Plan with the assistance of Epiq Class Action and Claims Solutions ("Epiq" or the "Settlement Administrator"), a firm specializing in class action notice plans. *See* Azari Decl., ¶¶ 1-9. The Class Notice Program informs the Class Members of their rights and includes a comprehensive, multi-faceted plan for delivery of notice by email, U.S. mail, a settlement website, targeted Internet media campaign, and print publication.

**Direct Email and U.S. Mail Notice:** Based on conversation with the MFA retailers, most Class Members will directly receive notice of the Settlement. The Email Notice (Exs. 6-7) will be emailed to the last known email address of those Class Member whose email address is available from the records of Defendant and the subpoenaed third-party retailers. SA, § VI.C.1; Azari Decl.,

¶¶ 11-12.[2] *See also* N.D. Cal. Procedural Guidance for Class Action Settlements, § 3 (parties should consider "identification of potential class members through third-party data sources" to increase notice to class members). As described in the Azari Declaration, the Settlement Administrator will use best-in-class methods to achieve successful delivery of the Email Notice. Azari Decl., ¶ 21. As the Claim filing deadline approaches, a reminder email notice will be sent to stimulate additional claims. At least two rounds of this claims stimulation notice will be provided. *Id.*, ¶ 26.

The Postcard Notice (Ex. 8) will be sent by U.S. mail to each Class Member for whom an email address is not available, but a physical address is available. SA, § V.C.1. Prior to mailing, an industry-standard address updating process will be used for all mailing addresses and any Postcard Notices returned as undeliverable will be promptly re-mailed to any new address available through USPS information or found using third-party lookup services. *Id.*; Azari Decl., ¶¶ 23-25.

**Publication Notice:** Notice also will be disseminated through a multi-faceted online publication campaign. Through a targeted digital media campaign, the Internet Banner Advertisements (Ex. 9) will be widely disseminated. The online campaign will utilize multiple targeting layers, which include both geographic targeting and category contextual targeting based on how MFA was actually marketed to help ensure delivery to the most appropriate digital users. Azari Decl., ¶¶ 28-38. The digital notice messaging will run for 40 days. They will appear throughout the Google Display Network and Verizon (Yahoo) Audience Network families of highly trafficked websites, as well as on Facebook, Instagram, DoctorOz, Reader's Digest, WebMD, and utilize GeoFencing technology to target Costco customers (the largest MFA retailer by a vast margin), with a focus on adults aged 45 and older who have shown an interest in vitamins, supplements, glucosamine, arthritis, and joint pain. These targeted campaigns will be supplemented

---

[2] Plaintiffs subpoenaed the primary retailers of MFA (Costco, Walmart / Sam's Club, Walgreens, Rite Aid, CVS, BJ's Wholesale, and Amazon), and are in the process of gathering individually identifiable contact information for Class Members and providing that information to the Settlement Administrator. Blood Decl., ¶¶ 14-15, 59-65. As part of the Preliminary Approval Order, the Parties request an order from the Court directing the retailers to produce Class Member contact information to the Settlement Administrator, or, in the case of Amazon, to email the Amazon Email Notice to its Class Member customers to facilitate the notice process. *See* Ex. 1 (Preliminary Approval Order) at ¶¶ 11-13; SA, Ex. 7 (Amazon Email Notice).

by sponsored search listings on the three most highly visited internet search engines: Google, Yahoo! and Bing. *Id.* The Internet Banner Advertisements utilize standard Internet Advisory Board (IAB) banner advertisement sizes, multiple size banner advertisements on Facebook and Instagram, and hundreds of millions of impressions will be served. SA, Ex. 9; Azari Decl., ¶ 33. They will contain hyperlinks to link the reader to the Settlement Website, where they can easily obtain detailed information about the case and file a Claim Form. The Settlement Administrator will continuously monitor and adjust the online media to help ensure its effectiveness. Azari Decl., ¶ 35.

To build additional reach and extend exposures, notice in the form of an informational release in English and Spanish will be issued to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the United States as well as approximately 4,500 websites, online databases, internet networks and social networking media. Azari Decl., ¶ 37. These media sources include numerous, highly visited websites and blogs covering health, wellness and aging topics such as WebMD, Harvard Public Health Review, Healthy Aging, American Pharmaceutical Review, and VeryWell Health. *Id.*

**Settlement Website:** The Settlement Administrator will also create and maintain a dedicated Settlement Website (www.MoveFreeAdvancedSettlement.com) to provide potential Class Members with information about the Settlement, a general description of the lawsuit, the Settlement relief, important dates and deadlines, and Class Members' legal rights. The Settlement Website will be available in English and Spanish, contain updates on the status of the Settlement, and post relevant pleadings and Settlement-related documents, including the Settlement Agreement and its exhibits, the Long-form Notice (which will be available in English and Spanish), this memorandum, and, when filed, the Preliminary Approval Order, final approval motion, motion for an award of attorneys' fees and reimbursement of costs and expenses, the operative complaint, and the Final Judgment and Order Approving Settlement. SA, § VI.B.5; Azari Decl., ¶ 39.

**Toll-Free Telephone Hotline:** The Settlement Website, forms of Class Notice, and press release will also direct Class Members to a toll-free telephone number hosted by the Settlement

BLOOD HURST & O' REARDON, LLP

00174227

Administrator where additional information, including a live operator, is available. Azari Decl., ¶ 41; SA, § VI.C.4.

**CAFA Notice:** Notice to public officials required by the Class Action Fairness Act ("CAFA") will be sent in accordance with the provisions of that Act. *See* SA, § VI.B.6.

## IV.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

Trial courts have broad discretion in considering class action settlement approval. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In so doing, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Settlements of class actions are strongly favored. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *see also Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Class actions readily lend themselves to compromise because of the uncertainties in outcome, difficulties in proof, and lengthy duration inherent with class actions. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense.").

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

The factors used to evaluate the fairness of a class action settlement are: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Jack v. Hartford Fire Ins. Co.*, No. 3:09-cv-1683, 2011 U.S. Dist. LEXIS 118764, at *11 (S.D. Cal. Oct. 13, 2011); *see also Hanlon*, 150 F.3d at 1026 (identifying

BLOOD HURST & O' REARDON, LLP

factors). "The relative degree of importance to be attached to any particular factor will depend . . . [on] the unique . . . circumstances [of each] case." *Officers for Justice*, 688 F.2d at 625.

In addition, this Court has issued a standing order governing preliminary approval and class action settlements. *See* Standing Order for Civil Cases Before Judge Vince Chhabria, ¶ 49.

Here, all relevant factors weigh in favor of preliminary approval.

**A.      The Strengths of Plaintiff's Case and Inherent Risks of Continued Litigation Weigh in Favor of Preliminary Approval**

Courts strongly favor settlements because they resolve the inherent uncertainty on the merits, especially in class actions. *See Van Bronkhorst*, 529 F.2d at 950; *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977). The same applies to this action. The Parties disagree about the merits of the case, and there is significant uncertainty about the ultimate outcome at trial. Plaintiffs believe in the strength of their case, but Defendant has a demonstrated willingness and ability to litigate this Action through trial and appeal, if necessary.

If litigation were to proceed, Plaintiffs would face substantial hurdles obtaining and keeping a successful verdict. Federal courts continue to develop procedural hurdles that prevent or limit determination of cases on the merits or full relief. These developments are often unexpected and reflect changes to previously well-established law. The effect of these developments falls disproportionately on class actions, which are more procedure-bound than most other types of cases. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) (novel application of *Erie* Doctrine to consumer protection case by appellate court).

Here, Defendant maintains a host of procedural and substantive arguments. It asserts Plaintiffs have suffered no injury because at least one active ingredient in MFA provides the promised joint health benefits. Blood Decl., ¶¶ 68-69. Defendant retained four scientific experts and has four other highly-credentialled fact witnesses to explain why MFA works. Defendants offered Dr. Daniel Grande, who analyzed clinical and pre-clinical evidence, and Dr. Martin Lotz, an experienced osteoarthritis researcher whose laboratory regularly conducts NIH-funded research into compounds for maintaining joint health such as glucosamine. While Plaintiffs believe the totality of the evidence demonstrates the inefficacy of MFA and its ingredients, the sheer volume and

BLOOD HURST & O' REARDON, LLP

00174227

complexity of the science at issue and the high placebo rate associated with joint pain supplements that lead consumers to think they work injects substantial risk into the litigation. Defendant also argues MFA provides other benefits, so full refunds are not appropriate. *Id.*, ¶ 69. Damages are another newly evolving area in this type of action. Even if Plaintiffs prevailed at trial, Defendant likely would appeal, creating further uncertainty. *Id.*

Given the uncertainties balanced against this landmark settlement, this factor favors preliminary approval.

### B.       The Risk, Complexity, Expense, and Duration of the Litigation

The risk, expense, complexity, and duration of the case if litigation continues weighs heavily in favor of settlement approval. The Settlement provides substantial benefits to Class Members – more than any other case of its kind. The guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement. *See Hanlon*, 150 F.3d at 1026. Continued litigation is time-consuming and expensive and may not obtain any more than is immediately available through the Settlement. These uncertainties are made worse by the pandemic. The elimination of delay and expense weighs in favor of approval. *Browne v. Am. Honda Motor Co.*, No. CV 09-06750, 2010 U.S. Dist. LEXIS 145475, at *40 (C.D. Cal. July 29, 2010) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."); *Kim v. Space Pencil, Inc.*, No. C 11-03796, 2012 U.S. Dist. LEXIS 169922, at *15 (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal, as well as the financial wherewithal of the defendant.").

### C.       The Settlement Provides Significant Relief

The Settlement is the largest in a dietary supplement false advertising action, eclipsing an earlier settlement involving the same product and claims. The $50 million Common Fund allows for full refunds for the Settlement Class that is commensurate with the amount an individual Class Member would receive after a successful trial. The $22 Cash Payments represents the average retail

BLOOD HURST & O' REARDON, LLP

price paid by Class Members. Blood Decl., ¶¶ 41, 72. The optional Product Benefit provides even greater value. The Product Benefit offers a variety of free products valued at wholesale. Shipping and handling are borne by Defendant, separate and apart from the Common Fund. The Product Benefit makes available $75 in free products for each purchase of MFA. SA, §§ IV.4.c-d. Further, since the products are valued at wholesale for purposes of the Settlement, the $75 amount is an even greater benefit to Class Members.

Each Class Member may receive reimbursement for up to 3 purchases without proof of purchase, which is slightly higher than the 2.6 average number of purchases. Blood Decl., ¶ 42. Class Members are also entitled to reimbursement for all qualifying purchases with proof of purchase. The Claim Form is simple and straightforward, requiring only the claimant's name, address, number of products purchased, and selection of cash or product. The Settlement Website makes selecting cash or product easy. For product, a running total of the amount of Product Benefit remaining will be tallied as a claimant chooses products to ensure the claimant uses the full amount of the Product Benefit to which he or she is entitled. SA, § IV.4. If the Common Fund is not fully depleted, claimants will receive up to a three-fold increase in compensation, and possibly more.

Meanwhile, the Release is appropriately narrow. Class Members only release claims based on the identical factual predicate. *See* SA, §§ II.40, VIII.A; *Id.*, Exs. 6-8; *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); *see also* Standing Order for Civil Cases before Judge Vince Chhabria, at p.13. Likewise, there are no any differences between the claims to be released and the claims alleged in the operative complaint. *See* N.D. Cal. Procedural Guidance for Class Action Settlements, § 1(c).

The Settlement also is far better than other settlements in this area. This Settlement is the largest recovery in a false advertising action involving a retail product, and greatly exceeds other benchmarks, including prior class wide settlements involving this product and other glucosamine products. *See* Blood Decl., ¶¶ 72, 77-79. Class Members purchased approximately 16 million units of MFA nationwide during the Class Period for about $358 million. *Id.*, ¶ 76.

In an earlier settlement of a similar class action, *Lerma v. Schiff Nutrition Int'l, Inc.*, No. 11cv1056-MDD (S.D. Cal. Nov. 3, 2015), involving MFA and the same allegations as this one, the

BLOOD HURST & O' REARDON, LLP

settlement swept in far more consumers that included those who purchased MFA and a wide range of other products covering a longer class period. Yet, *Lerma* settled for $6.51 million and class members could only recover $3 per unit purchased for up to 4 units purchased. Blood Decl., ¶ 78.

**D.     The Extent of Discovery and Stage of Proceedings**

The extent of discovery taken and the stage of the proceedings also supports the Settlement. This factor "evaluates whether the parties have sufficient information to make an informed decision about settlement." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015).[3] "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122 (9th Cir. 2020).

The Settlement was reached shortly before the final pre-trial conference. In *Yamagata*, fact discovery was closed and expert discovery was nearly complete. Each of the cases included in the settlement were thoroughly litigated. *See* Blood Decl., ¶ 80. As a result, Class Counsel, who are experienced in prosecuting complex class action claims, were able "to make reasoned and informed settlement decisions." *In re LinkedIn*, 309 F.R.D. at 588. Moreover, the fact that the Settlement was negotiated over the course of numerous mediation sessions spanning the length of the litigation with experienced mediators demonstrates the Settlement was not collusive. *See*, *e.g.*, *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("The arms-length negotiations, including a day-long mediation before Judge Lynch, indicate that the settlement was reached in a procedurally sound manner."); *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118, 2009 U.S. Dist. LEXIS 31650, at *13 (S.D. Cal. Apr. 13, 2009) (settlement sound where it "was reached with the supervision and assistance of an experienced and well-respected independent mediator").

**E.     The Experience and Views of Counsel**

Settlements are entitled to a presumption of fairness when negotiated by experienced counsel at arm's-length. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution[.]"); *In re*

---

[3]     Unless otherwise noted, citations and internal quotations are omitted and emphasis is added.

BLOOD HURST & O' REARDON, LLP

00174227

*Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig*., No. 2672, 2016 U.S. Dist. LEXIS 145701, at \*743 (N.D. Cal. Oct. 18, 2016) ("The Settlement is also the product of arm's-length negotiations by experienced Class Counsel; as such, it is entitled to an initial presumption of fairness.").

In evaluating the fairness of consideration offered in settlement, courts should give significant weight to the negotiated resolution of the parties. "'[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Rodriguez*, 563 F.3d at 965. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Class Counsel have substantial experience serving as class counsel in consumer fraud class actions, and they endorse the Settlement as fair, reasonable, and adequate. Blood Decl., ¶¶ 6, 82; *Id.*, Ex. A.

### F.     The Service Awards and Attorneys' Fees and Expenses Are Prima Facie Fair, Reasonable, and Accurate to Permit Notice to be Sent

The class representative service awards and attorneys' fees and expenses Plaintiffs' Counsel anticipate requesting are sufficiently reasonable on their face to permit notice to be sent. The Settlement provides that subject to Court approval, the Settlement provides that service awards for the three Plaintiffs who have been deposed and otherwise assisted from the start of the litigation receive up $7,500. For those who were prepared to file a nationwide action, but did not because of an agreement of the parties, the amount is up to $500 for the additional named Plaintiffs. The service awards – compensation for the Class Representative's willingness to step forward and represent other Class Members and to compensate them for their time and effort devoted to the action – are

BLOOD HURST & O' REARDON, LLP

00174227

1   in line with awards routinely given and are "fairly typical in class action cases." *Rodriguez*, 563

2   F.3d at 958; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015)

3   (the Ninth Circuit looks to "the number of named plaintiffs receiving incentive payments, the

4   proportion of the payments relative to the settlement amount, and the size of each payment"); *In re*

5   *Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752, 2020 U.S. Dist. LEXIS 129939,

6   at *166-67 (N.D. Cal. July 22, 2020) ($7,500 awards for deposed class representatives and $2,500

7   awards for representatives not deposed); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617,

8   2018 U.S. Dist. LEXIS 140137, at *172 (N.D. Cal. Aug. 17, 2018) ($7,500 awards); *In re M.L. Stern*

9   *Overtime Litig.*, No. 07-CV-0118, 2009 U.S. Dist. LEXIS 94671, at *11 (S.D. Cal. Oct. 9, 2009)

10  ($15,000 awards). The Class Representatives have given their time and accepted the responsibilities

11  that come with being class representatives, including actively participating in the litigation to the

12  benefit of all Class Members. Blood Decl., ¶¶ 20-21. Further, no conditions are placed on the service

13  awards, and the amounts of the awards do not undermine the adequacy of the Class Representatives.

14  *See* N.D. Cal. Procedural Guidance for Class Action Settlement, § 7. The awards total less than

15  0.0005% of the Common Fund.

16          Defendant also agrees to not oppose Class Counsel's application for attorneys' fees not to

17  exceed 25% of the Common Fund ($12,500,000) plus reimbursement of reasonable litigation

18  expenses of up to $750,000. SA, §§ IX.A-B. The Parties did not negotiate attorneys' fees until after

19  they had reached agreement on the relief for Class Members. Blood Decl., ¶ 52. Further, the

20  Settlement is not contingent upon the Court approving Class Counsel's application. SA, § IX.E; *see*

21  *also O'Connor v. Uber Techs.*, No. 13-cv-03826, 2019 U.S. Dist. LEXIS 54608, at *22 (N.D. Cal.

22  Mar. 29, 2019) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir.

23  2011)).

24          Class Counsel's motion for attorneys' fees and expenses will be filed at least 14 days before

25  the deadline to object to the Settlement. *See* Standing Order for Civil Cases Before Judge Vince

26  Chhabria at p.15 ("[T]he parties must ensure that the motion for attorneys' fees is filed at least

27  14 days before the deadline for objecting to the settlement. *See In re Mercury Interactive Corp. Sec.*

28  *Litig.*, 618 F.3d 988 (9th Cir. 2010)"). As will be fully explained, the requested fee award is fair and

BLOOD HURST & O' REARDON, LLP

20                                                        Case No. 3:17-cv-03529-VC

BLOOD HURST & O' REARDON, LLP

reasonable using either the percentage-of-fund or lodestar method. In the Ninth Circuit, "[t]he percentage-of-the-fund method is preferred when counsel's efforts have created a common fund for the benefit of the class." *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264, 2017 U.S. Dist. LEXIS 99616, at *23 (N.D. Cal. June 27, 2017) (collecting cases, including *In re Bluetooth*, 654 F.3d at 942); *see also Six (6) Mexican Workers*, 904 F.2d at 1311; *Lafitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 492-95 (2016) (collecting cases). Under the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee," using 25% as a benchmark. *Hanlon*, 150 F.3d at 1029. However, "the 25% benchmark can be adjusted upward or downward, depending on the circumstances." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc). In determining the amount of the benefit conferred, the appropriate measure is the gross settlement amount, including attorneys' fees, expenses, and notice and administration costs. *See In re Online DVD-Rental*, 779 F.3d at 953 (affirming award of 25% of the gross fund: "The district court did not err in calculating the attorneys' fees award by calculating it as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses.").

Here, a fee award amounting to 25% of the Common Fund is also fair because it excludes the cost of shipping and handling and the Settlement is exceptional. Although a lodestar/multiplier crosscheck is not required, here it demonstrates the reasonableness of the requested fee award. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). In this case, the proposed 25% fee award here represents an approximate 2.39 multiplier—well within the range of routinely approved multipliers. *See* Blood Decl., ¶ 53.[4]

---

[4] "Multipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001). The court in *Glendora Cmty. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479 (1984), approved a multiplier of 12. *See also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74, 76 (1986) (case remanded with directions "to enhance the lodestar award by such factor (two, three, four or otherwise) that the court, in its discretion shall deem proper"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (3.65 multiplier); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463, 2011 U.S. Dist. LEXIS 85699, at *4-5 (N.D. Cal. June 30, 2011) (collecting cases and approving 4.3 multiplier); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016)

00174227

1  Plaintiffs' Counsel will also seek reimbursement of expenses, which should be within the

2  $750,000 amount Defendant agrees not to oppose. Blood Decl., ¶ 53. "Attorneys may recover their

3  reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In*

4  *re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Vincent v. Hughes Air*

5  *West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) (in common-fund cases, the reasonable expenses of

6  acquiring the fund can be reimbursed to counsel who has incurred the expense). As will be fully

7  detailed in the fee motion, Plaintiffs' Counsel incurred these costs for, *inter alia*, experts and

8  consultants, transcript fees, mediation fees, electronic discovery database support, sending notice of

9  pendency, filing and service expenses, travel, computer research, photocopies, postage, and

10  telephone charges. All these expenses were reasonably and necessarily incurred and are of the sort

11  that would typically be billed to paying clients in the marketplace. *See In re Hydroxycut Mktg. &*

12  *Sales Practices Litig.*, No. 09md2087, 2014 U.S. Dist. LEXIS 162106, at *193 (S.D. Cal. Nov. 18,

13  2014) (reimbursement for "filing fees, photocopies, postage, telephone charges, computer research,

14  mediation fees, and travel" because they are "the types of expenses routinely charged to paying

15  clients"); *In re Anthem*, 2018 U.S. Dist. LEXIS 140137, at *163-64 (same).

16  **V.     THE CLASS NOTICE PROGRAM SHOULD BE APPROVED**

17  The threshold class notice test is whether the distribution method is "reasonably calculated"

18  to apprise the class of the pendency of the action, the proposed settlement, and the class members'

19  rights to opt-out or object. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (quoting

20  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The court retains discretion

21  over the mechanics of the notice process, which are subject only to the broad "reasonableness"

22  standards imposed by due process. *Mullane*, 339 U.S. at 314-15. This Circuit considers settlement

23  notice "satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert

24  _____

25  ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable
multipliers."); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092, 2019 U.S. Dist. LEXIS 12533,

26  at *19 (N.D. Cal. Jan. 25, 2019) (3.46 multiplier); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No.
16-cv-03698, 2018 U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (4.375 multiplier); *In*

27  *re NCAA Athletic Grant-In-Aid Antitrust Litig.*, No. 4:14-md-2541, 2017 U.S. Dist. LEXIS 201108,
at *16 (N.D. Cal. Dec. 6, 2017) (approving 3.66 multiplier as "well within the range of multipliers

28  awarded in similar cases").

BLOOD HURST & O' REARDON, LLP

those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *Hanlon*, 150 F.3d at 1025 (notice should provide class members with the opportunity to opt-out and pursue other recovery opportunities). The notice should also present information "neutrally, simply, and understandably," including "describ[ing] the aggregate amount of the settlement fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

In accordance with the Federal Judicial Center's class notice guidelines, the proposed Long-form Class Notice is carefully written in plain language and satisfies due process. It includes: (1) basic information about the Action; (2) a description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation that any claims against Defendant related to the Action will be released if the Class Member does not opt-out; (6) the names of Class Counsel and information regarding attorneys' fees, expenses, and the service award; (7) the Final Approval Hearing date; (8) an explanation that each Class Member has the right to appear at the Final Approval Hearing; and (9) the Settlement Website address and a toll-free number where additional information can be obtained. *See* SA, Ex. 5.

The contents of the proposed Long-form Class Notice mirror the Federal Judicial Center's model class action notices. *See* Standing Order for Civil Cases Before Judge Vince Chhabria at p.14 (instructing the parties to consider using the FJC's model notice); *In re Skechers Toning Shoe Prods. Liab. Litig.*, No. 3:11-MD-2308, 2012 U.S. Dist. LEXIS 113641, at *46-47 (W.D. Ky. Aug. 13, 2012) (approving class notices that "comply with the Federal Judicial Center's illustrative class action notices"); Fed. R. Civ. P. 23 Advisory Committee Notes (2003); *Carr v. Tadin, Inc.*, No. 12-CV-3040, 2014 U.S. Dist. LEXIS 179835, at *22 (S.D. Cal. Apr. 18, 2014) (approving a notice of class action settlement, observing "the notices . . . 'mirror the exemplar notices set forth in the Federal Judicial Center, Class Action Notice and Claims Process Checklist (2010)'"). The Long-form Class Notice provides Class Members with sufficient information written in plain English to make an informed decision on whether to object to or opt-out of the Settlement. As such, it satisfies the content requirements of Rule 23. *Rodriguez*, 563 F.3d at 962.

1    Additionally, the proposed dissemination of the Class Notice satisfies all due process

2    requirements. As discussed in §III.C above, the Class Notice Program is multifaceted. The

3    Settlement Administrator will provide notice directly to the Settlement Class by email and mail and

4    will be supplemented with publication notice via the Internet Banner Advertisements using a

5    targeted digital media campaign based on Defendant's high quality market research for MFA.

6    Notice also will be posted on the Settlement Website. A toll-free telephone line will be publicized

7    with pre-recorded information and live operators. *See generally* Azari Decl.

8    The contents and dissemination of Class Notice Program constitutes the best notice

9    practicable and fully complies with Rule 23's requirements.

10   **VI.     THE PROPOSED CLASS SHOULD BE CERTIFIED**

11   Certification of a settlement class is proper to resolve consumer class actions. *See Hanlon*,

12   150 F.3d at 1019; *Hyundai*, 926 F.3d at 556-57. A court must determine whether the proposed

13   settlement class satisfies the requirements for class certification under Federal Rule of Civil

14   Procedure 23. *Id.* In so doing, the court should evaluate certification in the context of the settlement

15   because questions regarding the manageability of the case at trial are not relevant. *See Hyundai*, 926

16   F.3d at 556-57 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Here, for many

17   of the same reasons this Court and the *Carrigan* court have found, certification of the Settlement

18   Class is appropriate.

19   **A.     The Rule 23(a) Requirements Are Satisfied**

20   **1.     The Settlement Class Is Sufficiently Numerous**

21   Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is

22   impracticable." Fed. R. Civ. P. 23(a). The Settlement Class consists of millions of units of MFA.

23   Blood Decl., ¶ 76. Thus, it would be impracticable to join all members of the Settlement Class.

24   *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1319 (9th Cir. 1982); *Yamagata v. Reckitt Benckiser LLC*,

25   No. 17-cv-03529, 2019 U.S. Dist. LEXIS 117599 (N.D. Cal. June 5, 2019).

26   **2.     There Are Common Questions of Law and Fact**

27   "Commonality requires the plaintiff to demonstrate that the class members have suffered the

28   same injury . . . . Their claims must depend upon a common contention . . . . That common

BLOOD HURST & O' REARDON, LLP

24                                          Case No. 3:17-cv-03529-VC

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Still, "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *In re First Alliance Mortg. Co*., 471 F.3d 977, 990-91 (9th Cir. 2006). The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019. Here, a classwide proceeding will generate a common answer to the primary questions in this case: whether MFA provides the advertised joint health benefits. *See Yamagata*, 2019 U.S. Dist. LEXIS 117599, at *2-3 (ruling that plaintiffs' scientific evidence demonstrated "that liability is at least susceptible to classwide proof").

### 3. The Class Representatives' Claims Are Typical

Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener v. Dannon Co.*, 255 F.R.D. 658, 665 (C.D. Cal. 2009). The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id*. For example, in certifying UCL and CLRA claims the court in *Keilholtz v. Lennox Health Prods., Inc.*, 268 F.R.D. 330 (N.D. Cal. 2010) found typicality was satisfied because "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings." *Id*. at 338.

Typicality is met here, as Plaintiffs and the proposed Settlement Class assert the same claims arising from the same course of conduct and seek the same relief for the same alleged wrongful conduct, refunds. Typicality is satisfied here.

### 4.   The Class Representative and Class Counsel Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class. *See*, *e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020.

As the Court has previously determined, the adequacy requirement is met. *Yamagata*, 2019 U.S. Dist. LEXIS 117599, at *1. Class Counsel are qualified and experienced in class action litigation, including in prosecuting false advertising cases. *See* Blood Decl., Ex. A (BHO Firm Resume). Additionally, the interests of Plaintiffs and Class Members are fully aligned and conflict free: they allege the same claims, seek redress from the same conduct, and there are no disabling conflicts of interest.

### B.   The 23(b)(3) Requirements Are Satisfied

Rule 23(b)(3) certification is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1777 (2d ed. 1986)). There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668. Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668.

BLOOD HURST & O' REARDON, LLP

00174227

### 1.      Common Questions Predominate

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Hyundai*, 926 F.3d at 558. "Predominance is a test readily met in certain cases alleging consumer [] fraud." *Amchem*, 521 U.S. at 625. "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2005); *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982) (noting that commonality and typicality tend to merge).

The predominance requirement is satisfied now for the same reasons the Court previously found it was satisfied. As discussed above, Plaintiffs allege the Class Members are entitled to the same full refund remedies premised on the same alleged wrongdoing. The central issue for every claimant is whether Defendant's advertising of MFA was false or misleading to a reasonable person. This primary issue predominates and constitutes the "heart of the litigation" because it would be decided in every trial brought by individual Class Members and can be proven or disproven with the same classwide evidence. *Yamagata*, 2019 U.S. Dist. LEXIS 117599, at \*3; *Carrigan*, 2020 U.S. Dist. LEXIS 201083, at \*18-24. Under these circumstances, predominance is satisfied. *See Hyundai*, 926 F.3d at 559-60 (citing *Amchem* and finding predominance was readily met in the consumer fraud case where "class members were exposed to uniform [] misrepresentations and suffered identical injuries within only a small range of damages").

### 2.      Class Treatment Is Superior to Other Forms of Adjudication

Rule 23(b)(3) sets forth the relevant factors for determining whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001). "[C]onsideration of these

BLOOD HURST & O' REARDON, LLP

00174227

factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* at 1190; *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (finding the superiority requirement satisfied where granting class certification "will reduce litigation costs and promote greater efficiency").

A class action is the only viable method to adjudicate the claims at issue and provides the only viable method of resolving the dispute. Each individual Class Member's damages are too small to justify individual litigation. *Zinser*, 253 F.3d at 1191; *Wiener*, 255 F.R.D. at 671. It is neither economically feasible nor judicially efficient for Class Members to pursue their claims against Defendant on an individual basis. *Hanlon*, 150 F.3d at 1023; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Moreover, the fact of settlement removes any potential difficulties in managing the trial as a class action. *Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). The requirements of Rule 23(b)(3) are satisfied.

## VII.    PROPOSED CLASS REPRESENTATIVES AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS

The Parties also requests that the Court designate the Plaintiffs as Class Representatives for the Settlement Class. As discussed above, Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

Rule 23(g)(1) also requires the Court to appoint class counsel to represent the interests of the Settlement Class. *See Patel v. Trans Union LLC*, 308 F.R.D. 292, 307 (N.D. Cal. 2015). For the reasons the Court previously found, the Parties request that Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP ("BHO") be appointed Class Counsel for the Settlement Class. BHO is experienced and well equipped to vigorously, competently, and efficiently

1  represent the Settlement Class. *See* Blood Decl., Ex. A. *See also Yamagata*, 2019 U.S. Dist. LEXIS

2  117599, at *1.

## VIII.   THE PROPOSED SCHEDULE OF EVENTS

4      The key Settlement-related dates are based on when preliminary approval of the settlement

5  is granted and the date for the Final Approval Hearing. The relevant settlement-related dates

6  calculated in accordance with the provisions of the Settlement are:

| EVENT | DEADLINE |
|---|---|
| Dissemination of Class Notice | Within 45 calendar days from entry of the Preliminary Approval Order |
| Briefs in support of award of attorneys' fees and reimbursement of expenses | No later than 44 days prior to the Final Approval Hearing |
| Briefs in support of final approval | No later than 35 days prior to the Final Approval Hearing |
| Deadlines for objections and opt-outs | 14 days before date first set by Court for Final Approval Hearing |
| Briefs in response to objections and in further support of final approval and attorneys' fees | No later than 7 days prior to the Final Approval Hearing |

14      Accordingly, the Parties request the Court schedule the Final Approval Hearing for 120 days

15  after entry of the Preliminary Approval Order, or as soon thereafter as the Court's schedule permits.

## IX.   CONCLUSION

17      For the reasons set forth above, the Parties respectfully request that the Court: (1) grant

18  preliminary approval of the Settlement; (2) approve and direct notice as set forth in the Class Notice

19  Program; (3) conditionally certify the Settlement Class; (4) approve the form and content of the

20  proposed forms of Class Notice; (5) appoint Plaintiffs Gordon Noboru Yamagata, Stamatis F.

21  Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls,

22  Oneita Steele, and Maxine Tishman as Class Representatives; (6) appoint Timothy G. Blood and

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

BLOOD HURST & O' REARDON, LLP

00174227

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

1   Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLC as Class Counsel; (7) appoint Epiq

2   Class Action and Claims Solutions as Settlement Administrator; and (8) adopt the proposed

3   schedule including setting a date for the Final Approval Hearing.

4                                                    Respectfully submitted,

5   Dated: March 2, 2021                             BLOOD HURST & O'REARDON, LLP
                                                     TIMOTHY G. BLOOD (149343)
6                                                    THOMAS J. O'REARDON II (247952)

7
                                                     By:          s/ Timothy G. Blood
8                                                           TIMOTHY G. BLOOD

9                                                    501 West Broadway, Suite 1490
                                                     San Diego, CA  92101
10                                                   Tel: 619/338-1100
                                                     619/338-1101 (fax)
11                                                   tblood@bholaw.com
                                                     toreardon@bholaw.com
12
                                                     *Class Counsel*
13
                                                     ALTAIR LAW
14                                                   CRAIG M. PETERS (184018)
                                                     465 California Street, 5th Floor
15                                                   San Francisco, CA  94104-3313
                                                     Tel: 415/988-9828
16                                                   415/988-9815 (fax)
                                                     c.peters@altair.us
17
                                                     *Attorneys for Plaintiffs*
18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2021.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

00174227

NOTICE OF UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL