BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Case No. 3:17-cv-03529-VC<br><br>**DECLARATION OF TIMOTHY G. BLOOD IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**<br><br>**CLASS ACTION**<br><br>Hrg Date:     March 25, 2021<br>Time:          2:00 p.m.<br><br>District Judge Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Complaint Filed:     June 19, 2017<br><br>**JURY TRIAL DEMANDED** |

BLOOD HURST & O'REARDON, LLP

I, TIMOTHY G. BLOOD, declare:

1.      I am the managing partner of the law firm Blood Hurst & O'Reardon, LLP, and an attorney duly licensed to practice before the courts of the State of California and this Court. I am court-appointed class counsel pursuant to Federal Rule of Civil Procedure 23(g) in the above-entitled matter and in *Carrigan v. Reckitt Benckiser LLC*, pending in the United States District Court for the Northern District of Illinois. I have personal knowledge of the matters stated in this declaration except those stated on information and belief, and as to those, I believe them to be true. If called upon, I could and would competently testify to them.

## I.      INTRODUCTION

2.      I submit this declaration in support of plaintiffs' motion for preliminary approval of the Stipulation of Settlement (the "Settlement Agreement" or "SA"), which is concurrently filed with that motion. A copy of the [Proposed] Order Preliminarily Approving Class Action Settlement is attached as Exhibit 1 to the Settlement Agreement and submitted separately to the Court. Terms that are capitalized in this declaration are intended to refer to matters defined in the Settlement Agreement.

3.      The Settlement was reached after extensive litigation spanning nearly four years. The motion practice here and in the related *Carrigan* class action was substantial and included motions to compel further discovery responses, motions for class certification, a motion for summary judgment, a petition for interlocutory appeal and numerous motions to strike expert testimony. All the motions were heavily contested and fully briefed, with some involving multiple rounds of briefing. The Actions also involved substantial discovery. Plaintiffs' Counsel (1) conducted and defended 30 depositions, including those of Defendant's corporate designees, current and former marketing, science and regulatory employees, scientific experts, and third-party scientists; (2) reviewed over 303,000 pages of documents produced by Defendant; and (3) subpoenaed documents and testimony from 18 third parties who produced thousands of pages of documents. Plaintiffs' Counsel also responded to discovery served on Plaintiffs, defended Plaintiffs' depositions, and worked with more than seven of their own expert witnesses and additional consultants to prepare

BLOOD HURST & O' REARDON, LLP

for class certification, summary judgment, and trial, including preparing and exchanging expert reports and conducting and defending expert depositions.

## II.    PRE-SUIT INVESTIGATION AND THE COMPLAINTS

4.      Plaintiffs' Counsel conducted a significant investigation before this Action was filed. We began investigating marketing claims by Reckitt Benckiser, LLC ("RB" or "Defendant") regarding the joint health benefits of Schiff Move Free® Advanced ("MFA"). These efforts included obtaining advertisements and labels from a variety of sources throughout the country. We then assessed the veracity of the express and implied messages by analyzing the purported active ingredients and the scientific literature about them. MFA posed some additional challenges because it includes substances in addition to glucosamine and chondroitin, including an ingredient unique to MFA known as "FruiteX-B."

5.      On June 22, 2017, a class action complaint was filed in this Court on behalf of Gordon Yamagata and Stamatis Pelardis. The complaint alleged violations of California's Consumers Legal Remedies Act ("CLRA"), Civ. Code §§1750, *et seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§17200, *et seq*., and New York General Business Law section 349 and 350 ("GBL"). (ECF No. 1). On August 11, 2017, Plaintiffs filed a First Amended Complaint, which included a claim for damages under the CLRA after the expiration of the notice period. (ECF No. 24). Defendant answered the amended complaint on August 25, 2017. (ECF No. 25). On March 2, 2021, the operative Second Amended Complaint was filed on behalf of a nationwide class to conform to the proposed Settlement Class. (ECF No. 201).

6.      On October 22, 2018, Plaintiff Maureen Carrigan filed a class action complaint in the United States District Court for the Northern District of Illinois captioned, *Carrigan v. Reckitt Benckiser LLC*, Case No. 1:18-cv-07073 (N.D. Ill.) ("*Carrigan*"). *Carrigan* arises from the same facts of alleged false advertising and was filed on behalf of consumers who purchased Move Free Advanced in Illinois between May 28, 2015 and the present. It asserted violations of section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, et seq. (the "ICFA").

BLOOD HURST & O' REARDON, LLP

7.      On September 17, 2020, on behalf of Plaintiffs Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman, Class Counsel served Defendant with another class action complaint ("*Coletti*"). *Coletti* was to be filed in the District of Vermont on behalf of a MFA purchasers from states other than California, New York, and Illinois also alleging violations of state consumer protection laws arising out of the marketing and advertising of Move Free Advanced.

## III.    SUMMARY OF NON-EXPERT DISCOVERY EFFORTS

8.      Discovery in these cases has been substantial. It involved hundreds of thousands of pages of documents produced by Defendant, subpoenas to 18 third-parties, 30 depositions, and the exchange of 21 reports from 14 experts.

9.      **Written Discovery and Document Requests:** Plaintiffs' Counsel served Defendant with 29 interrogatories, 422 requests for admissions, and 124 document requests. Dozens of meet and confer discussions occurred throughout the course of the litigation. As a result of these efforts, Defendant supplemented numerous discovery responses and produced previously withheld or redacted documents.

10.      **Defendant's Document Production:** Defendant produced, and Plaintiffs' Counsel received, reviewed, analyzed, and organized over 303,000 pages of discovery, including documents and communications concerning scientific studies relating to joint health, glucosamine, chondroitin, FruiteX-B and the other ingredients in MFA, advertising and marketing-related strategy and research, and financial information, including the sales of MFA and its competitors.

11.      This discovery was obtained after numerous discussions between the Parties, including negotiation over several confidentiality agreements and electronically stored information ("ESI") protocols. In connection with Defendant's production of ESI, the Parties held extensive meetings about coordinating and implementing a protocol relating to the methods of searching for and producing ESI.

12.      To efficiently and effectively review this voluminous ESI (which exceeded 116 GB), Plaintiffs' Counsel retained outside electronic discovery vendors and created a coding database specifically for this Action.

BLOOD HURST & O' REARDON, LLP

DECLARATION OF TIMOTHY G. BLOOD ISO MOTION FOR PRELIMINARY APPROVAL

13.     **Third-Party Discovery Efforts:** Plaintiffs' Counsel served subpoenas for documents or testimony on 18 third parties who were involved in the marketing, science, and retail sale of MFA. In response to these subpoenas and negotiated ESI protocols with many of these third parties as well, Plaintiffs obtained over 5,907 pages of relevant and probative information, which were reviewed and analyzed. This page-count does not include the voluminous retail sales data spreadsheets provided by the eight retailers who produced detailed accountings of their MFA sales.

14.     Plaintiffs subpoenaed the major retailers of MFA: Walmart, Sam's Club, Costco, Target, Rite Aid, CVS, BJ's Wholesale Club, Walgreens, and Amazon.com. As a result of extensive meet and confer efforts throughout the litigation, we obtained voluminous sales data relating to Move Free Advanced. This sales data, which is from the retailers responsible for over 90% of MFA retail sales, was used in connection with motions for class certification, expert reports, and mediation.

15.     As discussed in Paragraphs 59-65 below, Class Counsel has recently pursued additional discovery from these retailers to obtain Class Member contact information so the Settlement Administrator can provide direct email or mail notice to as many Class Members as reasonably practicable. As a result of meet and confer efforts with each of these retailers (who are all represented by different in-house or outside counsel), Class Counsel is obtaining additional information that will enable direct notice to be provided to millions of Class Members.

16.     In addition to subpoenaing each of the major MFA retailers, Plaintiffs subpoenaed documents from the main third-party manufacturer and the scientists involved in FruiteX-B, one of the main ingredients in MFA. Plaintiffs subpoenaed documents from VDF FutureCeuticals, Inc., a third party that supplies FruiteX-B for MFA and helped fund and conduct the FruiteX-B clinical studies on which Defendant relies. Plaintiffs subpoenaed documents and testimony from Drs. Zbigniew Pietrzkowski and Tania Reyes-Izquierdo. Drs. Pietrzkowski and Reyes-Izquierdo, who were deposed on December 18, 2019 and October 29, 2020, were the principal authors of the FruiteX-B studies. Plaintiffs also deposed Hartley Pond, a marketing and sales executive at VDF and the main sales liaison between VDF and Defendant. After substantial meet and confer efforts, including negotiations regarding document custodians, timeframes, and keywords, VDF produced

BLOOD HURST & O' REARDON, LLP

4,275 pages of highly relevant information relating to some of the most core studies at issue. This information was analyzed and used extensively by several of Plaintiffs' scientific experts.

17.     Plaintiffs also subpoenaed documents from the University of California at Irvine and one its researchers, Dr. Michael Phelan. Dr. Phelan was hired by VDF to perform statistical analysis for two of the major FruiteX-B study publications. Dr. Phelan was also listed as a co-author on two of the FruiteX-B study manuscripts. As a result of meet and confer efforts with UCI, we received 137 documents (totaling thousands of pages) of important study documents and email communications.

18.     Lastly, Plaintiffs subpoenaed documents and testimony from Robert Keller. Mr. Keller was retained by VDF to hire and coordinate with "contract research organizations" to conduct the FruiteX-B clinical studies. In essence, Mr. Keller was the go-between between VDF's employees/study authors, and the investigators who analyzed the study subjects consuming placebo or FruiteX-B for the studies. Among other responsibilities, Mr. Keller oversaw compiling and providing all the raw study data to VDF for review. Mr. Keller produced 822 pages of important study documentation and provided valuable testimony during his deposition on December 5, 2019.

19.     **Fact Witness and Rule 30(b)(6) Depositions:** Discovery also included Plaintiffs' Counsel taking and defending 23 fact witness and 7 expert depositions. Plaintiffs' Counsel took depositions of Defendant's corporate designees, chief scientists, and the employees responsible for Move Free Advanced product marketing and branding. These deponents included Defendant's Marketing Director of Vitamins, Minerals and Supplements ("VMS"), Senior Associate of Global Medical Affairs, Trade Marketing Director of VMS, Former Senior Brand Manager of Move Free, Former Vice President of Research, Former Medical Advisor, and Research & Development Director of VMS:

| DATE | DEPONENT |
|---|---|
| 6/5/18 | Matthew Bell 30(b)(6) |
| 6/15/18 | Anthony Cam 30(b)(6) |
| 7/16/18 | Carol Cresong 30(b)(6) |
| 10/4/18 | Gordon Yamagata |
| 10/25/18 | Stamatis Pelardis |
| 11/22/19 | Maureen Carrigan |
| 12/5/19 | Robert Keller |
| 12/18/19 | Zbigniew Pietrzkowski |

BLOOD HURST & O' REARDON, LLP

| | |
|---|---|
| 3/12/20 | Natalie Weng |
| 3/13/20 | Sireenah Michlovich |
| 10/9/20 | Marilia de Andrade |
| 10/16/20 | Luke Bucci |
| 10/21/20 | Jason Bortz |
| 10/22/20 | Kathryn Becht |
| 10/27/20 | Louisa Guo |
| 10/29/20 | Tania Reyes-Izquierdo |
| 11/5/20 | Amy Sunderman |
| 11/6/20 | Yongbin Yang |
| 11/10/20 | Heather Santos |
| 11/12/20 | Hartley Pond |
| 11/13/20 | Alejandra Gratson |
| 11/18/20 | Joao Rodriguez |
| 11/20/20 | Anthony Cam |
| 1/18/21 | Daniel Grande |
| 1/19/21 | Colin Weir |
| 1/21/21 | Michael Becker |
| 1/22/21 | Martin Lotz |
| 1/25/21 | On Amir |
| 1/26/21 | Robert Platt |
| 1/27/21 | Farshid Guilak |

20.     **Plaintiffs' Efforts and Discovery Conducted by Defendant:** Throughout the Litigation, Plaintiffs did everything that was required to represent the interests of the Class. Plaintiffs have remained informed and involved. Plaintiffs participated in periodic conferences with Plaintiffs' Counsel to keep informed about the litigation and were involved in decision-making. They also remained available to answer communications from Plaintiffs' Counsel relating to this Action. Plaintiffs also assisted with the review and preparation of pleadings, including the various complaints in which they are named. Plaintiffs have also each reviewed and approved the Settlement.

21.     Defendant served 44 interrogatories, 170 requests for admissions, and 70 document requests on Plaintiffs Yamagata, Pelardis and Carrigan. As a result, throughout the litigation, these Plaintiffs searched for and produced supplemental documents and information in response to Defendant's continuing discovery requests. Plaintiffs Yamagata, Pelardis, and Carrigan were also deposed. Each devoted a significant amount of time and effort to prepare. During their depositions, they were asked about and provided personal and private medical information.

DECLARATION OF TIMOTHY G. BLOOD ISO MOTION FOR PRELIMINARY APPROVAL

BLOOD HURST & O' REARDON, LLP

00174719

## IV.     EXPERT WORK

22.     The litigation also involved substantial work with expert witnesses and consultants. In total, Plaintiffs and Defendant each provided expert declarations and reports from fifteen experts. The subjects of expert testimony included the scientific efficacy of Move Free Advanced, Defendant's marketing and advertising strategy for Move Free Advanced, consumer surveys, professional ethics, and the appropriate measure and amount of restitution and damages.

23.     In connection with Plaintiffs' motions for class certification and Defendant's motion for summary judgment, Plaintiffs retained three expert who provided written reports. Dr. Timothy McAlindon is a rheumatologist and clinical researcher at Tufts University. Dr. McAlindon was one of the first independent researchers to conduct a high-quality clinical trial on whether glucosamine can impact joint pain or function. He has been an editor and peer-reviewer for numerous top scientific journals in the field of osteoarthritis, serves on expert panels to create evidence-based treatment guidelines, and publishes meta-analyses on treatments for osteoarthritis. Dr. McAlindon provided declarations in connection with class certification and summary judgment in which he performed systematic reviews of the scientific evidence relating to glucosamine and the other ingredients in MFA. Plaintiffs' second expert is Dr. Farshid Guilak. Dr. Guilak is a Professor of Orthopedic Surgery at Washington University and Director of Research for the Shriners Hospital for Children – St. Louis Shriners. He is renowned for his expertise and research in the etiology and pathogenesis of arthritis. He has published over 330 peer-reviewed articles, co-edited four books in the fields of osteoarthritis, tissue engineering, and biomechanics, has been the Principal Investigator of grants from the NIH, the Arthritis Foundation and others, served as President of the Orthopaedic Research Society, and is Editor-In-Chief of the Journal of Biomechanics and Associate Editor for Osteoarthritis & Cartilage. Dr. Guilak's laboratory focuses on osteoarthritis, investigating the role of biomechanical and biological factors in the onset and progression of osteoarthritis, with an emphasis on developing new therapies for its relief. Dr. Guilak tested each Move Free variation and FruiteX-B alone, to determine their efficacy in healthy and unhealthy joints. Plaintiffs' third expert in connection with class certification and summary judgment was Dr. David Madigan. Dr. Madigan is a former professor of statistics at Columbia University, was chair of the Columbia Department of

BLOOD HURST & O' REARDON, LLP

00174719

Statistics, is a Fellow of both the Institute of Mathematical Statistics and the American Statistical Association, was the 36th most cited mathematician worldwide from 1995-2005, and was Editor of the highest impact journal in statistics, *Statistical Science*. Dr. Madigan has published more than 160 technical papers on statistics and biostatistics and has extensive experience with clinical trials, including the design and analysis of pain studies. Here, Dr. Madigan analyzed the actual study data that underlies RB's evidence supporting FruiteX-B.

24.     In connection with Rule 26, Plaintiffs retained seven experts who provided eleven written reports. In addition to Drs. McAlindon, Guilak, and Madigan, Plaintiffs experts included Dr. J. Michael Dennis, a consumer survey expert, Dr. Derek Rucker, a marketing professor who provided expert testimony on the marketing and advertising strategy for Move Free Advanced, Colin Weir who examined retail sales data for Move Free Advanced and provided expert opinion on potential damages, and Heather Rosing, a legal ethicist.

25.     Defendant also produced merits reports from seven experts who provided ten written reports. These included reports from scientists and researchers (Drs. Daniel Grande, Martin Lotz and Luke Bucci), survey experts (Drs. On Amir and Michael Becker), marketing and damages (Dr. Olivier Toubia), and a legal ethicist (Edward McIntyre).

## V.     CLASS CERTIFICATION AND NOTICE OF PENDENCY

26.     On December 10, 2018, Plaintiffs filed their motion for class certification. (ECF Nos. 84-87). Class certification was strongly contested, involving 136 exhibits, declarations from retained experts and Defendant's fact witnesses, a motion to strike evidence, and supplemental submissions. (ECF Nos. 84-87, 89-90, 93-94, 96, 109). Following briefing and oral argument, each party submitted two supplemental briefs. Plaintiffs sought certification of a California class for claims under California Business & Professions Code § 17200, *et seq.* (the "UCL") and Cal. Civ. Code § 1750, *et seq.* (the "CLRA"), a California "senior class" for claims under the CLRA, and a New York class for claims under sections 349 and 350 of the GBL. On June 5, 2019, the Court granted in part and denied in part the motion for class certification. The Court granted certification of the claims asserted by the California and New York classes, but denied certification of the California senior class claim. (ECF No. 110).

BLOOD HURST & O' REARDON, LLP

27.     Class certification was also obtained in the related *Carrigan* action. The motion was fully briefed and included competing sur-replies. Defendant also moved to exclude the opinions and expert report of one of plaintiff's experts. On October 27, 2020, the Hon. Charles R. Norgle granted plaintiff's motion for class certification, appointed Class Counsel here as class counsel in *Carrigan*, and certified a class of all persons who purchased MFA in Illinois for claims under section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2, et seq. (the "ICFA"). *See Carrigan v. Reckitt Benckiser, LLC*, No. 1:18-cv-07073, 2020 U.S. Dist. LEXIS 201083 (N.D. Ill. Oct. 27, 2020).

28.     On February 14, 2020, Plaintiffs filed a motion for approval of a class notice plan to notify the *Yamagata* class of the pendency of the action. (ECF No. 150). In connection with the notice of pendency, Plaintiffs retained a class notice administrator. The Court granted Plaintiffs' motion and the notice of pendency was disseminated. (ECF No. 165).

## VI.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

29.     On September 26, 2019, Defendant moved for summary judgment. Defendant argued Plaintiffs' claims were all preempted by the federal Food, Drug and Cosmetics Act ("FDCA"), that Plaintiffs could not prove MFA advertising was false, and that Plaintiffs' full refund theory fails because MFA is not completely worthless as a matter of law. (ECF No. 116).

30.     In support of its motion, Defendant submitted voluminous exhibits and declarations from two outside science experts. Plaintiffs opposed the motion by submitting declarations from three retained experts who evaluated the scientific evidence concerning MFA and its ingredients. (ECF No. 119). Plaintiffs also moved to exclude the opinions and testimony from both of Defendant's experts. (ECF Nos. 120-121). In turn, Defendant moved to exclude the opinions and testimony from one of Plaintiffs' experts. (ECF No. 132). These respective motions to exclude were themselves accompanied by additional expert declarations. (ECF Nos. 132-1, 139-6, 140-1, 140-2). Evidentiary objections and responses were filed, and Plaintiffs opposed motions to seal certain evidence. (ECF Nos. 131, 137, 143). On December 12, 2019, the Court held oral argument, and on January 7, 2020, supplemental briefing was ordered. (ECF No. 144). The Parties responded to the supplemental briefing order, submitted supplemental authority, and opposed each other's

BLOOD HURST & O' REARDON, LLP

00174719

1   submissions. (ECF Nos. 147-149). On March 3, 2020, the Court denied Defendant's motion for

2   summary judgment in its entirety. (ECF No. 164).

3       31.     Defendant petitioned the Court for an order certifying for an immediate interlocutory

4   appeal on the preemption issues. (ECF No. 172). Plaintiffs opposed the motion. (ECF Nos. 173).

5   On May 18, 2020, the Court denied Defendant's motion. (ECF No. 176).

6   **VII.   EXTENSIVE SETTLEMENT NEGOTIATIONS**

7       32.     The Settlement is the product of extensive negotiations by well-informed Parties.

8   Throughout the course of this Action, before and after class certification and while engaging in

9   substantial discovery and motion practice, there were numerous formal and informal attempts to

10  reach a settlement. These attempts included use of three separate mediators, seven formal mediation

11  sessions, numerous informal settlement meetings between the Parties, and continued negotiations

12  over the last month about every aspect of the Settlement and its exhibits even after a memorandum

13  of understanding was reached. The Settlement is the result of serious and non-collusive negotiations

14  by experienced counsel, who believe it constitutes a fair, reasonable, and adequate resolution.

15      33.     The first formal settlement negotiation occurred on May 2, 2018. This mediation

16  took place before class certification was briefed. After submitting mediation briefs, I traveled to

17  Chicago at Defendant's where the Parties participated in a mediation session with the Honorable

18  Wayne R. Anderson (Ret.) of JAMS. No settlement was reached.

19      34.     On April 17, 2019, at the Parties' requested the case be assigned to Magistrate Judge

20  Jacqueline Corley for a settlement conference. (ECF No. 104). The settlement conference occurred

21  on May 22, 2019, in San Francisco. (ECF No. 108). This mediation took place after full briefing on

22  Plaintiffs' motion for class certification, including the exchange of science expert declarations, but

23  before a ruling was issued. No settlement was reached.

24      35.     The Parties next participated in five full-day mediation sessions with Robert A.

25  Meyer, Esq. of JAMS. These mediations took place on August 25, 2020, September 1, 2020,

26  September 4, 2020, September 16, 2020, and January 5, 2021. The mediations with Mr. Meyer took

27  place before and after class certification was obtained in *Carrigan*, before and after the completion

28  of fact discovery, before and after Rule 26 expert reports and rebuttal reports were exchanged, and

BLOOD HURST & O' REARDON, LLP

during trial preparation. In between formal mediation sessions, Mr. Meyer hosted numerous informal settlement conferences, some with Plaintiffs' Counsel only and others with both Parties present. In connection with the mediation sessions, the Parties exchanged numerous briefs and discrete-issue evidence analyses. Although a settlement was reached with Mr. Meyer during the last formal mediation session, his assistance provided a framework for the Parties to continue meaningful settlement discussions. These lengthy and complex discussions first occurred over telephone and electronic mail. The Parties then met in-person for three days of settlement meetings on January 25, 26, and 27, 2021. Following these negotiations, on the night of January 27, 2021, the Parties agreed to a settlement and executed a term sheet. Over the last month, the Parties have continued to negotiate every aspect of the Settlement agreement, its exhibits, and the class notice plan.

## VIII. CLASS COUNSEL'S EXPERIENCE

36.    The Court previously found that my partner, Thomas J. O'Reardon II, and I were adequate to represent two single-state classes against Defendant. (ECF No. 110). As part of this Settlement, the Parties now ask the Court to reaffirm our appointment as Class Counsel for the Settlement Class.

37.    My law firm specializes in the nationwide prosecution of complex class actions. As indicated in my firm's resume, attached as **Exhibit A** to this Declaration, BHO and its attorneys, including myself and Mr. O'Reardon, have years of experience litigating class actions alleging false and deceptive advertising of consumer products, including dietary supplements. BHO has been appointed lead counsel by numerous state and federal courts, including in complex and multi-district litigation involving false advertising claims brought on behalf of consumers. Since 2010, some of the false advertising class actions in which BHO was appointed Class Counsel include: *Sonner v. Schwabe North America, Inc.* (C.D. Cal.) (false advertising of Ginkgold memory supplement); *Rikos v. P&G* (S.D. Ohio) (false advertising of Align probiotic supplement); *Mullins v. Premier Nutrition Corp.* (N.D. Cal.) (false advertising of glucosamine and chondroitin supplement); *In re Hydroxycut Mktg. & Sales Practices Litig.* (S.D. Cal.) (false advertising of Hydroxycut weight loss supplement); *Rosales v. FitFlop USA, LLC* (S.D. Cal.) (false advertising of toning footwear); *Johnson v. General*

BLOOD HURST & O' REARDON, LLP

*Mills, Inc.* (C.D. Cal.) (false advertising of General Mills' YoPlus probiotic); *In re Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.) (false advertising of Skechers' toning shoe products); *In re Reebok EasyTone Litig.* (D. Mass.) (false advertising of Reebok's EasyTone footwear and apparel products); *Johns v. Bayer Corp.* (S.D. Cal.) (false advertising of Bayer's One-A-Day men's vitamins); *Godec v. Bayer Corp.* (N.D. Ohio) (false advertising of Bayer's One-A-Day men's vitamins); *Fitzpatrick v. General Mills, Inc.* (S.D. Fla.) (false advertising of General Mills' YoPlus probiotic); *Nelson v. Mead Johnson Nutrition Co.* (S.D. Fla.) (false and deceptive advertising of health benefits of baby formula products); and *Gemelas v. The Dannon Co., Inc.* (N.D. Ohio) (false advertising of Dannon's Activia and DanActive probiotic products).

38.     My firm has also tried, either as assisting counsel or co-counsel, class actions and I am responsible for a number of appeals resulting in consumer protection decisions relevant to this case. *See, e.g., Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468 (7th Cir. 2020) (consumer law and false advertising); *Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020) (consumer law and false advertising); *Rikos v. The Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) (consumer law and false advertising), *cert. denied*, 2016 U.S. LEXIS 2244 (U.S. Mar. 28, 2016); *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013) (consumer and banking law), *Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279 (11th Cir. 2011), *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 320 (2011) (consumer law and false advertising), *McKell v. Wash. Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006), *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49 (2d Cir. 2004) (consumer and banking law), *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004), *Moore v. Liberty Nat'l Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004) (life insurance, consumer protection and civil rights), and *Lavie v. Procter & Gamble, Co.*, 105 Cal. App. 4th 496 (2003). I am a frequent lecturer at seminars about class actions, consumer protection, and related issues.

**IX.     THE SETTLEMENT**

    **A.     The Settlement Class**

39.     The proposed Settlement Class is defined as:

///

///

BLOOD HURST & O' REARDON, LLP

All persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to the date of the Preliminary Approval Order.

Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class.

**B.    Settlement Relief**

**1.    Direct Benefits to Class Members**

40.    Pursuant to the Settlement, Defendant will create a $50 million, non-reversionary Common Fund to compensate Class Members, pay for Class Notice, and any award of attorneys' fees, expenses, and Class Representative service awards.

41.    Class Members will receive $22 cash for each unit of MFA they purchased. This reimbursement amount is the average retail price paid by Class Members and so a full refund, the monetary relief sought in this action. Based on data provided in discovery, which was analyzed by the parties' experts, the average retail price for MFA during the class period is about $22.

42.    For Class Members with proof of purchase, they can receive reimbursement for all MFA purchases. For Class Members with no proof of purchase, they may receive reimbursement for up to three purchases, which is a number that exceeds the average number of MFA purchases by Class Members. Based on data provided in discovery, which data was analyzed by the parties' experts, the average number of MFA units purchased per Class Member during the class period is about 2.6.

43.    As an alternative to the Cash Payment, Class Members can choose to recieve $75 worth of a variety of products valued at wholesale for up to three purchases (or an uncapped number of purchases if they submit proof of purchase), for a total amount of products up to $225 (the

BLOOD HURST & O' REARDON, LLP

00174719

"Product Benefit"). The Common Fund will be reduced by the amount of Cash Payment and Product Benefit chosen by claimants.

44.     Depending on the amount of money left in the non-reversionary Common Fund, Class Members may receive up to three times their valid claim amount. Therefore, Class Members may receive up to $66 cash or $225 worth of products per unit of MFA purchased. For Class Members who do not submit proof of purchase, but who submit a claim for three units purchased, the total potential award is $198 cash or $675 worth of products.

45.     To be eligible for reimbursement, Class Members need only complete and timely submit a simple Claim Form, either on the Settlement Website or by mail to the Settlement Administrator.

46.     The Settlement Administrator will decide whether the submitted claim forms are complete and timely. Class Members are given an opportunity to correct any incomplete claim forms or to appeal the Settlement Administrator's rejection of any claim. The Settlement Administrator will fulfill all valid claims by sending cash or the selected products to the Class Member. Claimants electing the cash benefit can choose to receive a check or digital payment such as digital MasterCard, Venmo, Amazon, or eCheck. Digital payment is very convenient for Class Members and is also less expensive than issuing checks, thereby reducing transaction costs against the Common Fund.

47.     No portion of the Common Fund will revert to Defendant. Any funds remaining after calculating valid claims will be distributed to Claimants by increasing the amount of their valid cash or product claims up to three times the original claim amount. In the event such increased amount would exceed three times the original claim amount, a second round of class notice and an additional claim-in opportunity will be provided to the Settlement Class. If money remains after this Supplemental Claim Deadline, the valid claims will be increased by up to three times the original claim amount.

48.     Any money that remains, including as a result of uncashed checks, will be distributed *cy pres* to the non-profit Orthopaedic Research Society ("ORS"). Given the large size of the cash and product awards, the combined Direct Notice and Publication Notice process, the second Direct Notice and Supplemental Claim process, and three-time upward adjustment provision, the Parties

anticipate only a small amount of remaining funds. Notwithstanding, I believe ORS is an appropriate *cy pres* recipient in this Action. As explained in the concurrently submitted Declaration of Brenda Frederick Re: Orthopaedic Research Society, the ORS mission is to advance education and research of musculoskeletal conditions, specifically including osteoarthritis. There is a direct nexus between ORS and the interests of Class Members and this litigation because Plaintiffs allege MFA was advertised as a treatment for the symptoms of osteoarthritis.

> ### 2.    Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Awards

49.    Notice and administration expenses (*excluding* the Product Benefit fulfillment and shipping expenses), attorneys' fees and expenses and the Class Representative service awards will be paid from the Common Fund.

50.    On top of the Common Fund, Defendant will pay the Product Benefit fulfillment and shipping expenses. According to the Settlement Administrator, depending on the number of Class Members who elect the Product Benefit, this amount is expected to between $3.9 million and $4.2 million.

51.    In the fee motion to be submitted in connection with final approval, Class Counsel will request 25% of the Common Fund, or $12,500,000, as attorneys' fees plus reimbursement of costs. Although the shipping and handling costs are a benefit to the Class that Class Counsel could use to increase the amount of attorneys' fees sought, we will be basing the 25% request on the Common Fund amount.

52.    The Parties did not negotiate attorneys' fees, costs, and expenses until after they had reached an agreement on the relief for Class Members.

53.    To date, Plaintiffs' Counsel's lodestar is $5,229,585.25. Plaintiffs' Counsel will incur additional lodestar and expenses in implementing the Settlement, working with the Settlement Administrator and the subpoenaed third-party retailers, and seeing the Settlement through final approval. Under the Settlement, Defendant will not oppose Plaintiffs' Counsel request for reimbursement of expenses of up to $750,000. Although Plaintiffs' Counsel have not yet received all invoices for costs incurred, they anticipate their expenses will be within that amount. As will be

Blood Hurst & O' Reardon, LLP

further detailed in the motion for attorneys' fees and expenses, these expenses were reasonably and necessarily incurred for filing and court fees, legal research, travel, postage, printing, experts and consultants, mediations, disseminating the notice of pendency, depositions, and trial preparation.

54.     Defendant also agrees not to oppose a request for Court-awarded service awards of up to $7,500 to Plaintiffs Yamagata, Pelardis, and Carrigan, and up to $500 to Plaintiffs Coletti, Maher, Marshall, Rawls, Steele, and Tishman. Plaintiffs' agreement to the Settlement is not conditioned in any manner on the award of a service award or its amount. Plaintiffs have agreed to a broader release of claims than the release applicable to the absent Class Members.

55.     Each plaintiff stepped forward and volunteered to represent the Class Members. Each devoted time, effort, and resources on behalf of the Class. Defendant conducted substantial discovery of Plaintiffs Yamagata, Pelardis, and Carrigan. It served 44 interrogatories, 170 requests for admissions, and 70 document requests. As a result, Plaintiffs Yamagata, Pelardis, and Carrigan searched for and produced documents and other information concerning the actions of the plaintiffs and their contentions. Plaintiffs Yamagata, Pelardis, and Carrigan also were deposed, devoted time and effort providing information to assist in the litigation, participated in periodic telephone conferences, and reviewed and approved pleadings, including complaints and the Settlement. Plaintiffs Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman also devoted time and effort to assist in the litigation. Each reached out to and were interviewed by counsel, volunteered to serve as named plaintiffs and proposed class representatives, and reviewed and approved the complaints in which they are named. They were prepared to file a class action complaint on behalf of purchasers of states other than those covered by *Yamagata* and *Carrigan*, but the parties reached an agreement to toll their claims and those of the proposed multistate class and refrain from filing the complaint while the parties discussed settlement.

### 3.     The Class Notice Program

56.     I have extensive experience working with class action administrators. Based on this experienced, I developed a list of administrators that I believed could handle a settlement of this size and develop a very good class notice and class member outreach program to ensure Class

1  Members had an opportunity to participate in the Settlement and that the Common Fund would be

2  fully spent. From this list, the Parties sought competitive bids from the settlement administrators

3  before selecting of Epiq Class Action and Claims Solutions ("Epiq"), a claims administrator with

4  significant expertise and experience.

5       57.     The Parties have developed the Class Notice Program with the assistance of Epiq.

6  The concurrently submitted Declaration of Cameron R. Azari Regarding Class Notice Program

7  ("Azari Declaration") describes in detail the various components of the proposed program.

8       58.     Based on my knowledge and experience in similar class action litigation, I believe

9  the Class Notice Program here constitutes the best notice practicable under the circumstances of this

10  case. It informs Class Members of their rights through a comprehensive, multi-faceted plan for

11  delivery of notice by email, U.S. mail, a settlement website, and targeted Internet media.

12       59.     We also have issued subpoenas to the primary retailers of MFA: Costco Wholesale

13  Corporation, Walmart Inc., Walgreen Co., Rite Aid Corporation, CVS Pharmacy, Inc., BJ's

14  Wholesale Club, Inc. and Amazon.com, Inc. (the "Subpoenaed Retailers"). These Subpoenaed

15  Retailers are responsible for approximately 90% of the sales made to Class Members. Except for

16  Amazon, CVS, and BJ's (discussed below), the Subpoenaed Retailers are in the process of gathering

17  individually identifiable contact information for Class Members and providing that information to

18  the Settlement Administrator. The Azari Declaration explains in detail how this retailer data will be

19  utilized for sending direct Email Notice and Postcard Notice.

20       60.     We are pursuing Class Member contact information from every retailer of MFA that

21  is a club membership store (Costco, Sam's Club, and BJ's Wholesale), which maintain detailed sales

22  records, and the largest online-only retailer of MFA, Amazon. Costco and Sam's Club estimate they

23  will provide the requested data within two weeks. Sales through Costco account for about half of

24  the total MFA sold to Class Members, and by a wide margin is the top selling retailer of MFA.

25  Walgreens and Rite Aid have also agreed to provide MFA purchaser contact information obtained

26  through their loyalty programs and online sales. Based on the volume of MFA sales made by these

27  retailers, I expect the Settlement Administrator will have direct contact information for most of the

28  Class, representing several million Class Members.

BLOOD HURST & O' REARDON, LLP

61.     Amazon has proposed to email class notice directly to its customers. We have met and conferred with Amazon about this and are satisfied it will adequately provide its customers with notice. It regularly distributes class notices to its customers and believes it provides the best option for doing so while protecting its customers' privacy and reducing customer confusion and dissatisfaction. As noted in the proposed order granting preliminary approval, the Parties request and Amazon has agreed that it be ordered to send the email notice within forty-five (45) days of the Preliminary Approval Order. Within seven (7) after sending the email notice, Amazon will provide a declaration to Class Counsel and Defendant's Counsel confirming compliance with the Preliminary Approval Order and stating the total number of Class Members to whom it successfully sent email notice as reported by Amazon's email server.

62.     Several courts have approved of Amazon sending similar direct email notices to its customers, including in the following cases:

a.     Order Approving Class Notice to Amazon.com Customers, *In re ARRIS Cable Modem Litigation*, No. 5:17-cv-01834-LHK (N.D. Cal. Feb. 13, 2019), ECF No. 168;

b.     Order Granting Stipulation to Modify Order Directing Notice to the Class, *Park v. ZUFFA LLC*, No. 2:17-cv-02282-APG-VCF (D. Nev. April 4, 2018), ECF No. 76;

c.     Declaration of Steven Weisbrot, Esq. of Angeion Group, LLC Re: Implementation of Notice Program, *In re Lenovo Adware Litigation,* No. 5:15-md-02624-HSG (N.D. Cal. Feb. 14, 2019), ECF 248-1 at Ex. D;

d.     Declaration of Tammy Malley-Naslund, *Wolf v. Hewlett-Packard,* No. 5:15-cv-01221-TJH (C.D. Cal. Sept. 4, 2018), ECF 136-8;

e.     Order Approving Class Notice to Amazon Customers, *In Re Nexus 6P Prods. Liab. Litig.,* No. 5:17-cv-02185-BLF HSG (N.D. Cal. Jun. 04, 2019), ECF No. 212;

f.     Order Approving Class Notice to Amazon, Inc. Customers, *Shin v. Plantronics, Inc.*, No.5:18-cv-05626-NC (N.D. Cal. Oct. 31, 2019), ECF No. 83.

BLOOD HURST & O' REARDON, LLP

00174719

63.     Amazon reports that its past direct notice efforts have been very successful, resulting in a high percentage of emails being successfully delivered and a low percentage of emails bouncing back, which it attributes to its ongoing business relationship with its customers.

64.     Amazon has provided an example email notice approved in similar cases that it prefers to send here, which is substantially in the form of Settlement Agreement Exhibit 7 (Amazon Email Notice – "Option A"). Amazon notes that this form of email notice has been approved by courts, including in this District in *Shin v. Plantronics*. However, the Parties have sent Amazon a form of email notice with content that more closely aligns with the Email Notice being provided to all other Class Members. *See* Settlement Agreement Exhibit 7 (Amazon Email Notice – "Option B"). Counsel for Amazon has not yet confirmed if this alternative form is acceptable to Amazon. We believe we will be able to reach agreement with Amazon on the particular form of email notice by the time of the March 25, 2021 hearing on preliminary approval. Class Counsel will keep the Court updated.

65.     During meet and confer negotiations, counsel for CVS and BJ's Wholesale Club have stated their clients require a court order before they will provide the Parties or the Settlement Administrator with contact information for their Class Member customers. Accordingly, as part of the Preliminary Approval Order, the Parties request an order from the Court directing these subpoenaed retailers to produce Class Member contact information to the Settlement Administrator, or, in the case of Amazon, to email the Amazon Email Notice (Option A or Option B) to its Class Member customers to facilitate the notice process.

### 4.     The Release

66.     Under the Settlement, each member of the Settlement Class will be deemed to have released with the exception of claims for personal injury, all claims that were or could have been asserted in the Action and that are based on the identical factual predicate of those claims in the Action, specifically that Move Free Advanced was misleadingly marketed, promoted or sold, specifically including all elements of the labelling packaging, advertisements, promotions and marketing of Move Free Advanced, including the language, presence, or absence of any disclaimers.

BLOOD HURST & O' REARDON, LLP

1   Class Members are releasing claims based only on the identical factual predicate set forth in the

2   Second Amended Complaint. The named Plaintiffs have agreed to a broader general release.

3   **X.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

4          67.      Based on my experience, the settlement consideration, and my assessment of the

5   risks of further litigation, I believe the Settlement meets the fair, reasonable, and adequate standard

6   and should be approved. Both the Common Fund amount of $50,000,000 (excluding product

7   shipping and fulfillment) and the individual awards of full retail price refunds represent a significant

8   recovery of the possible damages that Plaintiffs might recover assuming success on all claims on a

9   representative basis. The result is well within the reasonable standard when considering the

10  difficulty and risks presented by pursuing further litigation.

11          **A.      The Strengths of Plaintiffs' Case and Inherent Risks of Continued Litigation**

12              **Weigh in Favor of Preliminary Approval**

13          68.      If litigation were to proceed, Plaintiffs would face substantial hurdles in obtaining

14  and keeping a successful verdict, and any upside would be limited by the claims and remedies.

15  Federal courts continue to develop procedural hurdles that prevent or limit determination of cases

16  on the merits or to provide full relief to injured plaintiffs. These developments are often unexpected

17  and often reflect changes to previously well-established law. The effect of these developments falls

18  disproportionately on class actions, which are more procedure-bound than most other types of cases.

19  *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) (novel application of *Erie*

20  Doctrine to consumer protection case by appellate court).

21          69.      Here, Defendant maintains a host of procedural and substantive arguments. It asserts

22  Plaintiffs have suffered no injury because at least one active ingredient in MFA provides the

23  promised joint health benefits. Defendant retained four scientific experts and has four other highly-

24  credentialled fact witnesses to explain why MFA works. Defendants offered Dr. Daniel Grande,

25  who analyzed clinical and pre-clinical evidence, and Dr. Martin Lotz, an experienced osteoarthritis

26  researcher whose laboratory regularly conducts NIH-funded research into compounds for

27  maintaining joint health such as glucosamine. While Plaintiffs believe the totality of the evidence

28  demonstrates the inefficacy of MFA and its ingredients, the sheer volume and complexity of the

BLOOD HURST & O' REARDON, LLP

00174719

science at issue and the high placebo rate associated with joint pain supplements that lead consumers to think they work injects substantial risk into the litigation. Defendant also argues MFA provides other benefits in arguing that full refunds are not appropriate. Even if Plaintiffs prevail at trial, Defendant likely would appeal, creating further uncertainty.

70.     Given the uncertainties balanced against this landmark settlement, this factor favors preliminary approval.

### B.     The Risk, Complexity, Expense, and Duration of the Litigation

71.     The Settlement provides substantial benefits to Class Members – to my knowledge, more than any other case of its kind. The guaranteed recovery obviates the risk and delay of continued litigation, trial, and appeal, which are significant factors considered in evaluating a settlement. Any continued litigation is time-consuming and expensive and may not obtain any more than is immediately available through the Settlement. These uncertainties are made worse by the pandemic. The elimination of delay and expense weighs in favor of approval.

### C.     The Settlement Provides Significant Relief

72.     To my knowledge, the Settlement is the largest in a dietary supplement false advertising action. The $50 million Common Fund allows for full refunds for the Settlement Class that is commensurate with the amount an individual Class Member would receive after a successful trial. The $22 Cash Payments represents the average retail price paid by Class Members. The optional Product Benefit provides even greater value. The Product Benefit offers a variety of free products valued at wholesale. Shipping and handling are borne by Defendant, separate and apart from the Common Fund. The Product Benefit makes available $75 in free products for each purchase of MFA. Further, since the products are valued at wholesale for purposes of the Settlement, the amount represents an even greater benefit to Class Members.

73.     Each Class Member may receive reimbursement for up to 3 purchases without proof of purchase, which is slightly higher than the 2.6 average number of purchases. Class Members are also entitled to reimbursement for all qualifying purchases where proof of purchase is presented. The Claim Form is simple and straightforward, requiring only the claimant's name, address, number

BLOOD HURST & O' REARDON, LLP

of products purchased, and selection of cash or product. The Settlement Website makes selecting cash or product easy.

74.     If the Common Fund is not fully depleted, claimants will receive pro rata increases in compensation.

75.     Meanwhile, the Release is appropriately narrow. Class Members only release claims based on the identical factual predicate, as required under Ninth Circuit precedent. Likewise, there are no differences between the claims to be released and the claims alleged in the operative complaint.

76.     Finally, this Settlement compares favorably to MFA's overall sales and other settlements in this area. Class Members purchased approximately 16 million units of MFA nationwide during the Class Period for about $358 million.

77.     This Settlement represents the largest or among the largest recovery in a false advertising action involving a retail product. The largest previous settlements are (or include) *In re Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.) ($40 million settlement) and *Gemelas v. Dannon Co., Inc.* (N.D. Ohio) ($45 million settlement). I was Class Counsel in *Skechers* and *Dannon*. These settlements are substantially larger than other settlements in this area.

78.     The proposed settlement is far better than a previous settlement of a very similar Move Free Advanced false advertising class action. In *Lerma v. Schiff Nutrition Int'l, Inc.*, No. 11cv1056-MDD (S.D. Cal. Nov. 3, 2015) a federal court granted final approval of a $6.51 million class action settlement that encompassed MFA and numerous other products sold by defendant. Despite the amount of the settlement, the *Lerma* settlement class was many times larger than the proposed Settlement Class here. Further, class members in *Lerma* were limited to recovering $3 per unit purchased for up to 4 units purchased. Even with proof of purchase, class members only received $10 per unit purchased for up to 5 units purchased. *Lerma*, ECF No. 171.

79.     The proposed Settlement also is far better than other glucosamine joint health supplement false advertising actions. On August 25, 2016, the court in *Pearson v. Rexall Sundown, Inc.*, No. 1:11-cv-07972 (N.D. Ill.) (ECF Nos. 288, 344), a class action involving the number one selling, billion-dollar glucosamine product Osteo Bi-Flex, approved a $9 million settlement

BLOOD HURST & O' REARDON, LLP

00174719

providing $8 payments to class members that was later reduced pro rata to $2.18. Similarly, in *Hazlin v. Botanical Labs., Inc.*, No. 13cv0618-KC, 2015 U.S. Dist. LEXIS 189687 (S.D. Cal. May 20, 2015), the court granted final approval of $3.1 million settlement involving Wellesse Joint Movement Glucosamine products.

### D.  The Extent of Discovery and Stage of Proceedings

80.     The Settlement was reached shortly before the final pre-trial conference. Fact discovery was closed, opening and rebuttal expert reports were exchanged, and expert depositions were nearly complete in *Yamagata*. The cases were thoroughly litigated. *See* §§ II-VI, above. As a result, I was able to make reasoned and informed settlement decisions.

81.     Moreover, the Settlement was negotiated over the course of numerous mediation sessions spanning the length of the litigation with experienced mediators. The Settlement was heavily negotiated and was always at arms' length.

### E.  The Experience and Views of Counsel

82.     As discussed above, we have substantial experience serving as class counsel in consumer protection class actions. I believe this record-setting Settlement is fair, reasonable, and adequate and should be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2021, at San Diego, California.

By:      *s/ Timothy G. Blood*
TMOTHY G. BLOOD

00174719

DECLARATION OF TIMOTHY G. BLOOD ISO MOTION FOR PRELIMINARY APPROVAL

BLOOD HURST & O' REARDON, LLP

# Exhibit A



501 West Broadway, Suite 1490 | San Diego, CA 92101
T | 619.338.1100  F | 619.338.1101
www.bholaw.com

# FIRM RESUME

# BLOOD HURST & O'REARDON | LLP

Blood Hurst & O'Reardon, LLP focuses in the nationwide prosecution of complex class actions. The firm represents the interests of consumers, insurance policy holders and investors in state and federal trial and appellate courts throughout the country. The principals of Blood Hurst & O'Reardon come from a large firm that represented plaintiffs in class action litigation, where they formed the core of the consumer and insurance practice group. Blood Hurst & O'Reardon's principals have been appointed lead counsel and have held other leadership positions in a wide variety of class action matters.

## Timothy G. Blood

Mr. Blood is the firm's managing partner. His practice has focused on complex litigation, including class action litigation, since the early 1990's. Mr. Blood has tried class action cases and is highly regarded in the field of consumer protection law, including California's Unfair Competition Law and Consumers Legal Remedies Act.

Mr. Blood has represented millions of retail consumers, holders of life, automobile and homeowner insurance policies, data breach victims, mortgagors, credit card customers, homeowners, and victims of race discrimination. He practices in both state and federal courts throughout the country and has represented the interests of consumers formally or informally before the Federal Trade Commission, the U.S. Consumer Products Safety Administration, the California Department of Justice, the California Legislative Analyst's Office and the California Department of Insurance. He has worked with the Federal Trade Commission to obtain record setting recoveries for consumers. In *In re Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.), Mr. Blood's work with the Federal Trade Commission resulted in the largest consumer recovery in a false advertising action in FTC history. Other large and record-setting recoveries for consumers include a $3.4 billion settlement in 2017 for owners of certain Toyota vehicles and the largest false advertising recovery in the history of the food industry.

Since 2010, some of Mr. Blood's court-appointed leadership positions include: Court appointed lead counsel in *Warner v. Toyota Motor Sales* (C.D. Cal); Federal Rule of Civil Procedure 23(g) counsel in *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, and Prods. Liability Litig.* (D.N.J.); Federal Rule of Civil Procedure 23(g) counsel in *Yamagata v. Reckitt Benckiser* (N.D. Cal.); Federal Rule of Civil Procedure 23(g) counsel in *Mullins v. Premier Nutrition Corp.* (N.D. Cal.); Federal Rule of Civil Procedure 23(g) Class Counsel in *Corvello v. Wells Fargo Bank, N.A.* (N.D. Cal.); Executive Committee member in *Snyder v. the Regents of the University of California*, JCCP No. 589243 (Cal. Super. Ct., Los Angeles Cnty., Hon. John Shepard Wiley, Jr.); Federal Rule of Civil Procedure 23(g) Class Counsel in *Rikos v. The Procter & Gamble Co.*, (S.D. Ohio; Federal Rule of Civil Procedure 23(g) Class Counsel in *Godec v. Bayer Corp.* (N.D. Ohio); Federal Rule of Civil Procedure 23(g) Class Counsel in *Johns v. Bayer Corp.* (S.D. Cal.); Federal Rule of Civil Procedure 23(g) Class Counsel in *In re Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.); Plaintiffs' Liaison Counsel and Steering Committee member by the United States District Court for the Southern District of California in the multidistrict litigation *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*; Class Counsel by the district court for the District of Massachusetts in *In re Reebok Easytone Litig.*; Class Counsel in *Serochi v. Bosa Dev. Cal.* by the San Diego Superior Court; Co-Lead Class Counsel by the Los Angeles Superior Court in *In re Toyota*

- 1 -

*Motor Cases*, (Toyota Unintended Acceleration Consolidated Litigation); Co-Lead Class Counsel by the United States District Court for the Southern District of California in the multidistrict litigation *In re Hydroxycut Mktg. and Sales Practices Litig,*; Co-Lead Class Counsel by the United States District Court for the Central District of California in *Johnson v. Gen. Mills, Inc.*; Co-Lead Class Counsel by the United States District Court for the Northern District of Ohio in *Gemeles v. The Dannon Co.*; Co-Lead Class Counsel by the United States District Court for the Southern District of California in *Hartless v. Clorox Co.*; and Class Counsel by the United States District Court for the Southern District of Florida in *Smith v. Wm. Wrigley, Jr. Co*.

Mr. Blood has litigated many data breach privacy actions, including leading as Co-Liaison Counsel and member of the Plaintiff's Steering Committee *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL 2258 (S.D. Cal.), one of the largest data breach cases at the time. He represents the City of San Diego in *People for Experian Data Corp.* Case No. 37-2019-01047183 (Cal. Super. Ct., Orange Cnty) in data breach notification action on behalf of the People of the State of California against a leading consumer credit reporting and data aggregation company and represented plaintiffs in *Patton v. Experian Data Corp*., No. SACV 15-1871 JVS (C.D. Cal.), a multi-state data breach notification action against arising out of the same conduct. Mr. Blood is a member of the Plaintiff's Executive Committee in *Snyder v. the Regents of the University of California*, JCCP No. 589243 (Cal. Super. Ct., Los Angeles Cnty), among others.

Mr. Blood has also drafted legislation aimed at modernizing data breach and related privacy laws, including drafting portions of, lobbying for and testifying before both houses of the California Legislature in support of the landmark California Consumer Privacy Act of 2018. The CCPA passed unanimously through both houses of the California legislature and provides the most sweeping digital privacy protection in the United States. It is a model for other proposed state and federal laws.

Mr. Blood has acted as lead counsel in a number of "functional food" false advertising class actions, including cases against General Mills and The Dannon Company filed in federal courts around the country. The *Dannon* litigation resulted in the largest settlement in food industry history for false advertising.

He was lead trial counsel in *Lebrilla v. Farmers Ins. Grp., Inc.* (Cal. Super. Ct., Orange Cnty.) a multistate class action which settled on terms favorable to the class after a month long trial and just before closing arguments. He was also co-lead trial counsel in *In re Red Light Photo Enf't Cases* (Cal. Super. Ct. San Diego Cnty.), an action brought on behalf of California motorists.

Mr. Blood has represented millions of purchasers of food, food supplements and over-the-counter drugs arising out of various advertising claims made by manufacturers and retailers. He has also represented owners of motor vehicles in product liability cases and consumer credit and mortgage borrowers against a number of major lending institutions, including Bank of America, Washington Mutual, Countrywide, GMAC and Wells Fargo.

Mr. Blood has wide-ranging experience litigating against life, auto and other insurance carriers on behalf of consumers. His experience litigating against life insurance companies includes representing owners, holders and beneficiaries of industrial life insurance in race discrimination cases (with class periods dating back to the late 1800's). He also represented those holding traditional life insurance policies in market conduct actions such as the "vanishing premium" life insurance actions. Mr. Blood was responsible for one of only two litigated cases where classes where certified in the vanishing premium series of cases. He was one of the few plaintiffs' attorneys to obtain class-wide recoveries in the "imitation parts" automobile insurance actions. Insurance companies against whom Mr. Blood has litigated include the American General companies, Farmers Insurance Group of companies, Mercury Insurance Group, Allstate, State Farm, Great Southern Life, Metropolitan Life, United Life Insurance Company, Midland National Life Insurance Company and General American Insurance Company.

Mr. Blood has also represented consumers in traditional false advertising actions, those victimized by so-called "negative option" sales practices, and owners of a variety of different types of faulty computer equipment and software from manufacturers. Some of these retailers and manufacturers include Apple, Dell, IBM, Procter & Gamble, General Mills, The Dannon Company, Bayer, AG, Bosa Development, Kellogg Company and General Dynamics.

Mr. Blood has been involved in many precedent-setting appellate decisions in areas which include consumer and insurance law and class action procedure. These appellate decisions include: *Kuhns v. Scottrade, Inc*., 868 F.3d 711 (8th Cir. 2017)(first 8th Circuit decision finding Article III standing in a data breach case); *Rikos v. The Procter & Gamble Co.*, 799 F.3d 497 (6th Cir. 2015) (class certification) *cert. denied*, 2016 U.S. LEXIS 2244 (U.S. Mar. 28, 2016); *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013) (consumer protection and banking); *Fitzpatrick v. Gen. Mills, Inc.,* 635 F.3d 1279 (11th Cir. 2011) (class certification, consumer law and false advertising); *Westwood Apex v. Contreras*, 644 F.3d 799 (9th Cir. 2011) (CAFA jurisdiction)*; Kwikset Corp. v. Super. Ct. (Benson)*, 51 Cal. 4th 310 (2011) (consumer law and false advertising); *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549 (9th Cir. 2010) (banking and preemption); *Troyk v. Farmers Grp., Inc*., 171 Cal. App. 4th 1305 (2009) (insurance law); *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n*, 148 P.3d 1179 (Haw. 2006) (health insurance); *McKell v. Wash. Mut. Bank, Inc*., 142 Cal. App. 4th 1457 (2006) (banking law and consumer law); *Santiago v. GMAC Mortg. Grp., Inc*., 417 F.3d 384 (3d Cir. 2005) (consumer and banking law); *Lebrilla v. Farmers Grp., Inc*., 119 Cal. App. 4th 1070 (2004) (automobile insurance and class action procedure); *Moore v. Liberty Nat'l Life Ins. Co*., 267 F.3d 1209 (11th Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002) (life insurance and civil rights); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004) (consumer and banking law); and *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496 (2003) (consumer law and false advertising).

Mr. Blood has testified before the California State Assembly and State Senate Judiciary Committees, as well as the Assembly and Senate Committees on Banking, Finance & Insurance. He has worked at both the state and federal level with lawmakers and government agencies to shape legislation to protect consumer rights, including lobbying on the Class Action Fairness Act of 2005 and working to defeat a California state ballot initiative designed to weaken the class action device.

Mr. Blood is a frequent continuing legal education speaker on topics which include complex litigation, class action procedure, data breach and privacy litigation, consumer fraud, false advertising, financial fraud litigation and insurance litigation. He has been an invited speaker for American Bar Association practice groups, the Practicing Law Institute, University of California at Irvine School of Law; University of San Diego School of Law, University of Arizona Sandra Day O'Connor School of Law, Loyola Law School, Chapman University School of Law; the Grocery Manufacturers Association, the American Association of Justice, Consumer Attorneys of California, ALI-ABA, the Practising Law Institute, Bridgeport Continuing Education, Law Seminars International, and the Consumer Attorneys of San Diego, for which he has chaired multi-day seminars on class action litigation.

Mr. Blood is frequently consulted by the media. He has appeared on Good Morning America, ABC World News Tonight, and major network affiliates on behalf of his clients. He has been interviewed for stories featuring consumer rights issues and his cases by *The New York Times*, *The Wall Street Journal*, *Bloomberg*, Reuters, the Associated Press, *The Los Angeles Times*, National Public Radio, the *Daily Journal*, *Adweek*, the *Los Angeles Daily News*, CNBC, Fox News, the Korean Broadcasting Service and others.

Mr. Blood is a member of the Board of Directors of the Consumer Attorneys of California and a member of its executive board from 2014 to 2016. He was the 2015 President of the Consumer Attorneys of San Diego and a member of the CASD Foundation, a charitable giving non-profit. In 2018 he received the statewide Marvin E. Lewis Award by the Consumer Attorneys of California for his "guidance, loyalty and dedication, all of which have been an inspiration to fellow attorneys." He also was awarded the 2018 Consumer Advocate of the Year by Consumer Attorneys of San Diego. In 2007, he was a finalist for the Consumer Attorneys of California Lawyer of the Year award for his trial work in a multistate class action against Farmers Insurance. He has been named a "Super Lawyer" since 2006 and has achieved an "AV" rating by Martindale Hubbell. In 2014, Mr. Blood was named a "Titan of the Plaintiff's Bar" by the national legal publication Law360. Mr. Blood was elected a Fellow of the American Bar Foundation. Mr. Blood is also the Legislative Column Editor for *Trial Bar News*. Mr. Blood is also a founding member of the San Diego ESI Forum, a group of judges and lawyers devoted to teaching legal professionals in federal and state court about electronic discovery.

Mr. Blood was a founding partner of the firm now known as Robbins Geller Rudman & Dowd, LLP.

Mr. Blood is admitted to practice in the state of California, as well as the U.S Supreme Court, the United States Courts of Appeal for the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth and Eleventh Circuits, and the United States District Courts for the Northern, Eastern, Central and Southern Districts of California, the Eastern and Western Districts of Arkansas, the District of Colorado, the Northern District of Illinois, and the Eastern District of Michigan. Before starting Blood Hurst & O'Reardon, Mr. Blood was a partner in Milberg Weiss Bershad Hynes & Lerach, LLP and a founding partner in the firm now known as Robbins Geller Rudman & Dowd, LLP. Mr. Blood received his Juris Doctor from George Washington University in 1990 and his Bachelor of Arts with honors in Economics from Hobart College in 1987.

- 4 -

**Leslie E. Hurst**

Ms. Hurst is a co-founding partner of the firm. Prior to founding the firm, Ms. Hurst was a partner in Coughlin Stoia Geller Rudman & Robbins, LLP and an associate at Milberg Weiss Bershad Hynes & Lerach, LLP.

Her practice has focused on complex class action lawsuits, including federal multi-district litigation and California Judicial Council Coordinated Proceedings, with an emphasis on consumer fraud, false advertising, and insurance cases under California's consumer protection statutes.

Ms. Hurst works in a number of practice areas, including areas focusing on cases against: (1) life insurers for misrepresenting the terms of vanishing premium life insurance; (2) auto insurers for repairs with non-OEM parts, diminished value claims, improper collection of installment service charges and breach of contract, and against auto manufacturers for sale of defective vehicles; (3) financial institutions for a variety of conduct; (4) insurance companies for race-based discrimination in the sale of small value "industrial" or "burial" insurance policies; (5) consumer goods manufacturers for false and deceptive advertising; (6) real estate developers for fraud and false advertising; and (7) improper collection and over collection of fees from residents by the City of Los Angeles.

The most recent settlements on which Ms. Hurst was instrumental include: *Adlouni v. UCLA Health Systems* (Cal. Super. Ct., Los Angele Cnty.) (over $25 million in free identity theft insurance in data breach case); *Austin v. Western Concrete* (S.D. Cal.) (backpay in employment case); *Serochi v. Bosa Dev.* (Cal. Super. Ct., San Diego Cnty.) ($16.75 million settlement to condominium purchasers for square footage misrepresentations by the developer); *Chakhalyan v. City of Los Angeles* (Cal. Super. Ct., Los Angeles Cnty.) (full refunds of overcharges and a revamping of L.A. billing practices); *Hartless v. Clorox Co.* (S.D. Cal.) (nationwide settlement in excess of $10 million that provided 100% recovery of damages to class members); *In re Enfamil LIPIL Mktg. & Sales Practices Litig.* (S.D. Fla.) (nationwide settlement in excess of $8 million involving false advertising of infant formula); *In re Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.) (nationwide settlement of $45 million); *Weight v. The Active Network, Inc.* (Cal. Super. Ct., San Diego Cnty.) (full refunds plus a multiplier); *Bransford v. City of Los Angeles* (Cal. Super. Ct., Los Angeles Cnty.) (full refunds); *Warner v. Toyota Motor Sales, U.S.A., Inc.* (C.D. Cal.) (warranty extensions, refunds and free vehicle inspections).

Ms. Hurst is also instrumental in the firm's appellate practice. She has argued before the Second, Eighth and Ninth Circuit Courts of Appeal and before California and Missouri Courts of Appeal. She obtained reversals of the trial courts in *Sonner v. Schwabe International* (9th Cir.); in *Corvello v. Wells Fargo Bank, NA* (9th Cir.), in *Goodman v. Wells Fargo Bank, NA* (Cal. 2d DCA), and in *Guerra v. San Diego Gas & Elec.* (Cal. 4th DCA). Ms. Hurst also briefs most of the firms appeals including *Rikos v. The Procter & Gamble Co.* (6th Cir.); *In re Enfamil LIPIL Mktg. & Sales Practices Litig.* (11th Cir.); *Hartless v. Clorox Co.* (9th Cir.); *Garcia v. Sony Comput. Entm't* (9th Cir.); *Gutierrez v. Wells Fargo Bank, N.A.* (9th Cir.), various SLUSA appeals in the 2nd, 8th and 9th Circuits, and *Sonner v. Schwabe International* (9th Cir.); *Sonner*

*v. Premier Nutrition Corporation* (9th Cir.); *Heier v. Fire Ins. Exchange* (Cal. 2nd DCA); *Reed v. Dynamic Pet Products* (Mo. Ct. App.).

Between 2003 and 2005, Ms. Hurst took a sabbatical from law and moved to Sri Lanka where she worked for CARE International as the Coordinator for Strategic Planning with an emphasis on development of CARE's long-term strategic plan for the conflict-affected areas.

Ms. Hurst is admitted to practice in the state of California, as well as the United States Courts of Appeal for the Second, Sixth, Seventh, Eighth and Ninth Circuits, and the United States District Courts for the Northern, Eastern, Central and Southern Districts of California. Ms. Hurst received her Juris Doctor degree from the University of California, Hastings College of the Law in 1995. She earned her Master of Arts degree in Sociology from the University of California, Berkeley and a Bachelor of Arts degree in Sociology (*cum laude*) from the University of San Diego. Ms. Hurst is an active member of the Consumer Attorneys of San Diego, and Consumer Attorneys of California.

### Thomas J. O'Reardon II

Mr. O'Reardon is a co-founding partner of the firm. His practice focuses exclusively on complex class action lawsuits involving consumer fraud, insurance fraud and antitrust violations. Mr. O'Reardon received his Juris Doctor degree from the University of San Diego School of Law and his Bachelor of Arts degree in Politics from Wake Forest University. He is admitted to practice in the state of California, as well as the United States Courts of Appeal for the Sixth, Eighth and Ninth Circuits, and the United States District Courts for the Northern, Eastern, Central and Southern Districts of California and the Northern District of Illinois.

Prior to founding the firm, Mr. O'Reardon was an associate at Coughlin Stoia Geller Rudman & Robbins, LLP. There, Mr. O'Reardon worked on numerous complex class action litigation matters, including actions involving: annuity policies marketed and sold to senior citizens; insurer kickbacks known as "contingent commissions" in the property and casualty insurance brokerage industry; Sherman Act claims against the world's largest manufacturers of random access memory for computers; invasions of credit card holder's rights of privacy; false and deceptive advertising of consumer goods and wireless telephone services; automobile insurers' unlawful practices with respect to installment pay plans; and dangerous and defective products, including recalled children's toys. He was also part of the team representing the California Department of Insurance against five of the largest employee benefit insurance companies for violations relating to their failure to disclose payments of contingent commissions to brokers. As a result of the action, all five defendants agreed to sweeping changes in their disclosure practices.

Some of the actions on which Mr. O'Reardon has worked include: *Yamagata v. Reckitt Benckiser LLC* (N.D. Cal.) (certified class action involving false advertising of Move Free Advanced glucosamine and chondroitin supplement); *Mullins v. Premier Nutrition Corp.* (N.D. Cal.) (certified class action involving false advertising of Joint Juice glucosamine and chondroitin supplement); *Rikos v. The Proctor & Gamble Co.* (S.D. Ohio) (certified class action involving false advertising of P&G's Align probiotic, affirmed by the Sixth Circuit); *In re*

*Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.) (nationwide settlement of $45 million involving false advertising of Skechers' Shape-ups toning shoes products); *In re Reebok Easytone Litig.* (D. Mass.) (nationwide settlement of $25 million involving false advertising of Reebok toning footwear and apparel products); *Murr v. Capital One Bank (USA), N.A.* (E.D. Va.) (nationwide settlement in excess of $7.3 million involving 0% APR billing practices); *Dolfo v. Bank of Am.* (S.D. Cal.) (certified class action involving mortgage modification banking practices); *Johnson v. Gen. Mills, Inc.* (C.D. Cal.) (certified class action involving false advertising of General Mills' YoPlus yogurt, which resulted in a nationwide settlement of $8.5 million); *Fitzpatrick v. Gen. Mills, Inc.* (S.D. Fla.) (certified class action reviewed and approved by the Eleventh Circuit); *Johns v. Bayer Corp.* (S.D. Cal.) (certified class action involving false advertising of Bayer's One-A-Day multivitamins); *Godec v. Bayer Corp.* (N.D. Ohio) (certified class action involving false advertising of Bayer's One-A-Day multivitamins, which settled on a classwide basis); *Corvello v. Wells Fargo Bank, NA* (N.D. Cal.) (certified class action involving mortgage modification practices where order granting motion to dismiss was reversed by the Ninth Circuit in a published opinion); *Rosales v. FitFlop USA LLC* (S.D. Cal.) (nationwide settlement of $5.3 million involving false advertising of toning footwear); *Blessing v. Sirius XM Radio, Inc.* (S.D.N.Y.) (nationwide settlement valued in excess of $180 million involving monopoly price increases arising out of the merger between Sirius and XM); *In re Dynamic Random Access Memory Antitrust Litig.* (N.D. Cal.) (settlement of more than $300 million); *In re Mattel, Inc .[Toy Lead Paint Prods. Liab. Litig.]* (C.D. Cal.) (nationwide settlement valued at over $50 million); *Gemelas v. Dannon Co., Inc.* (N.D. Ohio) (nationwide settlement in excess of $45 million involving false advertising of Dannon's Activia and DanActive yogurt products); *In re Enfamil LIPIL Mktg. & Sales Practices Litig.* (S.D. Fla.) (certified class action involving false advertising of infant formula, which resulted in nationwide settlement in excess of $8 million); *Smith v. Wm. Wrigley Jr. Co.* (S.D. Fla.) (nationwide settlement in excess of $7 million involving false advertising of Wrigley Eclipse chewing gum and mints); *Duffer v. Chattem, Inc.* (S.D. Cal.) (nationwide settlement of up to $1.8 million involving false advertising of ACT Total Care mouthwash); *In re Enron Corp. Sec. Litig.* (S.D. Tex.) (settlements of $7.3 billion); *AOL Time Warner Cases* (Cal. Super. Ct., Los Angeles Cnty.) (settlements of approximately $630 million); *Morris v. CBS Broad., Inc.* (S.D.N.Y.) (nationwide settlement on behalf of purchasers of asbestos-laden children's toys); *In re Aqua Dots Prods. Liab. Litig.* (N.D. Ill.) (multidistrict litigation on behalf of purchasers of more than 4 million toxic children's toys); *Berry v. Mega Brands, Inc.* (D.N.J.) (litigation on behalf of purchasers of more than 10 million lethal children's toys); *In re Toyota Motor Cases*, (Cal. Super. Ct., Los Angeles Cnty.) (litigation on behalf of consumers who purchased vehicles subject to "sudden unintended acceleration"); and *In re Hydroxycut Mktg. and Sales Practices Litig.* (S.D. Cal.) (multidistrict litigation on behalf of purchasers of unsafe and ineffective weight-loss products, which resulted in a nationwide settlement valued in excess of $20 million). With the exception of the *Blessing v. Sirius XM Radio. Inc.* litigation, Mr. O'Reardon and/or his firm served as court-appointed Lead or Co-Lead Counsel in each of the above-mentioned class actions. In granting final settlement approval, which included appointing Mr. O'Reardon as Class Counsel, the Court's order in the *Johnson v. Gen. Mills. Inc.* (C.D. Cal.) action states that Mr. O'Reardon is "vastly experienced" in consumer class action litigation.

**BLOOD HURST & O'REARDON** | LLP

Mr. O'Reardon is an active member of the Consumer Attorneys of San Diego, the Consumer Attorneys of California, and a founding member of the CAOC Young Lawyers Division. In 2014-2021, Mr. O'Reardon was named a "Super Lawyers Rising Star," a designation provided to less than 2.5 percent of lawyers in California. He has also been a member of, and contributing author for, The Sedona Conference Working Group on Electronic Document Retention and Production. Mr. O'Reardon has been an invited speaker for the University of San Diego School of Law, Consumer Attorneys of California, the Consumer Attorneys of San Diego, and the San Diego ESI Forum on topics which include complex litigation, electronic discovery, and the class action settlement process.

### Paula R. Brown

Ms. Brown is a partner with the firm. Her practice focuses on complex class action litigation, including consumer and antitrust cases in federal multi-district litigation and California Judicial Council Coordinated Proceedings. Ms. Brown has tried class action cases and is also involved in the firm's appellate practice.

Ms. Brown received her Juris Doctor degree and graduated *cum laude* from California Western School of Law in 2007 and earned her Bachelor of Arts degree in Political Science from the University of Washington in 2004. While at California Western, Ms. Brown was a member of the *California Western Law Review* and authored *Parent-Child Relationship Trumps Biology: California's Definition of Parent in the Context of Same-Sex Relationships*, 43 Cal. W. L. Rev. 235 (2006). She is admitted to practice in the state of California, as well as the United States Courts of Appeal for the Eighth and Ninth Circuits, and the United States District Courts for the Northern, Eastern, Central and Southern Districts of California and the Northern District of Illinois.

Prior to joining Blood Hurst & O'Reardon, Ms. Brown was an associate at the law firm now known as Robbins, Geller, Rudman & Dowd, LLP. While there, she represented plaintiffs in a number of complex class action litigation matters involving: price-fixing claims against the world's largest aftermarket auto lighting parts manufacturers and distributors; monopoly claims against the largest seller of portable media players; price fixing claims against containerboard manufacturers; race-discrimination claims against mortgage lenders; and false and deceptive practices in the sale of defective children's products and toys.

Some of the actions on which Ms. Brown has worked include: *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices, and Products Liability Litigation* (D.N.J.) (nationwide false advertising); *Mullins v. Premier Nutrition Corp.* (N.D. Cal.) (certified class action involving false advertising); *Huntzinger v. Aqua Lung America, Inc. et al.* (S.D. Cal.) (nationwide false advertising); *Medellin v. Ikea U.S. West, Inc.* (Cal Super. Ct., San Diego Cnty.) (consumer protection claims); *Serochi v. Bosa Dev.* (Cal. Super. Ct., San Diego Cnty.) (misrepresentations case); *Dennis v. Kellogg Co.* (nationwide false advertising); *In re Skechers Toning Shoes Prods. Liab. Litig.* (W.D. Ky.) (nationwide false advertising); *In re Reebok Easytone Litig.* (D. Mass.) (nationwide false advertising); *Dremak v. Urban Outfitters, Inc.* (Cal. Super. Ct., Los Angeles Cnty.) (consumer privacy); *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.* (S.D. Cal.) (consumer privacy); *In re Hydroxycut Mkt. and Sales*

BLOOD
HURST &
O'REARDON | LLP

*Practices Litig.* (S.D. Cal.) (false advertising); *In re Apple iPod iTunes Antitrust Litig.* (N.D. Cal.) (monopoly claims); *In re Mattel, Inc. [Toy Lead Paint Prods. Liab. Litig.]* (C.D. Cal.) (nationwide sale of defective product); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.* (C.D. Cal.) (price fixing); *Payares v. JP Morgan Chase & Co.* (C.D. Cal.); *Salazar v. Greenpoint Mortg.* (N.D. Cal.); *Puello v. Citifinancial* (D. Mass.); *Morris v. CBS Broad., Inc.* (S.D.N.Y.) (defective product); *In re Aqua Dots Prods. Liab. Litig.* (N.D. Ill.) (defective product); and *Berry v. Mega Brands, Inc.* (D.N.J.) (defective product).

Ms. Brown is an active member of the Consumer Attorneys of San Diego, the Consumer Attorneys of California, the American Bar Association, and the American Association for Justice. In 2015, 2016, and 2017, Ms. Brown was named a "Super Lawyers Rising Star," a designation provided to less than 2.5 percent of lawyers in California. Ms. Brown is a member of the Board of Directors of the Consumer Attorneys of California and is active in the Louis M. Welsh American Inn of Court.

### Jennifer L. MacPherson

Ms. MacPherson is of counsel with the firm. Her practice focuses on complex class action litigation. Ms. MacPherson received her Juris Doctor degree from the University of San Diego School of Law in 1997 with a J.D. and an L.L.M in tax and earned her Bachelor of Arts degree in International Business and Marketing from the University of Hawaii in 1994. During law school she was a summer law clerk to the Honorable Walter S. Kirimitsu (Ret.) in the Hawaii Intermediate Court of Appeals and was a research assistant to Professor C. Hugh Friedman author of *California Practice Guide: Corporations*. She is a member of the California Bar and is licensed to practice before the United States District Courts for the Central, Southern and Northern Districts of California.

For over a decade Ms. MacPherson has prosecuted class actions on behalf of consumers, policyholders, investors, employees, and medical practitioners against the nation's largest retailers and manufacturers of consumer products, insurers of homes and automobiles, banks, and employers for violations of federal and state consumer, antitrust, securities and labor laws. During this time she has actively litigated complex class action litigation matters involving: false and deceptive advertising by one of the nation's largest retail mall chains for selling gift cards subject to a monthly service fee in violation of state law; truth in lending claims against a national bank for suspending borrower's home equity lines of credit; breach of contract claims against national lenders for failing to modify borrower's home loans after successful completion of a trial period plan; product defect claims against the world's largest manufacturers of laptops and cell phones; RICO claims against the nation's largest health insurance companies for denying, delaying and reducing payments to health care providers nationwide; privacy claims against national pharmacies for allegedly using prescription information to conduct targeted marketing campaigns on behalf of drug companies; data breach lawsuits against national banks and retailers for failing to properly safeguard consumer's personal information.

Some of these actions include: *Solomon v. Anthem, Inc.* (S.D. Fla.); *In re Sony VAIO Comput. Notebook Trackpad Litig.* (S.D. Cal.); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, (S.D. Cal.); *Kazemi v. Westfield Am., Inc. (*Cal. Super. Ct., Los Angeles Cnty.); *Frost v. LG*

**BLOOD**
**HURST &**
**O'REARDON** | LLP

*Elecs. Mobilecomm U.S.A., Inc.* (Cal. Super. Ct., Los Angeles Cnty.); *Shamrell v. Apple, Inc.* (Cal. Super. Ct., Los Angeles Cnty.).

## Craig W. Straub

Mr. Straub is an associate with the firm. Mr. Straub's practice involves prosecuting all types of consumer fraud in complex class action litigation, with a particular focus on false advertising of consumer products as well as complex contract and intellectual property disputes between international corporations. He graduated *magna cum laude* from California Western School of Law and earned his Bachelor of Sciences degree from Texas A&M University. While at California Western School of Law, Mr. Straub received an Academic Merit Scholarship and a Wiley W. Manuel Pro Bono Services Award. Mr. Straub is a registered patent attorney with the United States Patent and Trademark Office. He brings substantial experience in complex litigation including projects at DLA Piper, Bernstein Litowitz Berger & Grossman, LLP, Cooley LLP, and other nationally recognized firms. He has been a member of the California Bar since 2007.

Mr. Straub performed significant work on behalf of Plaintiffs in the following actions: *Warner v. Toyota Motor Sales, U.S.A, Inc.* (C.D. Cal.) ($3.4 billion settlement for owners of certain Toyota vehicles); *Mullins v. Premier Nutrition Corp.* (N.D. Cal.) (certified class action involving false advertising of Joint Juice glucosamine and chondroitin supplement); *Rikos v. The Proctor & Gamble Co.* (S.D. Ohio) (certified class action involving false advertising of P&G's Align probiotic, affirmed by the Sixth Circuit); *Terry v. JPMorgan Chase Bank, N.A* (S.D. Cal.) ($4.3 million settlement fund for the Class alleging unfair debt collection practices); *Huntzinger v. Aqua Lung America, Inc. et al.* (S.D. Cal.) (nationwide false advertising); *Yamagata and Pelardis v. Reckitt Benckiser LLC* (N.D. Cal.) (certified class action involving false advertising of glucosamine supplement).

## Aleksandr J. Yarmolinets

Mr. Yarmolinets is an associate with the firm. His practice focuses on complex class action litigation, including consumer, securities, and banking-related cases in federal multi-district litigation. Mr. Yarmolinets holds a Master of Laws degree in Securities and Financial Regulation from Georgetown University Law Center, and a juris doctor degree from California Western School of Law, *cum laude*.

Mr. Yarmolinets is a Certified Fraud Examiner and is admitted to practice law in the States of California and New York, as well as the United States Court of Appeals for the Ninth Circuit, the United States Tax Court, and the United States District Courts for the Central and Southern Districts of California, and for the District of Colorado. Mr. Yarmolinets also represented clients in FINRA's Arbitration and Mediation program.

Before joining the firm, Mr. Yarmolinets represented clients in complex securities and commercial litigation, structured and advised clients in capital formation and other complex transactions and served as an outside general counsel to numerous companies across various industries, including transportation, manufacturing, and health care.

BLOOD
HURST &
O'REARDON | LLP

        While at law school, Mr. Yarmolinets was a distinguished advocate and competed in several national, invitation only moot court trial competitions. Before graduating law school, he interned at the Export-Import Bank of the United States, the California Department of Business Oversight, and the San Diego County Airport Authority.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for defendant Reckitt Benckiser LLC to the e-mail addresses denoted on the Electronic Mail Notice List, and that I have mailed the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2021.

*s/  Timothy G. Blood*

TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

DECLARATION OF TIMOTHY G. BLOOD ISO MOTION FOR PRELIMINARY APPROVAL

00174719