BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Class Counsel

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>RECKITT BENCKISER LLC,<br><br>        Defendant. | Case No. 3:17-cv-03529-VC<br><br>**PLAINTIFFS' NOTICE OF JOINT MOTION AND MOTION FOR PRELIMINARY APPROVAL**<br><br>**CLASS ACTION**<br><br>Hrg Date:    June 24, 2021<br>Time:        2:00 p.m.<br><br>District Judge Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Complaint Filed:    June 19, 2017<br><br>**JURY TRIAL DEMANDED** |

BLOOD HURST & O' REARDON, LLP

1

## NOTICE OF MOTION AND MOTION

2

PLEASE TAKE NOTICE that on June 24, 2021, at 2:00 p.m., in Courtroom 4, 17th Floor,

3

450 Golden Gate Avenue, San Francisco, California, before the Honorable Vince Chhabria, and

4

pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs, individually and on behalf of the

5

proposed Settlement Class, and Defendant Reckitt Benckiser LLC will and hereby do jointly move

6

for preliminary approval of class action Settlement Agreement, conditional certification of

7

Settlement Class, and approval of Class Notice.

8

Plaintiffs respectfully move this Honorable Court for entry of an Order: (1) granting

9

preliminary approval of the Settlement; (2) approving and directing notice as set forth in the Class

10

Notice Program attached as Exhibit 4 to the Settlement Agreement; (3) conditionally certifying the

11

Settlement Class for Settlement purposes; (4) approving the form and content of the forms of Class

12

Notice attached as Exhibits 5-9 to the Settlement Agreement; (5) appointing Plaintiffs Gordon

13

Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol

14

Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman as Class Representatives;

15

(6) appointing Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP

16

as Class Counsel; (7) appointing Epiq Class Action and Claims Solutions as Settlement

17

Administrator; and (8) scheduling a Final Approval Hearing to consider entry of a final order

18

approving the Settlement, final certification of the Settlement Class for settlement purposes only,

19

and the request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

20

This joint motion is based upon this notice of motion, Plaintiffs' memorandum in support of

21

the motion for preliminary approval and certification of the Settlement Class, the declarations of

22

Timothy G. Blood, Brenda A. Frederick, and Cameron R. Azari, the previously filed motion for

23

preliminary approval and accompanying documents (ECF Nos. 203, 203-1, 203-2, 203-3, 203-4,

24

and 208), and all supporting exhibits, the complete file and record in this action, and such oral

25

argument as the Court may consider in deciding this motion.

26

Dated: May 12, 2021

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)

27

28

By:       *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   PROCEDURAL   HISTORY   AND   THE   AMENDED   SETTLEMENT
      AGREEMENT ......................................................................................................2

      A.    Summary of the Procedural History ..........................................................2

      B.    The Updated Settlement Agreement ..........................................................2

            1.    Class Members Receive Full Cash Refunds ...................................2

            2.    Notice and Administration Costs, Attorneys' Fees and Expenses, and
                  Class Representative Service Awards .............................................4

            3.    The Class Notice Plan ....................................................................4

III.  THE SETTLEMENT ADDRESSES THE COURT'S PREVIOUS ISSUES AND
      OBSERVATIONS ................................................................................................6

      A.    The Settlement Has a $50 Million Fund, But No Longer Includes the Product
            Option .......................................................................................................6

      B.    The Estimated Number of Class Members ................................................7

      C.    Direct Notice to the Settlement Class .......................................................7

      D.    The Estimated Claims Rate .......................................................................8

IV.   THE SETTLEMENT MERITS APPROVAL..........................................................9

      A.    The Settlement Represents a Reasonable Settlement Compared to a Possible
            Recovery at Trial ......................................................................................9

      B.    The Settlement Compared to Similar Approved Settlements ...................12

      C.    The Risks of Litigating a Class Trial Versus the Benefits of Settlement.........15

            1.    Risks of Establishing Liability at a Class Trial ...........................15

            2.    Other Potential Risks of Continued Litigation .............................16

V.    SETTLEMENT   CLASS   MEETS   THE   REQUIREMENTS   FOR   CLASS
      CERTIFICATION AND MERITS PRELIMINARY APPROVAL ...................18

VI.   THE PROPOSED SCHEDULE OF EVENTS .....................................................18

VII.  CONCLUSION ..................................................................................................18

BLOOD HURST & O' REARDON, LLP

00176245

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Allen v. Hyland's*,
5    No. 2:12-cv-01150, 2021 U.S. Dist. LEXIS 34695 (C.D. Cal. Feb. 23, 2021)..........................15

6 *Arnett v. Bank of Am., N.A.*,
    No. 3:11-cv-1372, 2014 U.S. Dist. LEXIS 130903 (D. Or. Sep. 18, 2014)...............................11
7

8 *Balderas v. Massage Envy Franchising, LLC*,
    No. 12-cv-06327, 2014 U.S. Dist. LEXIS 99966 (N.D. Cal. July 21, 2014)..........................11

9 *Behrens v. Wometco Enters., Inc.*,
10    118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................................11

11 *Belfiore v. P&G*,
    311 F.R.D. 29 (E.D.N.Y. 2015) ............................................................................................10
12

13 *Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ...............................................................................................11

14 *Boeing Co. v. Van Gemert*,
15    444 U.S. 472 (1980) ..................................................................................................................8

16 *Carnegie v. Household Int'l, Inc.*,
    445 F. Supp. 2d 1032 (N.D. Ill. 2006) ..................................................................................10
17

18 *In re Checking Account*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) .................................................................................11

19 *Cotter v. Lyft, Inc.*,
20    193 F. Supp. 3d 1030 (N.D. Cal. 2016) ..................................................................................6

21 *Deaver v. Compass Bank*,
    No. 13-cv-00222, 2015 U.S. Dist. LEXIS 166484 (N.D. Cal. Dec. 11, 2015) ..........................11
22

23 *Farar v. Bayer AG*,
    No. 3:14-cv-04601, 2017 U.S. Dist. LEXIS 193729 (N.D. Cal. Nov. 15, 2017) ...............15, 16

24 *Forcellati v. Hyland's, Inc.*,
    No. CV 12-1983, 2014 U.S. Dist. LEXIS 50600 (C.D. Cal. Apr. 9, 2014) ................................8
25

26 *Gallucci v. Boiron, Inc.*
    No. 11cv2039, 2012 U.S. Dist. LEXIS 157039 (S.D. Cal. Oct. 31, 2012) ..........................13, 14
27

28 *Gallucci v. Gonzales*,
    603 Fed. Appx. 533 (9th Cir. 2015) ....................................................................................9, 13

BLOOD HURST & O' REARDON, LLP

iii

Case No. 3:17-cv-03529-VC

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019) ................................................................................10

*Greenberg v. Target Corp.*,
  985 F.3d 650 (9th Cir. 2021) ...............................................................................17

*Hazlin v. Botanical Labs., Inc.*,
  No. 13cv0618, 2015 U.S. Dist. LEXIS 189687 (S.D. Cal. May 20, 2015) ........13, 14

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ..................................................................................8

*Kroessler v. CVS Health Corp.*,
  977 F.3d 803 (9th Cir. 2020) ...............................................................................17

*Larson v. Harman-Mgmt. Corp.*,
  No. 1:16-cv-00219, 2019 U.S. Dist. LEXIS 219294 (E.D. Cal. Dec. 18, 2019) ......10

*Lerma v. Schiff Nutrition Int'l, Inc.*,
  No. 3:11-cv-1056, 2016 U.S. Dist. LEXIS 25498 (S.D. Cal. Mar. 1, 2016) .....12, 14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................11

*Mirkin v. Viridian Energy, Inc.*,
  No. 3:15-cv-1057, 2016 U.S. Dist. LEXIS 86616 (D. Conn. July 5, 2016) ............10

*Moore v. Verizon Commc'ns, Inc.*,
  No. C 09-1823, 2013 U.S. Dist. LEXIS 122901 (N.D. Cal. Aug. 28, 2013) ............9

*Munday v. Navy Fed. Credit Union*,
  No. SACV 15-1629, 2016 U.S. Dist. LEXIS 193973 (C.D. Cal. Sept. 15, 2016) ......9

*Nachshin v. AOL, LLC*,
  663 F.3d 1034 (9th Cir. 2011) ................................................................................3

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
  993 F.3d 774, 2021 U.S. App. LEXIS 9880 (9th Cir. Apr. 6, 2021) ......................17

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................11

*Parker v. Time Warner Entm't Co., L.P.*,
  331 F.3d 13 (2d Cir. 2003) ...................................................................................10

*Racies v. Quincy Bioscience, LLC*
  No. 15-cv-00292, 2020 U.S. Dist. LEXIS 78156 (N.D. Cal. May 4, 2020) ............16

*Ramirez v. TransUnion LLC*,
  951 F.3d 1008 (9th Cir. 2020) ...............................................................................17

BLOOD HURST & O' REARDON, LLP

iv

Case No. 3:17-cv-03529-VC

00176245

BLOOD HURST & O' REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)..................................................................................10

*Schneider v. Chipotle Mexican Grill, Inc.*,
    336 F.R.D. 588 (N.D. Cal. 2020) ............................................................................9

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)..................................................................................3

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)..................................................................................17

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-cv-02540, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ...........11

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) .....................................................................................8

*Tait v. BSH Home Appliances Corp.*,
    No. SACV 10-0711, 2015 U.S. Dist. LEXIS 98546 (C.D. Cal. July 27, 2015) ........9

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    445 F. Supp. 3d 508 (N.D. Cal. 2020) ...................................................................11

*Wilson v. Airborne, Inc.*,
    No. EDCV 07-770, 2008 U.S. Dist. LEXIS 110411 (C.D. Cal. Aug. 13, 2008) ..........13, 14, 15

**Statutes**

28 U.S.C. § 1332(d) ....................................................................................................5

Dietary Supplement Health and Education Act of 1994 ........................................16, 17

New York General Business Law § 349(h) .............................................................9, 10, 11

New York General Business Law  § 350 ..................................................................9, 10, 11

**Rules**

Fed. R. Civ. P. 23 ................................................................................................17, 18

v                                   Case No. 3:17-cv-03529-VC

NOTICE OF RENEWED UNOPPOSED JOINT MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2      Plaintiffs submit this memorandum in support of the Joint Motion for Preliminarily Approval

3  of Class Action Settlement. The Stipulation of Settlement ("Settlement" or "SA") is attached as

4  Exhibit A to the concurrently filed Declaration of Timothy G. Blood ("Blood Decl.").

5  **I.      INTRODUCTION**

6      At the March 23, 2021 hearing on the Parties' joint motion for preliminary approval, the

7  Court requested additional information regarding the number of class members, information

8  regarding the projected take rate, the potential recovery from a class trial, how the settlement

9  compares to other settlements of similar cases, and the risks and benefits of proceeding to trial versus

10 settlement. Additionally, the Court's order on preliminary approval requested additional information

11 about accounting for the deduction from the fund for class members that select products rather than

12 cash. *See* ECF No. 211.

13     Following the March 23, 2021 hearing, the parties renegotiated part of the proposed

14 settlement to eliminate the option for Class Members to choose products rather than cash, leaving

15 cash refunds for claimants. While the settlement continues to consist of a $50 million common fund,

16 all claimants will receive a cash payment. As before, the cash payment will be for the full amount

17 of the average retail price of the product at issue, Schiff Move Free Advanced. Claimants still may

18 receive reimbursement of $22 per purchase for up to three purchases without proof of purchase, and

19 reimbursement for more than three purchases with proof of purchase.

20     Additional data obtained from retailers in preparation for the notice plan confirms the

21 settlement fund—which is the largest amount obtained in this type of case—should be sufficient to

22 pay claimants. The average number of Move Free Advance purchases is about 2.6 units per Class

23 Member. The total number of units sold during the Class Period is about 16,050,065. Under the

24 proposed notice program, about 76% of Class Members will receive direct notice mostly through

25 email, with some receiving notice by mail. The remainder of the Class will receive notice through

26 publication. The Claims Administrator estimates the aggregate amount claimed will range from

27 $18,601,610 to $23,796,592. Meanwhile, the amount of the fund available for Class Member

28

BLOOD HURST & O' REARDON, LLP

reimbursements, assuming the Court awards the requested award of attorney's fees, reimbursement of expenses and claims administration costs is about $35,608,628.

## II. PROCEDURAL HISTORY AND THE AMENDED SETTLEMENT AGREEMENT

The previous motion for preliminary approval described in detail the lengthy procedural history of this matter, and the minutiae of the Settlement Agreement. *See* ECF No. 203. Rather than repeat those details here, they are incorporated by this reference, stated in the concurrently filed Declaration of Timothy G. Blood ("Blood Decl."), and summarized below.

### A. Summary of the Procedural History

In this action Plaintiffs allege Defendant falsely advertised its glucosamine joint health dietary supplement "Move Free Advanced" ("MFA")[1] by claiming it provides joint health benefits that it does not provide. The litigation has lasted nearly four years, involved discovery motions, class certification in two courts, summary judgment, 30 depositions, over 20 third party subpoenas, more than 303,000 pages of documents (exceeding 116 GB), reports and declarations from 14 designated experts, and many days of mediations with three different neutrals at various stages throughout the action. *See* ECF No. 203 at 1-2; Blood Decl., ¶¶ 4-37. The settlement was reached only after this significant history, while the Parties were preparing for trial, and just weeks away from the final pretrial conference.

### B. The Updated Settlement Agreement

Under the Settlement, Defendant will create a $50 million non-reversionary Common Fund to compensate Class Members and pay for Class Notice, any award of attorneys' fees and expenses, and Class Representative service awards.

#### 1. Class Members Receive Full Cash Refunds

Class Members will receive $22 cash for each unit of MFA they purchased. SA, § IV.3. This amount is about the average retail price paid by Class Members. Class Members may claim reimbursement for up to 3 purchases without proof of purchase, for a total of $66. Three purchases

---

[1] "Move Free Advanced" or "MFA" refers to the glucosamine supplement products marketed and distributed by Reckitt Benckiser called Move Free Advanced, Move Free Advanced Plus MSM, and Move Free Advanced Plus MSM & Vitamin D.

are slightly more than the average number of purchases made by Class Members, which is 2.6. Blood Decl., ¶ 44,. Those with proof of purchase may claim as many refunds as they have proof of purchase.

To be eligible for reimbursement, Class Members need only complete and timely submit online or by mail a simple Claim Form. SA, § V, Ex. 10 (Claim Form). The Claim Form has just two questions: (1) how many bottles of MFA were purchased? and (2) do you want to receive a check or digital payment? *Id.*

No portion of the Common Fund will revert to Defendant. Any funds remaining after calculating valid claims will be distributed to Claimants by increasing the amount of their valid cash or product claims up to three times the original claim amount. SA, § IV.4.b. In the event such increased amount would exceed three times the original claim amount, a second round of class notice and an additional claim-in opportunity will occur. *Id.*, § IV.4.c. If money remains after this Supplemental Claim Deadline, the valid claims will again be calculated and increased pro rata until the Net Fund is exhausted. *Id.* If there is not enough money to cover all claims, cash claims will be reduced *pro rata. Id.*, § IV.4.a.

Given the large size of the cash awards, the combined Direct Notice and Publication Notice process, the second Direct Notice and Supplemental Claim process, and three-time upward adjustment provision, the Parties anticipate there will be only a de minimis amount of funds remaining because of occurrences like uncashed checks. The Parties propose that any remaining money be distributed to the Orthopaedic Research Society in accordance with the *cy pres* doctrine. *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) (*cy pres* recipient should be related to the nature of the lawsuit and the class members, including their location); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). The Orthopaedic Research Society is an appropriate cy pres recipient in this action. It the most prestigious musculoskeletal research society with top researchers and clinicians from around the U.S. and abroad. The Orthopaedic Research Society will ear-mark any *cy pres* award to its OA education and research-related efforts. *See* ECF No. 203-3 (Declaration of Brenda Frederick Re: Orthopaedic Research Society).

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00176245

### 2.     Notice and Administration Costs, Attorneys' Fees and Expenses, and Class Representative Service Awards

The cost of class notice and settlement administration, attorneys' fees and expenses, and the Class Representative service awards will be paid from the Common Fund. SA, § II.16. Defendant agrees to not oppose Plaintiffs' Counsel's application for attorneys' fees of up to 25% of the Common Fund ($12,500,000) plus reimbursement of litigation expenses. SA, §§ IX.A-B. Defendant also agrees not to oppose a request for Court-awarded service awards of $7,500 to Plaintiffs Yamagata, Pelardis, and Carrigan, and $500 to Plaintiffs Coletti, Maher, Marshall, Rawls, Steele, and Tishman. SA, § IX.D.

### 3.     The Class Notice Plan

The structure of the proposed Class Notice Plan is unchanged. The Settlement Class will be notified through a combination of email notice, directly mailed postcards, targeted internet publication strategies, a settlement website, and live operator telephone hotline. SA, §§ IV.B-C. Epiq Class Action and Claims Solutions ("Epiq" or the "Settlement Administrator"), a firm specializing in class action notice plans, has assisted in designing the Class Notice Plan and will see to its implementation. *See* Declaration of Cameron R. Azari, Esq. re Class Notice Program ("Azari Decl.").

Most Class Members will directly receive class notice by email or postcard, with most by email. *See* SA, Exs. 6 (Email Notice), 7 (Amazon Email Notice), and 8 (Postcard Notice). In response to the Court's questions about the direct notice provided by Amazon, the Parties and Amazon's counsel met and conferred and ultimately reached agreement on the updated language in the revised proposed Amazon Email Notice. Blood Decl., ¶ 61. The Amazon Email Notice now contains the same elements as the Email Notice being sent to the other Class Members. *See* Exs. 6-7. Like the Email Notice, the Amazon Email Notice uses language and incorporates the substantive elements from the Federal Judicial Center's model summary notice.[2] As a result of subpoenas to the

---

[2]     *See* https://www.fjc.gov/sites/default/files/2016/ClaAct06.pdf; *see also* Standing Order for Civil Cases Before Judge Vince Chhabria at 14 ("The parties should consider using the Federal Judicial Center's model notices").

largest retailers of MFA, Class Counsel obtained contact information to send direct class notice to approximately 4.7 million Class Members. All the Subpoenaed Retailers, including two previous holdouts CVS and BJ's Wholesale, have provided all their Class Member contact information.

In addition to the direct notice efforts, class notice will be disseminated through a multi-faceted online publication campaign. Through this targeted digital media campaign, the Internet Banner Advertisements (Ex. 9) will be widely disseminated and include hyperlinks that take readers directly to the Settlement Website. The online campaign will utilize multiple targeting layers, which include both geographic targeting and category contextual targeting based on how MFA was actually marketed to help ensure delivery to the most appropriate digital users. Azari Decl., ¶¶ 37-47. The Internet Banner Advertisements will strategically appear on relevant websites, social media platforms, and as a result of organic searches that include relevant Internet AdWords. The Settlement will also be publicized by an English and Spanish informational release to approximately 16,500 media outlets across the United States. *Id.*, ¶ 46.

The Settlement Administrator will also create a Settlement Website (www.MoveFreeAdvancedSettlement.com) to provide potential Class Members with information about the Settlement, a general description of the lawsuit, the Settlement relief, important dates and deadlines, and Class Members' legal rights. The Settlement Website will be in English and Spanish, contain updates on the status of the Settlement, and post relevant pleadings and Settlement-related documents, including the Settlement Agreement and its exhibits, the Long-form Notice (which will be available in English and Spanish), this memorandum, and, when filed, the Preliminary Approval Order, final approval motion, motion for an award of attorneys' fees and reimbursement of costs and expenses, the operative complaint, and the Final Judgment and Order Approving Settlement. SA, § VI.B.5; Azari Decl., ¶ 48.

A toll-free telephone hotline with a live operator will be available. Notice to public officials required by the Class Action Fairness Act ("CAFA") will be sent in accordance with the provisions of that Act. *See* SA, § VI.B.6.

///

///

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

### III.   THE SETTLEMENT ADDRESSES THE COURT'S PREVIOUS ISSUES AND OBSERVATIONS

The Court raised several issues and observations during the previous preliminary approval hearing. Following the hearing, the Parties held numerous negotiations which led to the revised Settlement Agreement submitted with this motion. The revised Settlement Agreement and Class Notice Plan, as explained below, address each of the Court's questions. The Settlement should be preliminarily approved as fair, reasonable and adequate. *See Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016).

### A.   The Settlement Has a $50 Million Fund, But No Longer Includes the Product Option

In response to the Court's questions regarding the optional free product option, the Parties eliminated it from the updated Settlement.

The Settlement now provides an all-cash $50 million non-reversionary Common Fund from which Class Members are entitled to receive $22 cash per purchase of the Move Free Advanced products at issue. The option for a claimant to choose various products instead of cash has been removed. A comparison of the previous and revised settlement is attached to the concurrently filed Blood Declaration as Exhibit B. Class Members may receive cash awards for up to three units purchased without submitting any proof of purchase. There is no limit on the number of purchases claimed for those Class Members that have proof of purchase. If the payout does not exhaust the fund, the cash awards will be increased pro rata up to three times the claimed amounts. If this first pro rata increase does not exhaust the fund, then the claim period will be extended for all Class Members by sixty days and Class Notice will be provided again to those Class Members who did not originally submit a Claim. If, following the supplemental claims period and supplemental notice, the amount of the fund still exceeds the aggregate amount of valid claims, the amounts paid on all valid claims will be further increased pro rata up until the fund is exhausted. Any money remining in the fund after distribution (*e.g.*, uncashed checks) will be distributed to the Orthopaedic Research Society, the proposed *cy pres* recipient. *See* Declaration of Brenda A. Frederick (ECF No. 203-3).

00176245

**B.     The Estimated Number of Class Members**

Class Counsel obtained Nielsen retail sales data from Defendant, wholesale shipment data from Defendant, and retail sales data subpoenaed from the eight largest retailers of Move Free Advanced (Amazon, Walgreens, Walmart, Sam's, Costco, Rite Aid, CVS, and BJ's Wholesale) to determine nationwide retail sales, the number of units sold, the estimated number of Class Members, the average retail price, and the average number of units purchased per Class Member. Based on this data, the estimated total nationwide units sold is 16,050,065 with retail sales of $358,879,453. Blood Decl., ¶ 75. The average retail price per unit (retail sales divided by units sold) is $22.36. *Id.*, ¶ 43. The average number of units purchased by each Class Member is calculated to be 2.6. *Id.*, ¶¶ 44, 72. Thus, the estimated number of Class Members is 6,173,102. A summary is provided below:

| | |
|---|---:|
| Nationwide Retail Sales | $358,879,453 |
| Average Retail Price | $22.36 |
| Total Number of Units Sold | 16,050,065 |
| Average Number of Units Purchased Per Class Member | 2.6 |
| Number of Class Members | 6,173,102 |

**C.     Direct Notice to the Settlement Class**

Approximately 4.67 million Class Members, representing an estimated 76% of the Settlement Class, will receive notice directly either through email or mail.

The proposed Class Notice Plan has not changed, but additional information recently obtained from the top retail sellers provides additional detail about the number of Class Members who can be sent notice directly. Class Counsel has now successfully obtained Class Member contact information from the eight largest retailers of Move Free Advanced.[3] Collectively, these retailers sold over 90% of Move Free Advanced to the Settlement Class. Blood Decl., ¶ 59. Some of the

---

[3]     As previously discussed, in lieu of producing the customer contact information, Amazon proposes sending email notice to its customers who purchased Move Free Advanced at its own expense. Amazon has substantial experience providing class notice in this type of situation. It has agreed to provide a declaration attesting to its efforts. *See* Blood Decl., ¶ 61.

7

Case No. 3:17-cv-03529-VC

Subpoenaed Retailers only possessed mailing addresses and not email addresses for certain customers. Directly mailed class notice is substantially more expensive than directly emailed class notice. Azari Decl., ¶ 20. Therefore, to maximize the Settlement dollars available for Class Members while still achieving the best practicable notice, the names and mailing addresses that were produced have been "reverse appended" to yield reliable email addresses in those instances where they were not provided by the Subpoenaed Retailers. *Id.*, ¶ 20. As a result of these various efforts, 3.77 million Class Members will be directly emailed the class notice and 903,400 Class Members will be directly mailed the class notice. *Id.*, ¶¶ 20-21, 30, 32. This represents an estimated 76% of the Settlement Class. This amount of direct notice is rare in a consumer product case not involving direct-to-consumer sales by the defendant.[4] This Class Notice Plan is more fully described in the accompanying Declaration of Cameron R. Azari.

**D.    The Estimated Claims Rate**

Lastly, the Court inquired about estimated claims rates and the size of the likely awards to the Class Members making claims. Claims rates for consumer class action settlements rates "rarely exceed seven percent, even with the most extensive notice campaigns." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011) ; *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."). "The prevailing rule of thumb with respect to consumer class actions is a claims rate of 3-5 percent." *Forcellati v. Hyland's, Inc.*, No. CV 12-1983, 2014 U.S. Dist. LEXIS 50600, at \*17 (C.D. Cal. Apr. 9, 2014) (quoting *Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2012 U.S. Dist. LEXIS 49160, at \*13 (N.D. Cal. Apr. 6, 2012)); *see also Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (noting "a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness"); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D.

---

[4]    Here, Defendant maintains a retail website to sell Move Free Advanced. However, the sales through that website were less than 0.5% of the total Move Free Advanced sales. Defendant provided the contact information for these Class Members and they will be directly sent the class notice.

Cal. 2020) (approving settlement with a 0.83% claims rate); *Moore v. Verizon Commc'ns, Inc.*, No. C 09-1823, 2013 U.S. Dist. LEXIS 122901, at *30 (N.D. Cal. Aug. 28, 2013) (approving settlement with a 3% claim rate); *Munday v. Navy Fed. Credit Union,* No. SACV 15-1629, 2016 U.S. Dist. LEXIS 193973, at *23 (C.D. Cal. Sept. 15, 2016) (assuming a 5% claim rate); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711, 2015 U.S. Dist. LEXIS 98546, at *25 (C.D. Cal. July 27, 2015) (noting "a claims rate somewhat above 3% was likely a realistic possibility").

Given the combination of notice methods, the number of Class Members being directly noticed, and the Settlement award amounts available to these Class Members, the Settlement Administrator estimates that the aggregate amount claimed will range from $18,601,610 to $23,796,592. This calculation is based on an estimated take rate ranging from 5.4% to 7%. For Class Members receiving direct notice, which is approximately 76% of the Settlement Class, the take rate will range from 7% to 9%. Based on the Settlement Administrator's experience in similar class actions it is estimated that 10% of claimants will submit a claim for one unit, 30% of claimants will claim two units, and 60% of claimants will claim three units. Azari Decl., ¶ 50.

## IV.     THE SETTLEMENT MERITS APPROVAL

### A.     The Settlement Represents a Reasonable Settlement Compared to a Possible Recovery at Trial

This is a record-breaking settlement that eclipses settlements in other similar cases, reflecting both the excellent settlement achieved and the difficulty in obtaining and keeping a large class action judgment in federal court. While the Ninth Circuit has "never required courts 'to estimate the range of possible outcomes and ascribe a probability to each point on the range,'" a comparison to possible trial outcomes is appropriate. *Gallucci v. Gonzales*, 603 Fed. Appx. 533, 535 (9th Cir. 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

If a theoretical trial were held for all members of the proposed nationwide class, the amount of full refunds would be about $359 million, plus attorney's fees and costs since many state false advertising statutes contain fee shifting provisions.

New York's consumer protection laws contain several potentially applicable additional damage provisions. *See* New York General Business Law ("GBL") §§ 349(h), 350-e. For treble

BLOOD HURST & O' REARDON, LLP

00176245

damages, GBL sections 349(h) and 350-e provide discretionary treble damages "if the court finds that the defendant willfully or knowingly violated" the statute. The treble damages are capped at $1,000 for section 349 actions and $10,000 in section 350-e actions. However, the statutes are unclear whether the treble damages as well as the caps apply per case or per member of the class member basis, and Plaintiffs are unaware of case law discussing the issue. At any rate, "courts do not traditionally factor treble damages into the calculus for determining a reasonable settlement value." *Rodriguez*, 563 F.3d at 964; *see also Carnegie v. Household Int'l, Inc.,* 445 F. Supp. 2d 1032, 1035 (N.D. Ill. 2006) ("[N]umerous courts have held that in determining a settlement value, the potential for treble damages should not be taken into account.") (collecting cases).

For statutory damages, GBL section 349(h) provides "any person who has been injured by reason of any violation of this section may bring an action . . . to recover his actual damages or fifty dollars, whichever is greater[.]" Here, the average purchase price is $22.36 and the average number of purchases per Class Member is 2.6, for an average recovery of $58.14 per Class Member, making the average statutory damage amount greater than $50. *See Belfiore v. P&G*, 311 F.R.D. 29, 70 (E.D.N.Y. 2015) (class members are entitled to the $50 statutory damages, but plaintiff's damages expert may be able to calculate an average price paid for the misrepresentation).

Similarly, GBL § 350-e provides "[a]ny person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions." There are approximately 633,760 New York class members, resulting in potential statutory damages of $316,880,000 for the New York class members. An argument advanced by defendants in these cases, but which is unresolved, is whether this provision violates the Due Process Clause.[5]

---

[5]      In making the argument, defendants typically cite cases like *Larson v. Harman-Mgmt. Corp.*, No. 1:16-cv-00219, 2019 U.S. Dist. LEXIS 219294, at *19 (E.D. Cal. Dec. 18, 2019) ("courts have found that such statutory damages, when aggregated for each purported [] violation, violate the Due Process Clause."); *see also Parker v. Time Warner Entm't Co., L.P.,* 331 F.3d 13, 22 (2d Cir. 2003) ("[T]he aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions."); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 962-63 (8th Cir. 2019) (finding statutory damage award violated Due Process Clause);

BLOOD HURST & O' REARDON, LLP

The $50 million all-cash Settlement here is the largest ever in a consumer product false advertising case. Further, the percentage of potential recovery at trial that the Settlement provides to the class is inline or greater than settlements approved in this Circuit and elsewhere. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."); *See also e.g.*, *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (5.6% recovery was fair, adequate, and reasonable); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007) (net settlement amount of 6% of potential recovery reasonable); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 522 (N.D. Cal. 2020) (noting percent of potential recovery for securities class action settlements were "2.5 percent between 2008 and 2016, and 3 percent in 2017"); *In re Checking Account*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (9% of total potential damages fair "even absent the risks associated with prosecuting these claims"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) (3-5% of potential recovery reasonable: "A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Deaver v. Compass Bank*, No. 13-cv-00222, 2015 U.S. Dist. LEXIS 166484, at *22 (N.D. Cal. Dec. 11, 2015) (10.7% "of the total potential liability exposure, before any deductions for fees, costs, or incentive awards" was reasonable); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327, 2014 U.S. Dist. LEXIS 99966, at *16 (N.D. Cal. July 21, 2014) (net settlement amount of 5% of potential recovery reasonable); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal. June 17, 2015) (net settlement amount of 7.3% of estimated trial award reasonable); *Arnett v. Bank of Am., N.A.*, No. 3:11-cv-1372, 2014 U.S. Dist. LEXIS 130903, at *19 (D. Or. Sep. 18, 2014) ("7.3% recovery was fair, adequate, and reasonable").

---

*Belfiore*, 311 F.R.D. at 73 ("Here, the statutory damages could be excessive and in violation of state policy."); *Mirkin v. Viridian Energy, Inc.*, No. 3:15-cv-1057, 2016 U.S. Dist. LEXIS 86616, at *31 (D. Conn. July 5, 2016) (noting GBL §§ 349 and 350 "could transform statutory damages into punitive ones in a manner that raises serious due process concerns").

**B.    The Settlement Compared to Similar Approved Settlements**

This Settlement far exceeds other class action settlements in this type of case. Even with class sales larger than sales presented here, settlements are typically below $10 million. This includes a previous similar Move Free Advanced false advertising case that included far more sales but settled for $6.51 million.

The earlier settled case, *Lerma v. Schiff Nutrition Int'l, Inc.*, No. 3:11-cv-1056 (S.D. Cal., final approval granted Nov. 3, 2015), included the same false advertising allegations as this one. However, the sales covered by *Lerma* were substantially larger. That nationwide settlement included all Move Free Advanced products sold from 2005 to 2015, plus 42 additional joint health products sold over the span of 10 years. *Lerma*, ECF No. 141-4. An estimated 50 million units were sold during the *Lerma* class period with an average retail price of $20, representing about $1 billion in retail sales. *Lerma*, ECF Nos. 108 at 4 and 153-1. The settlement consisted of a fund of $6.51 million. *Lerma*, ECF No. 141-1 at 13. Class members could recover $3 per unit purchased for up to 4 units purchased without proof of purchase and $10 per unit for up to 5 purchases with proof of purchase. *Lerma*, ECF No. 141-1 at 14. The settlement fund provided 0.65% of the nationwide retail sales. Attorneys' fees amounted to 25% of the fund, and the estimated net settlement fund provided 0.49% of the nationwide retail sales. *See* 2016 U.S. Dist. LEXIS 25498, at *6 (S.D. Cal. Mar. 1, 2016).

*Pearson v. NBTY, Inc.*, No. 1:11-cv-07972 (N.D. Ill, final approval granted July 14, 2016) also involved a number glucosamine supplements, including the category sales leader Osteo Bi-Flex. The *Pearson* settlement encompassed six putative class actions and covered the purchases of almost 100 different glucosamine products. *Pearson*, ECF No. 213-1 (Settlement Agreement) at 1; No. 213-2 (Exhibit A to Settlement Agreement). It released all retailers and entities in the chain of distribution of the challenged products. *Pearson*, ECF No. 213-1 at 9. The *Pearson* settlement created a $7.5 million fund with 33% of the fund going toward attorneys' fees. *Id.* at 6; ECF No. 250 (Mtn. for Attorneys' Fees) at 9. After attorneys' fees, expenses and incentive awards, the net fund was $3,495,000. *Pearson*, ECF No. 344 (Claims Administrator Decl.) at 6. The class consisted of approximately 12 million class members, with estimated total sales of $240 million. *Pearson*, ECF

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1  No. 113 at 6. Accordingly, the gross settlement fund provided 3.1% of the potential full refund

2  recovery and 1.46% of the net fund.

3  Plaintiff in *Hazlin v. Botanical Laboratories, Inc.*, No. 3:13-cv-00618 (S.D. Cal., final

4  approval granted May 20, 2015) also alleged false advertising of glucosamine supplements. The

5  nationwide settlement fund was $3.1 million with 30% going towards attorneys' fees and expenses.

6  *Hazlin*, ECF No. 42-1 at 3, 8. Claimants could receive $15-$18 per purchase. *Id.* at 17. The retail

7  sales during the class were approximately $132 million. *Hazlin v. Botanical Labs., Inc.*, No.

8  13cv0618, 2015 U.S. Dist. LEXIS 189687, at *15 (S.D. Cal. May 20, 2015) (8 million units); *Hazlin*,

9  ECF No. 42-1 at 17 (average price of $16.50). The gross settlement amount represented 2.3% of the

10  total retail sales. Net of attorneys' fees and expenses, the settlement amount represented 1.6% of

11  sales.

12  In *Gallucci v. Boiron, Inc*. the court approved a nationwide class settlement covering 200

13  homeopathic products sold over a 12-year period. No. 11cv2039, 2012 U.S. Dist. LEXIS 157039,

14  at *2, 7 (S.D. Cal. Oct. 31, 2012). Like here, the plaintiffs claimed the products were falsely

15  advertised because the scientific research demonstrated that the claims were misleading. The

16  settlement provided $5 million and payments of $10 per units purchased, capped at 10 units with

17  proof of purchase and capped at 5 units without proof of purchase if sworn under penalty of perjury.

18  *Id.* at *16. Retail sales of the products at issue totaled $65,575,194 for January 1, 2007 to September

19  30, 2011 (approximately 40% of the class period), or roughly $115 million for the entire class period.

20  *Gallucci*, ECF No. 106-6 at 2-3. Thus, the gross settlement fund amounted to a 4.3% recovery of

21  the potential full refund award at a trial. Attorneys' fees of $1.25 million were provided from the

22  fund, and so resulted in a 3.3% recovery of potential damages for the net settlement fund. *See* 2012

23  U.S. Dist. LEXIS 157039, at *25.

24  In re *Cobra Sexual Energy Sales Practices Litigation*, No. 2:13-cv-05942 (C.D. Cal.)

25  (preliminarily approved on Nov. 9, 2020) was a seven-year litigation involving a men's virility

26  supplement. It settled for a common fund totaling $100,000. ECF No. 295 at 7. Class members

27  received $9.61 on average. ECF No. 298 at 1. The fund paid out 10,401 claims of $9.61 for a total

28  of $99,954. *Id.* Attorneys were awarded $490,000 in fees. ECF No. 296 at 1.

A $23.25 million settlement fund was created in *Wilson v. Airborne, Inc.*, No. EDCV 07-770 (C.D. Cal). *See* 2008 U.S. Dist. LEXIS 110411, at *10 (C.D. Cal. Aug. 13, 2008) (final approval order). The case involved the false and misleading advertising of the dietary supplement Airborne. Class members could submit claims for up to six packages, with reimbursements ranging from $2.75 to $10.50 per purchase. *Wilson*, ECF No. 146 (Final Approval Motion). 282,717 valid claims were made totaling $14.9 million. *Wilson*, 2008 U.S. Dist. LEXIS 110411, at *21-22. Because the settlement did not contain the mechanisms to pay remaining amounts to class members that the current proposed settlement provides, over $9.5 million went to *cy pres* recipients. *Wilson*, ECF No. 271 at 2.

The following table summarizes the Settlement and the settlements discussed above where potential damages at trial were able to be estimated.

| Case | Product | Settlement Amount[6] | Potential Recovery at Trial (Retail Sales) | Settlement Percent of Potential Recovery | Net Settlement Percent of Potential Recovery |
|------|---------|---------------------|--------------------------------------------|------------------------------------------|----------------------------------------------|
| *Yamagata v. Reckitt Benckiser LLC* | MFA | $50 million | $359 million | 14% | 10.2%[7] |
| *Lerma v. Schiff Nutrition Int'l, Inc.* (S.D. Cal.) | 42 Joint Health Supplements including MFA | $6.51 million | $1 billion | 0.65% | 0.49% |
| *Pearson v. NBTY, Inc.* (N.D. Ill.) | 100 Glucosamine Products | $7.5 million | $240 million | 3.1% | 1.46% |
| *Hazlin v. Botanical Laboratories, Inc.* (S.D. Cal) | Glucosamine Products | $3.1 million | $132 million | 2.3% | 1.6% |
| *Gallucci v. Boiron, Inc.* (S.D. Cal.) | 200 Homeopathic Products | $5 million | $65.5 million | 4.3% | 3.3% |

[6]     The settlement amount for each case includes attorneys' fees, reimbursements of expenses, and class notice and administration costs. *See* discussion above.

[7]     Because the similar settlements did not disclose all settlement administrative costs and to compare apples to apples, only the attorneys' fees (25% of the fund) and expenses ($750,000) and incentive awards were deducted from the fund to calculate the net settlement amount.

BLOOD HURST & O' REARDON, LLP

| *In re Cobra Sexual Energy Sales Practices Litigation* (C.D. Cal.) | Virility Supplements | $100,000[8] | Unknown | Unknown | Unknown |
|---|---|---|---|---|---|
| *Wilson v. Airborne, Inc.* (C.D. Cal.) | Airborne Supplements | $23.5 million | Unknown | Unknown | Unknown |

**C.      The Risks of Litigating a Class Trial Versus the Benefits of Settlement**

Plaintiffs' risks of litigating a class trial and keeping a favorable judgment are real and substantial, and the Settlement is "preferable to lengthy and expensive litigation with uncertain results." 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002).

**1.      Risks of Establishing Liability at a Class Trial**

Results from three class action false advertising trials illustrate the risks for Plaintiffs at trial here. Each involved false advertising allegations of products advertised as providing health benefits and ended in either a verdict for the defendant or a hung jury. Each appeared to present very compelling facts.

In *Allen v. Hyland's*, No. 2:12-cv-01150 (C.D. Cal.) the plaintiff lost a 13-day class trial involving homeopathic products where the defendant advertised the products as providing specific benefits that no homeopathic product could provide. *Allen* was a nationwide class with damages for refunds of $255 million. The claims involved similar allegations as here—that the products were false and misleading because they are incapable of providing the advertised health benefits. *See* 2021 U.S. Dist. LEXIS 34695, at *3 (C.D. Cal. Feb. 23, 2021). The trial court also followed the jury's finding in ruling against plaintiff on the equitable claims for restitution and injunctive relief. *See Allen*, 2021 U.S. Dist. LEXIS 34695, at *3.

In *Farar v. Bayer AG*, plaintiffs alleged Bayer's One-A-Day products contained false and misleading heart health, immunity, and energy claims in violation of consumer protection statutes from California, Florida, and New York. *See* No. 3:14-cv-04601, 2017 U.S. Dist. LEXIS 193729, at *3 (N.D. Cal. Nov. 15, 2017). Plaintiffs defeated a motion to dismiss and summary judgement,

---

[8]      Attorneys were awarded $490,000 in fees.

BLOOD HURST & O' REARDON, LLP

however, the four-year litigation ended in a jury verdict for Bayer. *Farar*, ECF No. 327 (Judgment).

Preceding the loss at trial, the plaintiffs had successfully argued a full refund damages model, which

exposed Bayer to a $4 billion verdict. Judge Orrick held:

> Plaintiffs' theory of full restitution is supported not only by their individual allegations, but also ample evidence in the record. Defendants' own research and marketing strategy documents confirm the effectiveness of their marketed health claims, and lend credence to plaintiffs' assertions that they purchased the One A Day products for their touted health claims. Moreover, plaintiffs present expert testimony from Dr. Edward R. Blonz supporting their assertion that there is no measurable benefit for the typical American from taking defendants' Products, as well as that the evidence does not support the Products' claims regarding heart health, immunity, or physical energy.

*Farar*, 2017 U.S. Dist. LEXIS 193729, at *30. Despite Judge Orrick's assessment of the strength of

plaintiffs' case, the jury found for defendant.

     *Racies v. Quincy Bioscience, LLC* (N.D. Cal.) was a false advertising case involving

Prevagen, a dietary supplement purported to improve brain function. The trial took place in January

of last year in the Northern District and resulted in a hung jury. This trial highlights the

unpredictability of a jury asked to weigh complex scientific evidence and the hurdles presented by

the unanimous jury verdict requirement in federal court. Prevagen is a fraud. Plaintiff in *Racies*

offered an expert which provided testimony detailing the biological implausibility of Prevagen's

active ingredient. The expert presented what seemed to be convincing evidence—Prevagen is

incapable of passing the blood-brain barrier, and therefore could do nothing. The jury, however, was

not convinced.

     *Racies* also demonstrates the risk of decertification. The California class was decertified

after trial because the named plaintiff testified that he relied on an "Improves Memory" claim, when

in fact he purchased a "Brain Cell Protection" label. *Racies*, No. 15-cv-00292, 2020 U.S. Dist.

LEXIS 78156, at *11 (N.D. Cal. May 4, 2020). The Court held the named plaintiff was not typical,

and the class failed to satisfy the predominance requirement. *Id.* at *15.

### 2.    Other Potential Risks of Continued Litigation

     The Supreme Court and the Ninth Circuit, which are increasingly favoring dismissal of cases

on procedural grounds over determinations on the merits of the case, also present significant

BLOOD HURST & O' REARDON, LLP

uncertainty and risk. As noted by the Court during the preliminary approval hearing, there is a risk that Plaintiffs' claims could be found preempted before or after trial on appeal. Litigation over the preemptive effect of the Dietary Supplement Health and Education Act of 1994 ("DSHEA") is particularly active in the Ninth Circuit. *Compare Greenberg v. Target Corp.*, 985 F.3d 650 (9th Cir. 2021) (finding preemption) *with Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020) (no preemption). Currently, *Seegert v. Rexall Sundown Inc.*, No. 20-55486 (9th Cir.), which presents whether DSHEA preempts a false advertising claim involving a glucosamine joint health supplement, will be argued by the end of this year or early next year.

There is also a risk of decertification. On April 6, 2021, the Ninth Circuit vacated a class certification order and held "the number of uninjured class members must be de minimis" in order to maintain class status. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 2021 U.S. App. LEXIS 9880, at *32 n.12 (9th Cir. Apr. 6, 2021). A Ninth Circuit judge has requested a vote on rehearing the appeal to reconsider the divided ruling, and on April 28, 2021 the parties were ordered to submit briefs on whether the case should be reheard en banc. Throughout this litigation Defendant has maintained that customer satisfaction with Move Free Advanced is high.

Currently pending before the Supreme Court is the Ninth Circuit's decision in *Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020). There, the Ninth Circuit held "that every member of a class certified under Rule 23 must satisfy the basic requirements of Article III standing at the final stage of a money damages suit when class members are to be awarded individual monetary damages." *Id.* at 1017. The Supreme Court granted *certiorari*, and oral argument was held on March 30, 2021. The analysis of the oral argument is largely troubling for plaintiff classes with the consequences of the Supreme Court's anticipated decision unknown.

Finally, there is uncertainty as to which of the claims for relief Plaintiffs here assert are viable in federal court. The recent Ninth Circuit decision in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), a case involving a glucosamine supplement, exemplifies the new-found federal jurisdictional risks of continued litigation. *Sonner* held that plaintiffs must show an

BLOOD HURST & O' REARDON, LLP

00176245

inadequate remedy at law in order to seek restitution. *Id.* at 839 (holding that plaintiff must satisfy this "threshold jurisdictional question").

## V.   SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CLASS CERTIFICATION AND MERITS PRELIMINARY APPROVAL

Plaintiffs incorporate by refence the previously filed motion for preliminary approval which details why the Settlement Class satisfies Rule 23 requirements and otherwise merits preliminary approval. *See* ECF No. 203 at §§ IV-VII.

## VI.   THE PROPOSED SCHEDULE OF EVENTS

The key Settlement-related dates are based on when preliminary approval of the settlement is granted and the date for the Final Approval Hearing. The relevant settlement-related dates calculated in accordance with the provisions of the Settlement are:

| EVENT | DEADLINE |
|---|---|
| Dissemination of Class Notice | Within 45 calendar days from entry of the Preliminary Approval Order |
| Briefs in support of award of attorneys' fees and reimbursement of expenses | No later than 44 days prior to the Final Approval Hearing |
| Briefs in support of final approval | No later than 35 days prior to the Final Approval Hearing |
| Deadlines for objections and opt-outs | 14 days before date first set by Court for Final Approval Hearing |
| Briefs in response to objections and in further support of final approval and attorneys' fees | No later than 7 days prior to the Final Approval Hearing |

Accordingly, the Parties request the Court schedule the Final Approval Hearing for 120 days after entry of the Preliminary Approval Order, or as soon thereafter as the Court's schedule permits.

## VII.   CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) approve and direct notice as set forth in the Class Notice Program; (3) conditionally certify the Settlement Class; (4) approve the form and content of the proposed forms of Class Notice; (5) appoint Plaintiffs Gordon Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman as Class Representatives; (6) appoint Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLC as Class Counsel; (7) appoint Epiq

1    Class Action and Claims Solutions as Settlement Administrator; and (8) adopt the proposed

2    schedule including setting a date for the Final Approval Hearing.

3                                              Respectfully submitted,

4    Dated: May 12, 2021                       BLOOD HURST & O'REARDON, LLP
                                               TIMOTHY G. BLOOD (149343)
5                                              THOMAS J. O'REARDON II (247952)

6                                              By:        *s/ Timothy G. Blood*
                                                       TIMOTHY G. BLOOD
7
8                                              501 West Broadway, Suite 1490
                                               San Diego, CA  92101
9                                              Tel: 619/338-1100
                                               619/338-1101 (fax)
10                                             tblood@bholaw.com
                                               toreardon@bholaw.com
11
                                               *Class Counsel*
12
                                               ALTAIR LAW
13                                             CRAIG M. PETERS (184018)
                                               465 California Street, 5th Floor
14                                             San Francisco, CA  94104-3313
                                               Tel: 415/988-9828
15                                             415/988-9815 (fax)
                                               c.peters@altair.us
16
                                               *Attorneys for Plaintiffs*
17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

00176245

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 12, 2021.

*s/  Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

00176245

BLOOD HURST & O' REARDON, LLP