BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Class Counsel

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Case No. 3:17-cv-03529-VC<br><br>**STIPULATION OF SETTLEMENT**<br><br><u>**CLASS ACTION**</u><br><br>District Judge Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Complaint Filed:  June 19, 2017<br>Trial Date:  March 22, 2021 |

*Vertical left margin:* BLOOD HURST & O'REARDON, LLP

*Bottom left:* 00175004

**TABLE OF EXHIBITS**

**Document**                                                    **Exhibit Number**

Preliminary Approval Order ................................................................................ 1

Final Approval Order ......................................................................................... 2

Final Judgment ................................................................................................. 3

Class Notice Program ........................................................................................ 4

Long-form Class Notice ..................................................................................... 5

Email Notice ..................................................................................................... 6

Amazon Email Notice ........................................................................................ 7

Postcard Notice ................................................................................................. 8

Internet Banner Advertisements ......................................................................... 9

Claim Form ..................................................................................................... 10

Request for Exclusion Form ............................................................................. 11

Product List .................................................................................................... 12

BLOOD HURST & O' REARDON, LLP

00175004

## I.      RECITALS

A.      This Settlement Agreement is entered into by Plaintiffs on behalf of themselves and the Class Members, and Defendant Reckitt Benckiser, LLC. Capitalized terms used herein are defined in Section II of this Settlement Agreement or indicated in parentheses.

B.      Subject to Court approval, the Parties stipulate and agree that, in consideration for the promises and covenants set forth in the Settlement Agreement and upon entry by the Court of a Final Judgment and Order Approving Settlement and the occurrence of the Effective Date, the Action shall be settled and compromised upon the terms and conditions contained herein.

C.      WHEREAS, on June 19, 2017, plaintiffs Yamagata and Pelardis filed a class action complaint against Reckitt Benckiser in the United States District Court for the Northern District of California captioned *Yamagata v. Reckitt Benckiser, LLC,* Case No. 3:17-cv-03529-VC, on behalf of themselves and all other consumers who purchased Reckitt Benckiser Move Free Advanced products in California and New York; and

D.      WHEREAS, on June 5, 2019, the Court granted plaintiffs' motion for class certification of consumers who purchased Move Free Advanced in California and New York between May 28, 2015 and the date dissemination of notice to the class begins; and

E.      WHEREAS, on March 30, 2020, the Court denied Defendant's motion for summary judgment; and

F.      WHEREAS, on October 22, 2018, a related class action was filed by plaintiff Maureen Carrigan against Reckitt Benckiser in the United States District Court for the Northern District of Illinois captioned *Carrigan v. Reckitt Benckiser, LLC,* Case No. 1:18-cv-07073, on behalf of herself and all other consumers who purchased Reckitt Benckiser's Move Free Advanced products in Illinois, and on October 27, 2020, the Northern District of Illinois granted certification of a class of consumers who purchased Move Free Advanced in Illinois between May 28, 2015 and the date notice is disseminated, and appointed Timothy G. Blood and Thomas J. O'Reardon II as class counsel;

G.      WHEREAS, on September 22, 2020, a related class action complaint was served by undersigned Class Counsel as counsel for plaintiffs Lori Coletti, Ann-Marie Maher, Carol Marshall,

BLOOD HURST & O' REARDON, LLP

Deborah A. Rawls, Oneita Steele, and Maxine Tishman captioned *Coletti v. Reckitt Benckiser, LLC* for filing in the District of Vermont, on behalf of plaintiffs and all other consumers who purchased Reckitt Benckiser Move Free Advanced products in the United States, or in the alternative, Florida, New Jersey, North Carolina, Texas, Washington and Vermont between May 28, 2015 and the date notice is disseminated, which claims were tolled pursuant to agreement of the Parties; and

H.    WHEREAS, on March 2, 2021, Plaintiffs filed a Second Amended Class Action Complaint in the Northern District of California alleging a nationwide class and including Yamagata, Pelardis, Carrigan, Coletti, Maher, Marshall, Rawls, Steele, and Tishman as named plaintiffs; and

I.    WHEREAS, the Parties have engaged in substantial litigation and discovery, including expert discovery and were about to file pretrial motions in advance of a March 22, 2021 trial in this Court. In the course of litigation and in preparation for trial: (i) Plaintiffs' Counsel reviewed over 303,000 pages of hard-copy and electronic documents produced by Reckitt Benckiser; (ii) over 7,500 pages of documents obtained as the result of subpoenas Plaintiffs' Counsel served on third party retailers of Move Free Advanced, Defendant's ingredient supplier, and scientists and researchers who conducted studies on Move Free Advanced; (iii) Plaintiffs' Counsel submitted 9 expert declarations in connection with class certification, summary judgment and motions to exclude testimony, and 11 expert reports pursuant to Federal Rule of Civil Procedure 26 from seven experts on issues relating to advertising and marketing, scientific evidence on the inefficacy of Move Free Advanced, and damages; (iv) Defendant's Counsel submitted 10 expert reports and declarations pursuant to Federal Rule of Civil Procedure 26 from eight experts on the above issues; (v) the Parties collectively deposed 30 witnesses (25 by Plaintiffs and 5 by Defendant); and (vi) the Parties have engaged in extensive motion practice, including class certification and summary judgment; and

J.    WHEREAS, the Parties participated in seven formal and numerous informal mediation and settlement negotiation sessions, including before the Honorable Wayne R. Anderson (Ret.) on May 2, 2018, with the Hon. Jacqueline Corley on May 22, 2019, and with Robert A. Meyer, Esq. on August 25, 2020, September 1, 2020, September 4, 2020, September 16, 2020, and January

BLOOD HURST & O' REARDON, LLP

5, 2021.  Throughout the course of mediation efforts, the Parties were simultaneously engaging in the discovery and litigation efforts described above; and

K.      WHEREAS, Class Counsel have determined that a settlement of the Action on the terms reflected in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class; and

L.      WHEREAS, Reckitt Benckiser, to avoid costs, disruption and distraction of further litigation, and without admitting the truth of any allegations made in or related to the Action, or any liability with respect thereto, has concluded that it is desirable that the claims against it be settled and dismissed on the terms in this Settlement Agreement;

M.      NOW, THEREFORE, this Settlement Agreement is entered into by and among the Parties, by and through their respective counsel and representatives, and the Parties agree that: (1) upon the Effective Date, the Action and all Released Claims shall be fully, finally, and forever settled and compromised as between Plaintiffs and the Settlement Class on the one hand, and Reckitt Benckiser on the other hand; and (2) upon final approval of the Settlement Agreement, the Final Judgment and Order Approving Settlement, shall be entered dismissing the Action with prejudice and releasing all Released Claims against the Released Parties.

## II.      DEFINITIONS

A.      As used in this Settlement Agreement and the attached exhibits the following terms shall have the meanings set forth below, unless this Settlement Agreement specifically provides otherwise:

1.      "Action" means *Yamagata v. Reckitt Benckiser, LLC,* Case No. 3:17-cv-03529-VC (N.D. Cal.).

2.      "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to compensate and reimburse Class Counsel and all other Plaintiffs' Counsel for work performed in this matter, as set forth in Section IX of this Settlement Agreement.

3.      "Cash Payment" means the cash settlement awards paid to eligible Claimants as set forth in Section IV of this Settlement Agreement.

4.      "Claim" means a request for ~~a~~the Cash Payment ~~or the Product Benefit~~ on a

BLOOD HURST & O' REARDON, LLP

00175004

Claim Form submitted to the Settlement Administrator in accordance with the terms of this Settlement Agreement.

5.    "Claimant" means a Class Member who submits a Claim.

6.    "Claim Form" means the document to be submitted by a Claimant requesting a~~the~~ Cash Payment ~~or the Product Benefit and~~ that is substantially in the form of Exhibit 10 (modified as necessary only to provide full clarity to Claimants of their Cash Payment ~~or Product Benefit options~~ and conform to the requirements of on-line submission.)

7.    "Claim Deadline (Original)" or "Original Claim Deadline" means the date by which all Claim Forms must be postmarked or submitted online to the Settlement Administrator to be considered timely. The Original Claim Deadline shall be 10 days after the date first set by the Court for the Final Approval Hearing, unless the Parties agree to a longer period.

8.    "Claim Deadline (Supplemental)" or "Supplemental Claim Deadline" means an additional 60 days after the Original Claim Deadline for Class Members to submit Claims in the event the Net Fund would exceed the value of the aggregate Claims after pro rata upward adjustment as described in Section IV.4 below.

9.    "Class Counsel" means Timothy G. Blood and Thomas J. O'Reardon II of Blood Hurst & O'Reardon, LLP.

10.   "Class Member" means a member of the Settlement Class.

11.   "Class Member Household" means all persons who share a single physical address. For all persons who are a legal entity, such as a corporation, partnership, business organization or association, or any other type of legal entity, there can be only one physical address for purposes of this settlement even if the entity has multiple offices or locations.

12.   "Class Notice" means, collectively, the Long-form Class Notice, Email Notice, Amazon Email Notice, Postcard Notice, and Internet Banner Advertisements substantially in the forms of Exhibits 5, 6, 7, 8, and 9, and as discussed in Section VI of this Settlement Agreement.

13.   "Class Notice Program" means the dissemination of Class Notice as described in Section IV.C below and as described in Exhibit 4.

00175004

BLOOD HURST & O' REARDON, LLP

14.     "Class Period" means May 28, 2015, to the date the Preliminary Approval Order is entered.

15.     "Class Representatives" or "Plaintiffs" means Gordon Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman.

16.     "Common Fund" means the sum of fifty million dollars ($50,000,000) to be~~in~~ ~~Cash Payment and Product Benefit~~ distributed in the following order: to compensate Plaintiffs' Counsel their fees and expenses, as awarded by the Court; to pay Class Representative service awards, as awarded by the Court; to pay the Settlement Administrator for notice and settlement administration costs; to provide the Cash Payment ~~and Product Benefit~~ to Class Members; and to the Cy Pres Recipient.

17.     "Court" means the United States District Court for the Northern District of California, the Honorable Vince Chhabria presiding.

18.     "Cy Pres Recipient" means the Orthopaedic Research Society.

19.     "Defendant" or "Reckitt Benckiser" means Reckitt Benckiser LLC.

20.     "Defendant's Counsel" or "Reckitt Benckiser's Counsel" means Perkins Coie LLP and Manatt, Phelps & Philips LLP.

21.     "Direct Notice" means distribution of Class Notice by e-mail (if an e-mail address is available) or if not, by first class mail through the United States Postal Service to Class Members who can be identified in the records of third-party retailers, Reckitt Benckiser, or otherwise.

22.     "Effective Date" means the later in time of: (a) the date on which the time to appeal has expired if no appeal has been taken from the Final Judgment and Order Approving Settlement; (b) in the event that an appeal or other effort to obtain review has been initiated, the date after such appeal or other review has been finally concluded and is no longer subject to review; or (c) if Class Counsel and Defendant agree in writing, any other agreed date that is earlier than the Effective Date as calculated according to subparagraphs (a) and (b) above.

23.     "Final Approval Hearing" means the hearing to be conducted by the Court

BLOOD HURST & O' REARDON, LLP

1    on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the

2    Settlement Agreement.

3          24.    "Final Judgment and Order Approving Settlement" means, collectively, the

4    Final Judgment and Final Order Approving Settlement to be entered by the Court approving the

5    settlement as fair, adequate, and reasonable, confirming the certification of the Settlement Class,

6    and issuing such other findings and determinations as the Court and/or the Parties deem necessary

7    and appropriate to implement the Settlement Agreement. The Final Judgment and Order Approving

8    Settlement shall be substantially in the form of Exhibits 2 and 3.

9          25.    "Internet Banner Advertisements" means the form of online legal notice, as

10   approved by the Court, containing a hyperlink to the Claim Form section of the Settlement Website,

11   to be distributed by the Settlement Administrator according to the Class Notice Program. The

12   Internet Banner Advertisements shall be substantially in the form of Exhibit 9.

13         26.    "Long-form Class Notice" means the legal notice of the terms of the proposed

14   Settlement, as approved by the Court, to be distributed according to the Class Notice Program. The

15   Long-form Class Notice shall be substantially in the form of Exhibit 5.

16         27.    "Move Free Advanced" means the products marketed and distributed by

17   Reckitt Benckiser called Move Free Advanced, Move Free Advanced Plus MSM, and Move Free

18   Advanced Plus MSM & Vitamin D.

19         28.    "Net Fund" means the amount remaining in the Common Fund after payment

20   of Attorneys' Fees and Expenses, Class Representative Service Awards, and Notice and Claim

21   Administration Expenses.

22         29.    "Net Cash Benefit" means the amount remaining in the Net Fund after

23   deducting the total value of the Product Benefit awarded to Claimants.

24         30.29.   "Notice and Claim Administration Expenses" means costs and expenses

25   incurred by the Settlement Administrator, including all notice expenses, the costs of administering

26   the Class Notice Program, and the costs of processing and distributing all the Cash Payment to

27   Claimants. Notice and Claim Administration Expenses do not include any of the handling,

28   distribution or shipping costs of the Product Benefit, which costs will be paid separate and apart by

7

Case No. 3:17-cv-03529-VC

00175004

1   ~~Defendant. Defendant shall fund the Common Fund as Notice and Claim Administration Expenses~~

2   ~~come due.~~

3          ~~31.~~30.   "Notice Date" means the date by which the Settlement Administrator shall

4   commence dissemination of the Class Notice, which shall be within forty-five (45) days from the

5   Preliminary Approval Order, unless the Parties agree to a different date, subject to Court approval.

6          ~~32.~~31.   "Objection Date" means the date by which Class Members must file and

7   serve objections to the Settlement Agreement and shall be no later than fourteen (14) days before

8   the date first set for the Final Approval Hearing.

9          ~~33.~~32.   "Opt-Out Date" means the postmark date by which a Request for Exclusion

10  must be submitted to the Settlement Administrator, and shall be no later than fourteen (14) days

11  before the date first set for the Final Approval Hearing.

12         ~~34.~~33.   "Parties" means the Plaintiffs and Defendant in this Action.

13         ~~35.~~34.   "Plaintiffs' Counsel" means Blood, Hurst & O'Reardon, LLP, Altair Law,

14  Barnow and Associates, P.C., and Carlson Lynch Sweet Kilpela & Carpenter, LLP.

15         ~~36.~~35.   "Preliminary Approval Order" means the order to be entered by the Court

16  conditionally certifying the Settlement Class, preliminarily approving the Settlement Agreement,

17  setting the date of the Final Approval Hearing, appointing Class Counsel for the Settlement Class,

18  approving the Class Notice Program and forms of Class Notice, and setting the Opt-Out Date,

19  Objection Date, and Notice Date, the proposed form of which is attached as Exhibit 1.

20         ~~37.     "Product Benefit" means the Class Member's option to select and receive~~

21  ~~Products, each of which is valued at the latest list (wholesale) price, inclusive of applicable state~~

22  ~~and local sales tax, for that Product, instead of cash as a settlement benefit as set forth in Section~~

23  ~~IV.~~

24         ~~38.~~36.   "Proof of Purchase" means a receipt or retailer record showing the Claimant

25  purchased Move Free Advanced during the Class Period and the number of bottle or amount

26  purchased.

27         ~~39.~~37.   "Publication Notice" means distribution of the Class Notice as described in

28  Section VI.C.2, including through the Internet Banner Advertisements.

BLOOD HURST & O' REARDON, LLP

40.38.  "Released Claims" means, with the exception of claims for personal injury, all claims that were or could have been asserted in the Action and that are based on the identical factual predicate of those claims in the Action, specifically that Move Free Advanced was misleadingly marketed, promoted  or sold, specifically including all elements of the labelling packaging, advertisements, promotions and marketing of Move Free Advanced, including the language, presence, or absence of any disclaimers. Class Members are releasing claims based only on the identical factual predicate set forth in the Second Amended Complaint.

41.39.  "Released Party" or "Released Parties" means Defendant and its parents, subsidiaries, divisions, departments, agents, and affiliates, and any and all of its past and present officers, directors, employees, stockholders, agents, successors, attorneys, insurers, representatives, licensees, licensors, subrogees, and assigns, including, but not limited to Reckitt Benckiser LLC and RB Health (US) LLC as well as any third-party retailers, re-sellers, or suppliers of Move Free Advanced.

42.40.  "Releasing Party" means Plaintiffs and each Class Member.

43.41.  "Request for Exclusion" means the written communication that must be submitted to the Settlement Administrator and postmarked on or before the Opt-Out Date by a Class Member who wishes to be excluded from the Settlement Class. A Request for Exclusion form that is substantially in the form of Exhibit 11 shall be made available on the Settlement Website where it can also be submitted.

44.42.  "Settlement Administrator" means Epiq Class Action and Claims Solutions, the entity retained by the Parties and approved by the Court to design, consult on, and implement the Class Notice Program for disseminating Class Notice, administer and send the Cash Payment to eligible Claimantsand Product Benefit portion of this Settlement Agreement, and perform overall administrative functions.

45.43.  "Settlement Agreement" means this Stipulation of Settlement(including all Exhibits attached to this Stipulation of Settlement).

46.44.  "Settlement Class" means all persons who purchased within the United States and its territories Move Free Advanced, Move Free Advanced Plus MSM, or Move Free Advanced

BLOOD HURST & O' REARDON, LLP

Plus MSM & Vitamin D, other than solely for purposes of resale, from May 28, 2015 to the date of the Preliminary Approval Order. Excluded from the Settlement Class are: (i) jurists and mediators who are or have presided over the Action, Plaintiffs' Counsel and Defendant's Counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) Reckitt Benckiser and any entity in which Reckitt Benckiser has a controlling interest, any of its subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt-out of the Settlement Class.

47.45.  "Settlement Costs" means: (i) all Notice and Claim Administration Expenses; (ii) any award of Attorneys' Fees and Expenses to Class Counsel approved by the Court; and (iii) any service award to the Class Representatives approved by the Court.

48.46.  "Settlement Website" means the Internet website to be created and maintained for this settlement by the Settlement Administrator to provide information to the public and the Settlement Class about this Settlement Agreement.

B.       Capitalized terms used in this Settlement Agreement, but not defined in Section II, shall have the meanings ascribed to them elsewhere in this Settlement Agreement.

## III.    CLASS CERTIFICATION AND AMENDED COMPLAINT

### A.    Certification of the Settlement Class

As part of the motion for preliminary approval of the Settlement Agreement, Plaintiffs will seek preliminary certification of the Settlement Class. Defendant consents, solely for purposes of settlement, to the certification of the Settlement Class, to the appointment of Class Counsel, and to the approval of Plaintiffs as suitable representatives of the Settlement Class; provided, however, that if the Court fails to approve this Settlement Agreement or the Settlement Agreement otherwise fails to be consummated, then Defendant shall retain all rights it had, including the right to object to the maintenance of the Action as a class action.

### B.    Filing of Amended Complaint

Plaintiffs shall file a Second Amended Class Action Complaint with Defendant's written consent pursuant to Federal Rule of Civil Procedure 15(a)(2) that will contain a class definition to

1    conform to this Settlement Agreement.

2    **IV.    SETTLEMENT RELIEF**

3         1.    The Notice and Claims Procedure shall comply with the Court's Standing Order for

4    Civil Cases.

5         2.    Class Members who submit a timely valid Claim Form will receive a Cash Payment.

6    have the option of receiving either one of the Cash Payment or the Product Benefit. The Class

7    Member selects to receive the Cash Payment or the Product Benefit on the Claim Form.

8         3.    The Cash Payment

9         a.    Class Members who elect the Cash Payment can receive twenty-two dollars

10   ($22) for each bottle of a Move Free Advanced product purchased during the Class Period.

11        b.    Class Members who do not provide Proof of Purchase can receive the Cash

12   Payment for up to three (3) bottles of Move Free Advanced per Class Member Household.

13        c.    Class Members who provide Proof of Purchase can receive the Cash Payment

14   of twenty-two dollars ($22) for each documented purchase of a bottle of Move Free Advanced per

15   Class Member Household beyond three (3) bottles.

16        d.    The Cash Payment is subject to a pro rata increase or decrease depending

17   upon the amount remaining in the Net Fund after all eligible Claims are determined, as described in

18   Section IV.5.

19        4.    The Product Benefit

20        a.    Class Members who elect the Product Benefit can select their choice of

21   products from a range of products (the "Products") sold or produced by Defendant from a product

22   list substantially in the form of Exhibit 12, and those Products will be directly mailed without charge

23   to Class Members. The Defendant, in consultation and with the reasonable consent of the Settlement

24   Administrator and Class Counsel, are permitted to make non-substantive revisions or substitutions

25   to the designated Product list to account for Product availability, package size availability, and other

26   supply chain considerations, but in no event will the number of Product brands available be less

27   than the number of Product brands listed on Exhibit 12.

28        b.    Class Members who do not provide Proof of Purchase can receive the Product

BLOOD HURST & O' REARDON, LLP

00175004

1    Benefit for up to three (3) bottles of Move Free Advanced purchased per Class Member Household.

2    Class Members who provide Proof of Purchase can receive the Product Benefit for each documented

3    bottle of Move Free Advanced purchased per Class Member Household.

4                    c.      For Class Members who do not provide Proof of Purchase, the value of the

5    Product Benefit will be equal to $75 for each eligible bottle of Move Free Advanced purchased. For

6    example, one eligible bottle purchased will entitle the Class Member to a Product Benefit of $75

7    dollars, two eligible bottles purchased will entitle the Claimant to a Product Benefit value of $150

8    dollars, and three eligible bottles purchased will entitle the Claimant to a Product Benefit value of

9    $225 dollars.

10                   d.      For purposes of the Product Benefit, the value of Products will be based on

11   Reckitt Benckiser's latest list (wholesale) price for that Product. The Product Benefit is not a

12   discount on a product; Claimants do not purchase anything from Reckitt Benckiser to receive the

13   Product Benefit, but will be entitled to the Product Benefit as a member of the Settlement Class who

14   timely selected the Product Benefit. Claimants also will not incur any of the costs relating to the

15   shipment of the Product Benefit to them, and such shipping and handling costs will not reduce the

16   value of the Claimant's Product Benefit selection(s) or the Common Fund.

17                   e.      The Products that may be selected for the Product Benefit will be listed on

18   the Claim Form and on the Settlement Website at the time the Settlement Class Member chooses

19   the Product as a result of the Product Benefit choice, along with each product's latest list (wholesale)

20   price. A Claimant may select Products up to the value of his or her Product Benefit except if the

21   value of one of the Products selected results in a Product Benefit value greater than 100% of the

22   available Product Benefit, the Class Member will receive the total amount of the Product Benefit

23   plus any marginal overage created by the selection of one Product.

24                   f.      If the wholesale value of the Products (Product Benefit value) selected by the

25   Claimant do not total 100% or more of the value of the Claimant's Product Benefit, additional like

26   products will automatically be provided to the Claimant until the total value of the products provided

27   to the Claimant is equal to or greater than 100% of the Claimant's Product Benefit value. For

28   example, if the Claimant is entitled to a Product Benefit value of $150 but selects products with a

12                                    Case No. 3:17-cv-03529-VC

STIPULATION OF SETTLEMENT

BLOOD HURST & O' REARDON, LLP

1  total wholesale value of $130, the Claimant will automatically be provided additional like-products

2  until the total Product Benefit values is $150 or more (*i.e.*, is greater than 100% of the Claimant's

3  Product Benefit value). If the Product Benefit value of the Products selected by the Claimant do not

4  total 100% or more of the value of the Claimant's Product Benefit but any additional like-product

5  would have a value greater than the benefit amount remaining to the Claimant, additional like-

6  product will nonetheless be automatically provided to the Claimant until the total value of the

7  Products provided to the Claimant are equal to or greater than 100% of the Claimant's Product

8  Benefit value. Additional like products will not be provided to Class Members once their total

9  Product Benefit value equals to or exceeds 100% of the amount of Product Benefit value to which

10  they are entitled.

11         g.      The Product Benefit is subject to a pro rata increase depending upon the

12  amount remaining in the Net Fund after all eligible Claims are determined, as described in Section

13  IV.5.

14         h.      The total amount of Product Benefit value selected pursuant to the payment

15  of valid Claims shall be deducted from the Net Fund.

16     5.4.    Pro Rata Adjustments, the Supplemental Claim Deadline, and Cy Pres Contribution.

17         a.      If the amount of the Net Fund is less than the aggregate amount of valid

18  Claims submitted in accordance with the Original Claim Deadline, each Claim for a Cash Payment

19  shall be reduced on a pro rata basis.

20         b.      If the amount of the Net Fund exceeds the aggregate amount of valid Claims

21  submitted in accordance with the Original Claim Deadline, the Settlement Administrator will

22  determine if increasing each valid Cash Payment and Product Benefit Claim by up to three (3) times

23  the claimed amount will exhaust the Net Fund. If so, amounts paid on Claims will be increased pro

24  rata up to three (3) times the claimed amounts.

25         c.      If, however, the amount of the Net Fund after a pro-rata increase of three (3)

26  times the original claimed amounts would still exceed the aggregate amount of those upward

27  adjusted valid Claims submitted in accordance with the Original Claim Deadline, then then the

28  Original Claim Deadline shall be extended for all Class Members by sixty (60) days (and this fact

shall be prominently updated on the homepage of the Settlement Website) and Direct Notice will be provided to those Class Members who did not submit a Claim in accordance with the Original Claim Deadline and for whom Direct Notice may be provided. This Direct Notice will inform these Class Members that they have an additional sixty (60) days (the Supplemental Claim Deadline) to submit a Claim Form toand receive the Cash Payment or Product Benefit at their option.

        d.     If the amount of the Net Fund still exceeds the aggregate amount of valid Claims after the processes described in Section IV.5(a), (b), and (c), the amounts paid on all valid Claims will be further increased pro rata up until the Net Fund is exhausted.

        e.     At the time of disbursement, each Claimant will receive an email and/or mobile phone text providing the Claimant with several digital options to immediately receive the Cash Payment, such as a digital MasterCard, Venmo, Amazon, or eCheck. At that time, the Claimant may also request a physical check.

        f.     Cash Payment checks will be valid for ninety (90) days. Any amount remaining in the Net Fund as a result of Cash Payment checks that remain uncashed more than ninety (90) days after the date on the check, or as a result of Cash Payment checks returned with no forwarding address and for which a current address cannot be reasonably obtained, and any remaining funds that the Settlement Administrator was unable to distribute, will be paid to the Cy Pres Recipient. Any Class Member who fails to negotiate the check within the ninety (90) day period forever waives and releases his or her claim for payment of the amount represented by the Cash Payment check.  In addition to Cash Payment checks, Cash Payments may be provided to Class Members electronically through established electronic payment services such as digital MasterCard,PayPal and Venmo, Amazon, or eCheck as requested by Class Members.

      6.5.    Release of the Common Fund

        a.     Within seven (7) days following entry of an order granting Plaintiffs' Motion for Attorneys' Fees and Expenses, Defendant shall deposit the amount of the Attorneys' Fees and Expenses rewarded by the Court in a qualified settlement account. Plaintiffs' Motion for Attorneys' Fees and Expenses shall be filed at least 30 days before the deadline for objecting to the Settlement.

        b.     Within fourteen days (14) days following entry of a Final Approval Order,

BLOOD HURST & O' REARDON, LLP

00175004

the Defendant shall pay the Settlement Administrator and the Settlement Administrator shall pay to Class Counsel their Attorneys' Fees and Expenses (net of any amount to be withheld by the Court until after Post-Distribution Accounting pursuant to the Court's Standing Order for Civil Cases) as awarded by the Court, provided that Class Counsel shall be obligated to return to the Common Fund any fees or expenses if the amount awarded by the Court is reduced prior to the Effective Date.

c. Within seven (7) days after the claim review process set forth in Section V is completed, the Settlement Administrator shall calculate the Net Cash Benefit by deducting the total value of the Product Benefits claimed by Class Members from the Net Fund.

d.c. At least fourteen (14) days prior to the Effective Date, calculated assuming there are no appeals, Defendant shall deposit the amount of the Net Fund into Cash Benefit in a qualified settlement account.

e.d. On the Effective Date, the Net Fund Cash Benefit will be made available to pay the Court-approved Class Representative Service Awards and to pay Class Members' Claims for the Cash Payment benefit.

f. On the Effective Date, Class Members' Product Benefit selections will be made available to the Settlement Administrator for distribution to Class Members.

g.e. Within twenty-one (21) days after distribution of the Cash Payment to Claimants Benefit and Product Benefit, Class Counsel will file a Post-Distribution Accounting as described in the Northern District's Procedural Guidance for Class Action Settlements and in the Court's Standing Order for Civil Cases.

f. Upon order of the Court following submission of the Post-Distribution Accounting, the remainder of the Attorneys' Fees and Expenses, if any, shall be paid to Class Counsel.

## V. CLAIM FORM SUBMISSION, REVIEW AND PAYMENT

1. To be eligible to receive the Cash Payment or Product Benefit, Class Members must submit a valid and timely Claim Form. Claim Forms may be submitted either by mail or electronically through the Settlement Website and if submitted by mail must be postmarked or submitted electronically on or before the Original Claim Deadline (or the Supplemental Claim

Deadline, if applicable).

2.　　Claim Forms will be available for online submission on the Settlement Website, available for download from the Settlement Website, and upon request, will be mailed or emailed to Class Members by the Settlement Administrator. Hard copy Claim Forms may be submitted to the Settlement Administrator by U.S. mail or other regularly maintained mail delivery service.

~~3.　　Claimants selecting the Product Benefit on the Settlement Website will choose the items he or she desires directly on the Settlement Website at the time the Claimant submits the Claim for the Product Benefit. The Settlement Website will keep track of the items selected by the Claimant and provide a running total of amount of Product Benefit remaining to the Claimant to easily allow the Claimant to select the full amount of items to which he or she is entitled pursuant to the Product Benefit.~~

~~4.~~3.　　The Settlement Administrator shall review Claims to determine if the Claimant has substantially complied with the instructions on the Claim Form and process the Claim accordingly. The Settlement Administrator shall make final decisions on whether a Claim is valid subject to the agreement of Class Counsel and Defendant's Counsel.

~~5.~~4.　　Failure to provide all information requested in the Claim Form will not automatically result in nonpayment of the Claim. Instead, the Settlement Administrator will take all adequate and customary steps to determine the Class Member's eligibility for payment ~~or products~~ based on the information contained in the Claim Form, and such other reasonably available information from which eligibility for settlement benefits can be determined.

~~6.~~5.　　The Settlement Administrator's review of Claims will be in accordance with standard fraud detection practices regularly employed by the Settlement Administrator to prevent the approval and payment of Claims that are fraudulent or invalid.

~~7.~~6.　　Claimants entitled to receive the Cash Payment will be given the option of receiving payment electronically or mailed a check by first class mail to the address on Claim Form. Payments will be mailed upon the occurrence of the Effective Date and within seven (7) days after the process described in Section IV.5 is completed.

~~8.　　Claimants entitled to receive the Product Benefit will be mailed their selected~~

1    ~~products by the Settlement Administrator. The Products will be mailed upon the occurrence of the~~

2    ~~Effective Date and within seven (7) days after the process described in Section IV.5 is completed.~~

3    ~~9.      Defendant will separately pay all shipping and handling costs associated with~~

4    ~~distributing the Product Benefit to Claimants and such costs are not included in the Settlement Costs~~

5    ~~and are not paid out of the Common Fund.~~

6    ~~10.~~7.   Class Counsel will submit a Post-Distribution Accounting that addresses all relevant

7    items in the Court's Standing Order, including a full description of the Settlement distribution

8    (covering the elements in the Standing Order) and a Proposed Order releasing the remainder of the

9    Attorneys Fees and Costs.

10   **VI.     ADMINISTRATION AND CLASS NOTICE**

11          **A.     Settlement Administrator**

12          1.      Subject to Court approval, the Parties shall retain Epiq Class Action and

13   Claims Solutions to help implement the terms of the Settlement Agreement.

14          2.      The Settlement Administrator will be tasked with conducting matters relating

15   to the administration of this Settlement Agreement, as set forth herein. Those responsibilities

16   include, but are not limited to (1) arranging for dissemination of the Publication Notice and Direct

17   Notice, (2) mailing or arranging for the mailing, emailing or other distribution of the Class Notice

18   and the Cash Payment ~~and Product Benefit~~ to Claimants, (3) handling returned mail and email not

19   delivered to Class Members,  (4) making any additional mailings required under the terms of this

20   Settlement Agreement, (5) answering written inquiries from Class Members and/or forwarding such

21   inquiries to Class Counsel or their designee, (6) receiving and maintaining on behalf of the Court

22   and the Parties any Class Member correspondence and Requests for Exclusion from the Settlement,

23   (7) establishing the Settlement Website that posts the operative complaint, Settlement Agreement,

24   the Class Notice, and other related documents, (8) sending notification of any deficiency in any

25   Claim Form to permit a Claimant to cure any such deficiency, (9) establishing and maintaining a

26   toll-free telephone number that will provide settlement-related information to Class Members, and

27   (10) otherwise assisting with administration of the Settlement Agreement.

28          3.      The contract with the Settlement Administrator shall obligate the Settlement

Administrator to abide by the following performance standards:

        a.    The Settlement Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and objectively describe, the provisions of this Settlement Agreement in communications with Class Members; and

        b.    The Settlement Administrator shall provide prompt, accurate and objective responses to inquiries from Class Counsel or their designee, Reckitt Benckiser and/or Reckitt Benckiser's Counsel.

    B.    **Class Notice**

    1.    Class Notice: The Class Notice forms will include a Long-form Class Notice, Email Notice, Amazon Email Notice, Postcard Notice, and Internet Banner Advertisements disseminated in connection with the Publication Notice.

    2.    The Long-form Class Notice available on the Settlement Website and to be sent to Class Members at their request shall be in substantially the form of Exhibit 5. The Long-form Class Notice shall be available in English and Spanish. At a minimum, the Long-form Class Notice shall:

        a.    include a short, plain statement of the background of the Action and the proposed Settlement Agreement;

        b.    describe the proposed settlement relief as set forth in this Settlement Agreement;

        c.    inform Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief;

        d.    describe the procedures for participating in the Settlement, including all applicable deadlines, and advise Class Members of their rights to submit a Claim to be eligible to receive a Cash Payment ~~or Product Benefit~~ under the Settlement Agreement;

        e.    explain the scope of the Release;

        f.    state that any Cash Payment ~~or Product Benefit~~ to Class Members is contingent on the Court's final approval of the Settlement Agreement;

        g.    state the identity of Class Counsel and the amount sought in attorneys'

BLOOD HURST & O' REARDON, LLP

00175004

fees and expenses and Class Representative service awards;

        h.     explain the procedures for opting out of the Settlement Class including the applicable deadline for opting out;

        i.     explain the procedures for objecting to the Settlement Agreement including the applicable deadline; and

        j.     explain that any judgment or orders entered in the Action, whether favorable or unfavorable to the Settlement Class shall include and be binding on all Class Members who have not been excluded, even if they have objected to the proposed Settlement Agreement and even if they have another claim, lawsuit, or proceeding pending against Defendant.

        3.     Email Notice, Amazon Email Notice and Postcard Notice: The Email Notice, Amazon Email Notice and Postcard Notice shall be in substantially the form of Exhibits 6, 7 and 8, and shall include the web address of the Settlement Website and a telephone number for the Settlement Administrator, a description of the Settlement Class, a description of relief available to the Settlement Class and the Original Claim Deadline (or any Supplemental Claim Deadline), and an explanation of the right to object and/or opt-out of the Settlement Class and the deadlines to exercise these rights.

        4.     Internet Banner Advertisements: The Settlement Administrator will design and implement a geographic and contextual targeting digital and social media campaign that utilizes Internet Banner Advertisements (substantially in the form of Exhibit 9) that contain an embedded hyperlink directing Class Members directly to the Claim Form link on the Settlement Website.

        5.     Website Notice: The Settlement Website shall be created and maintained by the Settlement Administrator. The Settlement Website shall be available in English and Spanish. The Settlement Website shall be activated no later than the Notice Date and shall remain active until sixty (60) days after the settlement benefits are distributed to Claimants. The URL of the Settlement Website will be "www.MoveFreeAdvancedSettlement.com." The Settlement Administrator shall post the Long-form Class Notice, a copy of this Settlement Agreement and its Exhibits, the Preliminary Approval Motion, the Preliminary Approval Order, the operative complaint, the Motion for Final Approval and Motion for Attorneys' Fees and Expenses, the Final Approval Order,

BLOOD HURST & O' REARDON, LLP

answers to frequently asked questions, the number for the toll-free hotline maintained by the Settlement Administrator for this Settlement, Settlement-related deadlines, and any other materials or information the Parties agree to include on the Settlement Website. These documents shall be available on the Settlement Website for as long as the Settlement Website is active.

6.     Class Action Fairness Act Notice: Reckitt Benckiser shall work with the Settlement Administrator to comply with all notice requirements imposed by 28 U.S.C. § 1715(b) ("CAFA Notice").

C.     **Dissemination of Class Notice**

1.     Direct Notice: The Email Notice, Amazon Email Notice or Postcard Notice (as applicable), shall be sent via email, or for those Class Members for whom an email address is not available but a physical address is available, then via the United States Postal Service, to every Class Member who can be identified in the records of (1) third-party retailers, (2) Reckitt Benckiser, or (3) otherwise, including but not limited to Class Members who directly purchased Move Free Advanced from the schiffvitamins.com website or registered a purchase of Move Free Advanced with Reckitt Benckiser through the Schiff Move Free Rewards program or otherwise. Reckitt Benckiser shall provide the Settlement Administrator any of the aforementioned Class Member contact information it possesses. Direct Notice will be sent on the Notice Date, and if applicable, again to those Class Members who did not submit a Claim in accordance with the Original Claim Deadline. Prior to the Notice Date, the Settlement Administrator shall employ its regular data processing and data cleaning procedures on the records (names/addresses) for the Direct Notice. The Settlement Administrator shall design the Direct Notice (for both delivery by U.S. mail and by email) in such a manner as to enhance the likelihood that it will be opened or viewed by the Class Member. After posting of the Postcard Notice by the Settlement Administrator with the United States Postal Service, for any such mailed notices returned as undeliverable, the Settlement Administrator shall utilize the National Change of Address registry in an attempt to obtain better addresses for such returned mail notices, and should that registry show a more current address, the Settlement Administrator shall send the returned Postcard Notice to the more current address. The Settlement Administrator will promptly resend any Postcard Notice that is returned as undeliverable

BLOOD HURST & O' REARDON, LLP

Case No. 3:17-cv-03529-VC

00175004

STIPULATION OF SETTLEMENT

with a forwarding U.S. mail or email address to such forwarding address.

2. Publication Notice: The Email Notice, or a variation of the Email Notice suitable for the manner of the specific publication, shall be published no later than the Notice Date. As detailed in the Class Notice Program (Exhibit 4), publication will include a combination of national print and online publications and outlets, including effective online advertising (including using the Internet Banner Advertisements and through sponsored search text ads on search engines such as Google, Yahoo, and Bing), and with the Settlement Administrator using accepted reach methodology to reach the Settlement Class.

3. Website Notice: No later than the Notice Date, the Settlement Administrator will post the Long-form Class Notice on the Settlement Website, and shall post the additional documents and information discussed in Section VI.B.5 above as they become available. Such documents and information may also be posted on Class Counsel's website and Plaintiffs' Counsel's websites at their option.

4. Toll-Free Telephone Number: No later than the Notice Date, the Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members via interactive voice recording with a live operator option.

5. Upon Request: The Long-form Class Notice and Claim Form shall also be sent via electronic mail or regular mail to Class Members who so request.

## VII. OBJECTIONS AND REQUESTS FOR EXCLUSION

### A. Objections

1. Any Class Member who intends to object to the fairness of the Settlement Agreement must do so in writing no later than the Objection Date. The written objection must be filed with the Court and served on Class Counsel and Defendant's Counsel no later than the Objection Date. The written objection must include: (a) a heading which refers to the Action; (b) the objector's name, address, telephone number and, if represented by counsel, the name, address, and telephone number of his/her counsel; (c) a statement under oath that the objector is a Class Member; (d) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel; (e) a statement of the objection and the specific grounds supporting

BLOOD HURST & O' REARDON, LLP

the objection; (f) a statement whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (g) copies of any papers, briefs, or other documents upon which the objection is based; and (h) the objector's handwritten, dated signature (the signature of objector's counsel, an electronic signature, and the annotation "/s" or similar annotation will not suffice).

2.      Any Class Member who files and serves a written objection, as described above, may appear at the Final Approval Hearing, either in person or through counsel hired at the Class Member's expense, to object to any aspect of the fairness, reasonableness, or adequacy of this Settlement Agreement. Class Members or their attorneys who intend to make an appearance at the Final Approval Hearing must serve a notice of intention to appear on Class Counsel and Defendant's Counsel, and file the notice of appearance with the Court, no later than seven (7) days before the Final Approval Hearing, or as the Court may otherwise direct. The written notice and objection requirements may be excused by the Court upon a showing of good cause.

3.      Absent a showing of good cause, any Class Member who fails to substantially comply with the provisions of Sections VII.A.1-2 above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object and shall be bound by all of the terms of this Settlement Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

B.      **Requests for Exclusion**

1.      Any member of the Settlement Class may request to be excluded from the Settlement Class. A Class Member who wishes to opt out of the Class must do so no later than the Opt-Out Date. To opt out, a Class Member must send to the Settlement Administrator a written Request for Exclusion that is postmarked no later than the Opt-Out Date. A Request for Exclusion may also be submitted at the Settlement Website by the Opt-Out Date. The Request for Exclusion must be personally signed by the Class Member and contain a statement that indicates a desire to be excluded from the Settlement Class. No person may opt out of the Settlement Class for any other person or be opted-out by any other person, and no Class Member shall be deemed opted-out of the Settlement Class through any purported "mass" or "class" opt-outs.

2.      Any Class Member who does not submit a timely, written Request for

BLOOD HURST & O' REARDON, LLP

Exclusion shall be bound by all subsequent proceedings, orders and the Final Judgment and Order Approving Settlement in this Action, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against Defendant relating to the Released Claims.

3.       Any Class Member who properly requests to be excluded from the Settlement Class shall not: (a) be bound by any orders or judgments entered in the Action relating to the Settlement Agreement; (b) be entitled to submit a Claim selecting the Cash Payment or Product Benefit, or be affected by, the Settlement Agreement; (c) gain any rights by virtue of the Settlement Agreement; or (d) be entitled to object to any aspect of the Settlement Agreement.

4.       The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a final list of all timely Requests for Exclusion within three (3) days after the Opt-Out Date. Reckitt Benckiser's Counsel shall file the final list of all timely Requests for Exclusion prior to or at the Final Approval Hearing.

## VIII.   RELEASES

A.       Upon the Effective Date, each and every Releasing Party shall by order of this Court be deemed to have released, waived, forfeited and shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any Released Claim against any Released Party based on the identical factual predicate in any court or any forum.

B.       In addition, with respect to the Released Claims, Plaintiffs specifically acknowledge and affirmatively waive any rights or benefits available to them under California Civil Code section 1542.  California Civil Code section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Plaintiffs hereby waive any and all federal and state statutes similar in substance, meaning or application to California Civil Code section 1542.

C.       In consideration for the Agreement, Defendant and its parents, subsidiaries, divisions, departments, and affiliates, and any and all of its past and present officers, directors,

BLOOD HURST & O' REARDON, LLP

employees, stockholders, agents, successors, attorneys, insurers, representatives, licensees, licensors, subrogees, and assigns shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have, released Class Counsel and Plaintiffs from any and all causes of action that were or could have been asserted pertaining solely to the conduct in filing and prosecuting the litigation or in settling the Action.

D.      The Court shall retain exclusive and continuing venue and jurisdiction over the Parties and the Class Members to interpret and enforce the terms, conditions, and obligations under the Settlement Agreement and any disputes over such issues shall be brought in this Court.

## IX.     ATTORNEYS' FEES AND EXPENSES AND PLAINTIFF SERVICE AWARDS

A.      Class Counsel shall make, and Defendant agrees not to oppose, an application for an award of attorneys' fees in an amount not to exceed 25% of the Common Fund or twelve million five hundred thousand dollars ($12,500,000).

B.      Class Counsel shall make, and Defendant agrees not to oppose, an application for reimbursement of Plaintiffs' Counsel's reasonable out-of-pocket expenses in an amount not to exceed $750,000.00.

C.      The award of Attorneys' Fees and Expenses will be paid from the Common Fund. The application for an award of Attorneys' Fees and Expenses will be made by Class Counsel on behalf of themselves and the other Plaintiffs' Counsel. Class Counsel shall distribute and allocate the Attorneys' Fees and Expense awarded to Plaintiffs' Counsel in its sole discretion. The attorneys' fees were negotiated subsequent to and separate from the other terms of this Settlement Agreement. Reckitt Benckiser shall not be responsible for any other fees or expenses incurred by Class Counsel, Plaintiffs' Counsel or Plaintiffs.

D.      Plaintiffs will apply for Class Representative service awards. Any Court-approved service award is in addition to the benefits that the Class Representatives are entitled to receive as members of the Settlement Class. Defendant agrees not to oppose service awards in the amount of seven thousand five hundred dollars ($7,500) to Gordon Noboro Yamagata, Stamatis F. Pelardis and Maureen Carrigan, and in the amount of five hundred dollars ($500) to Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman. The Court-

BLOOD HURST & O' REARDON, LLP

BLOOD HURST & O' REARDON, LLP

1    approved service awards will be paid from the Common Fund. The service awards shall be paid to

2    the Class Representatives within seven (7) days of the Effective Date.

3         E.    The Court's determination of Attorneys' Fees and Expenses and Class

4    Representative service awards will not affect the remainder of the Settlement.

5    **X.    FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT**

6         This Settlement Agreement is subject to and conditioned upon the issuance by the Court of

7    the Final Judgment and Order Approving Settlement that finally certifies the Class for the purposes

8    of this settlement, grants final approval of the Settlement Agreement, and provides the relief

9    specified herein. Such Final Judgment and Order Approving Settlement shall be in substantially the

10   form attached hereto as Exhibits 2 and 3.

11   **XI.    NO ADMISSION OF LIABILITY/FOR SETTLEMENT ONLY**

12        A.    This Agreement reflects the compromise and settlement of disputed claims among

13   the Parties and is for settlement purposes only.  Neither the fact of, or any provision contained in

14   this Agreement or its Exhibits, nor any action taken hereunder, shall constitute, be construed as, or

15   be admissible in evidence as an admission of:  (a) the validity of any claim or allegation by Plaintiffs,

16   or of any defense asserted by Reckitt Benckiser, in the Action or any other action or proceeding; or

17   (b) any wrongdoing, fault, violation of law, or liability of any kind on part of any Party, Defendant,

18   Released Party, or their respective counsel.

19        B.    The terms of this Settlement Agreement are not, and should not be construed as, an

20   admission of liability or wrongdoing on the part of Reckitt Benckiser.

21   **XII.    TERMINATION OF THIS SETTLEMENT AGREEMENT**

22        A.    Any Party may terminate this Settlement Agreement by providing written notice to

23   the other Parties within ten (10) days of any of the following events:

24             1.    The Court does not enter a Preliminary Approval Order that conforms in

25   material respects to Exhibit 1; or

26             2.    The Court does not enter a Final Judgment and Order Approving Settlement

27   conforming in material respects to Exhibits 2 and 3, or if entered, such Final Judgment and Order

28   Approving Settlement is reversed, vacated, or modified in any material respect by another court.

B.      In the event that this Settlement Agreement terminates for any reason, all Parties shall be restored to their respective positions as of the date of execution of the Settlement Agreement. In no event will Defendant be entitled to recover any funds spent for Notice and Claim Administration Expenses prior to termination of this Settlement Agreement.

## XIII.   ADDITIONAL PROVISIONS

A.      Entire Settlement Agreement: The Settlement Agreement, including all Exhibits, shall constitute the entire Settlement Agreement among the Parties with regard to the Action and shall supersede any previous settlement agreements, terms sheets, representations, communications and understandings among the Parties with respect to the subject matter of the Settlement Agreement.

B.      Execution in Counterparts: The Settlement Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent by email shall be treated as original signatures and shall be binding.

C.      Notices: Whenever this Settlement Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided in writing by first class US Mail and email to:

1.      If to Plaintiffs or Class Counsel:

Timothy G. Blood
BLOOD HURST & O'REARDON, LLP
501 W. Broadway, Suite 1490
San Diego, California 92101
Tel: 619-338-1100
tblood@bholaw.com

2.      If to Defendant or Defendant's Counsel:

David T. Biderman
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067
Tel: 310-788-9900
dbiderman@perkinscoie.com

D.      Good Faith: The Parties agree that they will act in good faith and will not engage in

any conduct that will or may frustrate the purpose of this Settlement Agreement. The Parties further agree, subject to Court approval as needed, to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

E.      Publicity: To the extent Defendant or Plaintiffs make any public statements regarding the settlement of this Action, any such statements shall be consistent with the Court-approved documents that comprise this Settlement Agreement or otherwise agreed on by the Parties in writing in advance.

F.      Binding on Successors: The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, successors and/or assigns of the Released Parties.

G.      Arms-Length Negotiations: The determination of the terms and conditions contained herein and the drafting of the provisions of this Settlement Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel. This Settlement Agreement shall not be construed against any Party on the basis that the Party was the drafter or participated in the drafting. Any statute or rule of construction that ambiguities are to be resolved against the drafting party shall not be employed in the implementation of this Settlement Agreement and the Parties agree that the drafting of this Settlement Agreement has been a mutual undertaking.

H.      Waiver: The waiver by one Party of any provision or breach of the Settlement Agreement shall not be deemed a waiver of any other provision or breach of the Settlement Agreement.

I.      Variance: In the event of any variance between the terms of this Settlement Agreement and any of the Exhibits hereto, the terms of this Settlement Agreement shall control and supersede the Exhibit(s).

J.      Taxes: No opinion concerning the tax consequences of the Settlement Agreement to any Class Member is given or will be given by Defendant, Defendant's Counsel, Class Counsel, or Plaintiffs' Counsel; nor is any Party or their counsel providing any representation or guarantee respecting the tax consequences of the Settlement Agreement as to any Class Member. Each Class Member is responsible for his/her tax reporting and other obligations respecting the Settlement

BLOOD HURST & O'  REARDON, LLP

Agreement, if any.

K.    Modification in Writing: The Settlement Agreement may not be changed, modified, or amended except in a writing signed by one of Class Counsel and one of Reckitt Benckiser's Counsel and, if required, approved by the Court. The Parties contemplate that the Exhibits to the Settlement Agreement may be modified by subsequent agreement of Defendant and Class Counsel so long as the modifications do not alter the substantive terms of the Agreement or reduce the rights and benefits of Class Members.

L.    Retain Jurisdiction: The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement Agreement embodied in this Settlement Agreement.

M.    Choice of Law: This Settlement Agreement is governed by, and shall be construed and enforced in accordance with, California law.

N.    Computation of Time:  All deadlines and time periods prescribed in this Settlement Agreement shall be calculated pursuant to Fed. R. Civ. P. 6.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed as of the last date set forth below.

Dated: March 2, 2021

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By: _____
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

*Class Counsel*

ALTAIR LAW
CRAIG M. PETERS (184018)
465 California Street, 5th Floor
San Francisco, CA  94104-3313

BLOOD HURST & O' REARDON, LLP

1                                 Tel: 415/988-9828
415/988-9815 (fax)

2                                 c.peters@altair.us

3                                 *Attorneys for Plaintiffs*

4  Dated: March 2, 2021             PERKINS COIE LLP
DAVID T. BIDERMAN

5                                 JASMINE WETHERELL

6

7                                 By: _____
                                        DAVID T. BIDERMAN

8

9                                 1888 Century Park East, Suite 1700
Los Angeles CA 90067

10                               505 Howard Street, Suite 1000
San Francisco, CA 94105

11                               Tel: 310/312-4000
Fax: 310/312-4224

12                               dbiderman@perkinscoie.com
jwetherell@perkinscoie.com

13                               *Attorneys for Defendant Reckitt Benckiser LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

BLOOD HURST & O' REARDON, LLP

00175004

1    **ECF CERTIFICATION**

2         The filing attorney attests that he has obtained concurrence regarding the filing of this

3    document from the signatories to this document.

4    Dated: March 2, 2021                    BLOOD HURST & O'REARDON, LLP

5                                            By:        *s/ Timothy G. Blood*

6                                                   TIMOTHY G. BLOOD

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION OF SETTLEMENT

BLOOD HURST & O' REARDON, LLP

00175004