BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Class Counsel

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

RECKITT BENCKISER LLC,

Defendant.

Case No. 3:17-cv-03529-VC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVES**

**CLASS ACTION**

Hrg Date: October 28, 2021
Time: 2:00 p.m.

District Judge Vince Chhabria
Courtroom 4, 17th Floor

Complaint Filed: June 19, 2017

**JURY TRIAL DEMANDED**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 28, 2021, at 2:00 p.m., in Courtroom 4, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Vince Chhabria, and pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs will and hereby do move this Court for an Order awarding Class Counsel reasonable attorneys' fees of $12,500,000 plus reimbursement of expenses of $658,050.95. Plaintiffs will and do also move this Court for an Order granting service awards in the aggregate amount of $25,500: $7,500 each to Class Representatives Gordon Noboru Yamagata, Stamatis F. Pelardis, and Maureen Carrigan, and $500 each to Class Representatives Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman.

This Motion is based upon this notice of motion, Plaintiffs' memorandum in support of this Motion, the declarations of Timothy G. Blood, Todd D. Carpenter, Craig M. Peters, Ben Barnow, Cameron R. Azari, Gordon Noboru Yamagata, Stamatis F. Pelardis, Maureen Carrigan, Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman, the previously filed motions for preliminary approval and accompanying documents (ECF Nos. 203, 203-1 through 203-4, 221, and 221-1 through 221-3), and all supporting exhibits, the complete file and record in this action and the related action filed in the United States District Court for the Northern District of Illinois captioned *Carrigan v. Reckitt Benckiser, LLC*, No. 1:18-cv-07073, and such oral argument as the Court may consider in deciding this Motion.

Dated: September 14, 2021

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O' REARDON, LLP

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................1

II. HISTORY OF THE LITIGATION ....................1

A. Summary of the Procedural History ....................2

B. The Settlement Agreement ....................2

III. PLAINTIFFS' FEE AND EXPENSE REQUEST SHOULD BE APPROVED ....................3

A. A Benchmark Fee Award of 25% of the Common Fund Is Fair and Reasonable ....................4

1. Plaintiffs' Counsel Achieved an Excellent Result for the Class ....................5

2. Plaintiffs' Counsel Assumed Significant Risks in This Complex Litigation ....................6

a. Risks of Establishing Liability at a Class Trial ....................7

b. Other Potential Risks of Continued Litigation ....................8

3. Counsel Provided High-Quality Work ....................10

4. Plaintiffs' Counsel Took the Case on a Contingency Basis ....................11

5. The Requested Fee Award Is Equivalent to Awards in Similar Cases ....................12

6. Just One Class Member Has Objected to the Requested Fees ....................12

B. A Lodestar Cross-Check Confirms the Fee Request is Reasonable ....................14

1. The Hourly Rates Are Reasonable ....................16

2. The Hours Expended Are Reasonable ....................18

C. Plaintiffs' Expenses Are Reasonable and Compensable ....................19

D. The Class Representative Service Awards Should Be Approved ....................20

IV. CONCLUSION ....................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Hyland's, Inc.*,
No. 2:12-cv-01150-DMG (MANx), 2021 U.S. Dist. LEXIS 34695 (C.D. Cal. Feb. 23, 2021) .......... 7

*Alvarez v. Farmers Ins. Exch.*,
No. 3:14-cv-00574-WHO, 2017 U.S. Dist. LEXIS 119128 (N.D. Cal. Jan. 17, 2017) .......... 4

*In re Am. Apparel S'holder Litig.*,
No. CV 10-06352 MMM, 2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) .......... 10

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .......... 13

*In re Animation Workers Antitrust Litig.*,
No. 14-CV-4062-LHK, 2016 U.S. Dist. LEXIS 156720 (N.D. Cal. Nov. 11, 2016) .......... 17, 21

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214 (S.D. Cal. Sept. 28, 2017) .......... 15

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) .......... 11, 12, 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 3, 6

*Blum v. Stenson*,
465 U.S. 886 (1984) .......... 16

*Broomfield v. Craft Brew Alliance, Inc.*,
No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) .......... 13

*Buccellato v. AT&T Operations, Inc.*,
No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699 (N.D. Cal. June 30, 2011) .......... 14

*Buckingham v. Bank of Am.*,
No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243 (N.D. Cal. July 11, 2017) .......... 4, 14

*In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 U.S. Dist. LEXIS 169764 (N.D. Cal. Sept. 21, 2018) ..... 4, 14

*Carlotti v. ASUS Comput. Int'l*, No. 18-cv-03369-DMR, 2019 U.S. Dist. LEXIS 201564 (N.D. Cal. Nov. 19, 2019) ..... 13

*Carlotti v. Asus Comput. Int'l*, No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917 (N.D. Cal. June 22, 2020) ..... 17

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) ..... 18

*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) ..... 20, 21

*Dennis v. Kellogg Co.*, No. 09-CV-1786-L, 2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013) ..... 17

*Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) ..... 20

*Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440 (N.D. Cal. Feb. 21, 2020) ..... 17

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..... 12

*Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214 (N.D. Cal. June 26, 2017) ..... 20

*Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar. 29, 2021) ..... 9

*Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*, No. CV 20-04149 DDP, 2021 U.S. Dist. LEXIS 149146 (C.D. Cal. Aug. 6, 2021) ..... 9

*Farar v. Bayer AG*, No. 3:14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729 (N.D. Cal. Nov. 15, 2017) ..... 7, 8

*Farrell v. Bank of Am. Corp., N.A.*,
827 Fed. Appx. 628 (9th Cir. 2020) .......... 4, 14

*Feminist Women's Health Ctr. v. Blythe*,
32 Cal. App. 4th 1641 (1995) .......... 6

*Galeener v. Source Refrigeration & HVAC, Inc.*,
No. 3:13-cv-04960-VC, 2015 U.S. Dist. LEXIS 193096 (N.D. Cal. Aug. 21, 2015) .......... 21

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010) .......... 21

*Glass v. UBS Fin. Servs.*,
No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .......... 12, 21

*In re Google Referrer Header Privacy Litig.*,
869 F.3d 737 (9th Cir. 2017) .......... 4, 14

*Greenberg v. Target Corp.*,
985 F.3d 650 (9th Cir. 2021) .......... 9

*In re Groupon, Inc.*,
No. 11md2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750 (S.D. Cal. Sept. 28, 2012) .......... 13

*Gutierrez v. Wells Fargo Bank, N.A.*,
No. C 07-5923 WHA, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal. May 21, 2015) .......... 17, 18

*Haas v. Travelex Ins. Servs.*,
No. 2:20-cv-06171-ODW, 2021 U.S. Dist. LEXIS 157178 (C.D. Cal. Aug. 19, 2021) .......... 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 3, 4

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .......... 19

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) .......... 16

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 17, 2018) .......... 17

BLOOD HURST & O' REARDON, LLP

*Hemphill v. S.D. Ass'n of Realtors, Inc.*,
225 F.R.D. 616 (S.D. Cal. 2004) .......... 18

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 5

*Heritage Pac. Fin., LLC v. Monroy*,
215 Cal. App. 4th 972 (2013) .......... 6

*In re High-Tech Emp. Antitrust Litig.*,
No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052 (N.D. Cal. Sept. 2, 2015) .......... 17

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
No. 09md2087 BTM(KSC), 2014 U.S. Dist. LEXIS 162106 (S.D. Cal. Nov. 18, 2014 .......... 16, 20

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... *passim*

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 20

*in Whitehead v. Colvin*,
No. C15-5143 RSM, 2016 U.S. Dist. LEXIS 51085 (W.D. Wash. Apr. 14, 2016) .......... 5

*In re Ins. Brokerage Antitrust Litig.*,
579 F.3d 241 (3d Cir. 2009) .......... 18

*Johnson v. Gen. Mills, Inc.*,
No. SACV 10-00061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338 (C.D. Cal. June 17, 2013) .......... 5, 12, 17, 18

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001) .......... 11, 15, 16

*Kroessler v. CVS Health Corp.*,
977 F.3d 803 (9th Cir. 2020) .......... 9

*Laffitte v. Robert Half Int'l, Inc.*,
1 Cal. 5th 480 (2016) .......... *passim*

*Lealao v. Beneficial Cal., Inc.*,
82 Cal. App. 4th 19 (2000) .......... 15

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
222 F.3d 1142 (9th Cir. 2000) .......... 18

BLOOD HURST & O' REARDON, LLP

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 5

*Milburn v. PetSmart, Inc.*,
No. 1:18-cv-00535-DAD-SKO, 2019 U.S. Dist. LEXIS 187530 (E.D. Cal. Oct. 29, 2019) .......... 5

*Mirkarimi v. Nev. Prop. 1, LLC*,
No. 12cv2160 BTM (DHB), 2016 U.S. Dist. LEXIS 25528 (S.D. Cal. Feb. 29, 2016) .......... 15

*Monterrubio v. Best Buy Stores, L.P.*,
291 F.R.D. 443 (E.D. Cal. 2013) .......... 11

*Morris v. Lifescan, Inc.*,
54 Fed. Appx. 663 (9th Cir. 2003) .......... 5

*In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*,
No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108 (N.D. Cal. Dec. 6, 2017) .......... 5, 21

*Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*,
993 F.3d 774 (9th Cir. 2021) .......... 9

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......... 19

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .......... 21

*People Who Care v. Rockford Bd. of Educ.*,
90 F.3d 1307 (7th Cir. 1996) .......... 16

*Racies v. Quincy Bioscience, LLC*
No. 15-cv-00292-HSG, 2020 U.S. Dist. LEXIS 78156 (N.D. Cal. May 4, 2020) .......... 8

*Rider v. San Diego*,
11 Cal. App. 4th 1410 (1992) .......... 19

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 20

*San Bernardino Valley Audubon Soc'y v. San Bernardino*,
155 Cal. App. 3d 738 (1984) .......... 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) .......... 17

*Serrano v. Priest*,
20 Cal. 3d 25 (1977) ........ 19

*Serrano v. Unruh*,
32 Cal. 3d 621 (1982) ........ 16

*Shirrod v. Dir., OWCP*,
809 F.3d 1082 (9th Cir. 2015) ........ 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ........ 4

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 9, 10

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ........ 12, 15, 18

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003) ........ 19

*Steiner v. Am. Broad. Co., Inc.*,
248 Fed. Appx. 780 (9th Cir. 2007) ........ 14

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
896 F.2d 403 (9th Cir. 1990) ........ 16

*Van Vranken v. Atl. Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ........ 21

*Vedachalam v. Tata Consultancy Servs., Ltd.*,
No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796
(N.D. Cal. July 18, 2013) ........ 5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........ 5, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115
(N.D. Cal. Mar. 17, 2017) ........ 14, 17

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
No. CV 15-2171 FMO, 2017 U.S. Dist. LEXIS 77576
(C.D. Cal. May 21, 2017) ........ 16

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ........ 11

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
845 Fed. Appx. 563 (9th Cir. 2021) ........ 14

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) ... 14, 16, 18

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
No. 1:08-cv-65000, 2016 U.S. Dist. LEXIS 130467
(N.D. Ohio Sept. 23, 2016) ... 14

*Yaeger v. Subaru of Am. Inc.*,
No. 1:14-cv-4490, 2016 U.S. Dist. LEXIS 117193
D.N.J. Aug. 31, 2016) ... 13

**Secondary Sources**

4 William B. Rubenstein, et al., *Newberg on Class Actions* (5th ed. 2015)
§ 13:44 ... 7
§ 16:10 ... 19

BLOOD HURST & O' REARDON, LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Counsel obtained an outstanding record-setting result for Class Members.[1] The Settlement consists of a $50 million non-reversionary common fund from which all claimants will receive a cash payment of $22 per purchase of Schiff Move Free Advance. The cash payment represents the average retail price of Move Free Advanced. Claimants may receive reimbursement for up to three purchases without proof of purchase and reimbursement for more than three purchases with proof of purchase.

Plaintiffs' Counsel seek the 25% benchmark percentage award of attorneys' fees in the amount of $12.5 million, out-of-pocket expenses of $658,050.95, and Court-awarded service awards of $7,500 each to Class Representatives Yamagata, Pelardis, and Carrigan, and $500 each to Class Representatives Coletti, Maher, Marshall, Rawls, Steele, and Tishman. The requested fee is well within the range established by the case law, including when cross-checked against Plaintiffs' Counsel's lodestar of $5,497,241.75, representing a multiplier of 2.27. Given the remarkable result achieved—which is the largest amount obtained in this type of case—and the efforts taken by counsel to obtain the result, the requested fees and expenses are reasonable. Likewise, the Class Representatives deserve the requested service awards given the efforts they have made to bring about this result.

## II. HISTORY OF THE LITIGATION

The Motion for Preliminary Approval and Declaration of Timothy G. Blood in Support of Motion for Preliminary Approval described in detail the lengthy procedural history of this matter and the lengthy and hard-fought settlement negotiations which ultimately led to the Settlement Agreement. *See* ECF Nos. 203, 221 and 221-1 ("Blood Preliminary Approval Decl."). Rather than repeat those details here, they are incorporated by this reference and summarized below.

---

[1] Throughout this memorandum, all capitalized terms have the same meaning as defined in the Stipulation of Settlement (ECF No. 221-2) ("Settlement Agreement" or "SA"), unless otherwise stated.

BLOOD HURST & O'REARDON, LLP

**A. Summary of the Procedural History**

Plaintiffs allege Defendant falsely advertised its glucosamine joint health dietary supplement "Move Free Advanced" ("MFA")[2] by claiming it provides joint health benefits that it does not provide. The litigation has lasted over four years, involved discovery motions, class certification in two courts, a petition for permissive appeal, summary judgment, 30 depositions, over 20 third party subpoenas, more than 303,000 pages of documents (exceeding 116 GB), reports and declarations from 14 designated experts, and many days of mediations with three different neutrals at various stages throughout the Action. *See* Blood Preliminary Approval Decl., ¶¶ 4-36. The Settlement was reached only after this significant history, while the Parties were preparing for trial and just weeks away from the final pretrial conference.

**B. The Settlement Agreement**

Under the Settlement, Defendant will create a $50 million non-reversionary Common Fund to compensate Class Members and pay for Class Notice, any award of attorneys' fees and expenses, and Class Representative service awards.

Class Members will receive $22 cash for each bottle of MFA they purchased. SA, § IV.3. This amount is about the average retail price paid by Class Members. Blood Preliminary Approval Decl., ¶ 43. Class Members may claim reimbursement for up to three purchases without proof of purchase, for a total of $66. Three purchases are slightly more than the average number of bottles purchased made by Class Members, which is 2.6. *Id.*, ¶ 44. Those with proof of purchase may claim refunds for as many bottles as they have proofs of purchase. Because many purchases were made from club stores like Costco and through Amazon, many Class Members have proofs of purchase.

No portion of the Common Fund will revert to Defendant. Any funds remaining after calculating valid claims will be distributed to Claimants by increasing the amount of their valid Claims up to three times the original claim amount. SA, § IV.4.b. Given the current claims rate and response by Class Members, the cash awards may be increased slightly, but will not exceed three

[2] "Move Free Advanced" or "MFA" refers to the glucosamine supplement products at issue marketed and distributed by Reckitt Benckiser called Move Free Advanced, Move Free Advanced Plus MSM, and Move Free Advanced Plus MSM & Vitamin D.

times the original amount. *See* Supplemental Declaration of Cameron R. Azari re Settlement Administration ("Azari Supplemental Decl."), ¶¶ 51-53. However, in the event such increased amount would exceed three times the original claim amount, a second round of class notice and an additional claim-in opportunity will occur. SA, § IV.4.c. If money remains after this Supplemental Claim Deadline, the valid claims will again be calculated and increased pro rata until the Net Fund is exhausted. *Id*. If there is not enough money to cover all valid claims, cash claims will be reduced pro rata. *Id.*, § IV.4.a.

## III. PLAINTIFFS' FEE AND EXPENSE REQUEST SHOULD BE APPROVED

Plaintiffs seek an award of attorneys' fees of $12,500,000, plus reimbursement of $658,050.95 in costs expended to date to litigate this Action and the related *Carrigan* action. The requested fee award represents 25% of the Common Fund, and a multiplier of 2.27 on Plaintiffs' Counsel's lodestar of more than $5,497,241.75.

The Ninth Circuit approves "two separate methods for determining attorneys' fees" – the "percentage of recovery" method and the "lodestar" method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019).

The California Supreme Court has endorsed the percentage method of awarding attorneys' fees where a class action suit results in a common fund for the class, noting that its benefits as compared to the lodestar method include the method's "relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 503 (2016). The Ninth Circuit is in accord about the benefits of the percentage method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."). Thus, "the percentage-of-the-fund method is preferred when counsel's efforts have

created a common fund for the benefit of the class." *In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 U.S. Dist. LEXIS 169764, at *43 (N.D. Cal. Sept. 21, 2018) (collecting cases).[3]

In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Laffitte*, 1 Cal. 5th at 506. "The lodestar calculation begins with the multiplication of the number of hours reasonable expended by a reasonable hourly rate." *Hyundai*, 926 F.3d at 570. The court "may then adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506; *see also In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017); *Farrell v. Bank of Am. Corp., N.A.*, 827 Fed. Appx. 628, 630 (9th Cir. 2020) ("This Court has consistently refused to adopt a crosscheck requirement, and we do so once more.").

The requested fees and expenses should be approved as fair and reasonable under the percentage of recovery and lodestar methods.

**A. A Benchmark Fee Award of 25% of the Common Fund Is Fair and Reasonable**

The requested fees are reasonable under the percentage of recovery calculation. Under the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee." *Hanlon*, 150 F.3d at 1029. In the Ninth Circuit it is well-established that 25% of a common fund is a presumptively reasonable award. *Id.*; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (the Ninth Circuit has "established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases"); *Buckingham v. Bank of Am.*, No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243, at *13-14 (N.D. Cal. July 11, 2017) (citing *Bluetooth*, 654 F.3d at 942); *Alvarez v. Farmers Ins. Exch.*, No. 3:14-cv-00574-WHO, 2017 U.S. Dist. LEXIS 119128, at *6 (N.D. Cal. Jan. 17, 2017) ("In the Ninth Circuit, attorneys' fees constituting 25% of a common fund are considered

[3] All internal citations and quotations are omitted unless otherwise stated.

presumptively reasonable."). However, "the 25% benchmark can be adjusted upward or downward, depending on the circumstances." *Hyundai*, 926 F.3d at 570.

In determining whether the percentage requested is fair and reasonable, courts may consider a range of factors, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work; and (5) the contingent nature of the fee and the financial burden. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also Laffitte*, 1 Cal. 5th at 504 (same). Based on these factors, the Ninth Circuit has affirmed fee awards "far greater" than 25%. *Hyundai*, 926 F.3d at 571 (citing *Vizcaino*, 290 F.3d at 1047-48 (affirming fees totaling 28% of class recovery) and *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% of class recovery)). In fact, "[a]s a court in this District recognized, 'in most common fund cases, the award exceeds the [25%] benchmark.'" *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108, at *5 (N.D. Cal. Dec. 6, 2017) (quoting *De Mira v. Heartland Emp't Serv.*, No. 12-CV-04092 LHK, 2014 U.S. Dist. LEXIS 33685, at *2 (N.D. Cal. Mar. 13, 2014)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (affirming fee award of 33 1/3% of fund); *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th Cir. 2003) (affirming fee award of 33% of fund); *Vedachalam v. Tata Consultancy Servs., Ltd.*, No. C 06-0963 CW, 2013 U.S. Dist. LEXIS 100796 (N.D. Cal. July 18, 2013) (collecting cases awarding 30% or more); *Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338, at *18-20 (C.D. Cal. June 17, 2013) (approving fee award of 30% of fund); *Milburn v. PetSmart, Inc.*, No. 1:18-cv-00535-DAD-SKO, 2019 U.S. Dist. LEXIS 187530, at *29 (E.D. Cal. Oct. 29, 2019) (awarding 33.3% of fund).

Here, Class Counsel requests a benchmark fee award of 25% of the Common Fund. Given the applicable factors, this request is reasonable.

**1. Plaintiffs' Counsel Achieved an Excellent Result for the Class**

In determining the reasonableness of a fee request, the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), *superseded on other grounds by statute*, Prison Litigation Reform Act, 42 U.S.C. § 1997e, *as recognized in Whitehead v. Colvin*, No. C15-5143 RSM, 2016 U.S. Dist. LEXIS 51085, at *5 (W.D. Wash. Apr. 14, 2016). *See also*

*Bluetooth*, 654 F.3d at 942 (same); *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1005 (2013) (same); *Feminist Women's Health Ctr. v. Blythe*, 32 Cal. App. 4th 1641, 1674 n.8 (1995) (same).

The results achieved through the Settlement are exceptional and alone justify the requested fee award. After years of contentious litigation involving class certification in two courts, summary judgment, motions to strike expert evidence, substantial party and third-party discovery, Rule 26 reports and motion-related declarations from 14 designated experts, and seven formal mediation sessions with three different mediators and numerous additional mediated and non-mediated negotiations, Plaintiffs' Counsel obtained a record setting settlement. The $50 million all-cash Settlement here is the largest achieved in a food or supplement false advertising case. *See* Blood Preliminary Approval Decl., ¶¶ 70, 76-78. This Settlement far exceeds other class action settlements of this type of case and sets a new high bar for false advertising settlements. *Id*.; ECF No. 221 at 12-15 (detailing how this Settlement compares to settlements in similar false advertising class actions).

The Settlement provides Class Members with prompt cash refunds that will likely equal or exceed the price claimants paid for the products while avoiding the risks and substantial delay of trial and subsequent appeals. The Class Notice Program was also excellent, and far exceeds the notice efforts often utilized in this type of lawsuit. As a result of Plaintiffs' Counsel's efforts to obtain sales information from third-party retailers, approximately 4.6 million Class Members received direct notice by email or mail. Class Notice also was widely disseminated through print publications and a multi-pronged online advertising campaign involving targeted search engine and social media advertising. Azari Supplemental Decl., ¶¶ 22, 24-45.

Given the outstanding results achieved by this Settlement, a benchmark fee award is more than justified.

### 2. Plaintiffs' Counsel Assumed Significant Risks in This Complex Litigation

The risk, expense, and complexity of the Action also supports the reasonableness of the fee award.

Plaintiffs' risks of litigating a class trial and keeping a favorable judgment are real and substantial. Settlement is "preferable to lengthy and expensive litigation with uncertain results." 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 13:44 (5th ed. 2015).

**a. Risks of Establishing Liability at a Class Trial**

Results from three class action false advertising trials illustrate the risks for Plaintiffs at trial here. Each involved false advertising allegations of products advertised as providing health benefits and ended in either a verdict for the defendant or a hung jury. Each appeared to present very compelling facts.

In *Allen v. Hyland's, Inc.*, the plaintiff lost a 13-day class trial involving homeopathic products where the defendant advertised the products as providing specific benefits that no homeopathic product could provide.[4] *Allen* was a nationwide class with damages for refunds of $255 million. The claims involved similar allegations as here—that the products were false and misleading because they are incapable of providing the advertised health benefits. *See Allen*, No. 2:12-cv-01150-DMG (MANx), 2021 U.S. Dist. LEXIS 34695, at *3 (C.D. Cal. Feb. 23, 2021). The trial court also followed the jury's finding in ruling against plaintiff on the equitable claims for restitution and injunctive relief. *See id.*

In *Farar v. Bayer AG*, plaintiffs alleged Bayer's One-A-Day products contained false and misleading heart health, immunity, and energy claims in violation of consumer protection statutes from California, Florida, and New York. *See Farar*, No. 3:14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729, at *3 (N.D. Cal. Nov. 15, 2017). Plaintiffs defeated a motion to dismiss and summary judgment, but the four-year litigation ended in a jury verdict for Bayer. *Farar*, ECF No. 327 (Judgment). Preceding the loss at trial, the plaintiffs had successfully argued a full refund damages model, which exposed Bayer to a $4 billion verdict. Judge Orrick held:

> Plaintiffs' theory of full restitution is supported not only by their individual allegations, but also ample evidence in the record. Defendants' own research and marketing strategy documents confirm the effectiveness of their marketed health claims, and lend credence to plaintiffs' assertions that they purchased the One A Day

---

[4] Homeopathy purports to be an alternative medical practice that was developed in the late 1700s based on a principle that "the more diluted the substance, the more potent it is." https://www.fda.gov/drugs/information-drug-class/homeopathic-products.

> products for their touted health claims. Moreover, plaintiffs present expert testimony from Dr. Edward R. Blonz supporting their assertion that there is no measurable benefit for the typical American from taking defendants' Products, as well as that the evidence does not support the Products' claims regarding heart health, immunity, or physical energy.

*Farar*, 2017 U.S. Dist. LEXIS 193729, at *30. Despite Judge Orrick's assessment of the strength of plaintiffs' case, the jury found for defendant.

*c* (N.D. Cal.) was a false advertising case involving Prevagen, a dietary supplement purported to improve brain function. The trial took place in January of last year in the Northern District and resulted in a hung jury. This trial highlights the unpredictability of a jury asked to weigh complex scientific evidence and the hurdles presented by the unanimous jury verdict requirement in federal court. Prevagen is a falsely advertised product. Plaintiff presented an expert who detailed the biological implausibility of Prevagen's active ingredient. The expert presented what seemed to be convincing evidence—Prevagen is incapable of passing the blood-brain barrier, and therefore could do nothing. The jury, however, was not convinced.

*Racies* also demonstrates the risk of decertification. The California class was decertified after trial because the named plaintiff testified that he relied on an "Improves Memory" claim, when in fact he purchased a product labeled "Brain Cell Protection." *Racies*, No. 15-cv-00292-HSG, 2020 U.S. Dist. LEXIS 78156, at *11 (N.D. Cal. May 4, 2020). The Court held the named plaintiff was not typical, and the class failed to satisfy the predominance requirement. *Id.* at *15.

Here, in addition to aggressive litigation, Defendant's experts were also formidable and presented unique challenges for Plaintiffs. For instance, one of Defendant's experts was the first scientist to publish on putative molecular and cellular impact of glucosamine, and another is a well-respected scientist who has also published pre-clinical research on ingredients at issue.

**b. Other Potential Risks of Continued Litigation**

The Supreme Court and the Ninth Circuit, which are increasingly favoring dismissal of cases on procedural grounds over determinations on the merits, also present significant uncertainty and risk. As noted by the Court during the preliminary approval hearing, there is a risk that Plaintiffs' claims could be found preempted before or after trial on appeal. Litigation over the preemptive effect of the Dietary Supplement Health and Education Act of 1994 ("DSHEA") is particularly

active in the Ninth Circuit. *Compare Greenberg v. Target Corp*., 985 F.3d 650 (9th Cir. 2021) (finding preemption) *with Kroessler v. CVS Health Corp.*, 977 F.3d 803 (9th Cir. 2020) (no preemption). There are at least two dietary supplement preemption cases currently pending in the Ninth Circuit: (1) *Seegert v. Rexall Sundown Inc.*, No. 20-55486 (9th Cir.), which involves an appeal of a summary judgment order finding DSHEA preempted a false advertising claim involving a glucosamine joint health supplement; and (2) *Korolshteyn v. Costco Wholesale Corp.*, No. 19-55739 (9th Cir.) which is another dietary supplement false advertising involving DSHEA preemption.

There is also a risk of decertification. On April 6, 2021, the Ninth Circuit vacated a class certification order and held "the number of uninjured class members must be de minimis" in order to maintain class status. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 793 n.12 (9th Cir. 2021). Throughout this litigation Defendant has maintained that customer satisfaction with Move Free Advanced is high. While the Ninth Circuit has decided to rehear this matter *en banc*, the opinion illustrates the rapid changes in class certification jurisprudence in the Ninth Circuit.

Finally, there is uncertainty about which claims can be decided by a federal court. The recent Ninth Circuit decision in *Sonner v. Premier Nutrition Corp*., 971 F.3d 834 (9th Cir. 2020), a case involving a glucosamine supplement, held for the first time that federal courts are powerless to award state statutory remedies if federal courts could not historically award the type of relief, regardless of the state statute. *Id*. at 839 (holding that plaintiff must satisfy this "threshold jurisdictional question"). Some federal district courts already have dismissed claims for restitution under the UCL and CLRA. *See Elizabeth M. Byrnes, Inc. v. Fountainhead Commercial Capital, LLC*, No. CV 20-04149 DDP (RAOx), 2021 U.S. Dist. LEXIS 149146, at *9 (C.D. Cal. Aug. 6, 2021) ("where Plaintiff makes no such allegation [that she lacks an adequate remedy at law], district courts appear to have uniformly dismissed equitable claims under *Sonner*"); *but see Haas v. Travelex Ins. Servs.*, No. 2:20-cv-06171-ODW (PLAx), 2021 U.S. Dist. LEXIS 157178, at *7-8 (C.D. Cal. Aug. 19, 2021) (denying motion to dismiss UCL claim under *Sonner* because plaintiff "has sufficiently pleaded an inadequate remedy"); *Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269, at *46-49 (N.D. Cal. Mar. 29, 2021) (notwithstanding *Sonner*,

plaintiff could pursue equitable remedies under the UCL where such claims were "rooted in a different theory" of liability than her claims for damages).

Meanwhile, Plaintiffs' Counsel incurred substantial risk in litigating this Action. Class Counsel passed on other employment opportunities in order to devote the time and resources necessary to pursue this litigation and paid out-of-pocket $612,744.39. *See* Blood Fee Motion Decl., ¶¶ 6, 26.[5] The time and expense Plaintiffs needed to devote to successfully litigate this Action was substantial. *Id.*, ¶¶ 28-29. Throughout this time, there was no assurance of success or compensation. *See In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *70 (C.D. Cal. July 28, 2014) (that litigation risks "posed a serious risk to class counsel that it would not have its expenses reimbursed" weighed in favor of a requested fee award). The requested fee award is very reasonable considering the substantial risks incurred.

**3. Counsel Provided High-Quality Work**

Class Counsel are experienced in complex class litigation and have substantial experience prosecuting consumer class actions involving falsely advertised consumer products. Blood Preliminary Approval Decl., ¶¶ 38-40 and Ex. A thereto. Class Counsel have a thorough understanding of the issues presented by this type of case and through their skill and reputation, were able to obtain a settlement that provides everything the Class could reasonably hope to obtain in this Action.

Litigating these actions was not easy. Defendant hired three highly capable and aggressive law firms to represent it. It is a large well-capitalized company with significant resources to continue litigation. In fact, at the time the Settlement was reached the Parties were in the middle of taking fourteen expert depositions. Like Plaintiffs, Defendant retained and provided reports from outside experts on topics of science, marketing strategy, consumer surveys, statistics, and damages.

Plaintiffs' Counsel successfully persevered through class certification in both this court and the Northern District of Illinois, a petition for permissive appeal, summary judgment, and extensive

[5] "Blood Fee Motion Decl." refers to the concurrently filed Declaration of Timothy G. Blood in Support of Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives.

party and non-party discovery, including depositions of several Class Representatives, current and former employees of Defendant, outside experts, and third parties. Plaintiffs' Counsel retained experts who are highly qualified and among the most preeminent authorities in their respective fields. These experts were each heavily involved: one provided a systematic review of over 230 peer-reviewed publications, another conducted gold standard studies on the efficacy of the Move Free Advanced products themselves, statistical reviews of published and raw study data were performed, consumer surveys were fielded, and marketing strategy was scrutinized. In addition to issuing subpoenas to 18 third parties involved in various aspects of the marketing, sales and science behind MFA, Class Counsel also contacted peer-review medical journals and their associated scientists to further investigate key scientific studies. As a result, they obtained retractions and review of study publications.

The skill and tenacity of Plaintiffs' Counsel was put to the test throughout this litigation, but it resulted in an exceptional Settlement for the Class and justifies the requested attorneys' fee award.

**4. Plaintiffs' Counsel Took the Case on a Contingency Basis**

"[W]hen counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015)." "It is an established practice in the private legal [world] to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Thus, an attorney whose compensation is dependent on success – who takes a significant risk of no compensation – may receive a fee that "far exceed[s] the market value of the services if rendered on a non-contingent basis." *Id.*; *see also Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013) (same); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001) (discussing and approving "[t]he economic rationale for fee enhancement in contingency cases"). Plaintiffs' Counsel undertook the litigation solely on a contingent basis, with no guarantee of recovery. *See* Blood Fee Motion Decl., ¶ 6. Despite such a challenge, and through protracted litigation lasting several years, Plaintiffs' Counsel were able to demonstrate to Reckitt Benckiser that it faced significant exposure such that it entered into a superb settlement agreement.

**5. The Requested Fee Award Is Equivalent to Awards in Similar Cases**

As discussed above, many, if not most, fee awards in class settlements of common fund cases in this Circuit *exceed* the 25% benchmark. The same holds true for fee awards in common fund settlements of consumer fraud actions. *See*, *e.g.*, *Johnson*, 2013 U.S. Dist. LEXIS 90338, at *18-20 (awarding 30% of an $8.5 million common fund in an action about the health benefit labeling of probiotic yogurt); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) (awarding 27% of a $50 million common fund in an action challenging deceptive advertising of "on sale" pricing of retail products). These similar cases further support Plaintiffs' Counsel's request.

**6. Just One Class Member Has Objected to the Requested Fees**

Plaintiffs' intention to request attorneys' fees (and the amount) was provided to each Class Member in the Court-approved Class Notice, including in the forms of Class Notice directly emailed and mailed to approximately 4.6 million Class Members, and on the Settlement website. *See* Azari Supplemental Decl., ¶¶ 21-22, 24, 26, 29. As of the filing of this brief, just one Class Member has objected to the attorneys' fees sought. *See* ECF No. 228.[6] The last day to object is October 14, 2021. "[T]he existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Bellinghausen*, 306 F.R.D. at 261. Here, despite millions of Class Members being directly notified that Class Counsel would seek fees of 25% of the $50 million Common Fund amount, just one Class Member has objected to the requested attorneys' fees.

On August 26, 2021, Jeffrey Mirkin submitted a letter "voluntarily excusing" himself from the lawsuit, and also objecting. Mr. Mirkin generally asserts the product works for him. Rather than constitute a valid objection, it highlights the risks Plaintiffs face in continuing the litigation.

Mr. Mirkin explains his objection to attorney's fees as follows: there is "something wrong

---

[6] One other objection has been submitted to date. Cynthia Peterson submitted a general objection that Defendant should not be sued because it did not falsely advertise. *See* ECF No. 229. This type of objection is meritless. *See Glass v. UBS Fin. Servs.*, No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476, at *23-24 (N.D. Cal. Jan. 26, 2007) (objections "challeng[ing] the filing of the lawsuit, and not the fairness of either the settlement as a whole or any particular provision thereof … do not support rejection of the settlement"); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 249 (E.D.N.Y. 2010) (objections to class actions in general or that class members should have known better "are irrelevant to this Court's consideration of the fairness, reasonableness, and adequacy of the Settlement under Rule 23").

with th[e] picture" when Class Members "are entitled to $22 per bottle up to a maximum of $66," while "Class Representatives are awarded $500 and $7500" and "the attorneys for the plaintiffs are awarded 25% of the settlement fund ($12,500,000), plus reimbursement costs up to $750,000." Class actions are designed to allow many consumers who have suffered small amounts of loss to pursue meritorious clams where individual litigation is not economically viable. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

Mr. Mirkin also is mistaken about the number of purchases Class Members can claim under the Settlement. Class Members are entitled to refunds for up to three bottles without any proof of purchase and an uncapped number of refunds with proof of purchase. SA, § IV.3.c. Over 27,500 Class Members have already submitted claims for more than three bottles. Azari Suppl. Decl., ¶ 51. The cap of three bottles without proof of purchase sensibly controls for unsubstantiated claims that would deplete the fund, especially because the average number of purchases per Class Member is 2.6. Blood Preliminary Approval Decl., ¶¶ 44, 72. This approach is well-accepted. *See also Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2020 U.S. Dist. LEXIS 74801, at *25-26 (N.D. Cal. Feb. 5, 2020) (finding it equitable to the class to distribute individual awards based on whether the class member submits sufficient proof of purchase); *Carlotti v. ASUS Comput. Int'l*, No. 18-cv-03369-DMR, 2019 U.S. Dist. LEXIS 201564, at *38-39 (N.D. Cal. Nov. 19, 2019) (same); *Yaeger v. Subaru of Am. Inc.*, No. 1:14-cv-4490 (JBS-KMW), 2016 U.S. Dist. LEXIS 117193, at *41 (D.N.J. Aug. 31, 2016) (a settlement's proof of purchase requirement was "reasonable to prevent fraudulent claims"); *In re Groupon, Inc.*, No. 11md2238 DMS (RBB), 2012 U.S. Dist. LEXIS 185750, at *23 (S.D. Cal. Sept. 28, 2012) (proof of purchase requirement "serves to ensure that money is fairly distributed for valid claims"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-cv-65000, 2016 U.S. Dist. LEXIS 130467, at *43-44 (N.D. Ohio Sept. 23, 2016) (same). Mr. Mirkin is also mistaken that the requested fee award is "over half"

the Settlement amount. Class Counsel seek only the 25% benchmark amount.

**B. A Lodestar Cross-Check Confirms the Fee Request is Reasonable**

Although not required in a common fund settlement, a lodestar cross-check further demonstrates the reasonableness of the requested fee award. *In re Google*, 869 F.3d at 748 ("Although not required to do so" the district court performed a lodestar cross-check); *Farrell*, 827 Fed. Appx. at 630 (Affirming, over objection, district court "refusing to conduct a lodestar crosscheck;" "This Court has consistently refused to adopt a crosscheck requirement, and we do so once more."); *Laffitte*, 1 Cal. 5th at 506 (trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee").

"The lodestar calculation begins with the multiplication of the number of hours reasonable expended by a reasonable hourly rate." *Hyundai*, 926 F.3d at 570. However, "it is well established that the lodestar cross-check calculation need entail neither mathematical precision nor bean counting … courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Bellinghausen*, 306 F.R.D. at 264; *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 U.S. Dist. LEXIS 39115, at *733 n.5 (N.D. Cal. Mar. 17, 2017) (same); *In re Capacitors*, 2018 U.S. Dist. LEXIS 169764, at *51-52 (same).

Lodestar "[m]ultipliers can range from 2 to 4, or even higher." *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001); *see also Steiner v. Am. Broad. Co., Inc.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Vizcaino*, 290 F.3d at 1051 (multiplier of 3.65); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 Fed. Appx. 563, 565 n.3 (9th Cir. 2021) (multiplier of 3.8); *Buckingham*, 2017 U.S. Dist. LEXIS 107243, at *13-14 (multiplier of 5.31); *Buccellato v. AT&T Operations, Inc.*, No. C10-00463-LHK, 2011 U.S. Dist. LEXIS 85699, at *4-5 (N.D. Cal. June 30, 2011) (collecting cases and approving multiplier of 4.3); *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, at *43 (S.D. Cal. Sept. 28, 2017) ("The one-third fee Class Counsel seeks reflects a multiplier of 2.89 on the lodestar which is reasonable for a complex class action."); *Spann*, 211 F. Supp. 3d at 1265 (Cross-checking a 27% percentage award

on a $50 million common fund: "Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers.").

"[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing* case; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider." *Ketchum*, 24 Cal. 4th at 1138 (emphasis in original). Thus, considering similar factors in weighing the reasonableness of a percentage of recovery fee award, the court may "adjust the resulting [lodestar] figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Hyundai*, 926 F.3d at 570; *see also Mirkarimi v. Nev. Prop. 1, LLC,* No. 12cv2160 BTM (DHB), 2016 U.S. Dist. LEXIS 25528, at *14 (S.D. Cal. Feb. 29, 2016) ("The factors considered in multiplying the lodestar figure are similar to the factors [considered with] the percentage-of-recovery method."). However, the court's discretion is not limited to specific factors and so when determining the multiplier, trial courts should consider all factors relevant to a given case. *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 40 (2000). The purpose of using the lodestar/multiplier method is to mirror the legal marketplace: counsel will not handle cases on straight hourly fees that are payable only if they win, so an enhancement helps determine a fee that is commensurate with what attorneys could expect to be compensated for similar service in these circumstances. *San Bernardino Valley Audubon Soc'y v. San Bernardino*, 155 Cal. App. 3d 738, 755 (1984) (award must be large enough "to entice competent counsel to undertake difficult public interest cases"); *Lealao*, 82 Cal. App. 4th at 50 (adjusted lodestar should not be significantly different from the percentage fee freely negotiated in comparable litigation).

Here, Plaintiffs' Counsel's lodestar is $5,497,241.75 based on 8,278.65 hours of work as of September 13, 2021. *See* Blood Fee Motion Decl., ¶¶ 21, 29; Carpenter Decl., ¶ 20; Peters Decl., ¶ 11; Barnow Decl., ¶ 9. Accordingly, the requested fee award represents a multiplier of 2.27. Considering the results obtained, the risks and difficulty of trial, and the future work on the final approval reply papers and hearing, settlement administration, and potential appeals still to be performed, the requested fee is fair and reasonable.

BLOOD HURST & O' REARDON, LLP

**1. The Hourly Rates Are Reasonable**

Reasonable hourly rates are determined by "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Typically, the forum where the district court sits is considered the relevant community. *Shirrod v. Dir., OWCP*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citing *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1053 (9th Cir. 2009)). Thus, Plaintiffs' Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar litigation. *Blum*, 465 U.S. at 895 n.11; *Ketchum*, 24 Cal. 4th at 1133; *see also Serrano v. Unruh*, 32 Cal. 3d 621, 640 n.31 (1982) ("The formula by which reasonable market value is reached is variously phrased" as "comparable salaries earned by private attorneys with similar experience and expertise in equivalent litigation," and the "hourly amount to which attorneys of like skill in the area would typically be entitled.").[7]

Plaintiffs' Counsel's lodestar is calculated using rates that have been accepted in numerous other class action cases. *See, e.g.*, Blood Fee Motion Decl., ¶¶ 19-20; Carpenter Decl., ¶ 19; Peters Decl., ¶ 12; Barnow Decl., ¶ 10; *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171 FMO (FFMx), 2017 U.S. Dist. LEXIS 77576, at *42-43 (C.D. Cal. May 21, 2017) (approving BHO and Barnow Law hourly rates as reasonable given "the prevailing rates in the community for lawyers of comparable skill, experience, and reputation"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087 BTM(KSC), 2014 U.S. Dist. LEXIS 162106, at *192 (S.D. Cal. Nov. 18, 2014) (approving hourly rates of attorneys and paralegals at BHO as "typical rates for attorneys of comparable experience"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (approving BHO's hourly rates: "based on the Court's familiarity with the rates charged by other firms in the San Diego area, the Court finds the rates charged by the attorneys and paralegals in this action reasonable"); *Dennis v. Kellogg Co.*, No. 09-CV-1786-L (WMc), 2013 U.S. Dist. LEXIS 163118,

---

[7] An attorney's actual billing rate for similar work is presumptively appropriate. *See Wershba*, 91 Cal. App. 4th at 254-55; *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

at *22-23 (S.D. Cal. Nov. 14, 2013) (approving hourly rates of BHO as "fall[ing] within typical rates for attorneys of comparable experience"); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at *19-21 and n.3 (approving hourly rates of BHO, stating "[t]he Court has considered class counsel's rates and finds they are reasonable because of the experience of the attorneys and prevailing market rates").

Plaintiffs' Counsel's rates also compare with rates approved by other trial courts in class action litigation and by what attorneys of comparable skill charge in this District. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *38 (N.D. Cal. Dec. 17, 2018) (approving rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen*, 2017 U.S. Dist. LEXIS 39115, at *732 ($275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 601 (N.D. Cal. 2020) ($830 to $1,275 for partners and $425 to $695 for associates); *Carlotti v. Asus Comput. Int'l*, No. 18-cv-03369-DMR, 2020 U.S. Dist. LEXIS 108917, at *15 (N.D. Cal. June 22, 2020) ($950 and $1,025 for partners); *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440, at *22 (N.D. Cal. Feb. 21, 2020) ($615-$1,000 for partners and $275-$575 for associates); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-5923 WHA, 2015 U.S. Dist. LEXIS 67298, at *15 (N.D. Cal. May 21, 2015) ($475-$975 for partners, $300-$490 for associates, $150-$430 for paralegals, and $250-$340 for litigation support staff); *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 U.S. Dist. LEXIS 156720, at *20 (N.D. Cal. Nov. 11, 2016) (up to $1,200 for senior attorneys and $290 for paralegals); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118052, at *33-34 (N.D. Cal. Sept. 2, 2015) ($490-$975 for partners, $310-$800 for non-partner attorneys, and $190-$430 for paralegals, law clerks, and litigation support staff); Blood Fee Motion Decl., ¶ 20 and Ex. 2 (the 2015 National Law Journal Billing Survey provides the following California rates: $200-$1,080 for partners; $300-$950 for associates; $175-$595 for Of Counsel attorneys; and $25-$325 for paralegals). Plaintiffs' Counsel's rates also compare favorably to reported rates charged by the law firms Defendant hired to defend it in this action. *Id.*, ¶ 20 and Ex. 3 (the 2014 National Journal Billing Survey—the last year individual law firm rates were published—reports rates for

Latham & Watkins; Manatt, Phelps & Phillips; and Perkins Coie); *see also Gutierrez,* 2015 U.S. Dist. LEXIS 67298, at *14 (noting hourly rates were "also commensurate with defense counsel's rates"). Finally, Plaintiffs' Counsel have submitted sworn declarations attesting to their hourly rates and total hours devoted to the case, their experience, and describing their efforts to prosecute this litigation.

**2. The Hours Expended Are Reasonable**

The number of hours spent by Plaintiffs' Counsel is reasonable given the efforts to ultimately obtain this resolution. This action has lasted over four years and involved hard-fought litigation including substantial motion practice, party and non-party discovery, expert reports, preparation for trial, and protracted settlement negotiations. *See* § II.A above; Blood Preliminary Approval Decl., ¶¶ 5-36; ECF No. 203 (Motion for Preliminary Approval) at 2-8; Blood Fee Motion Decl., ¶¶ 7-16. Thus, the 8,278.65 total hours spent by Plaintiffs' Counsel is reasonable. *See* Blood Fee Motion Decl., ¶¶ 7-16; Carpenter Decl., ¶¶ 4, 11, 20; Peters Decl., ¶¶ 9, 11; Barnow Decl., ¶¶ 6, 9.[8] Moreover, counsel's work is not yet done. Class Counsel still need to: (1) prepare for and attend the Final Approval Hearing, including the research and drafting of the motion for final approval and any response to objectors and replies in support of approval or this motion; (2) continue overseeing the claims administration process, including respond to the daily inquiries from Class Members, address any claim review issues and monitor payments to the Class Members; (3) handle any appeals; (4) disburse any service awards and Plaintiffs' Counsel's fees and expenses; (5) oversee

[8] Counsel need only submit summaries of their hours incurred; submission of billing records is not required. *Wershba*, 91 Cal. App. 4th at 254-55; *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 64 (2008) ("timesheets are not required of class counsel to support fee awards in class action cases."); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (the court may rely on summaries of the total number of hours spent by counsel); *Johnson*, 2013 U.S. Dist. LEXIS 90338, at *20-21 n.3 (citing *Lobatz* and approving class counsel's hours without detailed billing records, stating "the hours spent by counsel do not appear to be unreasonable in light of the extensive litigation … and other time-intensive tasks"); *Hemphill v. S.D. Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 623-24 (S.D. Cal. 2004) (declining review of detailed time records where no evidence of collusion); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 284 (3d Cir. 2009) (finding district court's reliance on time summaries of counsel proper). This is particularly true when the lodestar method is consistent with the percentage method. *See Laffitte*, 1 Cal. 5th at 505; *Spann*, 211 F. Supp. 3d at 1265.

the *cy pres* administration, if any Settlement funds remain; and (6) prepare and file a post-distribution accounting to this Court. Often, responding to objectors involves obtaining written discovery, deposition testimony, or both from the objectors. And if there are appeals, hundreds of thousands of dollars of additional attorney time may be incurred in post-judgment motions (such as appeal bond requests) and in defending the Settlement on appeal to the Ninth Circuit. None of this additional time will be compensated. Accordingly, the requested fee is justified considering the contingent nature of this action, the excellent results achieved, the work performed to date, and the significant amount of additional work Class Counsel will have to undertake in the future.

**C. Plaintiffs' Expenses Are Reasonable and Compensable**

The Ninth Circuit and California state courts allow recovery of litigation costs in the context of class action settlements. *See Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003); *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977); *Rider v. San Diego*, 11 Cal. App. 4th 1410, 1423 n.6 (1992); *see also Newberg on Class Actions* § 16:10. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Plaintiffs' Counsel submitted declarations attesting to the expenses incurred in this litigation—in the aggregate, $658,050.95 was invested during the more than four years this litigation has been pending.[9] This amount is less than the $750,000 that Plaintiffs' Counsel could have sought under the terms of the Settlement. SA, § IX.B. Counsel incurred these costs for, *inter alia*, expert fees, mediation fees, electronic discovery database support, issuing notice of pendency to the class, filing and service of process expenses, travel, computerized research, photocopies, postage, telephone charges, trial demonstratives, and focus groups. As stated in the concurrently filed declarations of Plaintiffs' Counsel, these expenses were reasonably and necessarily incurred and are the sort that would typically be billed to paying clients in the marketplace. *See In re Hydroxycut*, 2014 U.S. Dist. LEXIS 162106, at *193 (awarding reimbursement for "filing fees, photocopies,

---

[9] *See* Blood Fee Motion Decl., ¶¶ 25-27; Carpenter Decl., ¶ 24; Peters Decl., ¶ 16; Barnow Decl., ¶ 12.

postage, telephone charges, computer research, mediation fees, and travel" because they are "the types of expenses routinely charged to paying clients"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *72-73 (N.D. Cal. Feb. 11, 2016) (awarding "reimbursement of reasonable litigation expenses from [the created common] fund" and noting that "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in [] class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation"). Accordingly, Class Counsel's application for reimbursement of $658,050.95 in expenses should be approved.

**D. The Class Representative Service Awards Should Be Approved**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing *Newberg on Class Actions* § 11:38 (4th ed. 2008)); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1811 n.7 (2018). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59; *see also Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 U.S. Dist. LEXIS 145214, at *42 (N.D. Cal. June 26, 2017) ("Service awards for class representatives are provided to encourage individuals to undertake the responsibilities of representing the class and to recognize the time and effort spent on the case."). Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Here, Class Counsel respectfully request that the Court approve service awards of $7,500 to

Plaintiffs Yamagata, Pelardis, and Carrigan, and $500 to Plaintiffs Coletti, Maher, Marshall, Rawls, Steele, and Tishman in recognition of their contributions toward the successful prosecution of this litigation. The differing amounts reflect the differing amount of work performed. Plaintiffs have each devoted substantial time and effort to this Action, including checking for and providing requested documents, participating in periodic telephone conferences and exchanging correspondence with Plaintiffs' Counsel, and reviewing and approving pleadings, including the complaint and the Settlement Agreement. Additionally, Plaintiffs Yamagata, Pelardis, and Carrigan were each deposed in-person, have provided written responses to discovery requests, and have been involved in their actions from the beginning. Plaintiffs were each prepared for and committed to testifying at trial. *See* Blood Fee Motion Decl., Ex. 1 (compendium of declarations from each Class Representative in support of application for service awards); *see also* Blood Preliminary Approval Decl., ¶ 55.

The requested service awards also fall squarely in line with amounts awarded in comparable cases. *See, e.g.*, *China Agritech*, 138 S. Ct. at 1811 n.7 (class representative may obtain incentive award of up to $25,000); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (affirming $5,000 award); *Galeener v. Source Refrigeration & HVAC, Inc.*, No. 3:13-cv-04960-VC, 2015 U.S. Dist. LEXIS 193096, at *7-8 (N.D. Cal. Aug. 21, 2015) (collecting cases and holding that service awards of $27,000, $25,000, $15,000, and $2,000 were "fair and reasonable"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *47 (N.D. Cal. Apr. 22, 2010) (compiling cases and holding service awards of $20,000 were "well justified"); *Glass*, 2007 U.S. Dist. LEXIS 8476, at *52 (approving $25,000 awards to each of four representatives whose efforts were supported by class counsel's declaration); *In re Animation Workers*, 2016 U.S. Dist. LEXIS 156720, at *29 ($10,000 service awards to plaintiffs who were deposed, responded to discovery, and reviewed pleadings); *In re NCAA*, 2017 U.S. Dist. LEXIS 201108, at *26 (approving $20,000 awards to class representatives who had their depositions taken, searched for and produced documents, and conferred with counsel throughout litigation spanning several years). Accordingly, the requested Class Representative service awards should be approved.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this Motion.

Respectfully submitted,

Dated: September 14, 2021

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By: *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

*Class Counsel*

ALTAIR LAW
CRAIG M. PETERS (184018)
465 California Street, 5th Floor
San Francisco, CA 94104-3313
Tel: 415/988-9828
415/988-9815 (fax)
c.peters@altair.us

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 14, 2021.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com