BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Case No. 3:17-cv-03529-VC<br><br>**DECLARATION OF TODD D. CARPENTER IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**<br><br>**CLASS ACTION**<br><br>Hrg Date:   October 28, 2021<br>Time:         2:00 p.m.<br><br>District Judge Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Complaint Filed:   June 19, 2017<br><br>**JURY TRIAL DEMANDED** |

00182132

Case No. 3:17-cv-03529-VC

I, TODD D. CARPENTER, declare:

1.      I am an attorney duly licensed to practice before the courts of the State of California and this Court. I am a shareholder in the law firm Carlson Lynch, LLP, one of Plaintiffs' Counsel in this litigation.[1] I have personal knowledge of the matters stated in this declaration except those stated on information and belief, and as to those, I believe them to be true. If called upon, I could and would competently testify to them.

2.      I submit this declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives.

3.      The declaration of Class Counsel, Timothy G. Blood, submitted in connection with the motion for preliminary approval accurately describes the lengthy history of this hard-fought litigation. *See* ECF No. 221-1 (the "Blood Declaration").

4.      Carlson Lynch has devoted the time and resources of its attorneys and staff to ensure the vigorous prosecution of the claims brought on behalf of the putative class in this litigation. Along with my partner Ed Kilpela, I was the attorney from Carlson Lynch primarily tasked with prosecuting this litigation. Throughout this litigation, I worked closely with Mr. Blood and Thomas O'Reardon to manage litigation tasks efficiently and effectively. My firm has worked with Class Counsel on many cases, including as Court-appointed co-lead class counsel with Blood Hurst & O'Reardon on numerous successful class action matters. Particularly given our longstanding history working together, my firm successfully coordinated with Class Counsel to efficiently delegate work and avoid duplication or other inefficiencies.

5.      My firm's resume, which includes a description of my background and experience, is attached as Exhibit A.

6.      I have been recognized as a semi-finalist as a "Top Corporate Litigation Attorney," by the San Diego Daily Transcript in 2012, and I have been named a San Diego "Super Lawyer" in 2015, 2016, 2017, 2018, 2019 and 2020.

---

[1]      Unless otherwise defined herein, all capitalized terms have the same meaning as those found in the Settlement Agreement. ECF No. 221-2.

7.      Since 2000, my practice has focused exclusively on consumer class action and complex litigation, representing plaintiff classes in major insurance fraud, unfair business practices, false and deceptive advertising, product liability and anti-trust violations. I have represented plaintiffs in numerous class action proceedings in California and throughout the country, in both state and federal courts. I have represented thousands of purchasers of consumer products, food, food supplements and over-the-counter drugs in state and federal courts throughout the United States in cases arising out of various false advertising claims made by manufacturers and retailers, including: Proctor & Gamble, General Mills, Bayer, Clorox, WD-40, Dean Foods, Botanical Laboratories, Inc., Irwin Naturals, Inc. General Nutrition Corporation and Pharmavite. As a shareholder, I was also counsel of record at my prior firm in the MDL proceeding, *In re: Hydroxycut Marketing and Sales Practices Litigation*, Case No. 09-02087 (S.D. Cal.), wherein my previous firm was designated as co-lead counsel for the class. I was also class counsel for the settlement classes in consumer law cases against Hugo Boss, U.S.A. Inc.: *Travis Benware v. Hugo Boss, U.S.A., Inc.*, Case No. 3:12-cv-01527-L-MDD (S.D. Cal.) and Southwest Airlines (*Lumos v. Southwest Airlines, Co.*, Case No. C-13-1429-CRB (N.D. Cal.)) and *Mocek, Varoz, et al v. AllSaints USA Limited*, Case No. 2016-CH-10056 (Cir. Ct. Cook Cnty. Ch. Div.).

8.      I have represented thousands of consumers against several major retailers arising from violations of the Song-Beverly Credit Card Action section 1747.08 and have achieved excellent results, including, but not limited to a class benefit of a retail gift valued between $40 and $120 in a class action settlement with Gucci America, Inc. I have also represented thousands of consumer debit card holders against major commercial banks, including assuming a leadership role as prosecuting counsel in *In re: Checking Account Overdraft Litigation, Larsen v. Union Bank* and *Dee v. Bank of the West*, MDL No. 2036 (S.D. Fla.). I have filed similar actions against several other banks and credit unions across the country, alleging that each institution manipulated the processing of customer debit card purchases to maximize overdraft fees, including actions against Northwest Savings Bank, (*Toth v. Northwest Savings Bank*, Case No. GD-12-8014 (Ct. Com. Pl. Allegheny Cnty.), Pinnacle National Bank (*John Higgins v. Pinnacle Bank*, Case No. 11-C4858 (Cir. Ct. 12th

1   Jud. Dist.) and Mission Federal Credit Union (*Taylor v. Mission Federal Credit Union*, Case No.

2   37-2012-00092073-CU-BT-CTL (Super. Ct. San Diego Cnty.).

3        9.     I was also appointed class counsel in *Plantier, et al. v. Ramona Municipal Water

4   District*, Case No. 37-2014-00083195-CU-BT-CTL (Super. Ct. San Diego Cnty.), and *Mendoza v.*

5   *The Gar Wood Restaurant, LLP*, Case No. SCV 0034158 (Super. Ct. Placer Cnty.).

6        10.    Carlson Lynch prosecuted this litigation on a contingent fee basis with no guarantee

7   of recovery. My firm, along with co-counsel, incurred 100% of the risk in pursuing the litigation.

8   My firm advanced expenses with the understanding that we would be paid a fee and receive

9   reimbursement for expenses only if successful.

10        11.    The services rendered and work performed by Carlson Lynch covered many aspects

11   of the litigation, including the initial factual investigation of the claims, retaining and

12   communicating with Mr. Yamagata, Mr. Pelardis, and Ms. Carrigan throughout the litigation,

13   drafting the complaint, meeting with Plaintiffs to prepare for their depositions, defending the

14   depositions of Mr. Yamagata, Mr. Pelardis, and Ms. Carrigan, assisting with responses to discovery

15   requests propounded on Mr. Yamagata, Mr. Pelardis, and Ms. Carrigan, as well as supplemental

16   request for information, helping craft litigation strategy with Class Counsel, conducting legal

17   research, reviewing and analyzing documents produced by Reckitt Benckiser and third-parties,

18   taking the depositions of six current and former Reckitt Benckiser employees, including one person

19   designated by Reckitt Benckiser as Fed. R. Civ. P. 30(b)(6) representative, communicating with

20   outside experts, corresponding with opposing counsel, participating in mediation sessions and

21   settlement-related efforts, and reviewing and approving settlement documents. I believe the time

22   expended by my firm in this litigation was reasonable and necessary considering the amount of work

23   accomplished.

24        12.    The following information regarding my firm's time and out-of-pocket expenses is

25   taken from time and expense records prepared and maintained by the firm in the ordinary course of

26   business. The time records were prepared daily or shortly thereafter by each attorney or paralegal

27   working on the litigation. The expense records are prepared from receipts, expense vouchers, check

28   records and other documents, and are an accurate record of the expenses. I reviewed the printouts

DECLARATION OF TODD D. CARPENTER ISO MOTION FOR ATTORNEYS' FEES

and reviewed the backup documentation where necessary. The purpose of these reviews was to confirm the accuracy of the entries on the printouts as well as the reasonableness of the time and expenses committed to the litigation.

13.     Only time and expenses incurred to the benefit of the certified Class and that advanced the claims resolved in the settlement have been included in the time presented and costs submitted. Billers were instructed to be efficient with their time and to record only the time and expenses that advanced the settled claims. Meetings were held to efficiently delegate work, monitor work, and to avoid duplication or other inefficiencies.  This was a necessity given the large amount of work involved over the years and the need to be efficient with and conserve available resources over this long-fought litigation.

14.     The schedule below provides a summary of the hours expended by timekeepers from my firm who performed work in this litigation. The schedule includes the name of each person who worked on the case, hourly billing rates, the number of hours expended, and the resulting lodestar for each timekeeper.

15.     The lodestar calculation below is based on the firm's current billing rates at the firm's customary hourly rates charged to our fee-paying clients. For attorneys and employees no longer employed by the firm, their customary rates when last employed by the firm are used. We set the billing rates of attorneys and paralegals/law clerks through a process of continual monitoring of prevailing market rates charged by both defense and plaintiffs' law firms, for individuals with similar levels of skill and experience who are doing comparable work as our attorneys and staff. We gather this information from surveys and the review of other fee applications. We set the billing rates for our firms to be consistent with the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications, and experience. Further, based on my knowledge of the class action plaintiff's bar nationwide, the rates charged by my firm are in line with the rates charged by other firms that handle class actions of similar size and complexity. The legal authority cited in the concurrently filed attorneys' fee motion, as well as the billing surveys attached to the declaration of Timothy G. Blood in support of final approval demonstrate that based on the years of experience of each of my firm's attorneys, the hourly rates are reasonable.

16.     I have I have represented plaintiffs in numerous class action proceedings in California and throughout the country, in both state and federal courts. I have represented thousands of purchasers of consumer products, food, food supplements and over-the-counter drugs in state and federal courts throughout the United States in cases arising out of various false advertising claims made by manufacturers and retailers, including: Proctor & Gamble, General Mills, Bayer, Clorox, WD-40, Dean Foods, Botanical Laboratories, Inc., Irwin Naturals, Inc. General Nutrition Corporation and Pharmavite. Recently, I was appointed interim co-lead class counsel in the multidistrict litigation. *In re: Folgers Coffee Marketing*, No. 4:21-cv-02984-BP (W.D. Mo.) at ECF No. 48. I was also class counsel for the Settlement Class in FACTA cases against Hugo Boss, U.S.A. Inc. in the Southern District of California (*Travis Benware v. Hugo Boss, U.S.A., Inc.*, Case No. 3:12-cv-01527-L-MDD (S.D. Cal.)) and Southwest Airlines (*Lumos v. Southwest Airlines, Co.*, Case No. C-13-1429-CRB (N.D. Cal.)), and *Mocek, Varoz, et al v. AllSaints USA Limited*, Case No. 2016-CH-10056 (Cir. Ct. Cook Cnty. Ch. Div.)

17.     I have also represented thousands of consumer credit cardholders against several major retailers arising from violations of the Song-Beverly Credit Card Act, Cal. Civil Code § 1747.08 and have achieved excellent results, including, but not limited to, class benefits valued between $40 and $120 against Gucci America, Inc. I have also represented thousands of consumer debit card holders against major commercial banks, including assuming a leadership role as prosecuting counsel in *In re: Checking Account Overdraft Litigation*, *Larsen v. Union Bank and Dee v. Bank of the West*, MDL No. 2036 (S.D. Fl.). I have filed similar actions against several other banks and credit unions across the country, which allege that each institution manipulated the processing of customer debit card purchases to maximize overdraft fees, including actions against Northwest Savings Bank (*Toth v. Northwest Savings Bank*, Case No. GD-12-8014 (Ct. Com. Pl. Allegheny Cnty.); Pinnacle National Bank (*Higgins v. Pinnacle Bank*, No. 11-C4858 (Cir. Ct. 12th Jud. Dist.); and Mission Federal Credit Union (*Taylor v. Mission Fed. Credit Union*, No. 37-2012-00092073-CU-BT-CTL, (Super. Ct. San Diego Cnty.)). Recently, I served as lead counsel in *Figueroa v. Capital One*, *N.A.*, in which the plaintiff alleged Capital One charged its accountholders illegal balance inquiry fees in connection with the use out-of-network ATMs. That case was settled

on a class-wide basis for a total payment from defendant of $13,000,000. *See Figueroa v. Capital One*, *N.A.*, Case No. 3:18-cv-00692 (S.D. Cal.), ECF No. 93 at 2.

18.     I was also appointed class counsel in *Plantier, et al. v. Ramona Municipal Water Dist.*, No. 37-2014-00083195-CU-BT-CTL (Super. Ct. San Diego Cnty.), a certified class action in which plaintiffs, municipal residents, allege the district's method of calculating sewer services violates a substantive requirement of the California Constitution. Class-wide damages exceed $50,000,000. Plaintiffs also prevailed before the California Supreme Court on the issue of exhaustion of administrative remedies. *Plantier v. Ramona Mun. Water Dist.*, 7 Cal.5th 372, 390 (2019).

19.     My hourly rate of $750.00 per hour is in line with comparable hourly rates charged by other law firms that handle class action litigation in California. My hourly rate has been approved by numerous courts in connection with settlements of consumer class action cases, including in *Rael v. RTW Retailwinds, Inc., et al*, Case No. 37-2019-00003850-CUMC-CTL (Super. Ct. San Diego Cnty.) (Sept. 27, 2019), *Dennis v. Ralph Lauren Corporation, et al.*, Case No. 37-2018-00058462-CU-MC-CTL (Super. Ct. San Diego Cnty.) (July 12, 2019), *Mocek, Varoz, et al v. AllSaints USA Limited*, Case No. 2016-CH-10056 (Cir. Ct. Cook Cnty. Ch. Div.) (April 5, 2019), and *Manner v. Summit Pizza West, LLC*, Case No. 37-2015-5909-CUMC-CTL (Super. Ct. San Diego Cnty.) (2017). My hourly rate is consistent with my level of expertise in consumer class actions. I have extensive experience in class actions: During the course of my career, I have taken and defended over 100 depositions in personal injury, complex and class action cases. I have successfully participated in mediations resulting in more than $100,000,000 in settlements or awards in class action cases. I have drafted, filed, and argued multiple motions in complex consumer class actions, including all forms of discovery, dispositive and certification motions.

20.     The total number of hours spent on this litigation by my firm as of September 10, 2021, was 1,605.40 hours. The total lodestar for attorney and paralegal time is $1,112,088.00.

///

///

///

DECLARATION OF TODD D. CARPENTER ISO MOTION FOR ATTORNEYS' FEES

| Attorney/Paralegal | Year Admitted to Practice | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Todd Carpenter (Partner) | 2004 | 843.20 | $750 | $632,400 |
| Edwin J. Kilpela (Partner) | 2004 | 442.00 | $750 | $331,500 |
| Brittany Casola (Associate) | 2015 | 348.10 | $395 | $137,500 |
| Maggie Robalindo (Paralegal) | | 85.50 | $125 | $10,688 |
| **Totals** | | **1,605.40** | | **$1,112,088.00** |

21.     My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

22.     As detailed below, my firm has incurred a total of $25,537.89 in unreimbursed expenses in connection with the prosecution of this litigation from inception through September 13, 2021. The expenses incurred in  this litigation are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

23.     The costs and expenses for which reimbursement is sought are reasonable in amount and were necessary for the effective and efficient litigation of the case. All of the expenses are of a type that, in my view, would normally be charged to a fee-paying client in the private legal marketplace. My firm has received reimbursement for similar costs and expenses in numerous cases.

24.     My firm's out-of-pocket litigation expenses in the amount of $27,774.25 are summarized below:

| Expense Category | Total |
|---|---|
| Court Reporters/Transcripts | $8,673.85 |
| Computer Research (Westlaw, etc.) | $2,311.00 |
| Reproduction/Duplication/Copies | $662.30 |
| Teleconference Fees | $136.00 |
| Postage/FedEx | $2,012.74 |

| Travel: Air Transportation, Ground Travel, Meals, Lodging, etc. | $6,578.36 |
|---|---|
| Mediation Fees | $7,400.00 |
| **TOTAL** | **$27,774.25** |

25.     The following is additional information regarding these expenses:

(a)     <u>Outside Copying</u>: This amount was paid to Litivate Court Reporting for the copies of exhibits and binders used in FRCP Rule 30(b)(6) and Rule 30(b)(1) depositions.

(b)     <u>Court Reporters / Transcripts</u>: These costs include court reporter and/or videographer fees in connection with four depositions my firm took in this Action.

(c)     <u>Postage / FedEx</u>: These costs relate to postage and FedEx services, including delivery of exhibits for use during depositions.

(d)     <u>Electronic Research</u>: The amount of $2,311.00 was paid to Westlaw for legal research. Westlaw is used to obtain access to legal research, factual databases, and for cite-checking of briefs. The expense amount detailed herein represents the out-of-pocket costs incurred by my firm in connection with use of these services in connection with this litigation. My firm has a flat-rate contract with Westlaw for use of its services. When my firm utilizes Westlaw services, the case name is entered for the specific case being researched. At the end of each billing period in which a service is used, my firm's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contract negotiated by my firm, the Class enjoys substantial savings in comparison with the market-rate for *a la carte* use of online legal research services, which some law firms pass on to their clients.

(e)     <u>Teleconference Fees</u>: These conference call charges were incurred to make or host conference calls with Plaintiffs' Counsel to discuss assignments, strategy, and other matters. At my firm, each conference call is allocated to the relevant case shortly before or after the call occurs, and the conference call charges for each case are entered into our billing system.

(f)     <u>Mediator Fees</u>: My firm paid $7,400.00 to Robert A. Meyer, Esq. (JAMS) for his work as mediator in this matter.

1      (g) <u>Transportation, Hotels and Meals</u>: These costs were in connection with travel

2   to meet with Class Counsel in San Diego concerning this Action, retain the clients in this Action,

3   and defend their in-person depositions in this Action.

4     26. As discussed above, my firm and I have substantial experience serving as class

5   counsel in consumer protection class actions. I believe this record-setting Settlement is fair,

6   reasonable, and adequate and should be approved.

7     I declare under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct. Executed on September 14, 2021, at San Diego, California.

9

10         CARLSON LYNCH, LLP

11         By:   *s/ Todd D. Carpenter*

12           TODD D. CARPENTER

13          1350 Columbia Street, Suite 603
            San Diego, CA 92101

14          Tel: 619/762-1900
            619/756-6991 (fax)

15          tcarpenter@carlsonlynch.com

16          *Plaintiffs' Counsel*

17

18

19

20

21

22

23

24

25

26

27

28

00182132

# Exhibit A



# CARLSON LYNCH

## <u>F<small>IRM</small> S<small>UMMARY</small></u>

With offices in Pittsburgh, San Diego, Los Angeles, Philadelphia, and Chicago, Carlson Lynch is a national firm specializing in complex class and collective actions, and is involved in several high-profile multidistrict litigation proceedings. The attorneys of Carlson Lynch LLP ("Carlson Lynch") have litigated class-action matters involving financial fraud (including securities fraud, derivative actions, and lending fraud), data breach, privacy, consumer fraud, breach of contract, labor and employment, antitrust, and civil rights, in federal and state courts throughout the country. Litigation prosecuted by Carlson Lynch and its attorneys has resulted in substantial monetary recoveries and injunctive benefits on behalf of class members, described in more detail below. In addition, the Carlson Lynch team has generated seminal legal authority in both trial and appellate courts.

Carlson Lynch represents a wide variety of clients, including individual consumers and employees, small businesses, banks and credit unions, non-profits, issue advocacy groups, and governmental entities. Since 2014, Carlson Lynch has been a national leader in payment card data breach litigation, recovering over $100 million for consumers and financial institutions that suffered fraud losses and card reissuance costs in the wake of payment card data compromises at major retailers such as Target, Home Depot, Eddie Bauer, and Wendy's. Carlson Lynch has worked closely with the Independent Community Bankers of America, the Credit Union National Association, and state-level associations and leagues to prosecute these cases. The firm also advocates for and consults with these groups outside of the court system, such as by drafting proposed legislation and hosting educational seminars about data breach litigation and privacy laws

Carlson Lynch was founded in 2004 by Bruce Carlson and Gary Lynch, who started the firm to merge and build upon their collective experiences litigating complex class action matters. In 2015, the firm expanded to the west coast with the addition of its San Diego office, managed by Todd Carpenter. Continuing its growth, in 2019, the firm added an office in Chicago, managed by Katrina Carroll, and its Los Angeles office, managed by Eddie (Jae) K. Kim. In 2020, the firm opened an office in Philadelphia, managed by Edward Ciolko.

In October 2020, *The Legal Intelligencer* named Carlson Lynch "Litigation Department of the Year" for general litigation in Pennsylvania. Carlson Lynch's attorneys are recipients of numerous additional individual awards, as described in more detail in the individual biographies on the firm's website.

**CARLSON LYNCH**

# REPRESENTATIVE CASES

## CONSUMER PROTECTION/PRODUCTS LIABILITY

*In re Robinhood Outage Litig.*, No. 20-cv-1626 (N.D. Cal.). In July 2020, Jamisen Etzel was appointed to the executive committee overseeing consolidated actions brought by consumers who sustained losses when the trading application Robinhood suffered severe service outages in early 2020 during a period of intense market volatility. A consolidated amended complaint was filed in August 2020, and rulings on Robinhood's initial dispositive motion is expected in early 2021.

*Morrow v. Ann Inc.*, 16-cv-3340 (S.D.N.Y.). Carlson Lynch was co-class counsel in a case alleging deceptive pricing practices by a major national retail chain. After plaintiffs overcame a motions to dismiss, the case settled for $6.1 million worth of class benefits. The settlement was approved in April 2018.

*Luca v. Wyndham Hotel Group, LLC*, 2:16-cv-746 (W.D. Pa.). Carlson Lynch was co-lead counsel in a class action against the Wyndham hotel companies for violations of New Jersey consumer protection statutes. Plaintiffs alleged that Wyndham's websites deceptively masked the resort fees charged at certain hotels and forced patrons to agree to illegal terms and conditions. In 2017, plaintiffs defeated a motion to dismiss filed by two of the primary operating subsidiaries. A class settlement worth up to $7.6 million was reached in 2019 and approved later that year.

*Van v. LLR, Inc.*, 3:18-cv-0197 (D. Ak.); 962 F.3d 1160 (9th Cir. 2020). Carlson Lynch attorneys Jamisen Etzel and Kelly Iverson won a significant consumer rights ruling from the United States Court of Appeals for the Ninth Circuit. The action alleged the defendant's overcharged customers over the course of more than a year; however, after notice of the suit but before it was filed, the defendant refunded the entire class – but only the amount overcharged without interest or other statutory damages. The district judge dismissed the action based on lack of subject matter jurisdiction after finding that the consumers' lost time value of money was "too little" to be a constitutionally recognizable harm. The appeals court reversed and, in a published decision, held that the temporary loss of money is a sufficient "injury-in-fact" under Article III of the Constitution to confer standing on a consumer to file a federal lawsuit.

*Robert Brown, et al. v. Electrolux Home Products, Inc., d/b/a Frigidaire*, No. 15-11455 (11th Cir.). In July 2015, Carlson Lynch attorneys co-authored a brief on behalf of Public Justice, P.C.; the National Association of Consumer Advocates; U.S. PIRG (United States Public Interest Research Group); Consumer Action; and the Consumer Federation of California, appearing as *amici curiae* to the Eleventh Circuit and arguing in support of affirmance of a district court's certification of a class of purchasers of defective washing machines.

**Pittsburgh ▪ San Diego ▪ Chicago ▪ Los Angeles ▪ Philadelphia**

*Kobylanski v. Motorola Mobility, Inc., et al*., No. 2:13-cv-1181 (W.D. Pa.). Carlson Lynch represented purchasers of MOTOACTV wearable fitness devices who alleged that the devices, although marketed as "sweat-proof" and "rain-resistant," were in fact susceptible to damage from even slight amounts of moisture. A settlement was reached which provided for full refunds for class members who had previously submitted a claim for water damage to Motorola but were denied a repair or replacement, and additional forms of relief for class members who had not previously complained of water damage. The settlement was approved in October 2014.

*Quinn et al. v. Walgreen Co., Wal-Mart Stores, Inc., Supervalu, Inc., and Perrigo Company of South Carolina, Inc.*, No. 7:12-cv-8187 (S.D.N.Y.). Carlson Lynch served as co-lead counsel on behalf of purchasers of glucosamine/chondroitin products manufactured by Perrigo and sold by various retailers. A settlement was reached in 2014 which provided for a total settlement fund of $2.8 million and provided for full or partial refunds to class members who submitted valid claims. Final approval was granted in March 2015.

*In re Nutramax Cosamin Marketing and Sales Practices Litigation* – **MDL No. 2498,** (D. Md.). Carlson Lynch represented several plaintiffs in nationwide litigation regarding Nutramax's false and misleading marketing of glucosamine/chondroitin supplements, which multiple studies have determined to be without efficacy for the conditions they purport to treat. After the cases were consolidated for pre-trial proceedings, Carlson Lynch partner Ed Kilpela was appointed to the Executive Committee overseeing the litigation.

*In re Wireless Phone Equipment Replacement Insurance Litigation,* (C.P. Allegheny County, Pennsylvania). Carlson Lynch was lead counsel in this national litigation alleging consumer fraud in connection with wireless phone equipment replacement insurance. In November 2004, the Court approved a class settlement and entered Findings of Fact and Conclusions of Law which commented on the adequacy of Carlson Lynch as lead counsel as follows:

> Class counsel have abundant experience as lead counsel in consumer class action litigation. Indeed, class counsel have frequently appeared before this Court. Other courts have routinely recognized class counsels' adequacy . . . . This Court readily agrees with these other courts, and finds that Bruce Carlson and Gary Lynch are more than adequate counsel, and indeed are capable and diligent class action attorneys.

*Mednick v. Precor, Inc.*, No. 14-cv-03624 (N.D. Ill.):  Katrina Carroll served as court-appointed Co-Lead Counsel in this products liability matter concerning the heart rate monitoring feature on Precor fitness machines. Due to Ms. Carroll's efforts, the plaintiffs defeated a contested class certification motion and obtained class certification for a multi-state consumer class. Ms. Carroll

was instrumental in negotiating a class settlement providing meaningful relief for class members shortly thereafter, for which the Court recently issued final approval.

***Bishop et al. v. Behr Process Corp. et al.***, No. 1:17-cv-4464 (N.D. Ill.):  Carlson Lynch partner Katrina Carroll currently serves as court-appointed Co-Lead Counsel in this national products liability class action matter relating to defective deck paint. Together with her co-counsel, Ms. Carroll obtained a substantial settlement for the class, which has been finally approved by the Court and is currently being administered.

***In re Rust-Oleum Restore Marketing, Sales Practices and Prods. Liab. Litig.*** No. 1:15-cv-1364 (N.D. Ill.): In this sprawling products liability MDL relating to defective deck resurfacing products, Katrina Carroll was instrumental in negotiating a $9.3 million settlement providing meaningful relief to consumers, which received final approval in March of 2017 by the Honorable Amy J. St. Eve of the United States District Court for the Northern District of Illinois, now a sitting Judge of the Court of Appeals for the Seventh Circuit. Over the course of the litigation, among other things, the court resolved an extremely challenging motion to dismiss substantially in plaintiffs' favor, issuing a sixty-page opinion, oft-cited in warranty and consumer fraud class actions across the country. Ms. Carroll oversaw the plaintiffs' briefing on that motion.

## PRIVACY & DATA BREACH LITIGATION

***In re Equifax, Inc. Customer Data Security Breach Litig.***, MDL 2800 (N.D. Ga.). The Equifax data breach compromised the nation's entire credit reporting system. Carlson Lynch was retained by the Independent Community Bankers of America, along with several banks and credit unions, to institute litigation against Equifax on behalf of a class of all financial institutions in the nation for damages resulting from the data breach. The financial institutions, as providers and purchasers of information within the credit reporting system, were severely impacted by the Equifax data breach, in which 147.9 million U.S. consumers – roughly 46% of the U.S. population and nearly 60% of all adults in the U.S. – had their highly sensitive personally identifying information ("PII") and payment card data ("PCD") compromised between May and July 2017 (the "Data Breach"). More than 400 lawsuits filed by consumers and financial institutions were consolidated in the MDL. Gary Lynch was appointed co-lead counsel for financial institution plaintiffs in this multidistrict litigation. After significant dispositive motions practice and initial rounds of discovery, the parties negotiated a settlement of the financial institution class action that provides up to $7.75 million in cash benefits, plus additional injunctive relief. The court granted preliminary approval of the settlement in June 2020 and final approval in October 2020.

***In re Target Corporation Customer Data Breach Litig.***, 0:14-md-02522, MDL 2522 (D. Minn.). This multidistrict litigation arose out of the massive data breach that occurred in late 2013. Judge Magnuson appointed Gary Lynch to the five-member Plaintiffs' Executive Committee that managed the litigation on behalf of all Plaintiffs' tracks (consumer, financial institution, and

# CARLSON LYNCH

shareholder). A settlement agreement which provided $10 million to affected individual customers was granted final approval in November 2015. A separate settlement providing approximately $39 million in relief to plaintiff financial institutions was granted final approval in May 2016.

***In re TikTok, Inc., Consumer Privacy Litig***., No. 20-cv-4699 (MDL No. 2948) (N.D. Ill.). Judge Lee appointed Katrina Carroll as Co-Lead Counsel in this multidistrict litigation alleging that one of the world's biggest social media platforms captured, collected, and transmitted personal data from TikTok users and their devices without their consent and/or knowledge, including private information and biometric information within the meaning of the Illinois Biometric Information Privacy Act.

***First Choice Federal Credit Union v. The Wendy's Company et al***, 2:16-cv-0506, (W.D. Pa.). This class action arose out of a data breach alleged to have begun in October 2015, when computer hackers installed malware on the point-of-sale systems of Wendy's franchised restaurants for the purpose of capturing and ex-filtrating customer payment card data (the "Data Breach"). It is estimated that approximately 18 million payment cards were exposed in the Data Breach. The United States District Court for the Western District of Pennsylvania consolidated several proposed class actions and appointed Gary Lynch as Co-Lead Counsel on behalf of the Plaintiff financial institutions. Plaintiffs filed an early motion seeking to apply *Ohio law to Plaintiffs' claims on a nationwide basis, proposing to the Court that the choice of* law issue, which is normally not decided until the class certification or summary judgment stage, could be decided early, under Rule 1's mandate that the rules be interpreted to "secure the just, speedy and inexpensive determination of every action and proceeding." Wendy's opposed the motion. On June 6, 2018, the Court adopted the Magistrate's Report and Recommendation to grant the motion and to apply Ohio law to the negligence and negligence *per se* claims. In November 2018, after three rounds of in-person mediation, Wendy's agreed to pay $50 million into a non-reversionary fund and to adopt and/or maintain certain reasonable safeguards to manage its data security risks. When the settlement received final approval in November 2019, the Honorable Maureen P. Kelly noted Class Counsel's "national reputation," "significant experience in these types of class actions and in data breach litigation," and "high level of skill and efficiency." Judge Kelly further explained:

> This case has gone on for three and a half years…This was a very involved case and everyone brought to the table an incredible wealth of knowledge, was always prepared, really was thorough and professional in everything that was provided to the Court. And as involved as this case was, if every case I had was as well organized and professionally presented as this case has been, my life would be much easier… The briefs I got in this case and any filings were just so well-done and detailed. And my law clerks and I have discussed that a number of times. I

want to thank counsel for the way you have conducted yourselves and the way you've all presented this case.

***In re Home Depot Customer Data Breach Litig.***, 1:14-md-02583, MDL 2583 (N.D. Ga.). In this multidistrict litigation, Carlson Lynch represented financial institutions in litigation related to the major data breach at the retailer which continued for almost six months in 2014 and resulted in the compromise of approximately 56 million payment card accounts. Gary Lynch was appointed by Judge Thrash to be one of three lead counsel managing the financial institution track of the litigation. Over forty financial institutions and seventeen credit union associations filed a consolidated complaint in May 2015. Judge Thrash denied the majority of Home Depot's motion to dismiss on May 18, 2016. In September 2017, the Court granted final approval to a comprehensive class settlement that provides over $27 million in relief to the financial institution class.

***Veridian Credit Union v. Eddie Bauer LLC***, 2:17-cv-356 (W.D. Wash.). Carlson Lynch served as co-lead counsel on behalf of a class of financial institutions in this class action against Eddie Bauer arising out of payment card data breach of the retailer's point-of-sale systems in 2016, which led to the exposure of up to 1.4 million payment cards. After overcoming a motion to dismiss and engaging in substantial discovery, the parties negotiated a class action settlement, which was approved in 2019. The agreement made up to $2.8 million available in direct cash relief to class members and provided for an addition $7 million worth of injunctive relief and other benefits.

***In Re: Solara Medical Supplies Data Breach Litigation***, 19-cv-02284 (S.D. Cal.). In January 2020, Judge Marilyn Huff appointed Kelly Iverson to the Plaintiffs' Steering Committee in this data breach action that affected both the personally identifiable information as well as protected health information of Plaintiffs' and the classes.

***In re Wawa, Inc. Data Security Litig***, 2:19-cv-6019 (E.D. Pa.). Gary Lynch was appointed co-lead counsel for a putative class of financial institution plaintiffs in consolidated actions brought against Wawa, Inc. arising out of a 2019 payment card data breach involving the convenience store's point-of-sale systems. A consolidated amended complaint was filed in July 2020, and as of February 2021, the defendant's motion to dismiss is fully briefed and awaiting disposition.

***Greater Chautauqua Federal Credit Union et al v. Kmart Corporation et al***, No. 15-cv-02228 (N.D. Ill.). In this consolidated data breach case in which financial institutions were seeking recovery for losses sustained as a result of a 2014 data breach at one of the nation's largest discount retail chains, Judge Lee appointed Gary Lynch to the Plaintiffs' Executive Committee, and Katrina Carroll to serve as Liaison Counsel. A settlement was reached and approved in June 2017.

# CARLSON LYNCH

***In re Marriott International Customer Data Security Breach Litigation,*** MDL No. 2879 (D. MD.). Gary Lynch was appointed to the Plaintiffs' Steering Committee in this multidistrict litigation related to the data breach involving Starwood guest information dating back to at least 2014. The MDL includes more than 100 cases and is in pretrial litigation.

***Dittman et al v. UPMC d/b/a The University of Pittsburgh Medical Center and UPMC McKeesport***, (Allegheny Cty., Pa. No. GD-14-003285). Carlson Lynch is representing several employees of the health care group UPMC in a class action stemming from a breach of UPMC's personnel files. On November 21, 2018, the Supreme Court of Pennsylvania issued a landmark decision, reversing two lower courts, regarding the viability of common law negligence claims in the wake of a data breach. The Court found that UPMC engaged in affirmative conduct by collecting and storing employee data, and that general principles of negligence support holding actors to "a duty to others to exercise the care of a reasonable man to protect [others] against an unreasonable risk of harm to them arising out of the act." As to the economic loss doctrine, the Court agreed with Plaintiffs' interpretation of Pennsylvania legal precedent on the issue, finding that the question of whether the economic loss doctrine applies necessarily turns on the "source of the duty alleged," and, accordingly, a plaintiff may seek pecuniary damages under a negligence theory if the duty sought to be enforced arises independently of any contractual relationship between the parties. After remand to the trial court, additional motions practice, and initiating discovery, the parties reached a settlement and are preparing to submit for preliminary approval.

***In re Anthem, Inc. Customer Data Security Breach Litig.***, No. 5:15-md-02617, MDL 2617 (N.D. Cal.). Carlson Lynch represented customers of a national health insurer which experienced a data breach involving the personal information, including social security numbers, of up to an estimated 80 million customers. The case was consolidated and transferred to the Northern District of California in June 2015. Carlson Lynch participated in discovery related to Highmark, the Pennsylvania-based member of the Blue Cross Blue Shield Association and a co-defendant in the MDL. The parties reached a settlement valued at $117 million, which was approved by the Court.

***In re Community Health Systems, Inc., Customer Data Security Breach Litigation***, 2:15-cv-00222, MDL 2595 (N.D. Ala.). Gary Lynch served as a member of the plaintiffs' steering committee in consolidated multidistrict litigation stemming from a 2014 data breach involving one of the nation's largest hospital chains. The breach affected over 200 hospitals and the sensitive personal information of approximately 4.5 million patients was compromised. The action settled on a class basis for up to $3.1 million.

***In re Arby's Restaurant Group***, 1:17-mi-55555 (N.D. Ga.). In October 2016, computer hackers accessed Arby's inadequately protected point-of-sale system and installed malware that infected nearly 1,000 Arby's restaurant locations. Gary Lynch was appointed by Judge Totenberg as

# CARLSON LYNCH

Chair of the Financial Institution Plaintiffs' Executive Committee. The case settled and received final approval in November 2020.

*In re Ashley Madison Customer Data Security Breach Litig.,* MDL No. 2669 (E.D. Mo.). In this well-publicized data breach case Carlson Lynch represented individuals whose highly sensitive account information was leaked from a social media company. The case was consolidated and transferred to the Eastern District of Missouri in December 2015. Judge Ross appointed Gary Lynch and Katrina Carroll (while with her prior firm) to the Executive Committee. A class settlement for $11.2 million was given final approval in November 2017.

*In re Vizio, Inc. Consumer Privacy Litig.*, MDL No. 2693 (C.D. Cal.). Carlson Lynch represented individuals who purchased Vizio "Smart TVs," which contained software that collected information about the users in a manner that allegedly violates numerous consumer protection statutes. The case was consolidated and transferred to the Central District of California in April 2016, and Gary Lynch was appointed to the Plaintiffs' Steering Committee. In March 2017, District Judge Staton granted in part and denied in part a motion to dismiss, leaving the most significant claims intact and granting plaintiffs leave to re-plead the dismissed counts. After plaintiffs filed a second consolidated amended complaint, a second motion to dismiss was denied in July 2017. Vizio's attempt to certify an interlocutory appeal was denied in October 2017. The case was settled and received final approval in 2019, providing for a $17 million common fund.

*Vance v. International Business Machines Corp.*, 1:20-cv-577 (N.D. Ill.). Carlson Lynch appointed Co-Lead Counsel in this class action claiming IBM violated Illinois's Biometric Information Privacy Act when it collected, obtained, disclosed, redisclosed, disseminated, and otherwise profited from Illinois residents' unique facial geometric measurements without providing notice or obtaining consent.  In September 2020, Carlson Lynch defeated nearly all of the arguments raised in IBM's motion to dismiss, allowing the case to proceed forward toward class certification.

*In Re: Clearview AI, Inc., Consumer Privacy Litig.*, 1:21-cv-00135 (N.D. Ill.). Carlson Lynch serves as counsel in this multidistrict litigation on behalf of a proposed class of Illinois citizens alleging that Clearview, in violation of the Illinois Biometric Information Privacy Act, scraped over 3 billion facial images from the internet, scanned the facial images' biometrics, and built a searchable database of the scanned images and biometrics, allowing users to instantly identify an unknown individual with only a photograph. Clearview then sold or otherwise gave access to these biometrics to hundreds of law enforcement agencies, private entities, and individuals.

*Storm et al. v. Paytime, Inc.*, No. 1:14-cv-011380-JEJ (M.D. Pa.). Carlson Lynch represented individuals whose sensitive personal and financial information was stolen from the systems of a

Pennsylvania payroll processing company. The case was appealed to the Third Circuit and settled on a class basis while the appeal was pending.

***In re SuperValu, Inc. Customer Data Security Breach Litig.***, 0-14-md-02586, MDL 2586 (D. Minn.). In April 2015, Ed Kilpela of Carlson Lynch was appointed as interim co-lead counsel in this consolidated case. The litigation stems from a 2014 data breach that compromised the sensitive personal and financial information of customers of approximately 1,000 grocery stores operating under a variety of brand names in over a dozen states.

***Sullivan v. Wenner Media LLC***, No. 1:16-cv-960 (M.D. Mich.). Carlson Lynch was co-lead counsel for plaintiffs who brought claims against the publisher of *Rolling Stone* magazine. Plaintiffs allege that *Rolling Stone* sold subscriber information to marketing partners without the subscriber's consent, in violation of Michigan state privacy laws. The parties reached a proposed settlement including a $1.1 million settlement fund and alternative forms of relief. The settlement was approved in May 2018.

***Lewert v. PF Chang's China Bistro, Inc.***, No. 1:14-cv-04787 (N.D. Ill.): Katrina Carroll served as Court-appointed Co-Lead counsel representing P.F. Chang's customers who had their personal financial information compromised in a 2014 security breach. This matter was one of the first data breach cases on record. Ms. Carroll oversaw all of the appellate briefing in ultimately obtaining a landmark ruling in the Seventh Circuit on Article III standing, hailed by Law360 as one of the "top privacy cases" of 2016.

***Salam v. Lifewatch, Inc.***, No. 1:13-cv-09305 (N.D. Ill.):  In this hard-fought litigation, Carlson Lynch partner Katrina Carroll is currently involved as court-appointed Co-Lead Counsel on behalf of a certified class in this privacy matter brought under the Telephone Consumer Protection Act ("TCPA"). Ms. Carroll has been directly involved in all aspects of litigation, including discovery and motion practice which culminated in a total victory for plaintiffs in contested class certification.

***Bakov v. Consolidated World Travel Inc.***, No. 1:15-cv-02980 (N.D. Ill.):  Katrina Carroll serves as court-appointed Co-Lead Counsel in this TCPA litigation for a certified class of consumers.

***In Re Blackbaud Inc. Customer Data Security Breach Litig.***, No. 3:20-mn-02972, MDL 2972 (D.S.C.): Kelly Iverson was court appointed to the PSC to represent consumers affected by this massive security breach affecting both personal identifying and personal health information. The slate selected to lead this MDL was haled as "Most Diverse Leadership Team Ever" in a data breach class action.

# CARLSON LYNCH

## FINANCIAL FRAUD, LENDING PRACTICES, AND SECURITIES

***In re: FedLoan Student Loan Servicing Litigation – MDL No. 2833***, (E.D. Pa.). Carlson Lynch serves as court-appointed co-lead counsel on behalf of student loan borrowers and federal grant recipients in this multidistrict litigation. The claims relate to widespread and systemic failures on the part of a student loan servicer and the U.S. Department of Education to adequately service the programs and advise its participant. A consolidated complaint was filed in November 2019. As of January 2020, a motion to dismiss is fully briefing and currently awaiting resolution by the Court.

***Rescap Bankruptcy***, (S.D.N.Y. Bkr.). On November 27, 2013, the Bankruptcy Court in the Southern District of New York granted final approval of a class settlement on behalf of in excess of 45,000 residential mortgage borrowers. Carlson Lynch is co-lead counsel for the class. The settlement is for an allowed claim amount of $300 million dollars. There is a guaranteed payout of approximately $36 million dollars. The debtor assigned its insurance rights to the class and insurance will potentially cover the difference between the $36 million dollar guaranteed payout and the allowed claim amount of $300 million. Upon signing the Order granting final confirmation of the bankruptcy plan, the judge stated that this was the most factually and legally complex matter that he had presided over since taking the bench.

***CitiMortgage SCRA Litigation***, (S.D.N.Y.). Carlson Lynch was tri-lead counsel in this class action against CitiMortgage on behalf of Sergeant Jorge Rodriguez in the Southern District of New York. This case alleges that CitiMortgage improperly foreclosed upon Mr. Rodriguez's home (and the homes of similarly situated individuals) while he was serving his country in Iraq, in violation of the Servicemembers Civil Relief Act. The case settled and received final approval in October 2015, securing a total recovery of $38.2 million for members of our military service.

***Pitts v. NovaStar Home Loans, Inc. et al.*** , (S.D. Ga.). Carlson Lynch was co-lead counsel for plaintiffs in this national RESPA class action. The Southern District of Georgia was the MDL court for this litigation. After the Court denied defendant's motion to dismiss, after the Court denied defendants' motion for summary judgment and granted plaintiffs' motion for class certification in a related Maryland state court action – where Carlson Lynch was also co-lead counsel -- and after extensive discovery including the video depositions of several of defendants' top executives, the parties participated in multiple mediation sessions and ultimately arrived at a national cash settlement on behalf of class members for $17.3 million.

***In re Community Bank of Northern Virginia and Guaranty National Bank of Tallahassee Secondary Mortgage Loan Litigation***, (W.D. Pa./3d Cir.). Carlson Lynch was co-lead class counsel in this national litigation on behalf of second mortgage borrowers under the Real Estate Settlement Procedures Act. The class was certified by the district court and affirmed by the Third

Pittsburgh ▪ San Diego ▪ Chicago ▪ Los Angeles ▪ Philadelphia

Circuit, 795 F.3d 380 (2015). A class settlement was finalized in early 2017 and obtained a total recovery of $24 million.

**Kahrer v. Ameriquest Mortgage Co.**, (W.D. Pa./MDL N.D. Ill.). Carlson Lynch was counsel for plaintiff in connection with this consolidated group of class actions alleging the existence of a kick-back scheme in violation of RESPA, along with numerous other unfair lending practices. The specific case being handled by Carlson Lynch created new law under RESPA. Specifically, Carlson Lynch filed this action as a test case to challenge what they viewed as a negative trend in the law regarding how federal trial courts were determining whether a consumer has standing to sue under RESPA, as well as the manner in which damages are calculated under RESPA. Every prior federal trial court to consider these issues had sided with defendants. In opposing the Ameriquest motion to dismiss that was filed in this case, Carlson Lynch argued that these other federal trial courts had fundamentally misinterpreted the legislative history of RESPA in their decisions to dismiss the prior cases. In a seminal decision, the United States District Court for the Western District of Pennsylvania departed from the holdings issued by these other federal courts and agreed with the arguments of Carlson Lynch, denying the motion to dismiss. *See Kahrer v. Ameriquest Mortgage Co.*, 418 F.Supp.2d 748 (W.D. Pa. 2006) (Hay, J.). Multiple federal courts of appeals have adopted the *Kahrer* reasoning, including at least the Sixth and Third Circuits. This case was ultimately settled as part of MDL proceedings against Ameriquest in the Northern District of Illinois, and final approval of the settlement was granted.

**Bannon v. First One Lending, Inc.,** (C.P., Allegheny County, Pennsylvania). Carlson Lynch was co-lead counsel in this class action filed on behalf of Pennsylvania second mortgage loan borrowers alleging that they were charged excessive settlement fees in violation of the Pennsylvania Secondary Mortgage Loan Act. After the court denied defendant's motion to dismiss, the case ultimately settled and plaintiffs and the class were refunded 100% of the alleged overcharges.

**In re Tenet Healthcare Corp. Securities Litigation**, 02-cv-8462 (C.D. Cal.). Prior to joining the firm, Katrina Carroll represented the State of New Jersey's Division of Investment in this securities class action against Tenet Healthcare and its outside auditor, KPMG, related to false and misleading public statements those entities made between 2000 and 2002 about Tenet's financial health. Katrina played a large role in drafting motions *in limine* briefing issues regarding the admissibility of plaintiff's expert witness report. Tenet settled in 2006 for $215 million, and KPMG settled in 2008 for $65 million.

**In re Motorola Securities Litig.**, 03-cv-287 (N.D. Ill.). Katrina Carroll represented the State of New Jersey's Division of Investment in this securities class action against Motorola, stemming from misrepresentations made by the company regarding a $2 billion loan it made to a Turkish entity that was not repaid. The case settled a few days before trial for $190 million.

**CARLSON LYNCH**

## Government Covid-19 Closure Order Litigation

***In re Generali Covid-19 Travel Insurance Litig.***, No. 20-md-2968, MDL 2968 (S.D.N.Y). In January 2021, Jamisen Etzel was appointed co-lead counsel in this MDL comprising actions brought on behalf of consumers whose travel plans were cancelled as a result of the Covid-19 pandemic, and whose travel insurance provider either denied coverage or refused to return premiums paid for post-departure risks the insurer was not required to cover. As of February 2021, the MDL is in the initial pleading stage.

***In re: Erie Covid-19 Business Interruption Protection Ins. Litig.***, No. 1:21-mc-00001, MDL 2969 (W.D. Pa.). In April 2021, Carlson Lynch attorney Kelly Iverson was appointed as Co-Lead counsel to represent policyholders in 12 states and the District of Columbia in this insurance coverage MDL.

***Business Income Insurance Coverage Litigation***, various. Carlson Lynch represents numerous business-policyholders who were forced to close or curtail their business operations as a result of government shut down orders in the wake of the Covid-19 pandemic and who have been denied insurance coverage under their "all risks" property insurance coverage.

## Wage and Hour & Employment Discrimination Litigation

***Verma v. 3001 Castor Inc.***, (E.D. Pa.). As co-class counsel, Carlson Lynch won a $4.59 million jury verdict in 2018 for misclassified workers at a Philadelphia nightclub. The claims were brought under the FLSA and Pennsylvania Minimum Wage Act. The trial verdict was fully affirmed by the Third Circuit in August 2019.

***Gardner v. Country Club, Inc.*** (D.S.C.). Carlson Lynch served as class counsel for a class of nightclub workers who were misclassified as independent contractors, subjected to deductions from their tip income, and denied wages. Carlson Lynch won two significant dispositive motions, obtaining a ruling that the workers were legally employees, and a legal opinion determining as a matter of first impression under South Carolina wage laws that tip income was protected from employer deductions. The case then settled for a total of $1.5 million, and final approval was granted in 2019.

***Herron v. Investment Professionals Inc.*** (W.D. Pa.). Carlson Lynch secured a $450,000 settlement for 12 financial advisors who were misclassified by a financial services company and consequently did not receive overtime compensation. The settlement was approved in February 2018.

***Herzfeld v. 1416 Chancellor Inc.*** (E.D. Pa.). Carlson Lynch is class counsel for a litigation-certified Rule 23 class and FLSA collective of more than 100 nightclub entertainers alleging misclassification and violations of the FLSA and Pennsylvania wage and hour laws. A settlement

for a total amount of $415,000 was reached and granted preliminary approval in January 2018. Final approval was granted following a fairness hearing in June 2018.

***Correll v. One Three Five, Inc.*** (W.D. Pa.). Carlson Lynch was class counsel for a class of several hundred nightclub performers who alleged that they were misclassified by the club's owner as independent contractors, resulting in violations of the Fair Labor Standards Act and Pennsylvania state wage laws. A class settlement was granted final approval in 2016 and provided $815,000 in total relief for the class.

***Genesis Healthcare v. Symczyk*** (U.S. Supreme Court). Gary Lynch served as Counsel of Record before the United States Supreme Court in an appeal addressing the application of mootness principles in a putative collective action filed under Section 216(b) of the Fair Labor Standards Act. When defendant served Carlson Lynch' client with a Rule 68 offer of judgment for "make whole" relief, the district court dismissed the case as moot. Gary Lynch successfully argued the appeal in the United States Court of Appeals for the Third Circuit, which held that the FLSA collective action did not become moot upon the plaintiff's receipt of a Rule 68 offer of judgment for full satisfaction of her individual claim. The Supreme Court reversed in a 5-4 opinion, with Justice Kagan writing a strong dissent on behalf of Carlson Lynch's client—a position which was subsequently adopted by the majority of the Court in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Carlson Lynch's position before the Supreme Court was supported by the United States as Amicus Curiae.

***Gualano v. Abercrombie & Fitch Stores, Inc.***, (W.D. Pa). Carlson Lynch was co-lead counsel in this wage and hour litigation alleging that defendant retail clothier was violating federal and state minimum wage laws. Following the fairness hearing in early 2005, where a multi-state settlement was presented to the Court for approval, the Court entered Findings of Fact and Conclusions of Law addressing lead counsels' adequacy as follows:

> The Court finds the plaintiffs' counsel, Bruce Carlson and Gary Lynch, are experienced class counsel and that they have met all of the requirements of Rule 23(g)(1)(B) and (C). Consistent with the underlying purpose of Fed. R. Civ. P. 23, plaintiffs' counsel have achieved, with utmost efficiency, a quality result for the entire class and are commended for the diligence and effective advocacy they have displayed on behalf of their clients.

***Pasci v. Express, LLC***, (W.D. Pa.). This case was similar to the *Abercrombie* case discussed above and proceeded to a fairness hearing in November 2004, where a multi-state settlement was presented to the Court for approval. Regarding the adequacy of Carlson Lynch, the Court issued Findings and Conclusions stating:

With respect to the adequacy of counsel, the Court finds that class counsel have capably and vigorously represented the class. Bruce Carlson and Gary Lynch have substantial experience in class-based litigation involving consumer fraud and employment claims . . . . Class counsel achieved an efficient and excellent result on behalf of the class.

***Ellis v. Edward Jones,*** (N.D. Ohio). Carlson Lynch chaired the Plaintiffs' Leadership Committee in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. After Defendant filed an answer and after significant discovery wherein Defendant produced in excess of 500,000 pages of documents and hundreds of videotapes, the parties commenced mediation to pursue a potential global settlement. The first mediation, which occurred in Atlanta in March 2007, was unsuccessful. Ultimately, the parties participated in a second mediation in San Francisco, at which the parties arrived at the basic terms of a proposed settlement pursuant to which class members from multiple states received in excess of $19 million. After a fairness hearing on January 5, 2009, the Court granted final approval of the settlement.

***Byers v. PNC Financial Services Group, Inc.,*** (W.D. Pa.). Carlson Lynch was lead plaintiff's counsel in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. A multi-state settlement was approved following a fairness hearing in June 2008.

***Steen v. A.G. Edwards, Inc*.,** (S.D. Cal.). Carlson Lynch was co-class counsel for plaintiff in this wage and hour litigation alleging that defendant stock brokerage company violated federal and state overtime laws. A mediated national class-based settlement has been reached and preliminary approval has been granted. A fairness hearing was held on August 31, 2009 in Los Angeles, after which the Court entered an Order granting final approval of the settlement.

***Meola v. AXA Financial, Inc.,*** (N.D. Cal.). Carlson Lynch was co-class counsel for plaintiff in this wage and hour litigation alleging that defendant financial services company violated federal and state overtime laws. A mediated national class-based settlement was negotiated in this matter, and final approval was granted following a fairness hearing in the fall of 2009.

***In re St. Francis Health System,*** (C.P., Allegheny County Pennsylvania). Carlson Lynch was counsel for the class in connection with this wage and hour litigation on behalf of certain former employees of the St. Francis Health System in Pittsburgh. Plaintiff asserted that the class was deprived of severance benefits when St. Francis Health System was acquired by another hospital group in Western Pennsylvania. Prior to the disposition of Plaintiff's class certification motion, the parties engaged in extensive mediation before reaching a class-based settlement.

# CARLSON LYNCH

**Haag v. Janney Montgomery Scott,** (E.D. Pa.). Carlson Lynch was a member of the three firm Executive Committee in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. After protracted litigation and two separate mediations, the parties reached a multi-state settlement. A fairness hearing was conducted in Philadelphia on June 30, 2009, where Gary Lynch appeared on behalf of the class. Following the hearing, the Court granted final approval of the settlement.

**Steinberg v. Morgan Stanley & Co.,** (S.D. Cal.). Carlson Lynch was co-class counsel for plaintiff in this wage and hour litigation alleging that defendant stock brokerage company violated federal and state overtime laws. A mediated national class-based settlement was reached, and final approval of the settlement was granted.

**Ramsey v. Ryan Beck, Inc.** (S.D.N.Y.). Carlson Lynch was co-class counsel in this wage and hour class action alleging that defendant stock brokerage company violated federal and state overtime laws. After protracted litigation, the parties reached a multi-state settlement, and final approval was granted in June 2010.

**Kniess v. Heritage Valley Health Systems, Inc.,** (C.P., Allegheny County, Pennsylvania). Carlson Lynch was lead counsel in this wage and hour class action alleging that the defendant hospital system failed to pay overtime compensation to its nurse practitioners and physician's assistants. The parties reached a mediated class settlement whereby class members received the majority of the back pay alleged by Carlson Lynch.

**Leadbitter v. The Washington Hospital, Inc.,** (W.D. Pa.). Carlson Lynch was lead counsel in this wage and hour class action alleging the defendant hospital system failed to pay overtime compensation to its nurse practitioners and physician's assistants. The parties reached a mediated class settlement whereby class members will be eligible to receive the majority of the back pay alleged by Carlson Lynch, and the settlement has received final approval from the Court.

**Career Education Corporation Misclassification Litigation,** (W.D. Pa.). In early 2011, Carlson Lynch filed a putative collective action on behalf of admissions representatives employed by culinary schools operated by Career Education Corporation. Carlson Lynch alleged that these individuals were misclassified and improperly denied overtime benefits. A class settlement was negotiated and final approval of the settlement was granted in December 2011.

**Atrium Centers, LLC Automatic Meal Break Deduction Litigation,** (N.D. Ohio). Carlson Lynch was lead counsel in this collective action on behalf of hourly health care workers (primarily nurses) alleging improper pay practices in connection with automatic meal break deductions. After the court granted Plaintiffs' motion for conditional certification of a collective action under the FLSA, extensive discovery ensued. Following the close of discovery in the fall of 2012, the

# CARLSON LYNCH

Parties engaged in mediation with a former United States Magistrate Judge and reached an agreement to settle the case on a collective basis. The settlement was approved by the court in December 2012, and the settlement proceeds have been distributed.

***Northwestern Memorial Healthcare Automatic Meal Break Deduction Litigation,*** (N.D. Ill.), Carlson Lynch was lead counsel in this collective/class action on behalf of hourly health care workers (primarily nurses) alleging improper pay practices in connection with automatic meal break deductions. After extensive discovery and the denial of Defendant's motion for summary judgment, the Parties reached a mediated class settlement in the fall of 2012. In December 2013, the Court granted final approval of the settlement, and the settlement proceeds have been distributed to the class.

***Crozer-Keystone Health System Overtime Litigation,*** (E.D. Pa.), Carlson Lynch filed a putative collective action against Crozer-Keystone Health System in the Eastern District of Pennsylvania. The Complaint challenged pay practices related to nurse practitioners and/or physicians' assistants. The plaintiffs in these cases allege that they were illegally being denied overtime compensation by their employers. After discovery, the Parties filed cross motions for summary judgment. In a widely reported opinion issued on January 4, 2011, the Court granted Plaintiffs' motion for summary judgment, holding that Defendant had misclassified individuals in Plaintiff's job positions. Defendant's motion for reconsideration of the federal court's summary judgment decision was denied in a twenty-one page opinion and order issued on August 15, 2011. Following mediation, the settlement of this case was approved in August 2012.

***Ehrheart v. Verizon Wireless***, No. 2:07-cv-01165 (W.D. Pa.), 609 F.3d 590 (3d Cir. 2010). Carlson Lynch represented the Plaintiff/Appellant in this matter alleging violation of the Fair and Accurate Credit Transaction Act. A settlement was negotiated and preliminarily approved by the district court pursuant to Rule 23. Subsequent to the settlement, Congress passed the Credit and Debit Card Receipt Clarification Act, which had the effect of eliminating Plaintiff's cause of action. On motion of Verizon, the district court vacated its preliminary approval of the settlement and granted Verizon judgment on the pleadings. On appeal, the United States Court of Appeals for the Third Circuit reversed the district court, and in doing so clarified the role of the district court in evaluating class settlements under Rule 23, holding:

> It is essential that the parties to class action settlements have complete assurance that a settlement agreement is binding once it is reached. The fact that a settlement agreement is governed by Rule 23 does not diminish its enforceability as a contract. Where, as here, the parties have executed an agreement, a party cannot avoid its independent contractual obligations simply because a change in the law confers upon it a benefit that could have altered the settlement calculus.

# CARLSON LYNCH

***White v. United Steel Workers of America,*** (W.D. Pa.), Carlson Lynch was co-lead counsel in this age-discrimination class action against the U.S.W.A. After overcoming a motion to dismiss on a legal issue regarding a substantial split of authority, the defendant requested mediation to explore the possibility of settlement. After extensive mediation over a one-month period in June 2004, the case ultimately settled for an amount that defense counsel characterized as the highest ever paid by the U.S.W.A. in connection with civil litigation.

### ANTITRUST

***In Re Railway Industry Employee No-Poach Antitrust Litigation,*** **MDL 2850,** (W.D. Pa.), Carlson Lynch represented a class of employees who alleged the defendants and their co-conspirators entered into unlawful agreements to reduce and eliminate competition among them for employees and to suppress the compensation of those employees. Chief Judge Joy Flowers Conti appointed Carlson Lynch partner Kelly K. Iverson as Liaison Counsel on behalf of the class. The two defendants agreed to class settlements worth a combined $48.95 million, and final approval was granted in August 2020.

***In Re Blue Cross Blue Shield Antitrust Litigation,*** **MDL No. 2406**, (N.D. Ala.). Carlson Lynch represents healthcare subscriber plaintiffs in four states in this nationwide class action challenging the anti-competitive practices of Blue Cross/Blue Shield's nationwide network of local insurers who do not compete with each other based on geographic boundaries. In addition to Carlson Lynch's work on the individual cases, Carlson Lynch attorneys have been significantly involved in the discovery process.

### ENVIRONMENTAL LAW

***Steward et al. v. Honeywell Int'l, Inc.***, No. 3:18-cv-01124 (S.D. Ill.)  Carlson Lynch is currently involved in this property damage class action involving nuclear and non-nuclear contamination of large swaths of the City of Metropolis and the County of Massac. Carlson Lynch and co-lead counsel are prosecuting claims for injunctive relief, property damage, and medical monitoring in this extremely complicated environmental contamination case.

### CIVIL RIGHTS

***ADA (Americans with Disabilities Act) Accessibility Litigation***. Carlson Lynch is currently counsel for plaintiffs in a substantial number of putative class actions filed on behalf of individuals with disabilities to enforce the ADA's accessibility requirements. Over the last six years, Carlson Lynch has represented the visually disabled in seeking improved access to ATMs, Point of Sale devices, automated retail kiosks, and websites.

**Pittsburgh ▪ San Diego ▪ Chicago ▪ Los Angeles ▪ Philadelphia**

In January 2016, Magistrate Judge Robert C. Mitchell of the United States District Court for the Western District of Pennsylvania recommended certification of a national class of mobility-disabled individuals who were denied full and equal access to Cracker Barrel stores due to the company's inadequate centralized ADA maintenance policies. Judge Mitchell recommended that Carlson Lynch be appointed as counsel for the Class. Cracker Barrel has over 630 stores across the country. The report and recommendation was adopted by District Judge Mark Hornak in July 2016. The case subsequently settled, securing injunctive relief for the nationwide class.

More recently, Carlson Lynch was representing an individual with a mobility disability in *Egan v. Live Nation Worldwide, Inc.*, 2:17-cv-445 (W.D. Pa.). The claims involve wheelchair inaccessibility and ticket unavailability at Pittsburgh-area concert events promoted by Live Nation and ticketed by Ticketmaster. In March 2018, Judge Mark Hornak denied Live Nation's attempt to force arbitration of the potential class action. On appeal, the Third Circuit remanded the arbitration question for trial on disputed factual issues. The case settled before trial.

As a result of its work advocating for individuals with disabilities, Carlson Lynch received the ACHIEVA Award of Excellence for Legal Work in 2018.

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on September 14, 2021, I electronically filed the foregoing with the

3   Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel

4   for defendant Reckitt Benckiser LLC to the e-mail addresses denoted on the Electronic Mail Notice

5   List, and that I have mailed the foregoing document via the United States Postal Service to the non-

6   CM/ECF participants indicated on the Electronic Mail Notice List.

7        I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct. Executed on September 14, 2021.

9

10                                          *s/ Timothy G. Blood*
                                    TIMOTHY G. BLOOD

11
                               BLOOD HURST & O'REARDON, LLP
12                             501 West Broadway, Suite 1490
                               San Diego, CA 92101
13                             Tel: 619/338-1100
                               619/338-1101 (fax)
14                             tblood@bholaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

00182132