BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

Class Counsel

[Additional Counsel Appear on Signature Page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| GORDON NOBORU YAMAGATA and STAMATIS F. PELARDIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RECKITT BENCKISER LLC,<br><br>Defendant. | Case No. 3:17-cv-03529-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM IN SUPPORT THEREOF**<br><br>**CLASS ACTION**<br><br>Hrg Date:   October 28, 2021<br>Time:          2:00 p.m.<br><br>District Judge Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Complaint Filed:        June 19, 2017<br><br>**JURY TRIAL DEMANDED** |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 28, 2021, at 2:00 p.m., in Courtroom 4, 17th Floor, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Vince Chhabria, and pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs, individually and on behalf of the proposed Settlement Class will and hereby do move for final approval of the class action Settlement Agreement.

Plaintiffs respectfully move for entry of an Order substantially similar to the Proposed Order Granting Final Approval of Class Action Settlement (ECF No. 221-2 at Ex. 2) which: (1) grants final approval of the class action Settlement and finds the Settlement to be fair, reasonable, and adequate; (2) confirms certification of the Settlement Class for Settlement purposes; (3) finds the Class Notice Program was the best practicable notice under the circumstances and satisfied all Constitutional and other requirements; (4) releases the Released Claims of Settlement Class in accordance with the terms of the Settlement Agreement; (5) overrules any objections to the Settlement; (6) enters judgment and dismisses the action with prejudice as provided for by the Settlement Agreement; (7) awards service awards to the Class Representatives in the amount of $7,500 each to Class Representatives Gordon Noboru Yamagata, Stamatis F. Pelardis, and Maureen Carrigan, and $500 each to Class Representatives Lori Coletti, Ann-Marie Maher, Carol Marshall, Deborah A. Rawls, Oneita Steele, and Maxine Tishman; and (8) awards attorneys' fees of $12,500,000 plus reimbursement of expenses of $658,050.95.

This motion is based upon this notice of motion, Plaintiffs' memorandum in support of this motion and its accompanying documents and declarations, the previously filed motions for preliminary approval and accompanying documents and declarations (ECF Nos. 203, 203-1 through 203-4, 221, and 221-1 through 221-4), the previously filed motion for award of attorneys' fees, reimbursement of expenses, and service awards for Class Representatives and accompanying documents and declarations (ECF Nos. 230 and 230-1 through 230-5), the complete file and record in this action and the related action filed in the United States District Court for the Northern District

///

of Illinois captioned *Carrigan v. Reckitt Benckiser, LLC*, No. 1:18-cv-07073, and such oral argument as the Court may consider in deciding this motion.

Dated: September 23, 2021     BLOOD HURST & O'REARDON, LLP
                              TIMOTHY G. BLOOD (149343)

                              By:     *s/ Timothy G. Blood*
                                      TIMOTHY G. BLOOD

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................1

II. PROCEDURAL HISTORY .................................................................................................2

III. THE PRELIMINARY APPROVAL ORDER .....................................................................3

IV. THE SETTLEMENT AGREEMENT ..................................................................................3

    A. The Settlement Class Definition ..............................................................................3

    B. Settlement Benefits ..................................................................................................3

    C. The Court-Approved Class Notice Program Was Successful .................................4

V. THE STANDARDS FOR FINAL APPROVAL .................................................................5

VI. THE SETTLEMENT MERITS FINAL APPROVAL .........................................................7

    A. Certification of the Settlement Class .......................................................................7

    B. The Strengths of Plaintiffs' Case and Inherent Risks of Continued Litigation ..........7

    C. The Settlement Provides Significant Relief and Favorably Compares to Similar Approved Settlements ..................................................................................8

    D. The Extent of Discovery and Stage of Proceedings .................................................8

    E. The Experience and Views of Counsel ...................................................................9

    F. The Reaction of Settlement Class Members Favors Final Approval ......................9

VII. CONCLUSION ..................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Chun-Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................................................. 8

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................................................ 9

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................................. 6

*Franco v. E-3 Sys.*,
   No. 19-cv-01453-HSG, 2021 U.S. Dist. LEXIS 107399
   (N.D. Cal. June 8, 2021) ...................................................................................................... 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477
   (N.D. Cal. Apr. 22, 2010) .................................................................................................. 10

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ......................................................................................... 9

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................................................ 9

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) .............................................................................................. 5

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................................... 9

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................................ 5, 6

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................... 9

*Rodriguez v. West Publ'g Co.*,
   563 F.3d 948 (9th Cir. 2009) ................................................................................................ 6

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .............................................................................................. 5

*In re TD Ameritrade Account Holder Litig.*,
   No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222
   (N.D. Cal. Sept. 12, 2011) .................................................................................................. 6

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................................................... 6

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
   No. CV 15-2171 FMO, 2017 U.S. Dist. LEXIS 77576
   (C.D. Cal. May 21, 2017) .................................................................................................. 10

**Statutes**

28 U.S.C. § 1332(d) ..................................................................................................................... 5

28 U.S.C. § 1715 .......................................................................................................................... 5

**Secondary Sources**

4 William B. Rubenstein, et al., *Newberg on Class Actions* § 13:42 (5th ed.) ............................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs submit this memorandum in support of the Motion for Final Approval of Class Action Settlement.[1] The Declaration of Timothy G. Blood ("Blood Final Approval Decl.") in support of this motion is concurrently filed.

## I. INTRODUCTION

After over four years of hard-fought litigation, the Parties reached a Settlement of this class action. Plaintiffs now seek final approval.

The Settlement consists of an all cash $50 million non-reversionary Common Fund from which claimants will receive a cash payment of $22 per purchase of Move Free Advanced. This cash payment represents the average retail price of Move Free Advanced. Claimants may receive reimbursement for up to three purchases without proof of purchase, which is slightly more than the 2.6 average number of bottles purchased by Class Members. Reimbursement for more than three purchases can be claimed with proof of purchase. Given purchase records available to numerous Class Members, many have submitted claims for more than three purchases.

On June 24, 2021, after briefing, hearing, and due consideration, the Court granted preliminary approval of the Settlement, finding the Settlement to be "fair, reasonable, and adequate," particularly when considering "the current posture of this litigation and the risks and benefits to the Parties involved in both settlement of these claims and continuation of the litigation." ECF No. 227 at 1. Nothing has changed that should affect the Court's ruling on final approval. The robust Class Notice Program has been successful, Class Members will receive significant cash awards, and their reaction has been overwhelmingly positive.

The Class Notice Program was implemented on July 23, 2021 and has been completed in accordance with the Preliminary Approval Order. *See* concurrently filed Declaration of Cameron R. Azari re Settlement Administration ("Azari Second Supplemental Declaration"), ¶ 7. Approximately 4.6 million Class Members received direct notice. *See* ECF No. 230-5 ("Azari

---

[1] Throughout this memorandum, all capitalized terms have the same meaning as defined in the Stipulation of Settlement (ECF No. 221-2) ("Settlement Agreement" or "SA"), unless otherwise stated.

Supplemental Declaration"), ¶¶ 21, 24. A reminder email notice was also sent in September to those who had not yet filed a claim. *Id.*, ¶ 30. As directed, Class Notice was also provided through Internet and other publication methods. *Id.*, ¶¶ 31-44. Forty-six days remain until the Claim filing deadline, and approximately 292,000 Class Members have submitted Claims. *See* Blood Final Approval Decl., ¶ 5. Given the current rate of Claims, the individual cash awards are expected to slightly increase over $22 on a pro rata basis to exhaust the fund. It is unlikely that Claims will be reduced. *Id.*

The reaction of the Settlement Class has been overwhelmingly positive. The opt-out and objection period will expire on October 14, 2021. Approximately 292,000 Class Members have submitted Claims, while only four objections and 79 opt-outs have been received. *See id.*, ¶¶ 4-5.

The Settlement provides an excellent benefit to the Class. Plaintiffs respectfully submit that the Settlement readily meets the "fair, reasonable, and adequate" standard and it should be finally approved.

## II.  PROCEDURAL HISTORY

The Motion for Preliminary Approval and Declaration of Timothy G. Blood in Support of Motion for Preliminary Approval described in detail the lengthy procedural history of this matter and the extensive settlement negotiations that culminated in the Settlement Agreement. *See* ECF Nos. 203, 221 and 221-1 ("Blood Preliminary Approval Decl."). Rather than repeat those details here, they are incorporated by this reference and summarized below.

Plaintiffs allege Defendant falsely advertised its glucosamine joint health dietary supplement "Move Free Advanced" ("MFA")[2] by claiming it provides joint health benefits that it does not provide. The litigation consisted of two separate class actions in two different districts, has lasted over four years, involved discovery motions, class certification in two courts, a petition for permissive appeal, summary judgment, 30 depositions, over 20 third party subpoenas, more than 303,000 pages of documents (exceeding 116 GB), reports and declarations from 15 designated

---

[2] "Move Free Advanced" or "MFA" refers to the glucosamine supplement products at issue marketed and distributed by Reckitt Benckiser called Move Free Advanced, Move Free Advanced Plus MSM, and Move Free Advanced Plus MSM & Vitamin D.

experts, and many days of mediations with three different neutrals at various stages throughout the Action. *See* ECF No. 221-1 (Blood Preliminary Approval Decl.), ¶¶ 4-36. The Settlement was reached only after this significant amount of litigation while the Parties were preparing for trial and just weeks away from the final pretrial conference.

## III. THE PRELIMINARY APPROVAL ORDER

After briefing, a hearing, and due consideration, on June 24, 2021, the Court entered the Preliminary Approval Order. ECF No. 227. The Court analyzed the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements to be satisfied, and certified the Class for Settlement purposes. *Id.* at 2.

The Order also analyzed the Class Notice Program and found it "(a) meet[s] the requirements of due process and Fed. R. Civ. P. 23(c) and (e); (b) constitutes the best notice practicable under the circumstances to all persons entitled to notice; and (c) satisfies the Constitutional requirements regarding notice. In addition, the forms of Class Notice: (a) apprise Class Members of the terms of the proposed Settlement and their rights and deadlines under the Settlement; (b) are written in simple terminology; (c) are readily understandable by Class Members; and (d) comply with the Federal Judicial Center's illustrative class action notices." ECF No. 227 at 4.

## IV. THE SETTLEMENT AGREEMENT

### A. The Settlement Class Definition

The Settlement Class definition is provided in the Settlement Agreement (SA, § II.44) and in the Court's Preliminary Approval Order (ECF No. 227 at 2).

### B. Settlement Benefits

Under the Settlement, Defendant will create a $50 million non-reversionary Common Fund to compensate Class Members and pay for Class Notice, any award of attorneys' fees and expenses, and service awards to the Class Representatives. *See* SA, § IV.

Class Members will receive $22 cash for each bottle of MFA they purchased. *Id.*, § IV.3. This amount is about the average retail price paid by Class Members. *See* ECF No. 221-1 (Blood Preliminary Approval Decl.), ¶ 43. Class Members may claim reimbursement for up to three

purchases without proof of purchase, for a total of $66. Three purchases are slightly more than the average number of bottles purchased made by Class Members, which is 2.6. *Id.*, ¶ 44. Those with proof of purchase may claim refunds for as many bottles as they have proofs of purchase. Because many purchases were made from club stores like Costco and through Amazon, many Class Members have proof of purchase. ECF No. 230-5 (Azari Supplemental Decl.), ¶ 51.

No portion of the Common Fund will revert to the Defendant. Any funds remaining after calculating valid claims will be distributed to Claimants by increasing the amount of their valid Claims up to three times the original claim amount. SA, § IV.4.b. However, in the event such increased amount would exceed three times the original claim amount, a second round of Class Notice and an additional claim-in opportunity will occur. SA, § IV.4.c. If money remains after this Supplemental Claim Deadline, the valid claims will again be calculated and increased pro rata until the fund is exhausted. *Id*. If there is not enough money to cover all valid claims, claims will be reduced pro rata. *Id.*, § IV.4.a. If any funds remain after distribution such as uncashed checks, they will be distributed to the Orthopaedic Research Society, the designated *cy pres* recipient. *Id.*, § IV.4.f.. Given the current claims rate, the cash awards may be increased slightly, which will exhaust the fund. *See* Blood Final Approval Decl., ¶ 5.

Pursuant to Rule 23(h), Plaintiffs' Motion for Attorneys' Fees, Costs, and Expenses and Service Awards and related documents were filed on September 14, 2021 (ECF Nos. 230, 230-1 through 230-5) and posted to the settlement website on September 15, 2021. ECF No. 230-5 (Azari Supplemental Decl.), ¶ 30.

### C. The Court-Approved Class Notice Program Was Successful

The Class Notice Program was excellent, readily meeting Federal Rule of Civil Procedure 23(e)(2)(C)(ii). As a result of Plaintiffs' Counsel's efforts to obtain sales information from numerous third-party retailers, approximately 4.6 million Class Members received direct notice by email or mail. ECF No. 230-5 (Azari Supplemental Decl.), ¶¶ 21, 24; *see also* concurrently filed Declaration of Syed Moiz on behalf of Amazon.com, Inc., ¶ 5. Class Notice was also widely disseminated through print publications and a multi-pronged online advertising campaign involving targeted

search engine and social media advertising. ECF No. 230-5 (Azari Supplemental Decl.), ¶¶ 24-45. Further, for those Class Members that had not filed a Claim, a Reminder Email Notice was sent from September 10, 2021 to September 12, 2021. *Id.*, ¶ 30. In total, over seven million mailings were sent directly to Class Members. *Id.*, ¶¶ 22, 30.

Although the claims period is still open and the Claims are still being processed and verified, the Claims Administrator expects all valid claims will receive at least full reimbursement plus a slight additional pro rata increase that will exhaust the Common Fund. Blood Final Approval Decl., ¶ 5; *see also* SA, § IV.3.d. Should any money remain in the Common Fund as a result of uncashed checks or other similar issues, the remaining funds will be paid to the designated *cy pres* recipient, the Orthopaedic Research Society. The Orthopaedic Research Society is an appropriate *cy pres* recipient because it funds scientific research, education, and advocacy efforts related to the treatment of Osteoarthritis and its symptoms and is related to the nature of the lawsuit and the Class Members. *See* ECF No. 203-3 (Declaration of Brenda Frederick Re: Orthopaedic Research Society), ¶ 3; *see also Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990).[3]

In compliance with CAFA's notice requirements, 28 U.S.C. § 1715, the Settlement Administrator mailed notice of the Settlement to government officials on March 12, 2021 and sent supplemental CAFA notice on May 20, 2021. ECF No. 230-5 (Azari Supplemental Decl.), ¶¶ 9-10 and Attachments 1 and 2 thereto (Declarations of Stephanie J. Fiereck). No government officials have contacted Defendant or Class Counsel about the Settlement.

## V.     THE STANDARDS FOR FINAL APPROVAL

Pursuant to Rule 23(e), after directing notice to settlement class members in a reasonable manner and prior to granting final approval of a proposed settlement, the Court must conduct a fairness hearing and determine whether the settlement's terms, as a whole, are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (the court's role is to determine whether the settlement is not collusive and, "taken

---

[3]     All internal citations and quotations are omitted unless otherwise stated.

as a whole, is fair, reasonable and adequate to all concerned"); *Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009) ("In this case, the negotiated amount is fair and reasonable no matter how you slice it. There is no evidence of fraud, overreaching, or collusion."); *see generally Manual for Complex Litigation (Fourth)* § 21.62 (2004) ("Rule 23(e)(1)(C) establishes that the settlement must be fair, reasonable, and adequate."); 4 William B. Rubenstein, et al., *Newberg on Class Actions* § 13:42 (5th ed.). In making its determination, "[i]t is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms." *In re TD Ameritrade Account Holder Litig.*, No. C 07-2852 SBA, 2011 U.S. Dist. LEXIS 103222, at *11-12 (N.D. Cal. Sept. 12, 2011) (citing *Officers for Justice*, 688 F.2d at 625).

Judicial policy strongly favors the settlement of class actions. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice*, 688 F.2d at 625. Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length and size of the litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits ….").

As part of the preliminary approval process, the Court has already considered the non-exhaustive factors recognized as guideposts to the "fair, adequate and reasonable" determination: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount achieved or recovered in resolution of the action; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *See Class Plaintiffs*, 955 F.2d at 1291; *Officers for Justice*, 688 F.2d at 625. A settlement is entitled to a presumption of fairness when reached by experienced counsel. *See Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). Each of these factors supports approval of the Settlement.

## VI. THE SETTLEMENT MERITS FINAL APPROVAL

The Motion for Preliminary Approval, the Declaration of Timothy G. Blood in Support of Motion for Preliminary Approval, Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representatives Service Awards, and accompanying declarations and documents describe in detail why the above-described factors used to evaluate the fairness of a class action settlement weigh in favor of approval and are incorporated by this reference. *See* ECF Nos. 203, 221, and 230.

The Court's Standing Order governing preliminary approval of class action settlements requires that the Settlement meet the "rigorous" scrutiny required at final approval. *See* Standing Order for Civil Cases Before Judge Vince Chhabria at 14. Rather than repeat what was previously briefed in detail (ECF Nos. 203, 221, 230), each fairness factor is briefly addressed below. *See Franco v. E-3 Sys.*, No. 19-cv-01453-HSG, 2021 U.S. Dist. LEXIS 107399, at *14 (N.D. Cal. June 8, 2021) (granting final approval and noting "no facts have changed that would affect the Court's previous findings in its preliminary approval order"). Because Class Notice had not been fully disseminated, the only approval factor not entirely addressed in previous filings is the reaction of the Class Members to the proposed Settlement. That factor is now discussed in § VI.F below.

### A. Certification of the Settlement Class

The Court's Preliminary Approval Order analyzed the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), found the requirements to be satisfied, and certified the Settlement Class for settlement purposes only. ECF No. 227 at 2. Nothing has changed that would affect the Court's ruling on class certification.

### B. The Strengths of Plaintiffs' Case and Inherent Risks of Continued Litigation

Plaintiffs discussed the real risks of continued litigation in connection with preliminary approval and in the recently filed motion for attorneys' fees. *See* ECF No. 221 (Preliminary Approval Mem.) at 15-18, and ECF No. 230 (Motion for Attorneys' Fees) at 6-10. The Parties disagree about the merits of the case and there is significant uncertainty about the ultimate outcome at trial. This uncertainty springs from risks that include substantial procedural hurdles that limit determination of cases on the merits or for full relief in federal court. There are also risks with

persuading the trier of fact about scientific falsity in any case, let alone one that involves relatively inexpensive over-the-counter supplements and a battle between 15 well credentialed experts. A number of recent class trials involving false advertising of products advertised for health benefits having ended in favor of defendants. ECF No. 221 (Preliminary Approval Mem.) at 15-16. In comparison to these risks, the guaranteed recovery this Settlement provides weighs in favor of final approval.

### C. The Settlement Provides Significant Relief and Favorably Compares to Similar Approved Settlements

The $50 million all-cash Settlement is the largest in a dietary supplement false advertising action. *See* ECF No. 221-1 (Blood Preliminary Approval Decl.), ¶ 71. The substantial Common Fund allows for full refunds for the Settlement Class—awards that are commensurate with the amount an individual Class Member might receive after a fully successful trial. In comparison to this one, dietary supplement settlements are typically below $10 million even when product sales are far greater than those here. ECF No. 221 (Preliminary Approval Mem.) at 12-14. This includes a previous Move Free Advanced false advertising case that included far more sales but settled for $6.51 million. *Id.* at 12. The Settlement represents an outstanding result for the Settlement Class.

### D. The Extent of Discovery and Stage of Proceedings

The extent of discovery completed and the stage of the litigation also supports this Settlement. As explained above and in previous briefing, the Settlement was reached shortly before the final pre-trial conference, and after significant discovery efforts including 30 depositions, over 20 third party subpoenas, 303,000 pages of documents, class certification, summary judgment, and reports and declarations from 15 designated experts. *See* ECF No. 221-1 (Blood Preliminary Approval Decl.), ¶¶ 4-32. Moreover, the Settlement was negotiated over the course of numerous mediation sessions spanning the length of the litigation with several experienced mediators. *Id.*, ¶¶ 33-36. These combined facts demonstrate that Class Counsel "possess a sufficient understanding of the issues involved and the strengths and weaknesses of the case." *See Chun-Hoon v. McKee*

*Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)*; see also In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588 (N.D. Cal. 2015).

### E. The Experience and Views of Counsel

Class Counsel have substantial experience serving as class counsel in consumer fraud class actions and believe the Settlement as fair, reasonable, and adequate. ECF No. 221-1 (Blood Preliminary Approval Decl.), ¶¶ 33, 81, and Ex. C thereto (Class Counsel's Firm Resume); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (noting the experience of plaintiffs' counsel and that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

### F. The Reaction of Settlement Class Members Favors Final Approval

A favorable reaction by class members to the proposed settlement supports final approval. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

The terms of the Settlement were provided to Class Members in the Court-approved Class Notice, including in the forms of Class Notice directly emailed and mailed to approximately 4.6 million Class Members, and on the Settlement Website. *See* ECF No. 230-5 (Azari Supplemental Decl.), ¶¶ 21, 24, 45-47. The last day to object or opt-out of the Settlement is October 14, 2021. To date, out of the millions of Class Members receiving notice, just four have submitted objections and only 79 have opted out. *See* Blood Final Approval Decl., ¶ 4.

This is a very positive reaction to the Settlement. *See*, *e.g.*, *In re Mego*, 213 F.3d at 459 (where just a "handful" objected, "[t]he reaction of the class members to the proposed settlement further supports the conclusion that … the Settlement was fair, adequate and reasonable"); *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class action settlement where forty-five objections were received out of 90,000 notices); *In re Omnivision*, 559 F. Supp. 2d at 1043 ("objections from only 3 out of 57,630 potential Class Members who received

the notice" shows the class favors the settlement); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. LEXIS 49477, at *40 (N.D. Cal. Apr. 22, 2010) ("only 101 out of the over 24,000 who received notice have elected to opt out of the Settlement Class ... which is a further indication of the fairness of the Settlement."); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-2171 FMO (FFMx), 2017 U.S. Dist. LEXIS 77576, at *25 (C.D. Cal. May 21, 2017) (22 objections out of 2.6 million noticed class members found to be "extremely low"). By any standard, the lack of objection of the Class Members here favors approval of the Settlement. *Id.*

The four objections, along with any others that may be submitted, will be addressed after the close of the opt out and objection period in Plaintiffs' reply brief.

## VII. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court confirm certification of the Settlement Class, grant final approval of the Settlement, and approve Class Counsel's request for attorneys' fees and expenses and service awards for the Class Representatives.

Respectfully submitted,

Dated: September 23, 2021

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)

By:      *s/ Timothy G. Blood*
              TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

ALTAIR LAW
CRAIG M. PETERS (184018)
465 California Street, 5th Floor
San Francisco, CA 94104-3313
Tel: 415/988-9828
415/988-9815 (fax)
c.peters@altair.us

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 23, 2021.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com